## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **AIR FORCE OFFICER**, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **LLOYD J. AUSTIN**, **III**, individually and in his | ) | |
| official capacity as Secretary of Defense; | ) | |
| **FRANK KENDALL**, **III**, individually and in his | ) | |
| official capacity as Secretary of the Air Force; and | ) | |
| **ROBERT I. MILLER**, individually and in his | ) | |
| official capacity as Surgeon General of the | ) | |
| Air Force, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Air Force Officer, for her Complaint against the Defendants, hereby states as follows:

## INTRODUCTION

1.     Defendants are trying to force Plaintiff and thousands of other service members to submit to being injected with a COVID-19 vaccine against their sincerely held religious beliefs.

2.     In this lawsuit Plaintiff challenges Defendants' military and federal civilian employee COVID-19 vaccine mandates because they violate her and others' sincerely held religious beliefs.

3.     Defendants conceded the sincerity of Plaintiff's religious objection to being vaccinated, Plaintiff contracted COVID-19 in 2020 and remains naturally immune to it, and Plaintiff has been willing and able and remains willing and able to work remotely, wear a mask, and test periodically.

1

4.      But in December 2021 the Air Force issued a final denial of Plaintiff's October 2021 request for religious accommodation.

5.      Defendants have not granted any service member any request for religious accommodation.

6.      This action is based upon the Religious Freedom Restoration Act of 1993 (RFRA) and the First Amendment to the United States Constitution, both of which protect Plaintiff's fundamental right to the free exercise of her religion.

7.      This action is also based on the Administrative Procedure Act, which protects Plaintiff from arbitrary and capricious rulemaking by Defendants.

8.      Plaintiff challenges Defendants' orders, policies, and actions detailed below, facially for lack of exception for any religious exercise, and as applied to Plaintiff in denying her particular request for religious accommodation.

9.      Defendants' orders, policies, and actions deprived and will continue to deprive Plaintiff and other religious service members of their paramount rights and guarantees under federal law, including under RFRA, the Administrative Procedure Act, and the United States Constitution.

10.     Defendants committed each and every act alleged herein under the color of law and authority.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

12.     The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

2

13.     The Court also has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff.

14.     The Court also has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise and that of other service members have been burdened by Defendants.

15.     The Court also has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action.

16.     This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b) and 28 U.S.C. § 2412.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States, and the military workplace and the location in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred are in Houston County, Georgia, within the District of this Court.

## PARTIES

18.     Plaintiff is an Officer in the United States Air Force.

19.     Plaintiff prefers not to disclose her name in a public proceeding because she has a substantial privacy right that can only be preserved by proceeding anonymously.

20.     Defendant Lloyd J. Austin, III, is the Secretary of the United States Department of Defense. Secretary Austin is sued individually and in his official capacity.

21.     Defendant Frank Kendall, III, is the Secretary of the United States Air Force. Secretary Kendall is sued individually and in his official capacity.

22.     Defendant Robert I. Miller is the Surgeon General of the United States Air Force. Secretary Miller is sued individually and in his official capacity.

## FACTUAL BACKGROUND

### The COVID-19 Vaccine Mandates at Issue

23.     On August 24, 2021, Secretary Austin issued a mandate for all service members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve to receive a COVID-19 vaccine ("DoD Military Mandate").

24.     The DoD Military Mandate states in part that "Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable."

25.     At the time of issuance of the DoD Military Mandate, Air Force Instruction (AFI) 48-110, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease*, dated February 16, 2018, was an existing policy and procedure of the Air Force and remains a policy and procedure of the Air Force.

26.     AF 48-110 is mandatory.

27.     AFI 48-110 states in part: "General examples of medical exemptions include the following… (b) Evidence of immunity based on serologic tests, documented infection, or similar circumstances."

28.     Other branches of the military have policies and procedures identical to AFI 48-110: Army 40-562; Navy BUMEDINST 6230.15B; and Coast Guard COMDTINST M6230.4G.

29.     The DoD Military Mandate further states in part, "Those with previous COVID-19 infection are not considered fully vaccinated."

30.     The DoD Military Mandate further states in part, "Service members who are actively participating in COVID-19 clinical trials are exempted from mandatory vaccination

against COVID-19 until the trial is complete in order to avoid invalidating such clinical trial results."

31.     On September 3, 2021, Secretary Kendall issued a mandate for all active duty service members of the Air Force, "unless exempted," to be fully vaccinated by November 2, 2021, and for all Reserve service members, "unless exempted," to be fully vaccinated by December 2, 2021 ("Air Force Military Mandate").

