## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **AIR FORCE OFFICER**, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **LLOYD J. AUSTIN**, **III**, individually and in his | ) | |
| official capacity as Secretary of Defense; | ) | |
| **FRANK KENDALL**, **III**, individually and in his | ) | |
| official capacity as Secretary of the Air Force; and | ) | |
| **ROBERT I. MILLER**, individually and in his | ) | |
| official capacity as Surgeon General of the | ) | |
| Air Force, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Not so long ago, the notion of a federal COVID-19 vaccine mandate was widely considered to be a conspiracy theory.[1]  Many disregarded religious and other objections to such mandates as unnecessary because the government would never issue such mandates.[2]  President Biden said of the COVID-19 vaccine, "I don't think it should be mandatory.  I wouldn't demand it to be mandatory."[3]  President Biden's press secretary said that vaccine mandates were "not the role of the federal government."[4]  Dr. Anthony Fauci said, "You don't want to mandate and try and force anyone to take the vaccine.  We've never done that."[5]

Well, now they've done it.  Defendants' military vaccine mandates[6] apply to all service members, and the federal employee mandates[7] apply to all federal civilian employees.  Plaintiff

---

[1] *See*, *e.g.* Andrea Michelson and Anna Medaris Miller, *8 coronavirus vaccine myths debunked, from microchipping to DNA changes*, BUSINESS INSIDER (Dec. 23, 2020), https://www.businessinsider.com/8-coronavirus-vaccine-myths-debunked-from-microchipping-to-mandates-2020-12 ("4. The federal government can't make you take the vaccine"); Madeline Peltz, *The definitive guide to Fox News' vaccine conspiracy theories*, MEDIA MATTERS (Sept. 14, 2020), https://www.mediamatters.org/coronavirus-covid-19/definitive-guide-fox-news-vaccine-conspiracy-theories ("vaccine-related conspiracy theories… claim Democrats want to force Americans to get a vaccine if one becomes available.").
[2] *See id.*; *Fact check: No evidence the U.S. government will force vaccinations on the public* (Oct. 6, 2020), REUTERS, https://www.reuters.com/article/uk-factcheck-us-government-force-vaccina/fact-checkno-evidence-the-u-s-government-will-force-vaccinationson-the-public-idUSKBN26R2F7; Adam K. Raymond, *Here's What a Mandatory COVID-19 Vaccine Means*, SPECTRUM NEWS (Oct. 15, 2020), https://spectrumnews1.com/ky/louisville/news/2020/10/15/what-a-covid-19-vaccine-mandate-would-look-like- ("Baseless rumors suggest that a COVID-19 vaccine may be forced on people. It won't be…. [G]overnment officials and experts say there is simply no possibility of forced vaccinations.").
[3] Jacob Jarvis, *Fact Check: Did Joe Biden Reject Idea of Mandatory Vaccines in December 2020?*, NEWSWEEK (Sept. 10, 2021), https://www.newsweek.com/fact-check-joe-biden-no-vaccines-mandatory-december-2020-1627774 ("The Ruling… True").
[4] *Id.*
[5] *See* https://www.c-span.org/video/?474957-1/dr-fauci-warns-residual-effects-coronavirus# (Aug. 19, 2020; 18:00-18:20).
[6] Department of Defense's August 24, 2021 Order; Department of Air Force's September 3, 2021 Order; Department of Air Force's September 21, 201 Order.
[7] President Biden's September 9, 2021 Executive Order 14043; Department of Defense's October 1, 2021 Order; and Department of Air Force's October 8, 2021 Order.

is both a military and civilian employee.

Defendants pay lip service to religious accommodations, even conceding such objections, including Plaintiff's, are based on sincerely held religious beliefs.  But Defendants deny service members' religious accommodation requests—all of them—in conclusory fashion and in violation of the Religious Freedom Restoration Act and the First Amendment.  Defendants cannot seriously claim they are even trying to comply with those laws.  They must show they are using the least restrictive means of furthering a compelling governmental interest, with respect to Plaintiff in particular.  They cannot show the requisite compelling interest, and their means are far from the least restrictive.

Plaintiff even developed natural immunity from having recovered from a past COVID-19 infection—she tested positive for COVID-19 antibodies in January 2021 and again in December 2021—and is willing and able to work remotely, to continue to submit to regular testing, and to otherwise comply with Defendants' orders short of violating her religious beliefs.  This further demonstrates Defendants are not employing the least restrictive means.

Natural immunity is also critically relevant under the Administrative Procedure Act.  Despite binding Air Force policy recognizing that natural immunity is a valid basis for medical exemption from vaccination, the mandates explicitly deny such exemptions.  By contradicting existing Air Force policy, the mandates are arbitrary and capricious under the Administrative Procedure Act and therefore unlawful.

