# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA, MACON DIVISION

| | |
|---|---|
| **AIR FORCE OFFICER,** | ) |
| | ) |
| *Plaintiff*, | )   Case No.: |
| | ) 5-22-cv-0009-TES |
| v. | ) |
| | ) |
| **LLOYD J. AUSTIN, III,** individually | ) |
| and in his official capacity, as Secretary | ) |
| of Defense; **FRANK KENDALL, III,** | ) |
| individually and in his official capacity | ) |
| as Secretary of the Air Force; and | ) |
| **ROBERT I. MILLER,** individually | ) |
| and in his official capacity as Surgeon | ) |
| General of the Air Force, | ) |
| | ) |
| *Defendants*. | ) |

## MOTION FOR LEAVE TO FILE BRIEF AND
## BRIEF *AMICUS CURIAE* OF THE FOUNDATION
## FOR MORAL LAW, IN SUPPORT OF PLAINTIFFS
_____

JOHN EIDSMOE                          JORDAN ALEX JOHNSON
TALMADGE BUTTS                        Jessica Swords Burton
FOUNDATION FOR MORAL LAW              COUNSEL OF RECORD
One Dexter Avenue
Montgomery AL 36104
(334) 262-245
eidsmoeja@juno.com
Counsel for Amicus Curiae

1

**MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE* FOUNDATION FOR MORAL LAW IN SUPPORT OF PLAINTIFFS**

**COMES NOW** *Amicus* Foundation for Moral Law, a 501(c)(3) nonprofit corporation located in Montgomery, Alabama, dedicated to religious liberty and to the strict construction of the Constitution as intended by its Framers, and hereby respectfully moves that this Court grant *Amicus* permission to file an *amicus* brief in support of Plaintiff Air Force Officer.

*Amicus* believes this brief will be helpful to the Court in deciding this case because of the Foundation's dedication to religious liberty and because the brief's primary author, Foundation Senior Counsel John Eidsmoe, is a retired U.S. Air Force Judge Advocate and Professor of Constitutional Law at the Oak Brook College of Law and Government Policy.

The brief explores Air Force directives pertaining to religious liberty, Air Force and Navy policies concerning vaccination, religious vs. secular medical and administrative exemption practices, the Religious Freedom Restoration Act, case law concerning religious liberty, the constitutional rights of military personnel in light of the need for military discipline, the applicability of the *Jacobson v. Massachusetts* precedent, and the January 3  decision of the U.S. District Court for the Northern District of Texas in the *Navy SEALs v. Biden.*

**WHEREFORE** *Amicus* respectfully moves and requests this Court's permission to file this brief.

Respectfully submitted,

Jordan Alex Johnson


Jessica Swords Burton

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

INTEREST OF THE AMICUS .........................................................................1

ARGUMENT ...................................................................................................1

    I.    The Constitution, including the First Amendment, clearly applies to
        military personnel ..................................................................................1

    II.   Religious exemption requests should be liberally construed in favor
        of the persons making the requests ........................................................5

    III.  Offering exemptions but categorically denying them is bad faith..........................8

    IV.  The Air Force has no compelling interest in requiring Plaintiffs to
        submit to the COVID-19 vaccinations....................................................10

    V.   *Jacobson v. Massachusetts,* 197 U.S. 11 (1905), does not support
        Defendants' position..............................................................................13

    VI.  *U.S. Navy SEALs v. Biden* deserves this Court's consideration.............................14

    VII.  The *Sambrano v. United Airlines* ruling is easily distinguished
        from the present case ...........................................................................16

CONCLUSION...............................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Rumsfeld,*
   389 F.Supp.2d 579 (2005) ..........................................................................3

*BST Holdings, LLC v. Occupational Safety & Health Admin,*
   17 F.4th 604 (5th Cir. 2021) ....................................................................16

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014)....................................................................................6

*Carlson v. Schlesinger,*
   511F. 2d 1327 (D.C. Cir. 1975) ..................................................................3

*Chappell v. Wallace,*
   462 U.S. 296 (1983)....................................................................................3

*Gateway City Church v. Newsom,*
   141 S.Ct. 1460 (2021)...............................................................................14

*Greer v. Spock,*
   424 U.S. 828 (1976)....................................................................................3

*Jacobson v. Massachusetts,*
   197 U.S. 11 (1905)............................................................................ *passim*

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania,*
   140 S.Ct. 2367,  (2020)...............................................................................6

*United States v. Macintosh,*
   283 U.S. 605 (1931)....................................................................................8

