UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **AIR FORCE OFFICER**,                                )<br>                                                                          )<br>                    Plaintiff,                                 )<br>v.                                                                    )<br>                                                                          )<br>**LLOYD J. AUSTIN**, **III**, individually and in his  )<br>official capacity as Secretary of Defense;        )<br>**FRANK KENDALL**, **III**, individually and in his  )<br>official capacity as Secretary of the Air Force; and )<br>**ROBERT I. MILLER**, individually and in his      )<br>official capacity as Surgeon General of the         )<br>Air Force,                                                          )<br>                                                                          )<br>                    Defendants.                            ) | Case No. 5:22-cv-00009-TES |

### PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants ignore the recent, on-point order in *Navy Seals 1-26 v. Biden*, No. 4:21-cv-1236, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022), beyond a footnote simply stating they disagree with it. As in *Navy Seals 1-26*, if not more so, Defendants here fail to demonstrate that the substantial burden imposed on Plaintiff's exercise of religion is supported by a compelling interest using the least restrictive means.[1] For example, Defendants make no mention of—let alone deny—the fact that they offer a **blanket exemption for clinical-trial participants**, rendering their supposed compelling interest in vaccinating the entire Air Force unlawfully underinclusive. While claiming they "have a process to assess" religious accommodation requests, the process is a ruse; the Air Force has granted **zero** religious exemptions while

---

[1] Just this evening, in a similar case, the District Court in the Middle District of Florida issued an order enjoining the Navy from enforcing the Mandates against two religious objectors. *See* Order attached as <u>Exhibit A</u> entered in *Navy Seal 1 v. Biden*, No. 8:21-cv-02429 (M.D. Fla. Feb. 2, 2022).

granting more than 1,500 medical exemptions and an unspecified number of clinical-trial exemptions. For these reasons and others, Plaintiff is likely to prevail on the merits, the most important factor on a motion for preliminary injunctive relief.

Apparently realizing this, Defendants focus primarily on the second factor, irreparable harm. Defendants' argument fails as to this factor too. Loss of First Amendment (and RFRA) rights, even for a minimal period of time, constitutes irreparable harm. Defendants issued an unlawful, final denial of Plaintiff's claim for a religious exemption, forcing her to end her career rather than violate her conscience. This alone constitutes irreparable harm, and Plaintiff is suffering substantial ongoing harms besides.

The remaining factors—public interest and balance of harms—also weigh heavily in favor of an injunction. Proper application of the Constitution always serves the public interest and outweighs any supposed harm to Defendants. And given Defendants' sham religious accommodation process, the Court should find the Mandates[2] are facially unconstitutional and enjoin their enforcement as to all service members.

**A.    Plaintiff is likely to succeed on the merits.**

    **1.    Defendants fail to demonstrate that the Mandates serve a compelling interest using the least restrictive means (RFRA and First Amendment).**

Defendants' assertions of compelling interest and narrow tailoring fail on multiple levels—they entirely ignore the mandate's fatal underinclusivity, rely on legally insufficient generalized interests, and reject vaccine alternatives on specious grounds.

Congress enacted RFRA "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) . . . in all cases where

---

[2] Defendants acknowledge the federal civilian employee mandates are already subject to a nationwide injunction. Opp., 4 n.5. This Reply addresses the military mandates.

free exercise is substantially burdened." 42 U.S.C. § 2000bb(b)(1).[3] And that "compelling interest standard . . . is not watered down, but really means what it says." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (cleaned up). Critically here, when government "fails to . . . restrict other conduct producing . . . alleged harm of the same sort, the interest given in justification of the restriction is not compelling." *Id.* at 546-47.

Defendants offer no explanation for the <u>1,593 medical exemptions</u> currently extended to Plaintiff's fellow Air Force service members, though medically exempted service members apparently suffer no restrictions on assignment, deployment, or benefits such as those Defendants have imposed on *this Plaintiff* for remaining unvaccinated. Opp., 19-21; Air Force's certified exemption statistics, attached hereto as <u>Exhibit B</u>, filed January 21, 2022 in *Navy Seal 1 v. Biden*, No. 8:21-cv-02429 (M.D. Fla. Nov. 22, 2021), Dkt. 52-5. And as noted, Defendants have *entirely failed to acknowledge* the categorical exemption for service members in COVID-19 *clinical trials*, though "a clinical trial participant who receives a placebo may find himself ill in the high-stakes situation that Defendants fear." *Navy SEALs 1-26*, 2022 WL 34443, at *10 (N.D. Texas Jan. 3, 2022).[4]

---

[3] Defendants insinuate their mandate doesn't actually impose a substantial burden on Plaintiff's religious exercise, *see* Opp., 19, but they do not seriously contend that forced expulsion in the form of early retirement because of Plaintiff's unquestionably sincere religious beliefs is a substantial burden under RFRA.

