**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **AIR FORCE OFFICER,** | |
| *Plaintiff,* | |
| **v.** | |
| **LLOYD J. AUSTIN, III**, *individually and in his official capacity as Secretary of Defense;* | **CIVIL ACTION NO. 5:22-cv-00009-TES** |
| **FRANK KENDALL, III**, *individually and his official capacity as Secretary of the Air Force;* and | |
| **ROBERT I. MILLER**, *individually and his official capacity as Surgeon General of the Air Force,* | |
| *Defendants.* | |

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

**"Your religious beliefs are sincere, it's just not compatible with military service."** [1]

That's about as blunt as it gets.

---

[1] This is how Plaintiff's chain of command paraphrased why he thought she was denied a religious exemption from a COVID-19 vaccine. True, he undoubtedly spoke for himself, but when considering the Air Force's abysmal record regarding religious accommodations requests, it turns out he was dead on target. *See* [Doc. 41-1, p. 1].

Relying on the protections of the First Amendment, the Religious Freedom

Restoration Act, and the Administrative Procedure Act, Plaintiff, a United States Air

Force officer, seeks a preliminary injunction to protect her from our military's

mandatory COVID-19 vaccination requirement.[2] Although the Air Force claims to

provide a religious accommodation process, it proved to be nothing more than a

quixotic quest for Plaintiff because it was "by all accounts, . . . theater." *U.S. Navy SEALs*

*1–26 v. Biden*, --- F. Supp. 3d ----, 2022 WL 34443, at *1 (N.D. Tex. Jan 3, 2022) (O'Connor,

J., describing the Navy's religious accommodation process). Despite thousands of

requests for religious exemption, the Air Force hadn't granted a single one of them

when Plaintiff filed her Complaint [Doc. 1].[3] [Doc. 1, ¶ 171]. Why? Because until about

---

[2] Although not specifically relevant to the military mandates before the Court, President Joseph Biden also issued Executive Order 14043 in an attempt to "halt the spread" of COVID-19. [Doc. 1, ¶ 33]; [Doc. 2-5, p. 1]. Specifically, President Biden directed certain executive agencies to implement programs to "require COVID-19 vaccination for all Federal [civilian] employees, subject to such exceptions as required by law." [Doc. 2-5, pp. 1–2]. On January 21, 2022, the Honorable Jeffery V. Brown, United States District Judge for the Southern District of Texas, enjoined implementation or enforcement of Executive Order 14043—requiring vaccination for all Federal civilian employees—by every federal official other than the President. *Feds. for Med. Freedom v. Biden*, --- F. Supp. 3d. ----, 2022 WL 188329, at *8 (S.D. Tex. Jan. 21, 2022) (acknowledging that courts do not have the authority to enjoin the President of the United States). With that injunction now in place, the parties and the Court properly focus solely on the legality of Defendants' COVID-19 vaccine requirements for military personnel.

[3] At the end of the hearing on Plaintiff's preliminary injunction, the Court informed the parties that it had closed the evidence relevant to that relief. Undeterred, Defendants filed the Declaration of Colonel Jason A. Holbrook [Doc. 44-1] six days later, informing the Court that "as of February 4, 2022, nine . . . religious accommodation requests . . . have been approved within" the Air Force. [Doc. 44-1, Holbrook Decl., ¶ 3]. That raises the Air Force's percentage of granted religious exemptions from 0.00% to about 0.24%. So, suffice it to say, Defendants' last-minute efforts to inject something new into the record doesn't change the Court's opinion because what Col. Holbrook's declaration doesn't tell the Court is *when* the Air Force granted these nine religious exemptions. Though, when looking closely at the data on the Air Force's COVID-19 website, one learns that as of January 31, 2022, the Air Force had yet to approve a single religious exemption. In other words, the Air Force granted these nine exemptions in the last two weeks.

two weeks ago, apparently no religious exemption from a COVID-19 vaccine was "compatible with military service." [Doc. 41-1, p. 1]. The Air Force defends its actions by arguing that the military has a compelling interest in "maintaining the health and readiness of its forces," and that interest is compelling enough to overcome any constitutional or statutory challenge to it. [Doc. 38, p. 27]. "But even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn v. Cuomo*, --- U.S. ----, 141 S. Ct. 63, 68 (2020).

With the benefit of briefing, oral argument, and a review of applicable law, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction [Doc. 2].

I.   <u>**BACKGROUND**</u>

In response to a topic that needs no introduction, the Secretary of the United States Department of Defense, Defendant Lloyd J. Austin, III, issued a mandate ("Department of Defense Military Mandate") for all service members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve to receive a COVID-19 vaccine. [Doc. 1, ¶ 23]; *see generally* [Doc. 2-3]. Issued on August 24, 2021, the Department of Defense Military Mandate states, "The Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable." [Doc. 1, ¶¶ 23–24]; [Doc. 2-3, p. 1].

A.    <u>The Air Force's Vaccine Requirements</u>

For years, the Air Force, along with the other military departments, has enacted and enforced mandatory policies designed to prevent the spread of infectious diseases. [Doc. 1, ¶¶ 25–28]; *see generally* [Doc. 2-9]. However, the applicable Air Force policy, Air Force Instruction (AFI) 48-110, contains language that carves out medical exemptions from compliance due to "[e]vidence of immunity based on serologic tests, documented infection, or similar circumstances." [Doc. 1, ¶¶ 25, 27]; [Doc. 2-9, p. 12]. Even though this specific medical exemption exists within AFI 48-110, the Department of Defense Military Mandate states that "[t]hose with previous COVID-19 infection are not considered fully vaccinated." [Doc. 1, ¶ 29]; [Doc. 2-3, p. 1]. Interestingly, the Department of Defense Military Mandate exempts "[s]ervice members who are actively participating in COVID-19 clinical trials . . . from mandatory vaccination against COVID-19 until the trial is complete in order to avoid invalidating such clinical trial results." [Doc. 1, ¶ 30]; [Doc. 2-3, p. 1].