32.     The Air Force Military Mandate states in part, "Individuals with previous COVID-19 infection or positive serology are not considered vaccinated and are not exempt."

33.     On September 9, 2021, President Biden issued Executive Order 14043, in which the President directed certain Executive Agencies to implement programs to require COVID-19 vaccination for its federal civilian employees, "with exceptions only as required by law" ("President's Federal Employee Mandate").

34.     The federal Department of Health and Human Services (HHS), cited as authority in Executive Order 14043, and the Centers for Medicare & Medicaid Services (CMS) issued a COVID-19 regulation recognizing that the vaccinated and those who "have recovered from infection… are no longer sources of future infections."  86 Fed. Reg. at 61,604.

35.     On September 21, 2021, a Deputy Commander of the Air Force issued an order to Plaintiff stating in part, "I am ordering you to receive an initial dose of a COVID-19 vaccine… by 28 October 2021.  Additionally, you are ordered to receive the second dose of the same vaccine AND provide proof by 18 November 2021" ("Air Force Military Order to Plaintiff").

36.     On October 1, 2021, Deputy Secretary of Defense Kathleen Hicks issued a mandate for all Department of Defense civilian employees to be fully vaccinated by November 22, 2021, "subject to exemptions as required by law" ("DoD Civilian Mandate").

37.     The DoD Civilian Mandate states in part, "Those with previous COVID-19 infection(s) or previous serology are not considered fully vaccinated on that basis for the purposes of this mandate."

38.     On October 8, 2021, Secretary Kendall issued a mandate for all civilian employees of the Air Force to be fully vaccinated by November 22, 2021 "unless exempted" ("Air Force Civilian Mandate").

39.     The Air Force Civilian Mandate states in part, "Individuals with previous COVID-19 infection or positive serology are not considered vaccinated and are not exempt."

40.     The DoD Military Mandate, Air Force Military Mandate, President's Federal Employee Mandate, Air Force Military Order to Plaintiff, DoD Civilian Mandate, and Air Force Civilian Mandate, collectively, are herein referred to as "the Mandates."

**Plaintiff's Air Force Career**

41.     For more than 25 years, Plaintiff has served her country in the United States Air Force.

42.     The military has awarded Plaintiff numerous medals, including the Defense Meritorious Service Medal, Meritorious Service Medals, the Air Force Commendation Medal, Air Force Achievement Medals, and other medals.

43.     The Air Force has never disciplined her, and has never had cause to discipline her, for any reason.

44.     For years, Plaintiff has served in an administrative position in the Air Force Reserves.

45.     Plaintiff's position is not one that would be tasked to deploy or that engages in physical military operations.

46.     Plaintiff is both a military employee and a federal civilian employee, and in both capacities she is based at Robins Air Force Base in Georgia.

47.     At various times in her career, Plaintiff has worked remotely.

48.     Over her many years of service, Plaintiff has held key positions of responsibility, implemented critical health and safety programs, educated and developed numerous other leaders, and built trust and goodwill among fellow service members, all in the interest of military readiness, unit cohesion, good order, discipline, health, and safety.

49.     When the military in 2020 began imposing COVID-19 restrictions on personnel— including masking, social distancing, and working remotely—Plaintiff followed and led others to follow these policies.

50.     Plaintiff has consistently and fully supported and sustained Defendants' interests in military readiness, unit cohesion, good order, discipline, health, and safety.

### Plaintiff's Sincerely Held Religious Beliefs

51.     Plaintiff is a Christian.

52.     As a Christian, Plaintiff believes that abortion is a grave evil and contrary to her faith.

53.     Plaintiff sincerely believes that receiving a vaccine that was derived from or tested on aborted fetal tissue in its development would violate her conscience and is contrary to her faith.

54.     All of the COVID-19 vaccines currently available were derived from or tested on (as part of their development) aborted fetal tissue.  For this reason, she is unwilling to receive one of the COVID-19 vaccines currently available.

55.     In addition, in accordance with her faith, Plaintiff believes that her "body is the temple of the Holy Spirit" (1 Cor. 6:19-20), and that injection with a novel substance of unknown long-term effects would violate this belief.

56.     Plaintiff does not oppose all vaccines.

### Plaintiff's Natural Immunity

57.     Natural immunity is disease resistance developed naturally in the body resulting from prior infection of that disease.