Ignoring Plaintiff's rights, Defendants issued a final denial of Plaintiff's October 2021 request for religious accommodation and forced her to choose between taking the vaccine, separation, and early retirement.  She chose, under protest and at great personal cost, early retirement.

Defendants' vaccine mandates were, until recently, a supposed conspiracy theory for good reason: they are unprecedented and unlawful.  At least one district court has now enjoined the military mandates, as to 35 Navy service members including SEALs.  *Navy SEALs v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022).  This Court should enjoin Defendants' vaccine mandates, because they deny religious accommodations effectively without exemption and are inconsistent with binding Air Force authority. At the very least, the Court should temporarily restrain and preliminarily enjoin Defendants from denying Plaintiff's requests for religious accommodation, from forcing her to retire or separate from the military, and from taking any other adverse action against her based on her unvaccinated status or religious beliefs.

## I.    LEGAL STANDARD

A preliminary injunction is appropriate where, as here, a plaintiff establishes that (1) she has a substantial likelihood of success on the merits of her claims, (2) irreparable injury will result absent injunctive relief, (3) the harms to plaintiff in the absence of an injunction outweigh the harms to the defendant as a result of an injunction; and (4) the injunction would serve the public interest. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). "When the state is a party, the third and fourth considerations are largely the same." *Id.* The standard for a temporary restraining order is identical to that for a preliminary injunction. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

## II.   ARGUMENT[8]

### A.    Plaintiff is likely to succeed on the merits of her claims that the Mandates violate RFRA and the First Amendment.

As detailed below, the military and federal employee mandates at issue (collectively, the

---

[8] A Statement of Fact, pursuant to Local Rule 7.1, is set forth in the Motion.  Those facts are incorporated herein.

"Mandates") violate the Religious Freedom Restoration Act ("RFRA") and the First

Amendment, for similar reasons.  Strict scrutiny applies under RFRA because the Mandates

substantially burden Plaintiff's sincere religious objection to the vaccines and likewise applies

under the First Amendment because the Mandates treat non-religious medical accommodation

requests and clinical-trial participation more favorably than religious accommodation requests.

The Mandates fail strict scrutiny because (1) they are not narrowly tailored to serve a compelling

governmental interest, and (2) there are less restrictive means to serve any compelling interest

Defendants may have, given Plaintiff's natural immunity—resistance developed naturally in the

body resulting from prior infection—and willingness to abide by the same protocols as medically

exempt clinical-trial-participant service members.

> **1.      The Mandates impose a substantial burden on Plaintiff's sincerely held religious beliefs and therefore are subject to strict scrutiny under RFRA.**

Congress enacted RFRA, 42 U.S. Code § 2000bb *et seq.*, "to provide very broad

protection for religious liberty," going "far beyond what [the Supreme Court] has held is

constitutionally required" under the First Amendment. *Burwell v. Hobby Lobby Stores*, 573 U.S.

682, 693, 706 (2014). RFRA prohibits the government from placing a "substantial burden on a

person's exercise of religion even if the burden results from a rule of general applicability."

*Hobby Lobby*, 573 U.S. at 695. Under RFRA, when the government substantially burdens a

person's exercise of religion, "that person is entitled to an exemption from the rule unless the

Government 'demonstrates that application of the burden to the person – (1) is in furtherance of a

compelling governmental interest; and (2) is the least restrictive means of furthering that

compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000bb-1(b)).

Here, Plaintiff has a sincere religious belief that prohibits her from submitting to an injection of any of the presently available COVID-19 vaccines, and her belief is substantially burdened by the past, present, and future penalties the Mandates impose on her for refusing to do so. Both Plaintiff's belief and the burdens the Mandates place on her belief easily satisfy RFRA's standard for a statute to trigger strict scrutiny.

> a. **Plaintiff and other service members have sincere religious objections to submitting to the injection of any of the COVID-19 vaccines.**

Plaintiff has a sincere religious objection to being injected with any of the presently available COVID-19 vaccines. Plaintiff's Declaration ("Decl."), ¶¶ 18-23. No one questions, and indeed courts may not question, the reasonableness of Plaintiff's sincerely held religious belief. *See* Decl., ¶ 29; Ex. 13 to Decl. (Air Force Lieutenant General denying Plaintiff's accommodation while telling her, "I do not doubt the sincerity of your beliefs"); *Hobby Lobby*, 573 U.S. at 724-25; *Thomas v. Review Bd.*, 450 U.S. 707, 715 (1981); *see also Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1876 (2021) (in the Free Exercise context, citing *Thomas*). Many other service members assert religious objections to receiving the COVID-19 vaccines. Decl. ¶¶ 30, 34.  The reasonableness of their objections similarly may not be questioned by the Air Force or by reviewing courts. *See Fulton*, 141 S.Ct. at 1876; *Hobby Lobby*, 573 U.S. at 724-25; *Thomas*, 450 U.S. at 715.