*Prince v. Massachusetts,*
   321 U.S. 158 (1944)..................................................................................13

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
   141 S.Ct. 63 (2020)..................................................................................14

*Sambrano v. United Airlines,*
   No. 4:21-cv-1074-P (November 8, 2021) .......................................... 16-17

*South Bay United Pentecostal Church v.  Newsom,*
   141 S.Ct. 716 (2021)................................................................................14

*Stanley v. Illinois,*
    405 U.S. 645 (1972) ................................................................................12

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) (per curiam) .......................................................15

*Thomas v. Review Board*,
    450 U.S. 707 (1980) ..............................................................................5-6

*United States v. Ballard*,
    322 U.S. 78 (1944) ...................................................................................5

*U.S. Navy SEALs v. Biden,*
    Civil Action No. 4:21-cv-01236-O,
    Order on Preliminary Injunction, January 3, 2022 .............................. 14-15

*Whole Woman's Health v. Paxton*,
    10 F.4th 430 (5th Cir. 2021) ....................................................................7

**Statutes**

Religious Freedom Restoration Act of 1993, Public Law No. 103-141, 107
Stat. 1488, 42 U.S.C. § 2000bb .............................................................4, 11

**Other Authorities**

DAF (Department of the Air Force) COVID-19 Statistics -- Jan. 24, 2022,
published January 25, 2022 by Secretary of the Air Force Public Affairs,
https://www.af.mil/News/Article-Display/Article/2831845/daf-covid-19-statistics-
jan-25-2022/ .............................................................................................4, 9

Department of the Air Force Instruction 52-201 ..................................................4

DODI 1300.17.........................................................................................4

Executive Order 13798, May 4, 2017 ...............................................................3

Frontline Doctors *Amicus* Brief filed December 30, 2021, in *In Re: MCP No. 165,
Occupational Safety and Health Administration,* U.S. Supreme Court Case No.
21A243 ....................................................................................................10

*Holy Bible,* Genesis 2:7, 9:1-7; Exodus 20:13; Exodus 21:22-25; Leviticus 24:17;
Deuteronomy 23:18; Jeremiah 32:35; Matthew 27:1-10; Acts 15:20, 39 & 21:25;
Romans 13:1-7, 14:23; I Corinthians 6:19-20; Revelation 13 ..............................7

https://academic.oup.com/jlb/article/7/1/lsaa058/5878809 ................................................7

https://catholic-factchecking.com/2021/07/vaccine-exemption-resource-for-individuals/...........................................................................................................7

https://federalnewsnetwork.com/defense-main/2021/...("The Marine  Corps has not granted any religious exemptions", November 30,2021) ................................................9

https://news.usni.org/2021/11/01/navy-approves...("Navy        Approves       Five Permanent Medical, No Religious...") ...................................................................................9

https://www.defenseone.com/threats/2021/11/zero-religious-exemptions-granted-covid-vaccines-air-force-deadline-passes/186601/ ("Zero Religious Exemptions Granted for COVID Vaccines in Air Force, As Deadline Passes: Nearly 5,000 religious exemptions are still pending approval," November 3, 2021) ..............................9

https://www.lifenews.com/2021/12/10/biden-ignores-federal-law-denies   ("Biden Ignores Federal Law, Denies 17,000 Requests for Religious Exemptions to COVID Vaccine Mandate", December 10, 2021) ..............................................................9

https://www.msn.com/en-us/news/us/air-force-discharges-27-service-members-in-first-apparent-dismissals-over-vaccine-refusal/ar-AARNRji?ocid=uxbndlbing ("Air Force discharges 27 service members in first apparent dismissals over vaccine refusal" Dec 14, 2021) ..............................................................................9

https://www.navytimes.com › your-navy › 2021/12/02 ("The Navy hasn't approved any religious exemptions for sailors" December 2, 2021)..................................9

SECNAVINST 1730.8B ....................................................................................4

*Study: COVID recovery gave Israelis longer-lasting Delta defense than vaccines;* Nathan    Jeffay,    *The    Times    of    Israel,*    September    2,    2021, https://www.timesofisrael.com/study-covid-recovery-gave-israelis-longer-lasting-delta-defense-than-vaccines/............................................................................11

## INTEREST OF THE *AMICUS*[1]

The Foundation for Moral Law ("Foundation") is a 501(c)(3) non-profit, non-partisan organization dedicated to religious liberty and to the strict interpretation of the Constitution as intended by its Framers.  The Foundation is especially concerned about religious freedom for military personnel.  The founder of the Foundation, Judge Roy Moore, is a graduate of the U.S. Military Academy and a Vietnam veteran.  The Foundation's Senior Counsel and primary author of this brief, John Eidsmoe, served twenty-three years as a U.S. Air Force Judge Advocate retiring at the rank of Lt. Colonel, and subsequently served as a Chaplain with the Mississippi State Guard, retiring at the rank of Colonel (MS).  He is also Professor of Constitutional Law with the Oak Brook College of Law and Government Policy.