[4] Instead of addressing the substance of Plaintiff's arguments, Defendants instead half-heartedly argue in a footnote that it's "unclear" whether an "individualized" challenge to a military requirement is justiciable under *Speigner v. Alexander*, 248 F.3d 1292, 1296-98 (11th Cir. 2001). (Oppo. Br. 19.) This despite the fact RFRA explicitly applies to any "branch, department, agency, instrumentality, and official . . . of the United States," 42 U.S.C. Sec. 2000bb-2(1); that RFRA's supporting House Report stated that "courts must review the claims of prisoners *and military personnel* under the compelling governmental interest test," *Singh v. McHugh*, 185 F.Supp.3d 201, 218-19 (D.D.C. 2016) (emphasis added) (quoting H.R. Rep. No. 103-88); and that the very text of RFRA contemplates "individualized" challenges by requiring government to demonstrate a compelling interest in applying its challenged rule "to the person," 42 U.S.C. Sec. 2000bb-1(b).

Defendants elsewhere note that medical exceptions are "temporary" (and they would presumably assert the same about clinical-trial exemptees). Opp.,7-8. But Defendants admit that such exemptees will be "reassess[ed]" and subject to vaccination only if "their condition is resolved." *Id.* 8. In other words, medical exemptions to vaccination are of indefinite duration. While remaining unvaccinated (and presumably for as long as they remain unvaccinated), "these categories of service members are still deployable," *Navy SEALs 1-26*, 2022 WL 34443, at *10, and ostensibly allowed to continue with normal in-person duties while exercising alternative precautions to vaccination. This is precisely the kind of "fail[ure] to . . . restrict alleged harm of the same sort" that reveals that Defendants' interest in compelling Plaintiff's vaccination "is not compelling." *Lukumi*, 508 U.S. at 546-47. As the Supreme Court put it last summer, these kinds of exemptions "undermine[] the [government's] contention that its [challenged] policies can brook *no* departures." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021) (emphasis added); *see also BST Holdings, LLC*, 17 F.4th at 616 ("Indeed, underinclusiveness . . . is often regarded as a telltale sign that the government's interest . . . is not in fact 'compelling.'").

Defendants repeatedly revert to a *generalized* interest in stopping the spread of COVID-19 in the military—nay, in stopping the spread of *any infectious disease* among service members. Opp., 19, 20, 23, etc. But even if stopping COVID-19 may still be a *general* compelling interest, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), when the government pursues that interest at the expense of religious exercise, "courts must scrutinize the harm of granting *specific* exemptions to *particular* religious claimants." *Fulton*, 141 S. Ct. at 1881 (emphasis added) (cleaned up).

Given their claimed insistence on limiting infection and the fact that they have granted zero religious exemptions, it would appear Defendants do not acknowledge their obligation to

4

distinguish each applicant's case from all others. As discussed in Plaintiff's opening brief, if they *did* consider Plaintiff's particularized circumstances, as RFRA and the First Amendment require, they would not be able to identify a compelling interest in her being vaccinated.

In response to Plaintiff's legal challenge, Defendants now assert that Plaintiff's particular in-person duties justify forced vaccination.[5] Opp., 20-21. But again, Defendants' demonstrated willingness to grant exemptions of indefinite duration to similarly situated Air Force members for *secular* reasons shows otherwise. Defendants do not and cannot explain why they have a compelling interest in Plaintiff being vaccinated when many (or any) of these others are not.

Additionally, Defendants say that the combination of telework, masking, social distancing, and even her current natural immunity are "*not as effective*" as vaccination and in-person work. Opp., 20, 22. Even if that were somehow true, it would not establish a compelling interest. The Supreme Court has stated that government cannot trample free exercise just to effect a somewhat better outcome: it "does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 803 n.9 (2011). Instead, "the curtailment of free [exercise] must be actually necessary to the solution." *Id*. at 799. Here, Defendants have not shown that vaccination is actually necessary by comparison to alternative measures.

---

[5] Until Defendants' filing late last night, February 1, 2022, Plaintiff had not seen and was not informed of the substance of Defendants' Exhibit 27, an email from her immediate supervisor to another officer dated November 23, 2021, purporting to detail the reasons for denial of her request for a religious exemption. In fact, she specifically noted in an email dated October 28, 2021 that she was required to prosecute her appeal of the denial without having even "the opportunity to see comments/recommendations made along the way." See Supplemental Declaration, ¶ 11 (filed under seal), and Exhibit 1 thereto (also filed under seal). This is further indication of the improper treatment of those exercising their First Amendment rights and that the religious exemption process is a ruse. *See infra.*

Defendants similarly suggest vaccine alternatives are insufficient because they "do[] not *eliminate* the risk of infection and disease complications." Opp., 23 (emphasis added). Again, alternatives do not have to be *perfect* solutions in order to be a suitable alternative that undercuts Defendants' assertedly compelling need to burden Plaintiff's right to free exercise. *See Brown*, 564 U.S. at 799-803. And Defendants do not deny the alternatives Plaintiff identifies and has used in her employment are *effective* at reducing risk.[6] At the same time, experts acknowledge the original COVID-19 vaccine regimen is increasingly *ineffective* at stopping COVID-19 transmission.[7] Regardless of effectiveness, however, because masking, social distancing, and other alternatives are available to service members exempted for secular reasons, Defendants simply lack a credible argument that they have a compelling interest in forcing Plaintiff to vaccinate rather than continue alternative measures.