On September 3, 2021, the Secretary of the United States Air Force, Defendant Frank Kendall, III, issued a mandate ("Air Force Military Mandate") requiring all active duty service members of the Air Force, "unless exempted," to be fully vaccinated by November 2, 2021, and for all Reserve service members, "unless exempted," to be fully vaccinated by December 2, 2021. [Doc. 1, ¶¶ 21, 31]; *see generally* [Doc. 2-4]. Importantly,

"[i]ndividuals with previous COVID-19 infection or positive serology[,]" like Plaintiff, weren't included within the "exempt" category. [Doc. 1, ¶ 32].

**B.**     **Plaintiff's Religious Accommodation Request**

For more than 25 years, Plaintiff has served our country as an officer in the United States Air Force with an unblemished disciplinary record. [*Id.* at ¶¶ 41, 43]. She is currently in Reserve status, serving in an administrative role that doesn't require deployment or engagement in physical military operations. [*Id.* at ¶¶ 44–45, 116]; [Doc. 2-12, p. 2]. Despite her full support of and compliance with the military's COVID-19 restrictions for mask wearing, social distancing, and remote working, Plaintiff received a written order ("Air Force Military Order") on September 21, 2021, requiring her to receive an initial and second dose of a COVID-19 vaccine and provide proof of vaccination by October 28, 2021, and November 18, 2021, respectively. [Doc. 1, ¶¶ 35, 49–50]; [Doc. 2-6, p. 1].

Plaintiff contracted COVID-19 in December 2020 and fully recovered. [Doc. 1, ¶ 59]. In January 2021, she took a COVID-19 antibody test and tested positive for COVID-19 antibodies, indicating natural immunity from the virus. [*Id.* at ¶¶ 58–61]. Then, almost a year later in December 2021, she took another antibody test where she tested positive for antibodies again. [*Id.* at ¶ 61]. However, neither the Department of Defense Military Mandate nor the Air Force Military Mandate consider her to be fully vaccinated. *See, e.g.,* [Doc. 2-3, p. 1]; [Doc. 2-4, p. 1]. As a devout Christian, Plaintiff

"sincerely believes that receiving a vaccine that was derived from or tested on aborted fetal tissue in its development would violate her conscience and is contrary to her faith." [Doc. 1, ¶¶ 51, 53]. Also, Plaintiff believes that to inject her body "with a novel substance of unknown long-term effects" such as a COVID-19 vaccine would violate her belief that her "body is the temple of the Holy Spirit."[4] [*Id.* at ¶ 55]. Consequently, she faces the choice of complying with the Air Force's order to receive a COVID-19 vaccine or violating her religious beliefs. [*Id.* at ¶¶ 54, 96].

The compliance date from the Air Force Military Order—October 28, 2021—by which Plaintiff was to receive her initial dose "also applie[d] to exemptions." [Doc. 2-6, p. 1]. In other words, "by the due date," Plaintiff had to "provide either a completed request for religious accommodation . . . or proof of a medical exemption approved by a military medical provider." [*Id.*]. Using the Air Force's required form, Plaintiff timely submitted a completed "Religious Accommodation Request for Immunization Waiver" on October 13, 2021. [Doc. 1, ¶¶ 62, 65]; *see generally* [Doc. 2-11]; [Doc. 2-12]. As of January 31, 2022, the Air Force hadn't approved a single religious accommodation request, but it had disapproved 2,787 of them and had another 2,443 requests pending.

---

[4] Defendants acknowledge the sincerity of Plaintiff's belief that her religion prevents her from receiving a COVID-19 vaccine. [Doc. 1, ¶ 97]; [Doc. 38, p. 17]; *see, e.g.*, [Doc. 2-15, p. 1].

DAF COVID-19 Statistics – Feb. 8, 2022, https://www.af.mil/News/Article-Display/Article/2919591/daf-covid-19-statistics-feb-8-2022/ (last visited Feb. 15, 2022).[5]

Plaintiff's religious accommodation request, however, is not one of those pending requests. On October 26, 2021, "[a]fter carefully considering the specific facts and circumstances[,]" the Air Force "disapprove[d]" Plaintiff's request for religious exemption on the basis that "the Department of Defense and the Department of the Air Force have a compelling government interest in maintaining a healthy and ready military force through vaccination" and that "less restrictive means of protecting [members of the military] from COVID-19 are unavailable[.]" [Doc. 1, ¶ 66]; [Doc. 2-15,

---

[5] Defendants cite to *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007), for the broad proposition that "[t]he Court may take judicial notice of factual information available on government websites." [Doc. 38, p. 12 n.7]. However, their suggestion that *Tellabs*' discussion and citation to Wright & Miller concerning judicial notice somehow makes it okay for the Court to just accept any factual information on a government website is a bit of a stretch. 551 U.S. at 323 (citing 5B Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure*: § 1357 (3d ed. 2004)). Wright & Miller's guidance pointed to a case from the Southern District of Ohio where a district court blessed consideration of, *inter alia*, "letter decisions of government agencies and published reports of administrative bodies[.]" *Jackson v. City of Columbus*, 67 F. Supp. 2d 839 (S.D. Ohio 1998), *affirmed in part, reversed in part on other grounds* 194 F.3d 737 (6th Cir. 1999). But *Jackson* dealt with a motion to dismiss, and that is vastly different from what we have here. That said, *Tellabs* isn't so expansive to allow, much less require, a district court to blindly accept any factual information on a government website (or even judicially notice it). Regardless, in this district, "data compiled on an official [United States] government website" has not always been held to be "the type of evidence contemplated by . . . the Federal Rules of Evidence[]" that is subject to judicial notice. *FCCI Ins. Grp. v. Rogers Metal Craft, Inc.*, No. 4:06-CV-107 (CDL), 2008 WL 4185997, at *1 (M.D. Ga. Sept. 9, 2008).