58.     Existence of COVID-19 antibodies in the body indicates natural immunity to COVID-19.

59.     In December 2020, Plaintiff contracted COVID-19 and fully recovered.

60.     In January 2021, Plaintiff took a COVID-19 antibody test and tested positive for COVID-19 antibodies.

61.     In December 2021, Plaintiff took a COVID-19 antibody test and tested positive for COVID-19 antibodies.

### Plaintiff's Request for and Defendants' Denial of Exemption and Accommodation

62.     In September 2021, the Air Force provided a form *Religious Accommodation Request for Immunization Waiver* ("Military Request Form").

63.     The Military Request Form provides in part that a service member requesting a religious accommodation will certify, "I am making an informed decision and fully understand that my request may have an adverse impact on my deployability, assignment, and/or international travel."

64.     The Military Request Form "reference[d]" "AFI 48-110, 16 Feb 18 *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease*" among other policies and procedures.

8

65.    On October 13, 2021, using the Military Request Form, Plaintiff timely submitted a written request for religious accommodation.

66.    On October 27, 2021, Plaintiff received a denial (dated October 26) of her October 13 request for religious accommodation.  The denial letter stated, "I do not doubt the sincerity of your beliefs."  The denial letter further stated that "less restrictive means of protecting our force from COVID-19 are unavailable."  The denial letter did not mention, and did not request additional information about, Plaintiff's individual circumstances relevant to accommodation, such as natural immunity, willingness to mask, etc.

67.    On October 29, 2021, Plaintiff timely appealed the October 27 denial of her October 13 request for a religious accommodation.

68.    In October 2021, Defendants issued a form *Request for Religious Exemption to the COVID-19 Vaccination Requirement* ("Civilian Request Form").

69.    On November 8, 2021, using the Civilian Request Form, Plaintiff timely submitted a written request for a religious accommodation.

70.    On December 6, 2021, Plaintiff received a written denial of her October 29 military appeal, signed by Surgeon General Robert I. Miller ("Final Denial").

71.    The Final Denial stated in part:  "Your final appeal is denied."

72.    The Final Denial further stated in part: "The Department of the Air Force has a compelling government interest in requiring you to comply with the COVID-19 immunization requirement because preventing the spread of disease among the force is vital to mission accomplishment….  Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety.  There are no less restrictive means in

your circumstance as effective as receiving the above immunization in furthering these compelling government interests."

73.     The Final Denial made no mention of Plaintiff's natural immunity, which the Air Force knew about from Plaintiff's request-for-accommodation submissions.

74.     The Final Denial made no mention of AFI 48-110 or HHS/CMS vaccine regulation 86 Fed. Reg. at 61,604.

75.     Upon her December 6, 2021, receipt of the Final Denial, the Air Force gave Plaintiff five days to make a choice among three options:  "(1) take the vaccine," "(2) submit retirement request if eligible" with retirement effective in the spring of 2022, or "(3) refuse vaccine in writing."  The Air Force further told her that "refusal to receive the vaccine… may be punishable under the Uniform Code of Military Justice (UCMJ)" and that "[c]ontinued refusal will result in involuntary reassignment to the IRR [Individual Ready Reserve]" without pay, benefits, or regular responsibilities.

76.     Plaintiff wants to continue her work, but, faced with these three options, on December 11, 2021, Plaintiff submitted an early retirement request, under protest.

77.     Based on the information Plaintiff received from Defendants, the effective date of my retirement may be May 1, 2022 or June 1, 2022.

78.     Plaintiff was and is willing to perform her work at the highest level and to take regular COVID-19 tests when working in-person on the base, wear a mask, socially distance, and work remotely as appropriate.

79.     Until the putative effective date of her forced early retirement in the spring of 2022, and pending adjudication of her civilian request for accommodation, as a military service member Plaintiff is still permitted to work on the base and to perform her normal work duties—

10

still unvaccinated—provided she take regular COVID-19 tests when working in-person, wear a mask, and socially distance.

80.     During the period since December 11, 2021, Plaintiff has worked on the base and performed her normal work duties.  During this time Plaintiff has taken COVID-19 tests, worn a mask, and socially distanced.

81.     Service members with approved medical accommodations are permitted to work in person—presumably as long as they take COVID-19 tests, test negative, wear a mask, and socially distance—with no forced early retirement or other adverse employment consequences.

82.     Unlike those with medical accommodations and clinical-trial participants, and despite posing the same (or less, given her natural immunity) risk than they do, Plaintiff's refusal to be vaccinated cost Plaintiff her right to future employment (beyond her forced retirement date).

83.     By refusing to take the COVID-19 vaccine, being forced into early retirement, and losing her Air Force position, Plaintiff stands to lose more than a million dollars in salary and benefits.  Plaintiff planned to rely on this compensation in retirement in due course.