> b. **The Mandates substantially burden the sincere religious beliefs of Plaintiff and other service members.**

A government action imposes a substantial burden on religious belief when it puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas*, 450 U.S. at 718 (1981); *Singh v. McHugh*, 109 F.Supp.3d 72, 87 (D.D.C. 2016) (holding that elements of the Army's grooming and uniform policies substantially burdened the religious

beliefs of an aspiring cadet). The Supreme Court has recognized that substantial pressure exists where the government requires "abandoning one of the precepts of [one's] religion in order to accept work." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). This is precisely the condition Defendants have imposed on Plaintiff.

The pressure on Plaintiff to submit to a vaccine in violation of her beliefs is monumental. Following the final denial of her accommodation application, the Mandates imposed on Plaintiff the choices to (1) take the vaccine, (2) take early retirement, or (3) refuse vaccination in writing and face punishment and involuntary reassignment to the IRR without pay, benefits, or regular responsibilities. Having chosen the *least costly* of those three options, Plaintiff faces the loss of hard-earned benefits of a lengthy career with the Air Force, her current compensation, and much of the compensation she would earn in the remainder of career, on which she had planned to rely during retirement. Decl. ¶ 36-37, 43. Moreover, pending a final denial, Plaintiff suffered, and other religious objectors continue to suffer, preliminary consequences of refusing to vaccinate, including disqualification from important responsibilities. Decl. ¶ 27.

Less dire consequences than these have been held to "substantially burden" religious belief. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (finding that threat of "serious disciplinary action" as a result of exercise of religion "easily satisfies" standard for substantial burden); *Hobby Lobby*, 573 U.S. at 720 (finding substantial fines to businesses are a "substantial burden"); *Sherbert*, 374 U.S. at 404 (finding "substantial burden" imposed by decision refusing plaintiff unemployment compensation); *Singh*, 109 F.Supp.3d at 87 (finding exclusion from ROTC a "substantial burden"). The burdens imposed on Plaintiff as a result of her refusal to receive a vaccination are therefore more than sufficiently "substantial" to require the Air Force to establish that its denial of an accommodation satisfies strict scrutiny.

Moreover, the burden on all applicants for religious accommodation is similarly substantial, because they all face ultimate imposition of one of the penalties among which Plaintiff had to choose. Decl. ¶ 36.  Although the Mandates identify a process for applying for a religious accommodation, enforcement of the Mandates within the Air Force and military-wide demonstrates that no religious accommodation is actually available. Decl. ¶¶ 30, 34-35.  Zero religious accommodations have been granted, either initially or after appeal, throughout the entire armed forces. *Id.* By contrast, thousands of accommodations have been granted for medical reasons and thousands more for administrative reasons.  Decl. ¶ 31, 34.  Because the Mandates therefore substantially burden religious practice "effectively without exception," they facially violate RFRA. *See United States v. Friday*, 525 F.3d 938, 951 (10th Cir. 2008) (finding a "form of facial challenge" in the claim that "the [challenged] prohibition . . . is effectively without exception, despite the substantial burden this would place on religious practices") (cited in *Navy SEAL 1 v. Biden*, 2021 WL 5448970, at *12 (M.D. Fla. Nov. 22, 2021) ("Although the vaccination requirement contains a religious exemption, the contention that the vaccine requirement is 'effectively without exception' constitutes a 'form of a facial challenge' under *Friday*.")).

RFRA is explicit that Defendants' Mandates may not substantially burden religious beliefs, of Plaintiff or of all service members, unless Defendants can show that refusing religious accommodations to the Mandates passes strict scrutiny. 42 U.S.C. § 2000bb-1(b).

> **2. The Mandates are not generally applicable, so they are subject to strict scrutiny under the First Amendment.**

The Mandates are also subject to strict scrutiny under the First Amendment. The Supreme Court has held that the First Amendment is not offended by government action that is both neutral toward religion and generally applicable. *Employment Division v. Smith*, 494 U.S. 872,

879-81 (1990). Lacking either of those features, a government action that burdens religious exercise must satisfy strict scrutiny. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-32 (1993).

The Supreme Court recently affirmed that a law is not generally applicable if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S.Ct. at 1877 (citing *Lukumi*, 508 U.S. at 524-28). In *Lukumi*, a law that purported to protect public health was not generally applicable because it prohibited certain practices for worship while leaving unregulated the same conduct for other purposes. *See Lukumi* 508 U.S. at 543-45; *see also Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021) ("government regulations are not neutral and generally applicable . . .whenever they treat any comparable secular activity more favorably than religious exercise"); *accord Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68 (2020). The Mandates operate in precisely this disparate way by allowing service members to refuse vaccination for medical reasons while disallowing service members from refusing for religious reasons.