The Foundation has received more requests for assistance on the issue of religious exemptions from COVID vaccination requirements than on any other issue since we were founded in 2004.  Within the last six months, most of these requests have come from military personnel and/or civilian employees of the military.  These include a guardsman who has served nineteen years with an unblemished record and is now uncertain whether he will be allowed to retire, cadets and midshipmen at military academies who are uncertain whether they will be allowed to graduate, a military academy instructor who may not be allowed to retire in lieu of court-martial even though he has given outstanding service for well over twenty years, and many others who serve in the Air Force, Army,

---

[1] No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund its preparation or submission; and no person other than the *amicus curiae,* its members, or its counsel, contributed money that was intended to fund the preparation or submission of this brief.

Navy, Marines, Coast Guard, and various guard and reserve units.  These fine patriotic personnel desire nothing but to serve their country honorably, but now they and their families face career disruption, loss of salary and benefits, disciplinary action, disparagement of their reputations, and untold emotional distress.

The Foundation believes these and countless other military personnel should not have to sacrifice their careers because of a religious conviction that in no way prevents them from being good soldiers and sailors.  The Foundation further believes the United States military and the people of the United States should not lose the services of such outstanding military personnel.

## ARGUMENT

The Foundation fully supports the arguments of the Plaintiff in her Complaint and will not duplicate those arguments.  Rather, the Foundation raises the following points:

**I.    The Constitution, including the First Amendment, clearly applies to military personnel.**

The courts have never given any credence to the notion that soldiers and sailors give up their constitutional rights when they join the military.  Rather, the courts have recognized that military personnel who swear and oath to support and defend the Constitution of the United States are entitled to the protection the Constitution provides to all.

Servicemen and women are entitled to protection of free speech and free exercise of religion under the First Amendment, which states,

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or

2

the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Servicemen and women are also entitled to exercise these rights; they are not stripped away when they serve in the United States military.  "The military enclave is kept free of partisan influence, but individual servicemen are not isolated from participation as citizens in our democratic process." *Greer v. Spock,* 424 U.S. 828, (1976).  As the Supreme Court unanimously stated, "Our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes." *Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983) (quoting Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 188 [1962]).  See also, *Adkins v. Rumsfeld,* 389 F.Supp.2d 579 (2005); *Carlson v. Schlesinger*, 511F. 2d 1327 (D.C. Cir. 1975). The First Amendment applies to all servicemen and servicewomen without exception.

Furthermore, On May 4, 2017, the President of the United States issued Executive Order 13798, "Promoting Free Speech and Religious Liberty," which states in part:

> *Section 1. Policy*. It shall be the policy of the executive branch to vigorously enforce Federal law's robust protections for religious freedom. The Founders envisioned a Nation in which religious voices and views were integral to a vibrant public square, and in which religious people and institutions were free to practice their faith without fear of discrimination or retaliation by the Federal Government. For that reason, the United States Constitution enshrines and protects the fundamental right to religious liberty as Americans' first freedom. Federal law protects the freedom of Americans and their organizations to exercise religion and participate fully in civic life without undue interference by the Federal Government. The executive branch will honor and enforce those protections.
> *Sec. 2. Respecting Religious and Political Speech*. All executive departments and agencies (agencies) shall, to the greatest extent practicable and to the extent permitted by law, respect and protect the

3

freedom of persons and organizations to engage in religious and political speech.

"All executive departments and agencies" clearly includes the Department of Defense.