Defendants also fail to show that forced vaccination or expulsion here satisfies narrow tailoring. "One need not be a public health expert to recognize [] the likelihood that a [service member] contracts COVID-19 from an unvaccinated [civilian] with whom [per the military's discretion] she lives, studies, works, exercises, socializes, or dines." *Dahl v. Bd. of Trustees of Western Michigan Univ.*, 15 F.4th 728, 735 (6th Cir. 2021). Thus, the fact Plaintiff is allowed to continue working and living around unvaccinated co-workers, friends, family, and otherwise, vitiates any semblance of compelling interest or narrow tailoring here. *See id.* at 734-35.

---

[6] CDC, COVID-19, *Types of Masks and Respirators – Summary of Recent Changes*, Jan 28, 2022 ( "Masks and respirators are effective at reducing transmission of SARS-CoV-2 . . . when worn consistently and correctly," and N95 masks "filter at least 95% of particles in the air"), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html.

[7] *See, e.g.*, Elie Dolgin, "Omicron thwarts some of the world's most-used COVID vaccines," Nature, Jan. 13, 2022, https://www.nature.com/articles/d41586-022-00079-6; CDC, COVID-19, *Omicron Variant: What You Need to Know* ("[A]nyone with Omicron infection can spread the virus to others, even if they are vaccinated.").

Defendants point to several cases in "non-military settings" saying mandatory vaccination can be a least restrictive means, Opp., 21, but they do not acknowledge *other* recent cases in non-military settings holding the opposite. *See, e.g.*, *Thoms v. Maricopa Cnty. Cmty. College Dist.*, No. 2:21-cv-01781-PHX-SPL, 2021 WL 5162538, at *10 (D. Ariz. Nov. 5, 2021) ("[I]f an accommodation is good enough for [medical] students with secular hardships such as illness or other issues, then the Constitution dictates, under these circumstances, that it is good enough for students with religious hardships."); *see also Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir. 2021) ("denying religious accommodations based on" non-neutral criteria "is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19"); *Dahl*, 15 F.4th at 734-36 (COVID vaccine mandate for student-athletes not narrowly tailored).

Where, as here, there is "no evidence that the [Plaintiff] has contributed to the spread of COVID-19" for many months by her exercise of alternative precautions, it's all the more clear Defendants cannot satisfy strict scrutiny. *Brooklyn Diocese*, 141 S. Ct. at 67; Supplemental Declaration, ¶¶ 9,10 (filed under seal).

**2.    The mandates are arbitrary and capricious (APA).**

Plaintiff is also likely to succeed on her APA claim. Defendants claim that COVID-19 is like the flu, and AFI 48-110 does not provide that natural immunity from COVID-19 triggers an "automatic" medical exemption. Opp., 27. As an initial matter, Defendants' comparison of the COVID-19 vaccine to the flu vaccine is telling. The flu is seasonal, and the flu vaccine is strain-specific,[8] while Defendants make no such claims about COVID-19. In any event, COVID-19 does not appear on the Instruction's list of mandatory vaccines (AFI 48-110, Table D-1), and Defendants also ignore the mandatory language of the Instruction that requires that "[h]ealth care

---

[8] https://www.cdc.gov/flu/prevent/vaccine-selection.htm.

providers **will** determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration." AFI 48-110, §2.6(a) (emphasis added). Defendants do not make this individualized assessment; rather, with their Mandates, Defendants flatly and undisputedly refuse to consider COVID-19 natural immunity under any circumstances for anyone, despite a growing body of science supporting its efficacy.[9] That is arbitrary and capricious under the APA.

**B.      Plaintiff is suffering irreparable harm.**

Defendants do not dispute that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Diocese of Brooklyn*, 141 S.Ct. at 67 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Hobby Lobby*, 723 F.3d 1114, 1146 (10th Cir. 2013), aff'd sub nom. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ("[E]stablishing a likely RFRA violation satisfies the irreparable harm factor.").