Notably, neither party raised an evidentiary concern to the COVID-19 data compiled on the Air Force's website. In fact, both parties used and relied upon information from United States government websites, as did the Court. *See, e.g.*, [Doc. 2-2, Air Force Officer Decl., ¶ 33]; [Doc. 38, pp. 11–12]. These statistics, showing that the Air Force recently granted nine exemptions help paint the picture for the overall issue presented to the Court, but they aren't of such evidentiary weight that they had significant bearing on the Court's ruling. *See*, n.3, *supra*.

p. 1]. In other words, the Secretary of Defense and the Secretary of the Air Force determined that they could not maintain a healthy and ready military force if Plaintiff did not receive a COVID-19 vaccine.

Within the 72-hour window to appeal the disapproval of her religious accommodation request, Plaintiff did so. [Doc. 1, ¶ 67]; [Doc. 2-15, p. 1]. Relying on the same "compelling government interests" language from the initial disapproval of Plaintiff's religious accommodation request, Defendant Robert L. Miller, the Surgeon General of the Air Force, denied her appeal, explaining that "[f]oregoing the [COVID-19] immunization requirement would have a real adverse impact on military readiness and public health and safety." [Doc. 1, ¶¶ 71–72]; [Doc. 2-16, p. 1].

Once Defendant Miller denied Plaintiff's appeal, the Air Force gave her less than a week to make a choice from among three options. [Doc. 1, ¶ 75]. Option one, she could "take the vaccine[.]" [*Id.*]; [Doc. 2-17, p. 3]. Option two, to the extent she was eligible, she could "submit a retirement request[.]" [Doc. 1, ¶ 75]; [Doc. 2-17, p. 3]. And last, she could "refuse the vaccine in writing." [Doc. 1, ¶ 75]; [Doc. 2-17, p. 3]. The Air Force further informed Plaintiff that "[a]ny refusal to receive [a] COVID-19 vaccine, absent an approved exemption, may be punishable under the Uniform Code of Military Justice . . ." and that "[c]ontinued refusal will result in involuntary reassignment" to the Individual Ready Reserve without pay, benefits, or regular responsibilities. [Doc. 1, ¶ 75]; [Doc. 2-17, p. 3].

8

Although Plaintiff is willing to continue working and exercise preventive measures that do not include taking a vaccine, she chose the second option and submitted an early retirement request under protest on December 11, 2021. [Doc. 1, ¶¶ 76, 78]. As a military service member, Plaintiff is still permitted to work at Robins Air Force Base, in Warner Robins, Georgia, until the effective date of her retirement. [*Id.* at ¶¶ 46, 77, 79]. However, because Plaintiff hasn't gotten the vaccine, she must exercise preventive measures such as getting tested regularly for COVID-19, wearing a mask, and social distancing when she physically works on the base. [*Id.* at ¶ 79]. Even though Plaintiff has faithfully adhered to these measures and has performed her normal duties while working on the base since she submitted her retirement request, she "stands to lose more than a million dollars in salary and benefits" as a result of her religious-based refusal to take a COVID-19 vaccine. [*Id.* at ¶ 83]. Essentially "forced to choose between her sincerely held religious beliefs and her livelihood[,]" Plaintiff filed this lawsuit on the basis that "the Constitution prohibits Defendants from forcing her" to make such a choice. [*Id.* at ¶¶ 89–90].

## II.   <u>PRELIMINARY MATTERS</u>

During oral argument, Plaintiff confirmed that what she really wanted was a nationwide preliminary injunction with regards to the Department of Defense Military Mandate, the Air Force Military Mandate, and the Air Force Military Order. [Doc. 2-3]; [Doc. 2-4]; [Doc. 2-6]. However, two hurdles stand in her way.

We'll start with the procedural one. In her Complaint, Plaintiff alleges that "[m]ore than 4,000 other Air Force service members share [her] religious objection to being vaccinated for COVID-19." [Doc. 1, ¶ 98]. However, she hasn't made any attempt to bring these service members into this lawsuit by way of joinder or a class action. Now, as for the substantive one, Plaintiff's allegations when considered against the applicable law simply don't warrant a nationwide injunction, especially considering she asks the Court to enjoin our entire military force. A nationwide injunction needs a nationwide class. That said, the Court's grant of preliminary injunctive relief, as discussed below, will be narrowly tailored and will only apply to Plaintiff. *See* [Doc. 38, pp. 37–38].

III.   <u>LEGAL STANDARD</u>

Although the decision to grant or deny preliminary injunctions is discretionary with the district court, they are considered to be "extraordinary and drastic" remedies— never to be "awarded as of right." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)); [Doc. 38, p. 19 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008))]. As the party seeking a preliminary injunction, Plaintiff bears the burden of persuasion and must clearly establish four, indispensable elements. *Siegel*, 234 F.3d at 1176. The Court may grant Plaintiff a preliminary injunction if she can establish (1) a substantial likelihood of success on the

merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that, if issued, the injunction would not be adverse to the public interest. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel*, 234 F.3d at 1176).