84.     While the military has issued a final denial of Plaintiff's military requests for accommodation, her civilian request for accommodation is still pending.  Plaintiff has not been told when a ruling on her civilian request will be issued.

85.     A ruling on Plaintiff's civilian request could be issued any day.

86.     Plaintiff has been advised that there is no opportunity to appeal a civilian denial, unlike the military denial, so an initial civilian denial is considered final.

87.     Plaintiff reasonably expects that the Air Force will deny her civilian request, because Defendants have denied all COVID-19 vaccine religious accommodation requests of all service members including Plaintiff's own military request.

88.     The military has not informed Plaintiff what the impact of a denial of the civilian request would have on her employment which is both military and civilian, including whether she will be separated immediately or whether the terms of her forced early retirement in the spring of 2022 will apply.

89.     Fidelity to her religious beliefs is more important to Plaintiff than her career and compensation, but the Constitution prohibits Defendants from forcing her to choose between her beliefs and her employment.

90.     The Mandates have lowered Plaintiff's morale as a service member, because they have forced her to choose between her sincerely held religious beliefs and her livelihood.  The Mandates have lowered the morale of other service members for the same reasons.

### FIRST CAUSE OF ACTION
**Violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.***

91.     Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

92.     RFRA states that the government shall not substantially burden a person's exercise of religion even by means of a rule of general applicability. 42 U.S.C. § 2000bb-1.

93.     RFRA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000bb2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

94.     The exercise of religion involves not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons.

95.     The Mandates explicitly acknowledge that RFRA protects Department of Defense and Air Force service members.

### Exercise of Religion

96.     Plaintiff sincerely believes that the exercise of her religion prevents her from submitting to injection of any of the presently available COVID-19 vaccines.

97.     Defendants acknowledge the sincerity and reasonableness of Plaintiff's belief that her exercise of religion prevents her from receiving vaccination.

98.     More than 4,000 other Air Force service members share Plaintiff's religious objection to being vaccinated for COVID-19.

99.     The government and reviewing courts may not question whether sincerely held religious beliefs are reasonable.

### Substantial Burden

100.     RFRA imposes strict scrutiny on all actions of the federal government that substantially burden a person's exercise of religion. 42 U.S.C. § 200bb-1(b).

101.     A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on an adherent to modify his or her behavior and to violate his or her beliefs.

102.     The Mandates impose on Plaintiff and all service members whose religious exercise prevents vaccination for COVID-19 the choice between violating their religious beliefs and ending their career and livelihood.

103.     Forcing a person to violate her religious beliefs or lose her employment is a substantial burden on her religious belief.

104.    According to the Military Request Form, making a "request" for a religious accommodation "may have an adverse impact on [the requesting service member's] deployability, assignment, and/or international travel."

105.    These adverse impacts can have permanent and lasting effects on the careers of service members.

106.    These adverse impacts, currently being imposed on more than 4,000 service members in the Air Force alone, impose substantial pressure on each religious objector to vaccination to modify his or her behavior and to violate his or her beliefs.

**Strict Scrutiny**

107.    Under RFRA, the Mandates are subject to strict scrutiny because they impose the above substantial burdens on the religious exercise of service members. 42 U.S.C. § 200bb-1(b).

108.    Strict scrutiny requires that, before imposing a substantial burden on a person's exercise of religion, the government must demonstrate that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 200bb-1(b).

109.    The Mandates fail strict scrutiny, both as applied to Plaintiff and facially as Defendants have interpreted them to disallow any religious accommodation.

**No Compelling Interest**

110.    Defendants may not rely on generalized or broadly formulated interests to justify requiring Plaintiff or any service member to receive the COVID-19 vaccine in violation of her religious beliefs.

111.    Defendants must establish that they have a compelling governmental interest in denying an accommodation to Plaintiff in particular.

14

112.    Defendants do not have a compelling governmental interest in requiring Plaintiff to receive a COVID-19 vaccine.

113.    The October 2021 letter denying Plaintiff a religious accommodation cited only generalized interests, present in every case, of "military readiness, unit cohesion, good order, and discipline."

114.    The October 2021 letter offers no consideration of Plaintiff's particular circumstances.

115.    Plaintiff developed natural immunity to COVID-19, verified by positive antibody tests in January 2021 and in December 2021.

116.    Plaintiff's position does not involve deployment.

117.    Defendants have identified nothing to support a compelling interest in denying Plaintiff in particular an accommodation from the Mandates.

118.    Although the Mandates invite service members to apply for religious exemptions, the enforcement record shows that Defendants have adopted a policy of denying all religious accommodations.