A service member with any reason for seeking an accommodation to the vaccine mandate poses a "similar hazard" to Defendants' interest in limiting the spread of COVID-19 in the armed forces. *Fulton*, 141 S.Ct. at 1877 (citing *Lukumi*, 508 U.S. at 544-45).[9] As Justice Gorsuch observed, "allowing a . . . worker to remain unvaccinated undermines the State's asserted public health goals equally whether that worker happens to remain unvaccinated for religious reasons or medical ones." *Dr. A.*, 142 S.Ct. at 556 (Gorsuch, J., dissenting from the denial of application for

---

[9] As Justice Gorsuch pointed out recently in his dissent from denial of injunctive relief in *Dr. A. v. Hochul*, 142 S.Ct. 552 (2021), for the purpose of determining general applicability, the relevant comparison is between a single "individual seeking a religious exemption and one benefiting from a secular exemption." *Id.* at 556 (citing *Tandon*, 141 S.Ct. at 1296-97). "Laws operate on individuals; rights belong to individuals." *Id.*

injunctive relief). If the Air Force accepts that risk from people who seek accommodation for secular reasons but not from people with religious reasons, the Mandates are not "generally applicable" and must undergo strict scrutiny under *Fulton* and *Lukumi*.

Moreover, the Supreme Court in *Fulton* cited its earlier decisions in *Employment Division v. Smith* and *Sherbert v. Verner*, which, together, held that, where a law includes a system of individualized accommodations based on particular circumstances, the government may not refuse to grant accommodations on the basis of religious hardship. *Fulton*, 141 S.Ct. at 1877; *see also Tandon*, 141 S.Ct. at 1297 (holding that the government "cannot 'assume the worst when people [exercise religion] but assume the best when people [engage in secular activities]'" (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020)). Defendants invite service members to apply for accommodations on the basis of individualized situations, including religious belief.  Decl. ¶ 26, Exhibits 1-6, 8-9.  But Defendants have enforced the Mandates according to a policy or practice of denying all applications for religious accommodation while granting accommodation based on medical and other circumstances. Decl. ¶¶ 30-35.  A mandate to which commanding officers grant accommodation for other reasons but not on the basis of religious belief is simply not generally applicable. *Fulton*, 141 S.Ct. at 1877; *see also Tandon*, 141 S.Ct. at 1297; *Thoms v. Maricopa Cty. Cmty. Coll. Dist.*, 2021 WL 5162538, at *9 (D. Ariz. Nov. 5, 2021) (applying *Fulton,* finding "[t]hese [secular] exceptions do not further Defendant's interests in the Policy, and instead undermine them in a similar manner as a religious exception would"); *Navy SEALs*, 2022 WL 34443 at *11.

3.    **The Mandates fail strict scrutiny under RFRA and the First Amendment.**

Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). To justify denying accommodations on the basis of religious

belief, Defendants must show the denials are narrowly tailored to serve a compelling governmental interest. *Diocese of Brooklyn*, 141 S.Ct. at 67; *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 429 (2006). Defendants cannot meet this burden.

###### a. Defendants are unlikely to establish that the Mandates are supported by a compelling governmental interest.

To establish a compelling interest sufficient to satisfy strict scrutiny, Defendants may not rely on general or "broadly formulated" interests, even during a pandemic. Instead, RFRA and the First Amendment require that Defendants establish a compelling interest in denying an accommodation to "**particular** religious claimants." *Navy SEALs*, 2022 WL 34443 at *10 (emphasis added) (quoting *Hobby Lobby*, 573 U.S. at 726-27). *See also Fulton*, 141 S. Ct. at 1881; *O Centro*, 546 U.S. at 430–432; *Holt*, 574 U.S. at 362-63; *Davila v. Gladden*, 777 F.3d 1198, 1206 (11th Cir. 2015); *Singh*, 109 F.Supp.3d at 88. As the Eleventh Circuit held, "officials cannot simply utter the magic words 'security and costs' and as a result receive unlimited deference . . . ." *Davila*, 777 F.3d at 1206 (citing *O Centro*, 546 U.S. at 438). In *Davila*, the Eleventh Circuit listed a multitude of situation-specific evidence that could have helped its evaluation of compelling interest, such as historical incidents that justify the interest asserted and evidence of the effectiveness of other measures serving the same interest. *Id.* Here, Defendants' denial letters have included nothing more than terse assertions that accommodating Plaintiff would undermine "health," "safety," "unit cohesion," and "readiness." Decl. ¶ 29, Exs. 13-14. This set of interests that are implicated by every vaccination in a service member is insufficient to establish a compelling interest in denying Plaintiff *in particular* a religious accommodation. *Navy SEALs*, 2022 WL 34443 at *10-11*; Hobby Lobby*, 573 U.S. at 726-27.