In keeping with the President's Executive Order, on 23 June 2021 the Secretary of the Air Force issued Department of the Air Force Instruction 52-201, "Religious Freedom in the Department of the Air Force," with the boldface statement at the top of the Instruction, **"COMPLIANCE WITH THIS PUBLICATION IS MANDATORY."** The Instruction states, "It is Department of the Air Force (DAF) policy to place a high value on the rights of Airmen and Guardians to observe the tenets of their religions. ..." (1,1).  The Instruction continues,

> 2.3.  The Department of the Air Force will approve a member's request for religious accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, health or safety.
> 2.4.  Commanders will approve the religious accommodation request unless a compelling governmental interest exists for the policy, practice, or duty from which the member is seeking religious accommodation. (T-0).  Any restriction on the expression of sincerely held religious beliefs must use the least restrictive means with respect to the applicant to achieve the compelling governmental interest.  (T-0).  Using the least restrictive means necessary may include partial approval, approval with specified conditions, or other means that are less burdensome  on the member's religious beliefs.  With the advice of a chaplain, alternative ways (i.e., partial approval) to satisfy the requested accommodation can also be considered.
> Also, the Religious Freedom Restoration Act of 1993, Public Law No. 103-141,

107 Stat. 1488, 42 U.S.C. § 2000bb, applies to the Department of Defense (see DODI 1300.17 and SECNAVINST 1730.8B) and provides that government may not substantially burden one's free exercise of religion without a compelling interest that cannot be achieved by less restrictive means.

4

## II.   Religious exemption requests should be liberally construed in favor of the persons making the requests.

A government official may not refuse to honor a person's religious beliefs and practices simply because he disagrees with them, finds them unpersuasive, or even finds them inconsistent and therefore indefensible.   Rather, government officials and courts may consider whether or not beliefs are religious and sincere.   As the Supreme Court said in *United States v. Ballard*, 322 U.S. 78 at 87 (1944), a case involving a man convicted of mail fraud because he claimed to be in communication with angels,

> Men may believe what they cannot prove.  They may not be put to the proof of their religious doctrines or beliefs.  Religious experiences which are as real as life to some may be incomprehensible to others.  Yet the fact that they may be beyond the ken of mere mortals does not mean they can be made suspect before the law.

Nor must one's religious beliefs be part of the official doctrine of a church or shared by all members of a denomination.  As the Court said in *Thomas v. Review Board*, 450 U.S. 707 at 715-16 (1980),

> In reaching its conclusion, the Indiana court seems to have placed considerable reliance on the facts that Thomas was "struggling" with his beliefs and that he was not able to "articulate" his belief precisely. It noted, for example, that Thomas admitted before the referee that he would not object to "working for United States Steel or Inland Steel . . . produc[ing] the raw product necessary for the production of any kind of tank . . . [because I] would not be a direct party to whoever they shipped it to [and] would not be . . . chargeable in . . . conscience. . . ." Ind., 391 N.E.2d, at 1131.
>
> The court found this position inconsistent with Thomas' stated opposition to participation in the production of armaments. But Thomas' statements reveal no more than that he found work in the roll foundry sufficiently insulated from producing weapons of war. We see, therefore, that Thomas drew a line, and it is not for us to say that the line he drew was an unreasonable one. Courts should not undertake to dissect religious beliefs because the believer admits that he is "struggling" with his position or

5

> because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.
>
> The Indiana court also appears to have given significant weight to the fact that another Jehovah's Witness had no scruples about working on tank turrets; for that other Witness, at least, such work was "scripturally" acceptable. Intrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses. One can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause; but that is not the case here, and the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.

The *Thomas* Court further stated, citing *Sherbert v. Verner,* 374 U.S. 398 (1963), that forcing a person into a "Hobson's choice" dilemma of having to either (1) compromise a sincerely-held religious belief or (2) give up a substantial government benefit, is a Free Exercise violation.  See also *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.A. 682, 724, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014), recognizing religious liberty exemption rights rooted in sincerely held religious beliefs, as well as First Amendment-anchored analysis within *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 207 L.Ed.2d 819 (2020), recognizing the propriety of, if not also the need for, a religious exemption to federal healthcare-regulating statutes.

Religious beliefs raised by persons who have sought assistance from *Amicus* Foundation include the following:

(1) That the body is the temple of the Holy Spirit and therefore should not be defiled with an experimental drug that could be dangerous.  Some Roman Catholic

6

theologians have articulated an ethical position called "therapeutic proportionality" which means that because the human body is God's creation (Genesis 2:7) and the temple of the Holy Spirit (1st Corinthians 6:19-20), a person has a duty to God to weigh the possible benefits of medicine against possible risks and adverse consequences, and to refuse medical treatment if risks and adverse consequences outweigh the benefits.   See https://catholic-factchecking.com/2021/07/vaccine-exemption-resource-for-individuals/; https://academic.oup.com/jlb/article/7/1/lsaa058/5878809.