Defendants nevertheless make the bold and groundless claim that, even if their final denial of Plaintiff's religious exemption was unconstitutional, or even if the Mandates facially violate the Constitution by effectively omitting a religious exemption, Plaintiff has not suffered any "constitutional" injury. Despite being gradually stripped of her duties, benefits, and pay, and forced into early retirement for following her conscience, no "ongoing deprivation of First Amendment rights" will occur, according to Defendants, as long as they allow her to remain unvaccinated until the date of her final separation. Opp., 17.

---

[9] COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis — California and New York, May–November 2021, https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w (observing that "persons who survived a previous infection had *lower* case rates that persons who were vaccinated alone" by early October) (emphasis added).

Defendants' position is legally and factually untenable. Plaintiff is not free from irreparable constitutional harm unless and until she is forcibly injected. Her First Amendment rights have been continuously and increasingly trampled since the day the Mandates became effective—that is, long before Defendants issued her final denial. And Defendants cannot seriously dispute that her final denial constitutes irreparable harm.

"The crisis of conscience imposed by the mandate is itself an irreparable harm." *Navy SEALs 1-26*, 2022 WL 34443, at *13 (citing *BST Holdings*, 17 F.4th at 618, inter alia); *Navy Seal 1 v. Biden*, 2021 WL 5448970, *14 n.6 ("irreparable harm" can occur prior to final denial of exemption where a mandate imposes "targeted punishment for requesting an exemption"). The unconstitutional burden the Mandates imposed on sincere religious objectors began the moment they became effective in 2021, because that is when service members became subject to monumental, career-and-livelihood-threatening pressure to violate their religious beliefs. "[P]ressure on an adherent to modify his behavior and to violate his beliefs" is a completed "substantial burden" on religious belief sufficient to violate RFRA. *See*, *e.g.*, *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)); *Singh v. McHugh*, 185 F. Supp. 3d 201, 217 (D.D.C. 2016) (holding that a final denial of religious exemption constitutes a "substantial burden" under RFRA). Plaintiff and her fellow sincere religious objectors have therefore been suffering irreparable harm from the pressure to violate their consciences since the day the Mandates became effective, and most especially after the final denial.[10] While Plaintiff may have a claim for monetary damages (and she does), that is an insufficient remedy. Plaintiff is entitled to injunctive relief.

---

[10] Because she is an unvaccinated religious objector, to further coerce her to get vaccinated, Defendants are currently cutting off her military pay, denying her the right to apply for a permanent change of station (PCS), denied her at least one temporary duty assignment (TDY),

## C. The public interest and balance of harms weigh in favor of an injunction.

The vindication of First Amendment rights always serves the public interest and outweighs any supposed harm to Defendants. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). Defendants rely on *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008), but that case did not implicate constitutional rights. Even if the military were entitled to some deference, public interest and the balance of harms manifestly weigh in favor of an injunction. *See also Navy SEALs 1-26*, 2022 WL 34443, at *13 ("The Plaintiffs' loss of religious liberties outweighs any forthcoming harm to the Navy. Even the direst circumstances cannot justify the loss of constitutional rights. Fortunately, the future does not look so dire.").

## D. The Court should enjoin the Mandates as to all service members, not just Plaintiff.

In its discretion, the Court should issue a nationwide injunction. *See Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1408 (D.C. Cir. 1998) ("District courts enjoy broad discretion in awarding injunctive relief."). The Air Force does not and cannot dispute that it has granted **no** religious exemptions while granting more than 1,500 medical exemptions and an unspecified number of clinical-trial exemptions. The religious exemption process is a ruse. *Navy SEAL 1*, 2021 WL 5448970, at *12 ("Although the vaccination requirement contains a religious exemption, the contention that the vaccine requirement is 'effectively without exception' constitutes a 'form of a facial challenge' under *Friday*."); *U.S. v. Friday*, 525 F.3d 938, 951 (10th Cir. 2008). If Plaintiff—naturally immune, no comorbidities, never deployed, working in an administrative position, willing to mask, test, socially distance, and work remotely as appropriate—is not entitled to religious accommodation, it is difficult to imagine who would be.

---

and denying her the right to any military orders of any kind.  See Supplemental Declaration, ¶¶ 3, 4.

Dated: February 2, 2022

Respectfully submitted,

/s/ Michael G. McHale

| | |
|---|---|
| Michael G. McHale | Michael R. Hirsh, GA #357220 |
| THOMAS MORE SOCIETY – Counsel | Hirsh Law Office, LLC |
| 10506 Burt Circle, Suite 110 | 2295 Towne Lake Parkway |
| Omaha, NE 68114 | Suite 116-181 |
| (312) 782-1680 | Woodstock, GA 30189 |
| mmchale@thomasmoresociety.org | (678)653-9907 |
| | michael@hirsh.law |

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Thomas Brejcha*
THOMAS MORE SOCIETY – President & Chief Counsel
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680
tbrejcha@thomasmoresociety.org

*application for pro hac vice admission forthcoming

*Counsel for Plaintiff Air Force Officer*