## IV.  DISCUSSION

Above all else, caution resonates within the legal standard for a preliminary injunction. Plus, this case deals with the military; therefore, the Court must be ever certain to appreciate that caution and tread lightly because for more than half a century, federal judges have heeded the "abiding reluctance to interfere with military affairs[.]" *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003). To that point, neither party briefed or raised the issue of justiciability, but since its ruling impedes upon the Air Force's administration of mandatory vaccination against COVID-19, the Court pauses to discuss the *Mindes* test—a doctrine that has forgone the topic of discussion in the Eleventh Circuit for nearly 20 years.

### A.  *Mindes* Justiciability

Plaintiff submitted her request for religious accommodation. [Doc. 1, ¶ 65]. Like every other religious-based request and appeal filtering its way through the Air Force's accommodation process, it was, save for the nine approved in the last two weeks, rubber-stamped with disapproval and denial. [*Id.* at ¶¶ 66–67, 70]; *see* n.3, *supra*.

11

"To be sure, 'courts must—at least initially—indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by [federal] statutes, and by its own regulations.'" *Navy SEALs 1–26*, 2022 WL 43334, at *8 (quoting *Hodges v. Callaway*, 499 F.2d 417, 424 (5th Cir. 1974)). But when that indulgence results in nothing more than thumb twiddling, courts are sometimes called to step in. That said, the Court's ruling on Plaintiff's preliminary injunction motion should in no way be interpreted as this judge's attempt to improperly regulate an internal military affair. As a former Army artillery officer, the Court absolutely understands that judges don't make good generals and "are not given the task of running the [military]." *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953). They are, however, tasked with upholding the Constitution and redressing fundamental rights because—no matter how dire the crisis—constitutional protections remain commandments, not suggestions. Thus, it's the nature of this lawsuit rather than the relief sought by it that renders court intervention appropriate. *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001) (first citing *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986) and then citing *Watson v. Ark. Nat'l Guard*, 886 F.2d 1004, 1010 (8th Cir. 1989) ("There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision.")).

12

Not long after the Fifth Circuit split in 1981, the Eleventh Circuit recognized that judicial review of internal military matters should be "forestall[ed]" until the administrative process is concluded. *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citing *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980)); *Rucker v. Sec'y of the Army*, 702 F.2d 966, 969 (11th Cir. 1983) (citing *Mindes v. Seaman*, 453 F.2d 197, 199 (5th Cir. 1971)). Since then, the Eleventh Circuit has "reaffirm[ed] the unflagging strength of the principles of comity and judicial noninterference with, and respect for, military operations that informed the *Mindes* doctrine." *Winck*, 327 F.3d at 1303–04 (addressing *Mindes* applicability in habeas corpus action with respect to exhaustion of intraservice military remedies). And although it's been some time since the Eleventh Circuit last addressed *Mindes*, the sparsity of its appellate review doesn't dilute its precedential authority.[6] Again, the focus should remain on the nature of a lawsuit, not its relief.

The first part of the *Mindes* test prohibits judicial review of internal military affairs absent (1) "an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations[]" and (2) "exhaustion of available intraservice corrective measures." 453

---

[6] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts . . . ." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

F.2d at 201. Upon meeting both of these criteria, *Mindes* lists four factors that "must be weighed" to determine whether an issue is justiciable: (1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Id.* at 201–02.

Plaintiff's claim that she has been "forced to choose between her sincerely held religious beliefs and her livelihood" undoubtedly checks the box for an allegation of a deprivation of a constitutional right or violation of an applicable federal statute.[7] [Doc. 1, ¶ 90]. So, all that remains for discussion before weighing the four factors for justiciability is whether Plaintiff's claims are subject to an administrative process within the Air Force or the greater Department of Defense.

As the Court mentioned above, neither party briefed or raised a *Mindes* issue. Perhaps that is largely due to the fact that Plaintiff completed the administrative process with respect to her request for religious accommodation. The doctrine of administrative exhaustion is simple enough. It "requires a litigant seeking to overturn

---

[7] While not per se required in addition to an allegation of a deprivation of a constitutional or statutory right, Plaintiff also claims that Defendants have acted in violation of its own regulation—AFI 48-110— that permits medical exemptions for "immunity based on serologic tests." [Doc. 2-9, p. 12]. The Department of Defense Military Mandate and the Air Force Mandate, conversely, do not permit such an exemption. *See generally* [Doc. 2-3]; [Doc. 2-4]. This apparently forms the basis of Plaintiff's claim under the Administrative Procedure Act, 5 U.S.C. §§ 551, 701–06. [Doc. 1, ¶¶ 219–26]. Because the Court grants preliminary injunctive relief under the Religious Freedom Restoration Act and the First Amendment, it does not address this tertiary claim.

an adverse administrative ruling to first exhaust all available administrative remedies before invoking the jurisdiction of the federal courts." *Linfors*, 673 F.2d at 333–34 (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 (1938)). Here, though, exhaustion isn't even a speedbump for Plaintiff because she submitted her religious accommodation request and Defendant Miller ultimately denied her final appeal. [Doc. 1, ¶¶ 65, 67, 70–71]. In short, she exhausted. Thus, there is no need to further discuss whether Plaintiff exhausted or is excused from exhausting the "available intraservice corrective measures." *Mindes*, 453 F.2d at 201.

However, just because Plaintiff satisfies the first two parts of the *Mindes* test doesn't mean the Court can dispense with determining the justiciability of the issue before it and jump straight into a discussion of whether she can obtain a preliminary injunction. Ever mindful of the long-recognized apprehension of judicial interference with military affairs and respect of military operations, the Court "must . . . weigh[]" the four *Mindes* factors to determine whether the issue before it is justiciable. 453 F.2d at 201–02; *Winck*, 327 F.3d at 1302.