119.    RFRA requires that Defendants grant accommodation in every case where denying one does not pass strict scrutiny.

120.    To enforce a law without any religious accommodations, Defendants must establish that denying every possible religious accommodation passes strict scrutiny.

121.    Defendants cannot establish a compelling interest in denying every religious accommodation to the Mandates.

122.    There can be no compelling interest justifying substantially burdening religious practice when a government measure leaves appreciable damage to that supposedly vital interest unprohibited.

123.    Defendants have granted thousands of accommodations for medical and administrative reasons.

124.    Allowance of accommodations for reasons other than religious ones demonstrates that Defendants can tolerate the risk posed by some service members remaining unvaccinated.

125.    Defendants' delay in imposing the Mandates also belies any claim that their interest in enforcing them is compelling.

126.    The Mandates were issued months after vaccines became available and months after the Department of Justice formally advised that government entities could impose mandatory vaccination requirements. U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip op.), https://www.justice.gov/olc/file/1415446/download.

127.    In the months since vaccinations were introduced, risk of transmission among service members have greatly decreased due to voluntary vaccination and infection rates. Any compelling interest in mandating vaccination has decreased accordingly.

128.    Defendants have not and cannot establish a compelling interest in a military or Air Force-wide policy of denying religious accommodations to the Mandates, because RFRA requires that Defendants show a compelling interest to refuse each individual's accommodation in particular, and because Defendants delayed the Mandates for months and then granted accommodations for other reasons.

16

**Not the Least Restrictive Means**

129.    The least-restrictive-means standard is exceptionally demanding in that it requires the government to show it lacks other means of achieving its desired goal.

130.    So long as the government can achieve its interests in a manner that does not burden religion, it must do so.

131.    This standard requires Defendants to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID.

132.    Requiring Plaintiff to be vaccinated against COVID-19 is not the least restrictive means Defendants could have employed to serve any compelling interest.

133.    Plaintiff has worked successfully for the Air Force, fulfilling her job responsibilities completely, throughout the pandemic, including while vaccines have been available.

134.    Defendants' denial of Plaintiff's religious accommodation provides no explanation of why she cannot continue to fulfill her duties in many of the ways implemented during the height of the pandemic.

135.    The Air Force stated, without explanation, that Plaintiff's work cannot be accommodated with the use of distancing measures, remote work, masking, hygiene requirements, and regular testing, while those with medical and administrative accommodations and clinical-trial participants are permitted to work with such measures in place.

136.    Defendants have not shown that accommodating Plaintiff remaining unvaccinated would increase their costs in any degree, given the continued presence of medically accommodated unvaccinated service members and the exemption for clinical-trial participants.

137.    If accommodations have little or no marginal cost, mandating that Plaintiff be vaccinated cannot be the least restrictive means of preventing the spread of COVID-19.

138.    At the very least, Defendants have an obligation to demonstrate that universal vaccination—except for medical and administrative accommodation and exemption for clinical-trial participation—is the least restrictive way of pursuing their interests. That requires demonstrating why other paths to the same goal are inferior, which Defendants cannot do.

139.    Vaccinating someone with natural immunity, like Plaintiff, does not minimize the risk to other service members.

140.    Not only is mandatory vaccination in Plaintiff's case not the least restrictive means of serving Defendants' interest in limiting the spread of COVID, vaccination does not serve that interest in any way at all.

141.    The denial of all service members' religious accommodations is not the least restrictive means to serve Defendants' interests.

142.    Universal denial of religious accommodations invites the nearly simultaneous separation of thousands of service members including more than 4,000 service members from the Air Force alone, and suggests an impermissible hostility to religion.

143.    In denying Plaintiff's religious accommodation, Defendants claimed to be serving the interests of "military readiness, unit cohesion, good order, and discipline."  These are not sufficiently compelling interests to satisfy strict scrutiny.

144.    Even if they were sufficiently compelling interests to satisfy strict scrutiny, Defendants have not demonstrated, and cannot demonstrate, that their interests in "military readiness, unit cohesion, good order, and discipline" would be served, rather than harmed, by reducing many thousands of service members from their ranks.

145.     To survive strict scrutiny, Defendants must show that separating thousands of religious objectors from the military, with concomitant loss of trained personnel and enormous administrative burden, better serves Defendants' interests than accommodating these same service members as unvaccinated service members.

146.     In Plaintiff's case, accommodating her continued service has little or no marginal financial cost to Defendants.

147.     Plaintiff's forced early retirement causes the Air Force administrative difficulty, along with the impact of losing a service member of her seniority in some of her most productive years of service.