Plaintiff's individual circumstances make it impossible for Defendants to establish a compelling interest in denying a religious accommodation to her, in particular. Plaintiff has

antibodies from having recovered from past COVID-19 infection. Decl. ¶¶ 14-16.  Such antibodies are associated with strong immunity from infection, at least as strong as any immunity conferred by the vaccine; the Air Force's own regulations and the government's HHS/CMS regulation both recognize the strength and durability of natural immunity.  Decl. ¶ 25, Ex. 6 (AFI 48-110); 86 Fed. Reg. at 61,604. *See also Missouri v. Biden*, No. 4:21-CV-01329-MTS, 2021 WL 5564501, at *8 n.20 (E.D. Mo. Nov. 29, 2021) (there is "a trove of scientific data on the strength and durability of natural immunity from COVID-19—alone and compared to vaccine-induced immunity");[10] *Texas v. Becerra*, 2021 WL 5964687, at *13 (N.D. Tex. Dec. 15, 2021) (condemning federal agency for dismissing natural immunity as an "illegitimate measure of infection control"); *Jones v. Washington*, No. 2:21-CV-12375, 2021 WL 6063626, at *1 (E.D. Mich. Dec. 22, 2021) ("Plaintiff recovered from COVID-19…. He therefore has a natural immunity.").[11]  Even if Defendants have a broad compelling interest in widespread immunity, Plaintiff is naturally immune.  Decl. ¶¶ 14-16, 25; *Navy SEALs*, 2022 WL 34443 at *10.[12]

Further, Plaintiff's position is not one that would be tasked to deploy or that engages physical military operations. Decl. ¶ 6.  Though some of her managerial duties may at times be facilitated by physical proximity to her colleagues, she has a history of working successfully

---

[10] *See*, *e.g.*, natural immunity studies at
https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1;
https://www.medrxiv.org/content/10.1101/2021.12.04.21267114v1.

[11] Dr. Fauci too recognizes the strength of natural immunity.  *See*, *e.g.*, *Fauci says population immunity is "entirely conceivable" once enough people get vaccinated or recovered from COVID* (Dec. 22, 2021), CBS News, https://www.cbsnews.com/news/fauci-covid-omicron-variant-herd-immunity-vaccine-infection/) ("We are hoping when we get through this Omicron wave that we will have enough people vaccinated and/or **having been infected and recovered well** that there will be a degree of immunity in the community such as that you don't have a situation where it is dominating your life") (emphasis added).

[12] Natural immunity aside, more than 95% of the Air Force has been vaccinated (Decl. ¶ 33); the remaining small percentage of unvaccinated service members is unlikely to undermine Defendants' efforts.  *Navy SEALs*, 2022 WL 34443 at *10.

with her team during times of the strictest of COVID-19 restrictions.  Decl. ¶¶ 8, 13.  She is willing to continue to perform her work at the highest level while taking safety precautions for herself and others, such as testing, masking, social distancing, and working remotely as appropriate. Decl. ¶ 39.

Indeed, measures aimed at reducing transmission of COVID-19 must presumably remain in place whether or not Plaintiff becomes vaccinated, because of the continued presence in the military of unvaccinated individuals who have qualified for other accommodations, such as medical accommodation or clinical-trial participation.  The continued exercise of such other measures is significant for several reasons.

First, having deemed such precautions sufficient to protect service members from possible infection by colleagues who have medical accommodations or who participate in clinical trials, Defendants are committed to the position that such accommodations are sufficient for those with religious convictions opposing vaccination. *See Tandon*, 141 S. Ct. at 1296 ("Where government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.").  As the District Court of the Northern District of Texas recently held, the clinical-trial exemption, for example, renders vaccine mandates fatally underinclusive:

> The Navy is willing to grant exemptions for non-religious reasons. Its mandate includes carveouts for those participating in clinical trials and those with medical contraindications and allergies to vaccines…. Because these categories of exempt servicemembers are still deployable, a clinical trial participant who receives a placebo may find himself ill in the high-stakes situation that Defendants fear…. As a result, the mandate is underinclusive.

*Navy SEALs*, 2022 WL 34443, at *10.

Second, the continued exercise of safety measures to protect the unvaccinated for medical or other reasons means that accommodating Plaintiff as an unvaccinated service member would not require any special accommodations, which further undermines any "compelling" interest. Decl. ¶¶ 39-41.  Defendants cannot credibly claim a compelling interest that Plaintiff in particular must receive the vaccine where such an act will not appreciably improve the safety or performance of any service members, and preserving the status quo will impose little or no marginal costs on Defendants.