(2)  That some COVID vaccines are made from, or were developed from, cells or cell lines from aborted human fetuses, and taking the vaccine makes the recipient an accessory to abortion, which many believe to be against God's laws. *See Whole Woman's Health v. Paxton*, 10 F.4th 430 (5th Cir. 2021), illustrating tragic aspects of abortion. Thus, those servicemen and servicewomen who sincerely hold pro-life Bible-based beliefs that abortion is wrong and sinful (*see* Genesis 9:1-7; Exodus 21:22-25; Acts 15:20,29 & 21:25; etc. – see also, accord, Romans 14:23; Matthew 27:1-10; Exodus 20:13; Leviticus 24:17; Deuteronomy 23:18; Jeremiah 32:35; etc.), should be exempted from being required or coërced to accept any such COVID-19 vaccines.

(3)  That when the COVID-19 vaccine is imposed so strongly that a vaccination passport or the equivalent becomes necessary for being allowed to fly, enter stores, obtain food or other necessities, or participate in public events, it becomes what some believe is the "mark of the beast" of Revelation 13 (or that it serves as a prototype thereof, such that accepting it is aiding and abetting the anticipated Revelation 13's "mark of the beast").

(4)  That God has established civil government and has given civil government certain limited authority (Romans 13:1-7), but that when government exceeds its God-

given (i.e., legitimate) authority, it becomes tyrannical, and the individual has a duty before God to resist the unlawful mandates of a tyrannical government.

Plaintiffs' religious exemption requests should be construed liberally in their favor; the First Amendment protects not just belief, but "free exercise" of religion. Whether one agrees with them or not, Plaintiff's beliefs are religious and she sincerely holds them. *Res ipsa loquitur;* the thing speaks for itself. The very fact that Plaintiff is willing to jeopardize her livelihood, her reputation, and a career that she loves because of their beliefs, is of itself proof of her sincerity. As the Supreme Court recognized in *United States v. Macintosh,* 283 U.S. 605,633-634 (1931):

> ...in the forum of conscience, duty to a moral power higher than the state has always been maintained. The reservation of that supreme obligation, as a matter of principle, would unquestionably be made by many of our conscientious and law-abiding citizens.
> ...
> The battle for religious liberty has been fought and won with respect to religious beliefs and practices, which are not in conflict with good order, upon the very ground of the supremacy of conscience within its proper field. What that field is, under our system of government, presents in part a question of constitutional law, and also, in part, one of legislative policy in avoiding unnecessary clashes with the dictates of conscience.

### III.   Offering exemptions but categorically denying them is bad faith.

As Plaintiffs have alleged in paragraphs 44 and 45 (pages 7-8) of their Complaint, the Navy and other branches of the armed forces have established forms and policies for the granting of religious exemptions from the vaccination requirement. However, as Plaintiffs state in paragraph 96 (page 17) of their Complaint, "No Plaintiff has received an approved religious accommodation request, and they are unaware of any similarly

situated Service Member who has."  Likewise, the Foundation for Moral Law is unaware of any service member who has been granted a religious exemption.[2]

It is wrong to deny exemptions to those who have sincere religious objections to vaccination.  But to offer religious exemptions and create forms and procedures to apply for and process exemption requests, and then routinely deny all exemption requests, is more than wrong, it is duplicitous and evidence of bad faith.

Defendants may take the position that they cannot grant any exemptions because of military necessity.  However, as Plaintiff has observed in Paragraph 198 (page 25) of her Complaint, and as *Amicus* has demonstrated above, Defendants have granted medical exemptions from the vaccination.  In fact, as of January 24, 2022, the Air Force has granted a total of 1,570 medical exemptions, 2,211 administrative exemptions, and zero (0) religious exemptions (2,683 religious accommodation requests have been disapproved and 2,119 are pending; 282 appeals have been disapproved, and 222 are pending; none have been granted),[3] There appears to be no reason the military must deny religious exemptions but may grant medical exemptions.  There appears to be no reason why