First, the nature and strength of Plaintiff's challenge to the military's COVID-19 vaccination requirement, as to her, weighs in favor of judicial review. *Mindes*, 453 F.2d at 201. Here, Plaintiff attempts to secure a preliminary injunction on the basis that Defendants are prohibiting her from freely exercising her religion, and her claim under the First Amendment undoubtedly falls within the ambit of constitutional concerns that

tend to favor judicial review. *Navy SEALs 1–26*, 2022 WL 43334, at *7 (quoting *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980)). Moreover, because the Religious Freedom Restoration Act provides greater religious protections than the First Amendment, any claim under this Act also favors judicial review. *Navy SEALs 1–26*, 2022 WL 43334, at *7. Defendants' COVID-19 vaccination requirement, as discussed in detail below, violates both the First Amendment and the Religious Freedom Restoration Act. While it may not be clear just yet, this alone demonstrates the strength of Plaintiff's claims and removes them from the "obviously tenuous" label that weighs in favor of declining judicial review. *Mindes*, 453 F.2d at 201.

Second, the potential injury to Plaintiff if review is refused also weighs in her favor. *Id.* Again, this factor overlaps with the Court's analysis on Plaintiff's preliminary injunction, but for starters, she claims that her religious-based refusal to take a COVID-19 vaccine "cost [her] her right to future employment" beyond her early retirement date. [Doc. 1, ¶¶ 82–83]. Additionally, there is her allegation that Defendants have violated the Constitution because they essentially forced her to choose between her sincerely held religious beliefs and her livelihood. [*Id.* at ¶¶ 89–90]. This allegation aptly demonstrates that she has suffered and continues to suffer some injury. *See Elrod v. Burns*, 427 U.S. 347, 374 (1976). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373. Although the Court will further address this point during its preliminary junction

analysis, it's clear for *Mindes* purposes, at least, that Plaintiff's injury weighs in favor of judicial review.

Third, the Court must weigh the type and degree of anticipated interference with the military function. *Mindes*, 453 F.2d at 201. *Mindes* instructs that "[i]nterference per se is insufficient." *Id.* In other words, judicial review—if granted—in and of itself will invite some level of interference with military function. Thus, it is interference that "seriously impede[s] the military in the performance of vital duties[]" that "militates strongly against [judicial review]." *Id.* Today, 97.8% of the Air Force (active duty, guard, and Reserve status) is fully vaccinated against COVID-19. DAF COVID-19 Statistics – Feb. 8, 2022, https://www.af.mil/News/Article-Display/Article/2919591/daf-covid-19-statistics-feb-8-2022/ (last visited Feb. 15, 2022). That leaves Plaintiff within a very small percentage of unvaccinated Air Force service members—of which 1,476 have been granted medical exemptions and another 1,837 have administrative exemptions. *Id.* Like Plaintiff, these exempted service members (the Court hopes) also exercise preventive measures such as getting tested regularly for COVID-19, wearing a mask, and social distancing when working around others. [Doc. 1, ¶¶ 78–79]. It seems illogical to think, let alone argue, that Plaintiff's religious-based refusal to take a COVID-19 vaccine would "seriously impede" military function when the Air Force has at least 3,300 other service members still on duty who are just as unvaccinated as her. *Mindes*, 453 F.2d at 201. The only difference is that Plaintiff is unvaccinated because she followed her

religion and the others were granted either a medical or administrative exemption from receiving a COVID-19 vaccine. [Doc. 1, ¶ 82]. Therein lies the obvious constitutional conundrum. Since the Air Force provides secular accommodations (both medical and administrative), whether Defendants' denial of a religious accommodation violated Plaintiff's constitutional rights is a legal question for the Court that would not "seriously impede the military in the performance of vital duties." *Mindes*, 453 F.2d at 201.

Fourth, and finally, the Court must consider the extent to which the exercise of military expertise or discretion is involved. *Id.* at 201–02. "Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions." *Id.* The constitutional inquiries presented in this case, however, are not akin to "[t]he complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force [that] are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1293 (11th Cir. 2009) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). "Indeed," as the Eleventh Circuit has stated, "[i]t would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process." *Id.*

This concept circles back to what the Court mentioned earlier—judges don't make good generals. *Orloff*, 345 U.S. at 93. But, by that same token, it's a two-way street: Generals don't make good judges—especially when it comes to nuanced constitutional issues. It's that simple. Whether Defendants' COVID-19 vaccination requirement can withstand strict scrutiny doesn't require "military expertise or discretion." *Mindes*, 453 F.2d at 201. Such an issue is a purely legal matter well within the confines of what the Constitution permits of the judicial branch and its duly-appointed judges.

So, having concluded that all four of the *Mindes* factors weigh in favor of justiciability, let's get to those nuanced constitutional issues like strict scrutiny, substantial burden, compelling interest, and least restrictive means and examine how those constitutional buzzwords intersect with Plaintiff's burden to obtain a preliminary injunction.

**B.   Plaintiff's Motion for Preliminary Injunction**

The first step in determining the appropriateness of a preliminary injunction is whether Plaintiff can establish a substantial likelihood of success on the merits. To recap, Plaintiff alleges that Defendants' COVID-19 vaccination requirement fails strict scrutiny and violates the Religious Freedom Restoration Act and the First Amendment. [Doc. 1, ¶¶ 91–218]. The Court concludes that Plaintiff is likely to succeed on both claims.