148.     A blanket policy of denying religious accommodations and ending the careers thousands of service members cannot credibly be described as the least restrictive means of serving the interests Defendants have identified.

149.     The Mandates are also not the least restrictive means to serve Defendants' interest in reducing the spread of COVID-19 or increasing the safety of service members, because it is by no means settled that the vaccinations Defendants insist upon actually do add to the safety of the service members.

150.     Defendants' policy of denying all religious accommodation requests no matter the circumstances is vastly out of step with policies in the rest of the country, including in the countless workplaces across the country that currently provide religious accommodations without any evidence of causing harm.

151.     Defendants cannot establish that the Mandates are the least restrictive means of pursuing a compelling interest.

**RFRA relief**

152.    Defendants' Mandates violate Plaintiff's rights and the rights of her fellow service members under RFRA.

153.    Because of Defendants' policy and actions, Plaintiff has suffered irreparable harm and has suffered and/or will suffer economic injury. She is entitled to an award of monetary damages and equitable relief.

154.    Plaintiff is entitled to a declaration that Defendants violated her rights under RFRA to the free exercise of religion and an order restraining and enjoining Defendants from denying Plaintiff's requests for religious accommodation, from forcing her to retire or separate from the military, and from taking any other adverse action against her based on her unvaccinated status. Additionally, Plaintiff is entitled to damages in the amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of the Free Exercise Clause of the First Amendment
### U.S. Const. amend. I

155.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

### Exercise of Religion

156.    Plaintiff sincerely believes that the exercise of her religion prevents her from submitting to injection of any of the presently available COVID-19 vaccines.

157.    Defendants acknowledges the sincerity of Plaintiff's belief that her exercise of religion prevents her from receiving vaccination.

158.    Thousands of service members share Plaintiff's religious objection to being vaccinated for COVID-19.

159.    The government and reviewing courts may not question whether sincerely held religious beliefs are reasonable.

### Not Neutral and Generally Applicable

160.    The First Amendment's Free Exercise Clause prohibits the government from enacting laws burdening religious exercise that are not both neutral and generally applicable, unless they are narrowly tailored to a compelling a governmental interest.

161.    A law that is not neutral or not generally applicable and burdens religious exercise must satisfy strict scrutiny.

162.    The Mandates are not generally applicable.

163.    A law is not generally applicable if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.

164.    The Mandates allow service members to remain unvaccinated for medical and administrative reasons or if they participate in a clinical trial while disallowing service members from refraining for religious reasons.

165.    Even assuming Plaintiff poses a risk, any risk she poses would be no greater than the risk posed by other accommodated personnel.

166.    Since Defendants accept a risk from people who are unvaccinated for secular reasons but not from people with religious reasons, the Mandates are not generally applicable.

167.    Where a law includes a system of individualized accommodations based on particular circumstances, the government may not refuse to grant accommodations on the basis of religious hardship.

168.    The Mandates invite service members to apply for accommodations from the vaccine mandate on the basis of several individualized situations, including religious belief.

21

169.    Defendants have shown that accommodations based on medical and administrative circumstances and exemptions for clinical-trial participation are available, but they intend to deny all applications for religious accommodations.

170.    Defendants have granted thousands of medical accommodations and thousands of administrative accommodations.

171.    Defendants have granted zero religious accommodations.

172.    A mandate to which commanding officers grant accommodations for other reasons but not on the basis of religious belief is not generally applicable.

**Strict Scrutiny**

173.    A law that is not neutral or not generally applicable and burdens religious exercise must satisfy strict scrutiny.

174.    The Mandates fail strict scrutiny, both as applied to Plaintiff and as applied to all service members.

**No Compelling Interest**

175.    Defendants may not rely on generalized or broadly formulated interests to justify requiring Plaintiff or any service member to receive the COVID-19 vaccine in violation of her religious beliefs.

176.    Defendants must establish that they have a compelling governmental interest in denying an accommodation to Plaintiff in particular.

177.    Defendants do not have a compelling governmental interest in requiring Plaintiff to receive a COVID-19 vaccine.

22

178.    Defendants' October 2021 letter denying Plaintiff a religious accommodation to the Mandates cited only generalized interests, present in every case, of "military readiness, unit cohesion, good order, and discipline."

179.    The October 2021 letter offers no consideration of Plaintiff's particular circumstances. This is insufficient to establish a compelling governmental interest in requiring Plaintiff to receive a COVID-19 vaccine.

180.    Plaintiff developed natural immunity to COVID-19, verified by test in December 2021, resulting most probably from past infection.