Third, Defendants have undermined any claim that they have a compelling interest in Plaintiff's vaccination status by currently allowing her to continue to work at the base, in person, through the effective date of her forced retirement, which is in the spring of 2022.[13]  Decl. ¶ 40. Having planned for the unvaccinated plaintiff to work in person for several more months, Defendants cannot credibly claim they have a compelling interest in her being vaccinated now.

Fourth, Defendants' delay in imposing a vaccine mandate belies any claim of a compelling interest in universal vaccination or in the vaccination of Plaintiff in particular. Vaccines have been available for nearly a year, and the Office of Legal Counsel of the Department of Justice formally advised in July that public entities could impose vaccination requirements involving those vaccines. U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip op.),

---

[13] The Air Force issued its final denial of Plaintiff's military accommodation request in December 2021.  Decl. ¶ 29; Ex. 14. The Air Force may issue its denial of Plaintiff's civilian request any day now, and that denial would be deemed final.  Decl. ¶ 44.  Plaintiff faces the added risks and uncertainties surrounding the civilian request, because the impact of a denial of the civilian request is unclear, including whether she will be separated immediately or whether the terms of her forced early retirement in the spring of 2022 will apply.  Decl. ¶¶ 44-45.

https://www.justice.gov/olc/file/1415446/download. During the period since vaccines have become available, the immunity of service members, like that of the general population, will presumably have increased with the rise of vaccination rates and infection rates (see 86 Fed. Reg. at 61,604), making the interest in vaccination actually weaker. Having sat on their hands throughout that period, Defendants cannot seriously contend that their interest in acting now is "compelling." *See, e.g.*, *Cont'l Servs. v. Cavazos*, 709 F.Supp. 1443, 1453 (S.D. Ind. 1989) ("substantial delay of over a year" had undermined "assertion of a compelling interest"), *aff'd in part, rev'd in part*, 893 F.2d 877 (7th Cir. 1990).

Moreover, given Defendants' apparent denial of all religious accommodations, Defendants cannot establish a compelling interest such as would be necessary to defeat Plaintiff's facial challenge to Defendants' imposition of the Mandates "effectively without exception" for religious belief. *See Navy Seal 1*, 2021 WL 5448970, at *12. By granting thousands of accommodations for medical and other reasons and providing a blanket exemption for clinical trial participants, Defendants have conceded that whatever interest the Mandates serve yields to a slate of other interests. "[I]t is difficult to see how accommodating plaintiff's religious exercise would do greater damage to the…. compelling interests in uniformity, discipline, credibility, unit cohesion, and training than the [] thousands of medical [accommodations]… already granted." *Singh*, 109 F.Supp.3d at 225. Since religious accommodations are no more burdensome than other, granted accommodations, Defendants' interest in denying them cannot be adequately compelling to justify burdening religious exercise. *Fulton*, 141 S.Ct. at 1882 ("The City offers no compelling reason why it has a particular interest in denying an exception to CSS while making them available to others."). Put another way,

where the government's interest in enforcing a law yields to *any* interest, it must also yield to the interest of religious liberty. *Id.*

> **b.**    **Defendants are unlikely to establish that the Mandates are the least restrictive means of achieving any interest.**

Even if Defendants somehow established a compelling interest, they cannot establish that the Mandates are the "least restrictive means" they could have employed to serve it. The "least-restrictive-means standard is exceptionally demanding" in that it requires the government to show "it lacks other means of achieving its desired goal." *Hobby Lobby*, 573 U.S. at 728. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881. Under this standard Defendants must "show that measures less restrictive of the First Amendment activity could not address [their] interest" in reducing the spread of COVID-19. *Tandon*, 141 S. Ct. at 1296-1297.  Defendants must demonstrate that the Mandates—with their allowable medical, administrative, and clinical-trial exemptions—are the least restrictive means of pursuing their interests. That requires demonstrating why other paths to the same goal are inferior, which Defendants cannot do. *Texas*, 2021 WL 5964687 at *13 (requiring more to demonstrate testing was an insufficient substitute for vaccines than "conclusory supposition that a 'vaccination is a more effective infection control measure'").

First, Plaintiff has successfully and with distinction performed her duties, for decades before and then throughout the pandemic, including while vaccines have been available and while obtaining natural immunity.  Decl., ¶¶ 9-11, 14-16, 40-41. Defendants made no attempt to explain why she cannot continue to fulfill her duties in many of the ways implemented during the height of the pandemic.  Decl. ¶ 29, Exs. 13-14.

Second, Defendants cannot show why Plaintiff's work cannot be accommodated with the use of distancing measures, remote work, masking, hygiene requirements, and regular testing, while those with medical, administrative, or clinical-trial accommodations can work safely with such measures in place. Decl., ¶¶ 40-42.