---

[2] *See* https://federalnewsnetwork.com/defense-main/2021/...("The Marine  Corps has not granted any religious exemptions", November 30,2021); https://www.navytimes › your-navy › 2021/12/02 ("The Navy hasn't approved any religious exemptions for sailors" December 2, 2021); https://www.defenseone.com/threats/2021/11/zero-religious-exemptions-granted-covid-vaccines-air-force-deadline-passes/186601/ ("Zero Religious Exemptions Granted for COVID Vaccines in Air Force, As Deadline Passes: Nearly 5,000 religious exemptions are still pending approval," November 3, 2021); https://news.usni.org/2021/11/01/navy-approves...("Navy Approves Five Permanent Medical, No Religious..."); https://www.lifenews.com/2021/12/10/biden-ignores-federal-law-denies  ("Biden Ignores Federal Law, Denies 17,000 Requests for Religious Exemptions to COVID Vaccine Mandate", December 10, 2021); https://www.msn.com/en-us/news/us/air-force-discharges-27-service-members-in-first-apparent-dismissals-over-vaccine-refusal/ar-AARNRji?ocid=uxbndlbing ("Air Force discharges 27 service members in first apparent dismissals over vaccine refusal" Dec 14, 2021).
[3] DAF (Department of the Air Force) COVID-19 Statistics -- Jan. 24, 2022, published January 25, 2022 by Secretary of the Air Force Public Affairs, https://www.af.mil/News/Article-Display/Article/2831845/daf-covid-19-statistics-jan-25-2022/

granting religious exemptions would pose a danger to the overall health and fitness of military personnel, but granting medical and administrative exemptions would pose no such danger.

By granting medical exemptions, Defendants have in effect forfeited any argument that they must deny all exemptions for the health and safety of military personnel.

### IV. The Air Force has no compelling interest in requiring Plaintiff to submit to the COVID-19 vaccinations.

*Amicus* defers to the arguments presented and evidence cited by Plaintiff in Paragraph 34 (p. 5) and other portions of her Complaint. *Amicus* also invites the Court's attention to the *amicus* brief filed by Frontline Doctors in *In Re: MCP No. 165, Occupational Safety and Health Administration,* U.S. Supreme Court Case No. 21A243, filed December 30, 2021, in which Frontline Doctors provide voluminous evidence that the vaccines at most reduce the symptoms of COVID.

The evidence presented by Frontline Doctors cited above demonstrates that those who have not been vaccinated are, at most, a threat only to themselves and not to anyone else. For that reason, the interest of the Air Force in forcing all personnel to be vaccinated is far less than compelling.

The evidence presented by Plaintiff cited above demonstrates that, because she has tested positive for antibodies, she is not a threat to anyone. An Israeli study of 46,036 persons by the Maccabi Healthcare Service found that those who tested positive for

antibodies were twenty-seven times less likely to contract COVID than persons who had received two injections of the Pfizer vaccine.[4]

Although the military has utilized vaccinations in the past, none has involved the complex and controversial medical, scientific, religious, sociological, and religious issues triggered by the COVID-19 vaccine.  None has involved such serious and divisive questions as to the vaccine's origin, its effectiveness, or its likelihood to produce adverse reactions, and none has engendered the serious religious and other objections that have arisen from the COVID vaccines.

Moreover, even if a compelling interest was shown, under the Religious Freedom Restoration Act the burden is on Defendants to prove that less restrictive means (e.g., masking) would not fulfill that compelling interest.  Less restrictive means are definitely available:

(1)  The Air Force could exempt those who have tested positive for antibodies. While this would not solve the problem for everyone, it would solve the problem for Plaintiff, who has tested positive for antibodies (Complaint paras. 57-61, p. 8).

(2)  The Air Force could allow those who are not vaccinated to wear masks and/or be tested periodically.

(3)  The Air Force could limit the vaccine requirement to those whose AFSCs require them to deploy or who otherwise might have need of the vaccine, and not apply the requirement to those who are not subject to deployment.  This would not help

---

[4] *Study: COVID recovery gave Israelis longer-lasting Delta defense than vaccines;* Nathan Jeffay, *The Times of Israel,* September 2, 2021, https://www.timesofisrael.com/study-covid-recovery-gave-israelis-longer-lasting-delta-defense-than-vaccines/

11

everyone, but it would help some including Plaintiff and therefore constitutes a less restrictive means.

(4) A combination of these less restrictive means, or other means, may be employed, and the burden is on the Air Force to demonstrate that these less restrictive means would not achieve the compelling interest.

*Stanley v. Illinois,* 405 U.S. 645 (1972), requires that fundamental rights are at stake, government must make an individualized determination before infringing a person's fundamental rights.[5]   The Air Force has made no individualized determinations concerning religious exemptions from the vaccination requirement.   Had individualized determinations taken place, out of more than 4,000 exemption requests, at least one would have been granted.   But the Air Force has granted exactly zero (0) religious exemptions.   This leads to the likely conclusion that evaluators simply rubber-stamped the applications with the word "Denied" (possibly because they were instructed to do so) rather than giving any of the applications objective individualized consideration.