### 1.    Substantial Likelihood of Success on the Merits

Because the relief sought at this point is only preliminary, the standard doesn't demand a demonstration of certain success. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). Rather, the standard only asks whether it is "*likely* or probable" that Plaintiff will prevail. *Id.*

### a.    *Religious Freedom Restoration Act*

Plaintiff argues that strict scrutiny applies under the Religious Freedom Restoration Act because Defendants' COVID-19 vaccination requirement substantially burdens her sincere religious beliefs. [Doc. 2-1, p. 5]. Passed in 1993, the Religious Freedom Restoration Act "was designed to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby*, 573 U.S. 682, 706 (2014). In fact, "[b]y enacting RFRA, Congress went far beyond what [the Supreme Court] has held is constitutionally required." *Id.*

The Court has mentioned RFRA several times, but what does that statute actually say? RFRA says that the "Government[8] shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). There is, however, one exception to that law. The "Government may substantially burden a person's exercise of religion only if it

---

[8] "[T]he term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity[.]" 42 U.S.C. § 2000bb-2(1).

demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* at § 2000bb-1(b). Plaintiff's argument, in its most general sense, is that Defendants can't satisfy that exception.

First, Defendants' COVID-19 vaccination requirement must substantially burden the free exercise of Plaintiff's religion. To this point, Plaintiff argues that she "has a sincere religious belief that prohibits her from submitting to an injection of any of the presently available COVID-19 vaccines" and that Defendants' COVID-19 vaccination requirement puts "substantial pressure" on her "to modify [her] behavior and to violate [her] beliefs." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981); [Doc. 2-1, pp. 6–7]. A classic case of "substantial pressure" occurs when a person has to choose between her job and her religion. *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). That is exactly the choice Plaintiff alleges the Air Force "forced" her to make—either "abandon[] one of the precepts of her religion" or abandon "her livelihood."[9] *Id.*; [Doc. 1, ¶¶ 89–90].

Defendants don't say much in response to Plaintiff's arguments that their COVID-19 vaccination requirement substantially burdens the free exercise of her

---

[9] In fact, as of February 7, 2022, "the Air Force has administratively separated 142 active duty Airmen[]" for refusing to take a vaccine. DAF COVID-19 Statistics – Feb. 8, 2022, https://www.af.mil/News/Article-Display/Article/2919591/daf-covid-19-statistics-feb-8-2022/ (last visited Feb. 15, 2022).

religion.[10] And, how could they? Very few scenarios paint a bleaker picture than giving up your livelihood in order to follow your religious beliefs.

Now, the question becomes whether Defendants can show that the substantial burden placed on Plaintiff's religion by its COVID-19 vaccination requirement furthers a compelling governmental interest and that vaccination is the least restrictive means to further that interest. 42 U.S.C. § 2000bb-1(b).

When it comes to the compelling governmental interest at stake, Defendants argue that "the military has a compelling interest in preventing the spread of infectious diseases and in protecting service members from the effects of disease." [Doc. 38, p. 25]. It would be a waste of time and wrong to state that "[s]temming the spread of COVID-19" isn't a compelling interest—the Supreme Court has already decided it is. *Diocese of Brooklyn*, 141 S. Ct. at 67. However, just because COVID-19 continues to linger, that is not an invitation to "slacken . . . enforcement of constitutional liberties." *Id.* at 71 (Gorsuch, J., concurring).

RFRA specifically contemplates "a person's exercise of religion." 42 U.S.C. § 2000bb-1(a). That is why the Supreme Court has said that RFRA "requires the

---

[10] Although they "assum[e]" she can show a substantial burden, they also—couched in what is essentially a mootness argument—urge the Court to reject any individualized assessment of a religious exemption since "the military already provides individual review[]" of religious accommodation requests. [Doc. 38, pp. 24–25]. True, the Air Force may have individually reviewed over 3,400 religious accommodation requests, but, once again, as of January 31, 2022, it had blanketly disapproved every single one. DAF COVID-19 Statistics – Feb. 8, 2022, https://www.af.mil/News/Article-Display/Article/2919591/daf-covid-19-statistics-feb-8-2022/ (last visited Feb. 15, 2022).

Government to demonstrate that the compelling interest test is satisfied through application of the challenged [policy] 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Hobby Lobby*, 573 U.S. at 726. Thus, the Court "must 'look beyond broadly formulated interests,' [such as maintaining the health and readiness of military forces] and instead consider 'the asserted harm of granting specific exemptions to particular religious claimants[.]'" *Navy SEALs 1–26*, 2022 WL 34443, at *10 (quoting *Hobby Lobby*, 573 U.S. at 726–27).

Circumspect as to what the Court must actually consider—the asserted harm of granting specific exemptions to particular religious claimants—Defendants bank on the fact that because Plaintiff's leadership position demands in-person interaction with other military personnel and members of the public, they have asserted more than a broadly formulated interest. *See Hobby Lobby*, 573 U.S. at 726–27; [Doc. 38, pp. 26–27]. This compelling interest as to Plaintiff, though, completely ignores that there are at least 3,300 exempt Air Force service members carrying out their respective duties similarly unvaccinated. *See* [Doc. 40, p. 5]. At bottom, Defendants simply don't explain why they have a compelling interest in *Plaintiff* being vaccinated while so many other Air Force service members are not.

When it comes to the least restrictive means to curb the spread of COVID-19 within the Air Force, Defendants contend that vaccination is the only way to ensure the health that is "paramount to military readiness." [Doc. 38, p. 27]. By their argument,

"[n]one of Plaintiff's proposed alternatives sufficiently protect the military's compelling interest in maintaining the health and readiness of its forces." [*Id.*].