181.    Plaintiff's position does not involve deployment.

182.    Plaintiff has effectively fulfilled her service responsibilities throughout the pandemic without putting anyone at risk, even while actually infected with COVID-19.

183.    Defendants cannot rely on generalized statements of interest to justify denying Plaintiff an accommodation, and they can identify nothing to support a compelling interest in denying Plaintiff in particular an accommodation.

184.    Nor can Defendants establish a compelling interest in denying all religious accommodations to the Mandates.

185.    There can be no compelling interest justifying substantially burdening religious practice when a government measure leaves appreciable damage to that supposedly vital interest unprohibited.

186.    Defendants have granted thousands of accommodations to the Mandates for administrative and medical reasons.

187.    Allowance of exceptions for other reasons demonstrates that Defendants can tolerate the risk posed by some service members remaining unvaccinated. Defendants cannot

simultaneously claim they have a compelling interest in denying accommodations to the same Mandates to protect the exercise of religion.

188.     Defendants' delay in imposing the Mandates also belies any claim that their interest in enforcing them is compelling.

189.     The Mandates were issued months after vaccines became available and months after the Department of Justice formally advised that government entities could impose mandatory vaccination requirements. U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip op.), https://www.justice.gov/olc/file/1415446/download.

190.     In the months since vaccinations were introduced, risk of transmission among service members has greatly decreased due to voluntary vaccination and infection rates. Any compelling interest in mandating vaccination has decreased accordingly.

191.     Defendants have not and cannot establish a compelling interest in a military or Air Force-wide policy of denying religious accommodations to the Mandates, because delaying the Mandates for months and granting accommodations for secular, but not religious, reasons both demonstrate that the Mandates do not serve a truly compelling governmental interest.

**Not the Least Restrictive Means**

192.     The least-restrictive-means standard is exceptionally demanding in that it requires the government to show it lacks other means of achieving its desired goal.

193.     So long as the government can achieve its interests in a manner that does not burden religion, it must do so.

194.    This standard requires Defendants to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID-19.

195.    Requiring Plaintiff to be vaccinated against COVID-19 is not the least restrictive means Defendants could have employed to serve any compelling interest.

196.    Plaintiff has worked for the Air Force diligently, fulfilling her job responsibilities completely, throughout the pandemic, including while vaccines have been available.

197.    Defendants' denial of Plaintiff's religious accommodation provides no explanation of why she cannot continue to fulfill her duties in many of the ways implemented during the height of the pandemic.

198.    Defendants do not and cannot explain why Plaintiff's work cannot be accommodated with the use of distancing measures, remote work, masking, hygiene requirements, and regular testing, while those with medical and administrative accommodations and clinical-trial participants are permitted to work with such measures in place.

199.    Defendants have not shown that accommodating Plaintiff remaining unvaccinated would increase their costs in any degree, given the allowance for medical and administrative accommodations and exemptions for clinical-trial participants.

200.    If accommodations have little or no marginal cost, mandating that Plaintiff be vaccinated cannot be the least restrictive means of preventing the spread of COVID-19.

201.    At the very least, Defendants have an obligation to demonstrate that universal vaccination—except for medical and administrative accommodation and exemption for clinical-trial participation—is the least restrictive way of pursuing their interests. That requires demonstrating why other paths to the same goal are inferior, which Defendants cannot do.

202.    Vaccinating someone with natural immunity, like Plaintiff, does not minimize the risk to other service members.

203.    Not only is mandatory vaccination in her case not the "least restrictive means" of serving Defendants' interest in limiting the spread of COVID-19, vaccination does not to serve that interest in any way at all.

204.    Nor is the denial of all religious accommodations the least restrictive means to serve Defendants' interests.

205.    Universal denial of religious accommodations invites the nearly simultaneous separation of thousands of service members including more than 4,000 service members from the Air Force alone, and suggests an impermissible hostility to religion.

206.    In denying Plaintiff's religious accommodation, Defendants claimed to be serving the interests of "military readiness, unit cohesion, good order, and discipline." These are not sufficiently compelling interests to satisfy strict scrutiny.

207.    Even if they were sufficiently compelling interests to satisfy strict scrutiny, Defendants have not demonstrated, and cannot demonstrate, that their interests in "military readiness, unit cohesion, good order, and discipline" would be served, rather than harmed, by separating thousands of service members.

208.    To survive strict scrutiny, Defendants must show that separating the thousands of religious objectors from the military, with concomitant loss of trained personnel and enormous administrative burden, better serves the military's interests than accommodating these same service members as unvaccinated service members.