Third, vaccinating someone with natural immunity, like Plaintiff, is not a necessary means of minimizing risk of infection. *See* 86 Fed. Reg. at 61,604 (the vaccinated and those who "have recovered from infection… are no longer sources of future infections"); *see also Missouri*, WL 5564501, at *8 n.20; *Texas,* 2021 WL 5964687, at *13; *Jones*, 2021 WL 6063626, at *1.

Fourth, Defendants must show and cannot show that separating thousands of religious objectors better serves the Defendants' interests than accommodating (naturally immune) Plaintiff and other unvaccinated service members.  The negative impact on the military of losing thousands of service members would be profound.  Plaintiff alone represents decades of institutional knowledge.  Given her years of service and seniority, the military would likely lose of some of her most productive years of service.  Defendants' blanket denial of religious accommodations does not consider the damage to unit cohesion, readiness, safety, morale,[14] and other interests that each candidate's separation poses.[15] Blanket denial is not narrowly tailored,

---

[14] Indeed, the Mandates have lowered morale for Plaintiff and many of her colleagues, by forcing them to choose between (undisputedly) sincerely held religious beliefs, on the one hand, and their livelihood, on the other.  Decl. ¶ 47.

[15] Altogether tens of thousands of military service members remained unvaccinated. https://www.military.com/daily-news/2021/12/25/us-navy-warship-sidelined-covid-19-outbreak.html. This does not include those who have submitted to pressure and taken the vaccine in violation of their sincerely held religious beliefs, which may number in the thousands in the Air Force alone.  *Compare* https://www.af.mil/News/Article-Display/Article/2831845/daf-covid-19-statistics-dec-21-2021/ (Air Force statistics showing10,719 religious accommodation requests "in progress" as of December 21, 2021) *with* https://www.af.mil/News/Article-Display/Article/2831845/daf-covid-19-statistics-jan-4-2022/ (Air Force statistics showing 4,037 "pending" or "disapproved" religious accommodation requests as of January 4, 2022).

Fifth, it is by no means settled that the vaccinations Defendants mandate actually do add to the safety and readiness of the service members. For example, the military recently admitted that a Navy ship, with a 100%-vaccinated crew, is stranded at Guantanamo Bay due to a COVID-19 outbreak.[16]  Defendant Secretary Austin recently admitted that he had contracted COVID-19 and is subject to quarantine protocols, despite being fully vaccinated.[17] Clearly, the vaccine did not prevent infection or assure readiness in these instances.

Sixth, the means by which other jurisdictions and entities have pursued the same or similar interests further demonstrate Defendants' means are not the least restrictive. *See, e.g.*, *Holt*, 574 U.S. at 368-69  ("That so many other prisons allow inmates to grow beards while ensuring prison safety and security suggests that the Department could satisfy its security concerns through a means less restrictive than denying petitioner the exemption he seeks."); *McCullen v. Coakley*, 573 U.S. 464, 495 (2014) (government must "show[] that it considered different methods that other jurisdictions have found effective"); *Diocese of Brooklyn*, 141 S.Ct. at 67 (New York's church closure rules failed strict scrutiny in part because they were "far more restrictive than any COVID-related regulations that have previously come before the Court, much tighter than those adopted by many other jurisdictions hard-hit by the pandemic, and far more severe than has been shown to be required to prevent the spread of the virus at the applicants' services."); *see also Dahl v. Bd. of Trustees of W. Michigan Univ.*, 2021 WL 3891620 at *2 (6th Cir. 2021) (student athlete vaccine mandate not narrowly tailored where "several other universities grant exemptions from their COVID-19 [vaccine] mandates").

---

[16] https://www.navy.mil/Press-Office/Press-Releases/display-pressreleases/Article/2883595/uss-milwaukee-remains-in-port-as-sailors-test-positive-for-covid-19/

[17] https://www.defense.gov/News/Releases/Release/Article/2886520/statement-by-secretary-of-defense-lloyd-j-austin-iii-on-covid-status/

Defendants' policy of denying *all* religious accommodation requests without any individualized approach is vastly out of step with policies in the rest of the country, including in the countless workplaces across the country that currently provide religious accommodations. Indeed, the federal Occupational Safety and Health Administration (OSHA) mandate specifically permits testing as an alternative to taking the vaccine.  86 Fed. Reg. 61,402.  Yet, Defendants flatly refuse to permit testing (or anything else) as an accommodation for religious objections. Their outlier status strongly indicates that Defendants have not chosen the least restrictive mean to protect their interests.