As noted earlier, the Air Force might respond that military necessity requires universal vaccination and can allow for no exceptions.   But the Air Force has forfeited that argument by granting 1,570 medical exemptions and 2,211 administrative exemptions.   The Air Force has utterly failed to demonstrate any reason, let alone a compelling reason, to suggest that military necessity allows medical and administrative

---

[5] *Stanley* involved the father of an illegitimate child whose parental rights had been terminated without notice because Illinois law conclusively presumed that the father of an illegitimate child was unfit.  The Supreme Court held that, although some such fathers are unfit, not all are unfit, and Stanley was therefore entitled to an individualized determination as to whether he was unfit.

exemptions but not religious exemptions.  Absent any such demonstration, the Air Force policy must give way to an Air Force officer's constitutional rights.

**V.**  ***Jacobson v. Massachusetts,*** **197 U.S. 11 (1905), does not support Defendants' position.**

Defendants may rely upon *Jacobson v Massachusetts* to support their authority to require vaccination.  However, the juristic logic of *Jacobson* does not support their position, for the following reasons:

(1)    *Jacobson* involved a state law that empowered health departments to compel vaccinations to prevent the spread of smallpox, based on the State's inherent police power.  However, under constitutional federalism, the federal government does not have such a police power.

(2)    Mr. Jacobson simply argued that the law violated his right to decline vaccination; he did not raise a religious objection to vaccination.[6]  Plaintiffs herein raise First Amendment-protected rights that were not raised in *Jacobson,* so *Jacobson* is thus distinguishable beyond relevance herein.

(3)    *Jacobson* did restrict state authority to regulate in ways that are "beyond all question, a plain, palpable invasion of rights secured by the fundamental law," e.g., constitutional guarantees in our Bill of Rights.

_____

[6] A subsequent case, *Prince v. Massachusetts,* 321 U.S. 158 (1944), said that "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."  But that was dicta, not holding.  *Prince* involved a Jehovah's Witness who had her child with her while preaching in public, and no issue of disease or epidemic was present in the case.  And as the Court expressly said in *Prince,* "Our ruling does not extend beyond the facts the case presents."

(4)     *Jacobson* was a 1905 case, decided before the courts developed the "strict scrutiny" doctrine that government can infringe fundamental rights only by demonstrating a compelling state interest that cannot be achieved by less restrictive means, and before the enactment of RFRA.

Furthermore, in three recent decisions the Supreme Court has upheld religious liberty against state COVID restrictions:  *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, 141 S.Ct. 63 (2020) (note concurring opinion by Gorsuch, J., re application of Jacobson); *South Bay United Pentecostal Church v.  Newsom*, 592 U.S.___, 141 S.Ct. 716 (2021); *Gateway City Church v. Newsom*, ___ U.S. ___, 141 S.Ct. 1460 (2021). Though these cases don't address vaccination, the Court clarified that our basic civil liberties, especially our religious liberties, are not suspended during a pandemic.

## VI.  *U.S. NAVY SEALs v. Biden* deserves this Court's consideration.

On January 3, 2022, the United States District Court for the Northern District of Texas issued a preliminary injunction enjoining the Navy from forcing a group of Navy SEALS and other Navy personnel to undergo vaccination and enjoining the Navy from taking any adverse actions against them.[7]  Like the present case, the Navy case also involved the denial of religious exemptions, and the District Court's citation of *Elrod v. Burns,* 427 U.S. 347, 373 (1976), "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" equally applies to other constitutional rights.

---

[7] *U.S. Navy SEALs v. Biden,* Civil Action No. 4:21-cv-01236-O, Order on Preliminary Injunction, January 3, 2022

The District Court observed:  "The Navy provides a religious accommodation process, but by all accounts, it is theater.  The Navy has not granted a religious exemption to any vaccine in recent memory.  It merely rubber stamps each denial."  (Order, p. 1).[8] The Court further stated, "There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution," citing George Washington's words carved into the marble of the memorial Amphitheater of Arlington National Cemetery, "When we assumed the Soldier, we did not lay aside the Citizen." (Order, p. 1).

The Court also observed that the Navy had refused to grant religious exemptions from the vaccination requirement but had rather freely granted medical exemptions from the requirement.   By granting medical exemptions, the Court said, the Navy had effectively forfeited the argument that military necessity prohibited the granting of religious exemptions.