First, Defendants argue that Plaintiff's willingness and ability to work remotely isn't really a viable option given her "military-specific responsibilities[.]" [*Id.* at p. 28]. Although Plaintiff has worked remotely "[a]t various times in her career," the Air Force has now determined that her position "requires her to appear and lead in person." [Doc. 1, ¶ 47]; [Doc. 38, p. 27]; *see also* [Doc. 38-12, Linnean Decl., ¶ 10].

For about two months now, the Air Force has permitted Plaintiff to work on the base in person, provided she practice non-vaccine preventive measures such as getting tested regularly, wearing a mask, and social distancing. [Doc. 1, ¶¶ 70, 79–80]. Now, they argue that such preventive measures are insufficient. [Doc. 38, pp. 28–29]. For example, Defendants argue that "[m]asks are limited to controlling the spread of [COVID-19]" and "provide no protection to a service member who is infected" with the virus. [*Id.*]. When it comes to Plaintiff's argument about natural immunity, they offer nothing in rebuttal other than claiming that she misreads the relevant regulations. *See* [Doc. 2-1, pp. 11–13] *in connection with* [Doc. 38, p. 28].

Plaintiff's natural immunity coupled with other preventive measures begs the question: Does a COVID-19 vaccine really provide more sufficient protection? This is especially curious given the number of people who have been and continue to be infected after becoming fully vaccinated and receiving a booster—including the

Secretary of Defense, the Chairman of the Joint Chiefs of Staff, and the Commandant of the Marine Corps. *See* [Doc. 40, p. 6 n.7]; *see also* Air Force Magazine, *Joint Chiefs' Milley and Berger Test Positive for COVID-19*, https://www.airforcemag.com/joint-chiefs-milley-and-berger-test-positive-for-covid-19/ (last visited Feb. 15, 2022). Simply put, Defendants have failed to explain why having Plaintiff—a single member of a nearly fully vaccinated Air Force—submit to a COVID-19 vaccine is the least restrictive means to achieve its compelling governmental interest in maintaining a healthy force.

For purposes of the motion before it, the Court agrees with Plaintiff's argument that Defendants haven't "shown that vaccination is actually necessary by comparison to alternative measures[]" since "the curtailment of free [exercise] must be actually necessary to the solution." [Doc. 40, p. 5 (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011))].

Moreover, one must keep in mind that the Air Force has rejected 99.76% of all religious accommodation requests, and until about two weeks ago, it had rejected every single one it "carefully consider[ed]." [Doc. 2-15, p. 1]. With such a marked record disfavoring religious accommodation requests, the Court easily finds that the Air Force's process to protect religious rights is both illusory and insincere. In short, it's just "theater." *U.S. Navy SEALs 1–26*, 2022 WL 34443, at *1.

Again, the standard doesn't demand that Plaintiff demonstrate certain success. *See Schiavo*, 403 F.3d at 1232. Thus, for this reason and the others discussed above, the

Court finds that it is "*likely* or probable" that Defendants have not shown that taking a COVID-19 vaccine is the least restrictive means available to further the compelling governmental interest of stemming COVID-19 when their chosen means places a substantial burden on the free exercise of religion. *Id.* Therefore, Plaintiff has clearly established the first necessary element to obtain a preliminary injunction under RFRA.

> b.    *First Amendment*

With respect to her First Amendment claim, Plaintiff argues that strict scrutiny applies because Defendants' COVID-19 vaccination requirement treats secular, medical accommodation requests and clinical trial participation more favorably than religious accommodation requests. [Doc. 2-1, p. 5]. In other words, because Defendants' COVID-19 vaccination requirement is not neutral toward religion or generally applicable, Plaintiff contends that it must satisfy strict scrutiny. [*Id.* at pp. 8–9]. For the same reasons Plaintiff is likely to succeed on her RFRA claim, she is also likely to prevail on her First Amendment claim.

"A law[,]" or in this case a vaccination requirement, "is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v. City of Phila.*, --- U.S. ----, 141 S. Ct. 1868, 1877 (2021) (cleaned up). "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the

26

government's asserted interests in a similar way." *Id.* (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 524–28, 542–46 (1993)). Sound familiar?

Defendants' COVID-19 vaccination requirement allows service members to refuse vaccination for secular reasons while disallowing refusal based on religious reasons. [Doc. 2-1, p. 9]. No matter whether one service member is unvaccinated for a medical reason and another unvaccinated for a religious reason, one thing remains the same for both of these service members—they're both unvaccinated. In other words, both of these service members pose a "similar hazard" to Defendants' compelling interest in "[s]temming the spread of COVID-19" within the military. *Fulton*, 141 S. Ct. at 1877 (citation omitted); *Diocese of Brooklyn*, 141 S. Ct. at 67; [Doc. 2-1, p. 9].

This scenario was exactly what Justice Gorsuch discussed in *Dr. A v. Hochul*, where exemptions for religious reasons went unrecognized while exemptions for medical reasons were permitted. 142 S. Ct. 552, 556 (2021) (mem.) (Gorsuch, J., dissenting). Even though *Dr. A* dealt with healthcare workers, what Justice Gorsuch wrote in his dissent can be applied with equal force to this case: "[A]llowing a [service member] to remain unvaccinated undermines the [Air Force's] asserted [interest] equally whether that [service member] happens to remain unvaccinated for religious reasons or medical ones." *Id.* Moreover, should Defendants ever worry that the Court's grant of preliminary injunctive relief on top of the nine religious accommodation requests that have been granted to date will somehow invite an influx of religious

accommodation requests, such an argument won't change the Court's mind. The "general applicability test doesn't turn on [a] numbers game." *Id.* All it takes is one.