209.    Accommodating Plaintiff's continued service has little or no marginal financial cost to Defendants.

26

210.    Plaintiff's forced early retirement causes the Air Force administrative difficulty, along with the impact of losing a service member of her seniority in some of her most productive years of service.

211.    A blanket policy of denying religious accommodations and ending the careers of thousands of service members, including more than 4,000 Air Force service members alone, cannot credibly be described as the least restrictive means of serving the interests Defendants have identified.

212.    The Mandates are also not the least restrictive means to serve Defendants' interest in reducing the spread of COVID-19 or increasing the safety of service members, because it is by no means settled that the vaccinations Defendants insist upon actually do add to the safety of the service members.

213.    To identify whether Defendants have employed the least restrictive means, courts look to whether other jurisdictions have addressed the same interests in less restrictive ways.

214.    Defendants' policy of denying all religious accommodation requests no matter the circumstances is vastly out of step with policies in the rest of the country, including in the countless workplaces across the country that currently provide religious accommodations without any evidence of causing harm.

215.    Defendants cannot establish that the Mandates are the least restrictive means of pursuing a compelling interest.

**First Amendment relief**

216.    Accordingly, Defendants' Mandates violate Plaintiff's rights and the rights of her fellow service members under the First Amendment to the United States Constitution.

217.    Because of Defendants' policy and actions, Plaintiff has suffered irreparable harm and has suffered and/or will suffer economic injury. She is entitled to an award of monetary damages and equitable relief.

218.    Plaintiff is entitled to a declaration that Defendants violated her rights under the First Amendment to the free exercise of religion and an order restraining and enjoining Defendants from denying Plaintiff's requests for religious accommodation, from forcing her to retire or separate from the military, and from taking any other adverse action against her based on her unvaccinated status. Additionally, Plaintiff is entitled to damages in the amount to be determined by the evidence and this Court.

### THIRD CAUSE OF ACTION
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 551, 701-06

219.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

220.    Under the Administrative Procedure Act ("APA"), a court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).

221.    The Department of Defense and the branches of the military, including the Air Force, Navy, Army, and Marines, are "agencies" under the APA.  5 U.S.C. § 551(1).

222.    The Mandates are each a "rule" under the APA reviewable under the APA.  5 U.S.C. § 551(4).

223.    Defendants' wrongful actions are "agency actions" reviewable under the APA.  5 U.S.C. §§ 551(13), 704.

224.     With their Mandates, Defendants wrongfully denied Plaintiff and other service members the opportunity to seek, under AFI 48-110, a medical exemption based on their natural immunity.

225.     The Court should hold unlawful and set aside the Mandates, because they are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and without observance of procedure required by law.

226.     Defendants have violated Plaintiff's rights under the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and provide Plaintiffs with the following relief:

1.  a declaratory judgment that the Mandates violate Plaintiff's rights under the First Amendment to the United States Constitution;

2.  a declaratory judgment that the Mandates violate Plaintiff's rights under the Religious Freedom Restoration Act;

3.  a declaratory judgment that the Mandates violate Plaintiff's rights under the Administrative Procedure Act;

4.  a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting in concert with them from enforcing the Mandates challenged in this Complaint and directing such other and further relief as requested in the motion for temporary restraining order and preliminary injunction filed concurrently herewith;

5.  an order declaring unlawful and setting aside the Mandates challenged in this Complaint;

6.   actual damages in the amount of pay and benefits Plaintiff will lose as a result of
     Defendants' discriminatory vaccine policies under the Religious Freedom Restoration
     Act;

7.   nominal damages against Defendants in their individual capacities for the violation of
     Plaintiffs' rights under the Religious Freedom Restoration Act;

8.   Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this
     action pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412; and

9.   all other and further relief to which Plaintiff may be entitled.

Dated: January 6, 2022

Respectfully submitted,

/s/ Michael R. Hirsh
Michael R. Hirsh, GA #357220

Thomas Brejcha*                                      Hirsh Law Office, LLC
THOMAS MORE SOCIETY – President & Chief Counsel      2295 Towne Lake Parkway
309 W. Washington St., Ste. 1250                     Suite 116-181
Chicago, IL 60606                                    Woodstock, GA 30189
(312)782-1680                                        (678)653-9907
tbrejcha@thomasmoresociety.org                       michael@hirsh.law

Stephen Crampton*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Adam S. Hochschild*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Michael McHale*
THOMAS MORE SOCIETY – Counsel
20374 Magnolia Rd.
Crescent, IA 51526
(712)545-9433
mmchale@thomasmoresociety.org

*application for pro hac vice admission forthcoming

*Counsel for Plaintiff Air Force Officer*