> **B.**    **Plaintiff is likely to succeed on the merits of her claim that the Mandates violate the APA.**

The Mandates violate the Administrative Procedure Act ("APA"). Under the APA, a court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D). An agency action is arbitrary and capricious if it violates the agency's own regulations. *Missouri*, 2021 WL 5564501 at *8. As the Eastern District of Missouri held, the medical-employee COVID-19 vaccine mandate, which prohibited exemption for natural immunity, was arbitrary and capricious because (among other reasons) the mandate violated HHS/CMS's own regulation, 86 Fed. Reg. at 61,604, which recognizes natural immunity.  *Id.*  (See also § II.A.3 above.)

The Mandates here are likewise arbitrary and capricious because they violated the military's own regulation, AFI 48-110, which recognizes natural immunity as a basis for exemption from a vaccine mandate ("[g]eneral examples of medical exemptions include… [E]vidence of immunity based on serologic tests, documented infection, or similar circumstances").  Decl. ¶ 25, Ex. 7.  Specifically, Defendant Secretary Kendall's September 3,

18

2021 Order, for example, states, "Individuals with previous COVID-19 infection or positive serology are not considered vaccinated and are not exempt."  Decl. ¶ 24, Ex. 2.  The other Mandates also deny any opportunity to request a medical exemption based on natural immunity. Decl. ¶ 24, Exs. 1, 5, 6.

The Mandates thus violate AFI 48-110.  All Air Force Instructions (AFIs) are mandatory. *See*, *e.g.*, *U.S. v. Adcock*, 65 M.J. 18, 24 n.6 (C.A.A.F. 2007) (noting that U.S. government acknowledges that "all Air Force Instructions are mandatory"). With their Mandates, Defendants wrongfully denied Plaintiff and other service members the opportunity to seek, under AFI 48-110, a medical exemption based on their natural immunity.  Accordingly, the Mandates and Defendants' enforcement of them are arbitrary and capricious and otherwise violate the APA. *Missouri*, 2021 WL 5564501 at *8.

### C.   Plaintiff has established the remaining factors necessary to warrant emergency relief.

#### 1.   The Mandates cause irreparable harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Diocese of Brooklyn*, 141 S.Ct. at 67 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Hobby Lobby*, 723 F.3d 1114, 1146 (10th Cir. 2013) ("[E]stablishing a likely RFRA violation satisfies the irreparable harm factor."); *see also Dahl*, 2021 WL 4618519 at *6; *Scott*, 612 F.3d at 1297 ("[W]e have held that 'even a temporary infringement of First Amendment rights constitutes a serious and substantial injury.'") (citation omitted). Therefore, RFRA and First Amendment violations inflict damage on Plaintiff and all religious objectors to the Mandates that is per se irreparable.

Moreover, forced retirement or separation also irreparably injures a service member's career. Decl., ¶ 26, Ex. 9. Each day that goes by without relief raises the pressure on thousands of

service members to violate their religious beliefs, including by means of penalties pending review of their accommodation requests. *Id.* Plaintiff and other applicants for accommodation have already incurred the irreparable injury of being denied significant career opportunities (*id.*) and, for Plaintiff and others with final denials, being forced to separate from the Air Force. This Court can and should enjoin enforcement of the Mandates pending further judicial review to prevent further irreversible harm to Plaintiff and the thousands of others who are or may soon be in her situation.

> **2.      The public interest and balance of harms weigh in favor of an injunction.**

"Proper application of the Constitution . . . serves the public interest [because] it is always in the public interest to prevent a violation of a party's constitutional rights." *Dahl*, 2021 WL 4618519, at *6; *see also Scott*, 612 F.3d at 1297 ("the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law") (citations omitted). Moreover, any supposed harm to Defendants from the imposition of an injunction pales in comparison to the Constitutional and other harms imposed on Plaintiff and other service members without one. An injunction would simply preserve the status quo that applied for many months. Having waited until many months after vaccines were available to impose the Mandates, and having taken, in some cases, many months to rule on (that is, flatly and uniformly deny) religious accommodation requests, Defendants cannot argue that their interest in applying it to every service member is urgent.

## III.   CONCLUSION

For the foregoing reasons, this Court should immediately issue a temporary restraining order and/or preliminary injunction.

Dated: January 6, 2022

Respectfully submitted,

/s/ Michael R. Hirsh

Thomas Brejcha*
THOMAS MORE SOCIETY – President & Chief Counsel
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312)782-1680
tbrejcha@thomasmoresociety.org

Stephen Crampton*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Adam S. Hochschild*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Michael McHale*
THOMAS MORE SOCIETY – Counsel
20374 Magnolia Rd.
Crescent, IA 51526
(712)545-9433
mmchale@thomasmoresociety.org

*application for pro hac vice admission forthcoming

Michael R. Hirsh, Georgia Bar #357220
Hirsh Law Office, LLC
2295 Towne Lake Parkway
Suite 116-181
Woodstock, GA 30189
(678)653-9907
michael@hirsh.law

*Counsel for Plaintiff Air Force Officer*