> The mandate treats comparable secular activity (e.g., medical exemptions) more favorably than religious activity.  First, the Navy has granted *only* secular exemptions -- it has never granted a religious exemption from the vaccine.  Second, even if the Navy were to grant a religious exemption, that exemption would still receive less favorable treatment than its secular counterparts.   those who receive religious exemptions are medically disqualified.  Those who receive medical exemptions are not.  But the activity itself -- foregoing the vaccine -- is identical.   Given the irrationality of the mandate, "[i]t is unsurprising that such litigants are entitled to relief." *Tandon v. Newsom,* 141 S. Ct. 1294, 1298 (2021) (per curiam).

 Order, p. 14 (emphasis original).

The Court also noted that the Navy had achieved its goal of herd immunity, and the few with religious objections were "unlikely to undermine the Navy's efforts." (Order,

---

[8] The Court added on p. 7, "...the record indicates the denial of each request is predetermined.  As a result, Plaintiffs need not wait for the Navy to engage in an empty formality," meaning Plaintiffs need not exhaust administrative remedies.

p. 20).  "Moreover, the Navy is willing to grant exemptions for non-religious reasons. ,,,
As a result, the mandate is underinclusive.  'Indeed, underinclusiveness ... is often
regarded as a telltale sign that the government's interest in enacting a liberty-restraining
pronouncement is not in fact "compelling."'  *BST Holdings, LLC v. Occupational Safety
& Health Admin,* 17 F.4th 604, 616 (5th Cir. 2021),'"

The Foundation had filed an *amicus* brief in support of the Navy SEALs in this
case, and the Foundation respectfully invites this Court's attention to the January 3 ruling
in the SEALs case, which on all relevant points is very similar to this case.

## VII. The *Sambrano v. United Airlines* ruling is easily distinguished from the present case.

*Amicus* is aware that on November 8, 2021, Judge Mark L. Pittman of this District
recently denied a motion for preliminary injunction in *Sambrano v. United Airlines,* No.
4:21-cv-1074-P.  However, that case is far different from Plaintiff's case herein, for at
least the following reasons:

1.  This case involves a federal agency, the Department of Defense; *Sambano*
involved a nonpublic entity, United Airlines.

2.  Military authorities can threaten or punish resistance with orders which, if not
followed, can result in courts-martial and other forms of discipline.  United Airlines can
only threaten economic consequences.  Unique to the Government is power to use force.

3.  United Airlines had granted employees with religious objections the
accommodation of unpaid leave.  The issue was whether this was sufficient
accommodation.  Defendants in this case have not granted any accommodation at all.

16

4.   Because United Airlines had "only" placed employees on unpaid leave rather than firing them, the irreparable injury in *Sambrano* was far less than the irreparable injury in this case in which Plaintiff is faced with permanent discharge that could injure her reputation.  There is, therefore, in the instant case a much greater need to preserve the status quo by a preliminary injunction that will preserve Plaintiff's status until this matter has been fully adjudicated.

## CONCLUSION

With great discipline and at great sacrifice, Plaintiff Air Force Officer has pledged her life to the service of her country. And now the leadership of her country appears to be making war upon her, threatening her livelihood, her career, and her reputation, simply for obeying God in a land dedicated to religious liberty. And the Air Force appears to be making war upon its own regulation, "Religious Freedom in the Department of the Air Force."

In her defense, she places her trust the Constitution she has taken an oath to support and defend, and the courts who have the duty of enforcing the Constitution.

We pray the courts will not fail her in her hour of need.

This Court should grant Plaintiff prompt and comprehensive relief, including injunctive and declaratory relief.

February 2, A.D.2022.

Respectfully submitted,

John A. Eidsmoe
/s/   John A. Eidsmoe
Iowa Bar # 1002456
Senior Counsel, Foundation for Moral Law
One Dexter Avenue

17

Montgomery, AL 36104
334-262-1245 telephone
eidsmoeja@juno.com

## CERTIFICATE REGARDING SERVICE

I certify that on February 2, A.D. 2022, a true copy of this document is being filed

electronically (via CM/ECF) and will thereby be served on all counsel of record.

/s/ Jordan Alex Johnson
Local Counsel, Foundation for Moral Law
Georgia Bar Number 673643
5 Dunwoody Park, Suite 100
Atlanta, GA 30338
alex@justice.law

/s/ Jessica Swords Burton
Local Counsel, Foundation for Moral Law
Georgia Bar Number 196253
5 Dunwoody Park, Suite 100
Atlanta, GA 30338
Jessica@justicice.law