Thus, with respect to her First Amendment claim, Plaintiff has clearly established the first necessary element to obtain a preliminary injunction because "*any* favorable treatment" for service members exempted for any secular reason over those seeking exemption for religious reasons "defeats neutrality." *Navy SEALs 1–26*, 2022 WL 34443, at *11. That said, discussing whether vaccination is the least restrictive means to further the stemming of COVID-19 for Plaintiff's First Amendment would be redundant. So, the Court will not rehash it here.

Since Defendants' COVID-19 vaccination requirement is neither neutral toward religion nor generally applicable, it is unlikely to pass strict scrutiny—"the most demanding test known to constitutional law." [Doc. 2-1, p. 10 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997))]. And because Defendants' COVID-19 vaccination requirement is unlikely to pass strict scrutiny, it is "*likely* or probable" that Plaintiff will prevail on her First Amendment claim. *Schiavo*, 403 F.3d at 1232. Therefore, Plaintiff has clearly established the first necessary element to obtain a preliminary injunction under the First Amendment as well.

### 2.   Irreparable Injury

The second element of a preliminary injunction requires Plaintiff to establish that irreparable injury will be suffered without the injunctive relief. For starters, to satisfy

this element, monetary damages need to be inadequate to compensate for the injury. *See Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021). While it is true that Plaintiff has "gradually [been] stripped of her duties, benefits, and pay, and forced into early retirement" for showing "[f]idelity to her religious beliefs[,]" these harms are redressable as monetary damages and therefore insufficient to obtain injunctive relief. [Doc. 1, ¶¶ 83, 89]; [Doc. 40, p. 8];  However, focusing exclusively on financial harm misses the mark because "[t]he loss of First Amendment freedoms, even for minimal periods of time unquestionably constitutes irreparable injury." *Diocese of Brooklyn*, 141 S. Ct. at 67 (quoting *Elrod*, 427 U.S. at 373).

Since Defendant Miller ultimately denied Plaintiff's religious accommodation request and essentially infringed upon the free exercise of her religion, Plaintiff has suffered an irreparable injury. She has faced "monumental . . . pressure to violate [her] religious beliefs[,]" and that is prohibited by the Constitution. [Doc. 40, p. 9]; [Doc. 1, ¶ 89]. Again, the choice to adhere to her religious beliefs or modify her behavior to violate those beliefs suffices to trigger constitutional protection. *Thomas*, 450 U.S. at 718. Thus, Plaintiff has satisfied the second element to obtain a preliminary injunction.

### 3.    Balance of Hardships and the Public Interest

The final two elements necessary to obtain a preliminary injunction merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). They require Plaintiff to clearly establish that the threatened injury to her outweighs

whatever damage the proposed injunction may cause to the Air Force and that, if issued, the injunction would not disserve (or be adverse to) the public interest. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010) (citing *Garcia–Mir v. Meese*, 781 F.2d 1450, 1455 (11th Cir. 1986)); *Wreal*, 480 F.3d at 1247. Again, this case deals with our military forces. Thus, the Court must heed the long-recognized deference afforded to military regulations that are challenged on constitutional grounds as opposed to constitutional challenges in the civilian context. [Doc. 38, p. 31 (quoting *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986))]. Simply put, the Court must think hard, then think again.

Here, we seem to have two competing public interests. By Plaintiff's argument, "[p]roper application of the Constitution . . . serves the public interest [because] it is always in the public interest to prevent the violation of a party's constitutional rights." [Doc. 2-1, p. 21 (quoting *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021))]. Defendants, on the other hand, argue that national security and military readiness "tilt [the third and fourth elements] decisively in [their] favor." [Doc. 38, p. 33]. There is no doubt in the Court's mind that we all want a functioning military ready to defend us, but "[w]hen balancing the harms, courts must consider whether [Plaintiff's] injury outweighs the threatened harm to the party whom [she] seek[s] to enjoin." *Navy SEALs 1–26*, 2022 WL 34443, at *13. So, the question isn't whether a public interest exists, of course one does—two, in fact. The question, instead, focuses on whether Defendants' public interest will be disserved by a preliminary injunction. *See*

*Scott*, 612 F.3d at 1290. In short, the Court finds that it's not. Plaintiff's religious-based refusal to take a COVID-19 vaccine simply isn't going to halt a nearly fully vaccinated Air Force's mission to provide a ready national defense.

## V.    <u>CONCLUSION</u>

Given "the Nation's essential commitment to religious freedom[,]" Plaintiff's harm—a constitutional injury involving her right to freely exercise her religion—is not a mere trivial grievance. *Church of Lukumi*, 508 U.S. at 524. And, what real interest can our military leaders have in furthering a requirement that violates the very document they swore to support and defend? The Court is unquestionably confident that the Air Force will remain healthy enough to carry out its critical national defense mission even if Plaintiff remains unvaccinated and is not forced to retire.

All Americans, especially the Court, want our country to maintain a military force that is powerful enough to thoroughly destroy any enemy who dares to challenge it. However, we also want a military force strong enough to respect and protect its service members' constitutional and statutory religious rights. This ruling ensures our armed services continue to accomplish both.

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction [Doc. 2]. Defendants are enjoined from enforcing the Department of Defense Military Mandate, the Air Force Military Mandate, and the Air Force Military Order against Plaintiff. [Doc. 2-3]; [Doc. 2-4]; [Doc. 2-6]. Defendants are

also enjoined from taking any adverse action against Plaintiff on the basis of this

lawsuit or her request for religious accommodation, specifically including forcing her to

retire. Finally, Plaintiff is relieved from posting any bond.

      **SO ORDERED**, this 15th of February, 2022.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**