## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **AIR FORCE OFFICER**, **AIR FORCE NCO**, | ) | |
| **AIR FORCE SPECIAL AGENT**, and | ) | |
| **AIR FORCE ENGINEER**, on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
| | ) | Case No. 5:22-cv-00009-TES |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **LLOYD J. AUSTIN**, **III**, in his | ) | |
| official capacity as Secretary of Defense; | ) | |
| **FRANK KENDALL**, **III**, in his | ) | |
| official capacity as Secretary of the Air Force; and | ) | |
| **ROBERT I. MILLER**, in his | ) | |
| official capacity as Surgeon General of the | ) | |
| Air Force, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Air Force Officer, Air Force NCO, Air Force Special Agent, and Air Force

Engineer ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"),

for their Second Amended Class Action Complaint against the Defendants in their official

capacities, hereby state as follows:

## INTRODUCTION

1.      Defendants are trying to force Plaintiffs and thousands of other service members

to submit to being injected with a COVID-19 vaccine against their sincerely held religious

beliefs.

2.      In this lawsuit Plaintiffs challenge Defendants' military and federal civilian

employee COVID-19 vaccine mandates because they violate their sincerely held religious

beliefs.

1

3.     Defendants conceded the sincerity of Plaintiffs' religious objections to being vaccinated.

4.     Plaintiffs contracted COVID-19 and remain naturally immune to it, and Plaintiffs have been willing and able and remain willing and able to work remotely, wear a mask, and test periodically.

5.     In December 2021 the Air Force issued a final denial of Air Force Officer's October 2021 request for religious accommodation, in December 2021 issued a final denial of Air Force NCO's request for religious accommodation, in February 2022 issued a final denial of Air Force Special Agent's request for religious accommodation, and in January 2022 issued a final denial of Air Force Engineer's request for religious accommodation.

6.     The Air Force has not approved any or essentially any of the 7,500+ religious accommodation requests.

7.     Defendants claim to have "approved" a small number of requests for religious accommodation, but those requests were "approved" because the service members were already slated for separation from the Air Force.

8.     This action is based upon the Religious Freedom Restoration Act of 1993 (RFRA) and the First Amendment to the United States Constitution, both of which protect Plaintiffs' and each Class member's fundamental right to the free exercise of their religion.

9.     This action is also based on the Administrative Procedure Act (APA), which protects Plaintiffs and the Class from arbitrary and capricious rulemaking by Defendants.

10.    Plaintiffs and the Class challenge Defendants' orders, policies, and actions detailed below, facially for lack of exception for any religious exercise, and as applied to Plaintiffs and the Class in denying their particular requests for religious accommodation.

11.     Defendants' orders, policies, and actions deprived and will continue to deprive Plaintiffs and other Class members of their paramount rights and guarantees under federal law, including under RFRA, the United States Constitution, and the APA.

12.     Defendants committed each and every act alleged herein under the color of law and authority.

13.     On February 15, 2022, the Court issued a preliminary injunction protecting the religious freedom of Plaintiff Air Force Officer individually [Doc. 51].

14.     With this Second Amended Class Action Complaint, Plaintiffs assert claims on behalf of Plaintiffs and all members of the Class.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

16.     The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

17.     The Court also has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiffs and Class.

18.     The Court also has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiffs' religious exercise and that of other service members have been burdened by Defendants.

19.     The Court also has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action.

20.     This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested

injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and costs and attorneys' fees

pursuant to 42 U.S.C. § 1988(b), 28 U.S.C. § 2412, and 28 U.S.C. § 1920.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, including § 1391(e),

because Defendants are officers and employees of the United States, and the military workplace

and the location in which a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred are in Houston County, Georgia, within the District of this Court.

## PARTIES

22.     Plaintiff Air Force Officer is an Officer in the United States Air Force.

23.     Plaintiff Air Force NCO is a Non-Commissioned Officer in the United States Air

Force.

24.     Plaintiff Air Force Special Agent is a Special Agent in the United States Air

Force.

25.     Plaintiff Air Force Engineer is an Engineer in the United States Air Force.

26.     Plaintiffs prefer not to disclose their names in a public proceeding because they

have a substantial privacy right that can only be preserved by proceeding anonymously. [See

Doc. 52].

27.     Defendant Lloyd J. Austin, III, is the Secretary of the United States Department of

Defense. Secretary Austin is sued in his official capacity.

28.     Defendant Frank Kendall, III, is the Secretary of the United States Air Force.

Secretary Kendall is sued in his official capacity.

29.     Defendant Robert I. Miller is the Surgeon General of the United States Air Force.

Secretary Miller is sued in his official capacity.

## FACTUAL BACKGROUND

### The COVID-19 Vaccine Mandates at Issue and Natural Immunity

30.     On August 24, 2021, Secretary Austin issued a mandate for all service members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve to receive a COVID-19 vaccine ("DoD Military Mandate").

31.     The DoD Military Mandate states in part that "Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable."

32.     At the time of issuance of the DoD Military Mandate, Air Force Instruction (AFI) 48-110, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease*, dated February 16, 2018, was an existing policy and procedure of the Air Force and remains a policy and procedure of the Air Force.

33.     AFI 48-110 is mandatory.

34.     AFI 48-110 states in part: "General examples of medical exemptions include the following… (b) Evidence of immunity based on serologic tests, documented infection, or similar circumstances."

35.     Other branches of the military have policies and procedures identical to AFI 48-110: Army 40-562; Navy BUMEDINST 6230.15B; and Coast Guard COMDTINST M6230.4G.

36.     The DoD Military Mandate further states in part, "Those with previous COVID-19 infection are not considered fully vaccinated."

37.     The DoD Military Mandate further states in part, "Service members who are actively participating in COVID-19 clinical trials are exempted from mandatory vaccination against COVID-19 until the trial is complete in order to avoid invalidating such clinical trial results."

5

38.     On September 3, 2021, Secretary Kendall issued a mandate for all active duty service members of the Air Force, "unless exempted," to be fully vaccinated by November 2, 2021, and for all Reserve service members, "unless exempted," to be fully vaccinated by December 2, 2021 ("Air Force Military Mandate").

39.     The Air Force Military Mandate states in part, "Individuals with previous COVID-19 infection or positive serology are not considered vaccinated and are not exempt."

40.     On September 9, 2021, President Biden issued Executive Order 14043, in which the President directed certain Executive Agencies to implement programs to require COVID-19 vaccination for its federal civilian employees, "with exceptions only as required by law" ("President's Federal Employee Mandate").

41.     The federal Department of Health and Human Services (HHS), cited as authority in Executive Order 14043, and the Centers for Medicare & Medicaid Services (CMS) issued a COVID-19 regulation recognizing that the vaccinated and those who "have recovered from infection… are no longer sources of future infections."  86 Fed. Reg. at 61,604.

42.     On September 21, 2021, a Deputy Commander of the Air Force issued an order to Air Force Officer stating in part, "I am ordering you to receive an initial dose of a COVID-19 vaccine… by 28 October 2021.  Additionally, you are ordered to receive the second dose of the same vaccine AND provide proof by 18 November 2021" ("Air Force Military Order to Air Force Officer").

43.     On September 21, 2021, a Deputy Commander of the Air Force issued an order to Air Force NCO stating in part, "I am ordering you to receive an initial dose of a COVID-19 vaccine… by 28 October 2021.  Additionally, you are ordered to receive the second dose of the

same vaccine AND provide proof by 18 November 2021" ("Air Force Military Order to Air

Force NCO").

44.     On September 13, 2021, a Commander of the Air Force issued an order to all

Office of Special Investigations ("OSI") active duty and reserve personnel including Air Force

Special Agent stating in part, "I am ordering Active Duty personnel to receive an initial dose of a

COVID-19 vaccine… by 30 September 2021. Reserve personnel must do so by 29 October 2021.

Additionally, Active Duty personnel are ordered to receive the second dose of the same vaccine

AND provide proof to your Commander/Director by 19 October 2021. Reserve personnel must

do so by 18 November 2021" ("Air Force Military Order to OSI Personnel").

45.     On October 1, 2021, Deputy Secretary of Defense Kathleen Hicks issued a

mandate for all Department of Defense civilian employees to be fully vaccinated by November

22, 2021, "subject to exemptions as required by law" ("DoD Civilian Mandate").

46.     The DoD Civilian Mandate states in part, "Those with previous COVID-19

infection(s) or previous serology are not considered fully vaccinated on that basis for the

purposes of this mandate."

47.     On October 8, 2021, Secretary Kendall issued a mandate for all civilian

employees of the Air Force to be fully vaccinated by November 22, 2021 "unless exempted"

("Air Force Civilian Mandate").

48.     The Air Force Civilian Mandate states in part, "Individuals with previous

COVID-19 infection or positive serology are not considered vaccinated and are not exempt."

49.     The DoD Military Mandate, Air Force Military Mandate, President's Federal

Employee Mandate, Air Force Military Order to Air Force Officer, Air Force Military Order to

Air Force NCO, Air Force Military Order to OSI Personnel, DoD Civilian Mandate, Air Force

Civilian Mandate, and any and all other related vaccine mandate orders, collectively, are herein referred to as "the Mandates."

50.     Natural immunity is disease resistance developed naturally in the body resulting from prior infection of that disease.

51.     Existence of COVID-19 antibodies in the body indicates natural immunity to COVID-19.

52.     Natural immunity to COVID-19 is gained from previous infection of COVID-19.

53.     Natural immunity to COVID-19 gained from previous infection of COVID-19 has helped to greatly reduce the risk of medically significant disease, hospitalization, and death from COVID-19.

54.     On March 2, 2022, in an email to "USSPACECOM/All Distro," United States Army General James H. Dickinson stated in part, "With high levels of population immunity from both vaccinations and infections, the risk of medically significant disease, hospitalization, and death from COVID-19 has been greatly reduced."

55.     General James H. Dickinson is Commander of U.S. Space Command.

56.     General James H. Dickinson exercises combatant command authority over approximately 18,000 service members in all branches of the military including the Air Force.

**Air Force Officer's Career**

57.     For more than 25 years, Air Force Officer has served her country in the United States Air Force.

58.     The military has awarded Air Force Officer numerous medals, including the Defense Meritorious Service Medal, Meritorious Service Medals, the Air Force Commendation Medal, Air Force Achievement Medals, and other medals.

59.     The Air Force has never disciplined Air Force Officer, and has never had cause to discipline her, for any reason.

60.     For years, Air Force Officer has served in an administrative position in the Air Force Reserves.

61.     Air Force Officer's position is not one that engages in physical military operations.

62.     Air Force Officer is both a military employee and a federal civilian employee, and in both capacities she is based at Robins Air Force Base in Georgia.

63.     At various times in her career, Air Force Officer has worked remotely.

64.     Over her many years of service, Air Force Officer has held key positions of responsibility, implemented critical health and safety programs, educated and developed numerous other leaders, and built trust and goodwill among fellow service members, all in the interest of military readiness, unit cohesion, good order, discipline, health, and safety.

65.     When the military in 2020 began imposing COVID-19 restrictions on personnel—including masking, social distancing, and working remotely—Air Force Officer followed and led others to follow these policies.

66.     Air Force Officer has consistently and fully supported and sustained Defendants' interests in military readiness, unit cohesion, good order, discipline, health, and safety.

**Air Force NCO's Career**

67.     For more than 20 years, Air Force NCO has served his country in the United States Air Force.

68.     The military has awarded Air Force NCO numerous medals, including two Air Force Commendation Medals and one Meritorious Service Medal.

69.     The Air Force has never disciplined Air Force NCO, and has never had cause to discipline him, for any reason.

70.     Air Force NCO has been deployed four times.

71.     For years, Air Force NCO has served in an Active Guard Reserve position with the Air Force Reserves.

72.     Air Force NCO is a full-time military employee based at Robins Air Force Base in Georgia.

73.     Air Force NCO has served with distinction in duties that include being flight member and supervisor in missions both stateside and overseas, as well as being a weapons instructor, and a deployment manager.

74.     At various times in his career, Air Force NCO has worked remotely.

75.     Since early 2020, Air Force NCO has followed all COVID-19 related precautions, including masking, social distancing, and working remotely.

76.     Air Force NCO has consistently and fully supported and sustained Defendants' interests in military readiness, unit cohesion, good order, discipline, health, and safety.

### Air Force Special Agent's Career

77.     For more than 10 years, Air Force Special Agent has served his country in the United States Air Force.

78.     The military has awarded Air Force Special Agent numerous medals, including two Air and Space Commendation Medals, an Air and Space Achievement Medal, and an Air Force Good Conduct Medal.

79.     Until receiving a Letter of Reprimand for not getting the COVID-19 vaccination, Air Force Special Agent has never been disciplined by the Air Force, nor has there ever been cause to discipline him for any reason.

80.     Air Force Special Agent currently serves as an Individual Mobilization Augmentee (IMA) within the Reserve Component of the United States Air Force. In his employment as a Special Agent with the Air Force OSI since 2013, he has worked in a variety of geographic regions within the United States including as a base-level fraud agent, criminal branch chief, and as a superintendent at numerous detachments, and he has never been deployed overseas.  He currently lives in California.

81.     At various times in his career, Air Force Special Agent has worked remotely.

82.     Since early 2020, Air Force Special Agent has followed all COVID-19 related precautions, including masking, social distancing, and working remotely.

83.     Air Force Special Agent has consistently and fully supported and sustained Defendants' interests in military readiness, unit cohesion, good order, discipline, health, and safety.

**Air Force Engineer's Career**

84.     For more than 10 years, Air Force Engineer has served his country in the United States Air Force.

85.     Air Force Engineer is an officer in the United States Air Force and a licensed professional engineer.

86.     The military has awarded Air Force Engineer numerous medals, including three Meritorious Service Medals, a Navy Commendation Medal, and two Air Force Commendation Medals.

87.     Air Force Engineer has never been disciplined by the Air Force, and the Air Force has never had cause to discipline him, for any reason.

88.     Air Force Engineer currently serves in a managerial role providing a broad range of civil engineering support to multiple Air Force bases across the continental United States.  He currently lives in Virginia.

89.     Air Force Engineer has been willing and able and remains willing and able to work remotely, wear a mask, and test periodically, as appropriate and as required.

90.     Air Force Engineer has consistently and fully supported and sustained Defendants' interests in military readiness, unit cohesion, good order, discipline, health, and safety.

## Plaintiffs' Sincerely Held Religious Beliefs

91.     Plaintiffs are Christians.

92.     As Christians, Plaintiffs believe that abortion is a grave evil and contrary to their faith.

93.     Plaintiffs sincerely believe that receiving a vaccine that was derived from or tested on aborted fetal tissue in its development would violate their conscience and is contrary to their faith.

94.     All of the COVID-19 vaccines currently available were derived from or tested on (as part of their development) aborted fetal tissue.  For this reason, they are unwilling to receive one of the COVID-19 vaccines currently available.

95.     In addition, in accordance with their faith, Plaintiffs believe that the "body is the temple of the Holy Spirit" (1 Cor. 6:19-20), and that getting injected with a novel substance of unknown long-term effects would violate this belief.

96.     Plaintiffs do not oppose all vaccines.

**Plaintiffs' Natural Immunity**

97.     In December 2020, Air Force Officer contracted COVID-19 and fully recovered.

98.     In January 2021, Air Force Officer took a COVID-19 antibody test and tested positive for COVID-19 antibodies.

99.     In December 2021, Air Force Officer took a COVID-19 antibody test and tested positive for COVID-19 antibodies.

100.    In April 2021, Air Force NCO took a COVID-19 antibody test and tested positive for COVID-19 antibodies.

101.    In November 2021, Air Force NCO took a COVID-19 antibody test and tested positive for COVID-19 antibodies.

102.    In January 2022, Air Force Special Agent contracted COVID-19 and fully recovered.

103.    In December 2021, Air Force Engineer contracted COVID-19 and fully recovered.

**Plaintiffs' Requests for and Defendants' Denial of Exemption and Accommodation**

104.    In September 2021, the Air Force provided a form *Religious Accommodation Request for Immunization Waiver* ("Military Request Form").

105.    The Military Request Form provides in part that a service member requesting a religious accommodation will certify, "I am making an informed decision and fully understand that my request may have an adverse impact on my deployability, assignment, and/or international travel."

106.    The Military Request Form "reference[d]" "AFI 48-110, 16 Feb 18 *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease*" among other policies and procedures.

107.    On October 13, 2021, using the Military Request Form, Air Force Officer timely submitted a written request for religious accommodation.

108.    On October 27, 2021, Air Force Officer received a denial (dated October 26) of her October 13 request for religious accommodation.  The denial letter stated, "I do not doubt the sincerity of your beliefs."  The denial letter further stated that "less restrictive means of protecting our force from COVID-19 are unavailable."  The denial letter did not mention, and did not request additional information about, Air Force Officer's individual circumstances relevant to accommodation, such as natural immunity, willingness to mask, etc.

109.    On October 29, 2021, Air Force Officer timely appealed the October 27 denial of her October 13 request for a religious accommodation.

110.    In October 2021, Defendants issued a form *Request for Religious Exemption to the COVID-19 Vaccination Requirement* ("Civilian Request Form").

111.    On November 8, 2021, using the Civilian Request Form, Air Force Officer timely submitted a written request for a religious accommodation.

112.    On December 6, 2021, Air Force Officer received a written denial of her October 29 military appeal, signed by Surgeon General Robert I. Miller ("Officer Final Denial").

113.    The Officer Final Denial stated in part:  "Your final appeal is denied."

114.    The Officer Final Denial further stated in part: "The Department of the Air Force has a compelling government interest in requiring you to comply with the COVID-19 immunization requirement because preventing the spread of disease among the force is vital to mission accomplishment….  Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety.  There are no less restrictive

means in your circumstance as effective as receiving the above immunization in furthering these compelling government interests."

115.    The Officer Final Denial made no mention of Air Force Officer's natural immunity, which the Air Force knew about from Air Force Officer's request-for-accommodation submissions.

116.    The Officer Final Denial made no mention of AFI 48-110 or HHS/CMS vaccine regulation 86 Fed. Reg. at 61,604.

117.    Upon her December 6, 2021 receipt of the Final Denial, the Air Force gave Air Force Officer five days to make a choice among three options:  "(1) take the vaccine," "(2) submit retirement request if eligible" with retirement effective in the spring of 2022, or "(3) refuse vaccine in writing."  The Air Force further told her that "refusal to receive the vaccine… may be punishable under the Uniform Code of Military Justice (UCMJ)" and that "[c]ontinued refusal will result in involuntary reassignment to the IRR [Individual Ready Reserve]" without pay, benefits, or regular responsibilities.

118.    Air Force Officer wants to continue her work, but, faced with these three options, on December 11, 2021, Air Force Officer submitted an early retirement request, under protest.

119.    Based on the information Air Force Officer received from Defendants, the effective date of her retirement would be May 1, 2022 or June 1, 2022.

120.    Air Force Officer was and is willing to perform her work at the highest level and to take regular COVID-19 tests when working in-person on the base, wear a mask, socially distance, and work remotely as appropriate.

121.    Until the putative effective date of her forced early retirement in the spring of 2022, and pending adjudication of her civilian request for accommodation, as a military service

member Air Force Officer is still permitted to work on the base and to perform her normal work duties—still unvaccinated—provided she take regular COVID-19 tests when working in-person, wear a mask, and socially distance.

122.    During the period since December 11, 2021, Air Force Officer has worked on the base and performed her normal work duties.  During this time Air Force Officer has taken COVID-19 tests, worn a mask, and socially distanced.

123.    Service members with approved medical accommodations are permitted to work in person—presumably as long as they take COVID-19 tests, test negative, wear a mask, and socially distance—with no forced early retirement or other adverse employment consequences.

124.    Unlike those with medical accommodations and clinical-trial participants, and despite posing the same (or less, given her natural immunity) risk than they do, Air Force Officer's refusal to be vaccinated cost Air Force Officer her right to future employment (beyond her forced retirement date).

125.    By refusing to take the COVID-19 vaccine, being forced into early retirement, and losing her Air Force position, Air Force Officer stands to lose more than a million dollars in salary and benefits.  Air Force Officer planned to rely on this compensation in retirement in due course.

126.    While the military has issued a final denial of Air Force Officer's military requests for accommodation, her civilian request for accommodation is still pending.  Air Force Officer has not been told when a ruling on her civilian request will be issued.

127.    Air Force Officer understood that a ruling on her civilian request could be issued any day.

128.    Air Force Officer has been advised that there is no opportunity to appeal a civilian denial, unlike the military denial, so an initial civilian denial is considered final.

129.    Air Force Officer reasonably expected that the Air Force would deny her civilian request, because Defendants have denied all COVID-19 vaccine religious accommodation requests of all service members including Plaintiff's own military request.

130.    The military has not informed Air Force Officer what the impact of a denial of the civilian request would have on her employment which is both military and civilian, including whether she would be separated immediately or whether the terms of her forced early retirement in the spring of 2022 would apply.

131.    On September 23, 2021, using the Military Request Form, Air Force NCO timely submitted a written request for religious accommodation.

132.    No earlier than October 28, 2021, Air Force NCO received a denial (dated October 27, 2021) of his September 23 request for religious accommodation.  The denial letter stated, "I do not doubt the sincerity of your beliefs."  The denial letter further stated that "less restrictive means of protecting our force from COVID-19 are unavailable."

133.    On November 1, 2021, Air Force NCO timely appealed the October denial of his September 23 request for a religious accommodation.  On November 15, 2021, Air Force NCO submitted supplemental information in support of his appeal.

134.    On January 7, 2022, Air Force NCO received a written denial of his appeal, signed by Surgeon General Robert I. Miller ("NCO Final Denial").

135.    The NCO Final Denial stated in part:  "Your final appeal is denied."

136.    The NCO Final Denial further stated in part: "The Department of the Air Force has a compelling government interest in requiring you to comply with the COVID-19

immunization requirement because preventing the spread of disease among the force is vital to mission accomplishment…. Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety. There are no less restrictive means in your circumstance as effective as receiving the above immunization in furthering these compelling government interests."

137.   The NCO Final Denial made no mention of AFI 48-110 or HHS/CMS vaccine regulation 86 Fed. Reg. at 61,604.

138.   Upon his January 7, 2022 receipt of the NCO Final Denial, the Air Force gave Air Force NCO five days to make a choice among three options: (1) take the vaccine; (2) early retirement; (3) or face military discipline for disobeying the COVID-19 vaccine mandates.

139.   Air Force NCO wants to continue his work, but, faced with these three options, on January 12, 2022, Air Force NCO submitted an early retirement request, under duress.

140.   Based on the information Air Force NCO received from Defendants, the effective date of his retirement would be no later than June 1, 2022.

141.   Air Force NCO was told that he has been placed in a "medical hold," meaning that he cannot begin the process of formal separation until an "evaluation" of his current health status is complete.

142.   Air Force NCO was and is willing to perform his work at the highest level and to take regular COVID-19 tests when working in-person on the base, wear a mask, socially distance, and work remotely as appropriate.

143.   Until the putative effective date of his forced early retirement in the spring of 2022, and pending resolution of the "evaluation," as a military service member Air Force NCO is still permitted to work on the base and to perform his normal work duties-still unvaccinated-

provided he take regular COVID-19 tests when working in-person, wear a mask, and socially distance.

144.   Unlike those with medical accommodations and clinical-trial participants, and despite posing the same (or less, given his natural immunity) risk than they do, Air Force NCO's refusal to be vaccinated cost Air Force NCO his right to future employment (beyond his forced retirement date).

145.   If Air Force NCO had not been forced into early retirement in 2022, he could have retired no earlier than 2023 with full active-duty benefits and privileges.

146.   By refusing to take the COVID-19 vaccine, being forced into early retirement, and losing his Air Force position, Air Force NCO stands to lose hundreds of thousands of dollars in pay, not counting the value of lost benefits including medical benefits.  Air Force Officer planned to rely on this compensation in retirement in due course.

147.   Currently Air Force NCO's work unit is understaffed and task-saturated, and none of the already limited personnel there is currently able or qualified to effectively take over his position.  This deficiency may have a significant negative impact on military readiness for multiple years.  Forcing competent and capable unvaccinated service members such as Air Force NCO to separate would exacerbate the problem.

148.   On November 1, 2021, Air Force Special Agent timely submitted a written request for religious accommodation.

149.   No earlier than January 18, 2021, Air Force Special Agent received a denial (dated January 18, 2021) of his November 1 request for religious accommodation.  The denial letter stated, "The moral/religious basis for this request is sincerely held."  The denial letter

further stated that "there are no less restrictive measures related to COVID-19 vaccination which can be implemented to meet this compelling government interest."

150.    On January 22, 2022, Air Force Special Agent timely appealed the January 18 denial of his November 1 request for a religious accommodation.

151.    On February 17, 2022, Air Force Special Agent received a written denial of his appeal, signed by Surgeon General Robert I. Miller ("Special Agent Final Denial").

152.    The Special Agent Final Denial stated in part:  "Your final appeal is denied."

153.    The Special Agent Final Denial further stated in part: "The Department of the Air Force has a compelling government interest in requiring you to comply with the COVID-19 immunization requirement because preventing the spread of disease among the force is vital to mission accomplishment….  Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety.  There are no less restrictive means in your circumstance as effective as receiving the above immunization in furthering these compelling government interests."

154.    The Special Agent Final Denial made no mention of AFI 48-110 or HHS/CMS vaccine regulation 86 Fed. Reg. at 61,604.

155.    Upon his January 7, 2022 receipt of the Special Agent Final Denial, the Air Force gave Air Force Special Agent five days to make a choice among three options: (1) take the vaccine; (2) early retirement; (3) or face military discipline for disobeying the COVID-19 vaccine mandates.

156.    Because Air Force Special Agent was not eligible for retirement, the only options open to him were to take the vaccine or to face discipline.

157.    On March 2, 2022, Air Force Special Agent was informed that he was being promoted, but only if he agreed to take the vaccine.

158.    On January 18, 2022, Air Force Special Agent had tested positive for COVID-19, and has since fully recovered.  Air Force Special Agent continues to maximize telework and remote work, wear a mask, and practice social distancing when inside the office or traveling.

159.    In Air Force Special Agent's home state as well as under CDC guidance, those who have tested positive for COVID-19 and are no longer symptomatic are advised to wait 90 days to take the vaccine. Air Force Special Agent therefore requested an extension of the deadline for compliance with the mandate. In addition, Air Force Special Agent had been informed that he had five days after final denial of his appeal to "initiate" the process, and that it must be completed no later than seven weeks from receipt of the denial.

160.    Even though it violates his religious belief, Air Force Special Agent therefore scheduled an appointment to take the vaccine, under duress, because he did not believe he could give up his livelihood at this time, because he sole provider for his family including his wife and children. Air Force Special Agent was unable to keep his appointment for vaccination, however, due to a scheduling conflict with his civilian job. Air Force Special Agent therefore rescheduled his appointment to take the vaccine.

161.    Nevertheless, on March 18, 2022, Air Force Special Agent was issued a Letter of Reprimand for failure to timely comply with the order to obtain the vaccine. Air Force Special Agent was given forty-five (45) days to submit comments or documents for consideration. The specific punishment to be meted out was not set forth.

21

162.    If Air Force Special Agent is discharged, he stands to lose his health insurance, his Air Force salary, future retirement and lifetime medical benefits, as well as opportunities for advancement.

163.    Air Force Special Agent was and is willing to perform his work at the highest level and to take regular COVID-19 tests when working in-person on the base, wear a mask, socially distance, and work remotely as appropriate.

164.    As a reservist, Air Force Special Agent works one day each month and two weeks each year. Air Force Special Agent lives in a different state than that in which his base is located, and has not had to set foot inside the office at headquarters for years.

165.    Throughout the pandemic, senior OSI leaders have strongly encouraged telework, rather than coming into an office. Numerous vacancies have been advertised that are 100% telework.

166.    Air Force Special Agent works out of an isolated, single-person office and was never a threat to the mission and maintained good health throughout the pandemic.  As such, he was never a threat to the Air Force mission.

167.    With Air Force Special Agent's group's current capabilities, all meetings and trainings are either telephonic, Zoom, Microsoft Teams, WebEx, etc., and there is always an option to dial in by phone. All official documents can be digitally signed, everyone has become accustomed to conducting business through email/phone, and most prefer the flexibility of continuing to work in a highly socially distanced environment. In short, Air Force Special Agent's current position involves virtually no physical interactions with others, so COVID-19 is not a factor.

168.     The OSI Reserve Common Training Assembly ("CTA") took place on January 8-9, 2022, and was entirely virtual.  Air Force Special Agent participated. OSI senior leaders described the virtual event as highly successful, the first in over twelve years, and an extremely effective forum for hundreds of OSI IMAs such as Air Force Special Agent, who were geographically dispersed throughout the U.S. and abroad, to "meet" with OSI leaders and other Air Force leaders who may have not had the opportunity to travel to a similar, in-person meeting. During the virtual CTA, it was reiterated to Air Force Special Agent and his colleagues that due to a limited budget, OSI IMAs will not be provided any specialized training, nor be sent to any additional courses. Due to the slowed-down deployment tempo, IMAs would likely not get the opportunity to deploy.

169.     On September 20, 2021, Air Force Engineer timely submitted a written request for religious accommodation.

170.     On or about December 20, 2021, Air Force Engineer received a denial (dated December 16, 2021) of his September 20 request for religious accommodation.  The denial letter stated, "I have received your request for an exemption from the COVID-19 vaccine, based on your sincerely held beliefs."  The denial letter further stated that "less restrictive means are insufficient to meet the compelling government in your vaccination."

171.     On December 24, 2021, Air Force Engineer timely appealed the denial of his September 20 request for a religious accommodation.

172.     On January 31, 2022, Air Force Engineer received a written denial of his appeal, signed by Surgeon General Robert I. Miller ("Engineer Final Denial").

173.     The Engineer Final Denial stated in part:  "Your final appeal is denied."

174.    The Engineer Final Denial further stated in part: "The Department of the Air Force has a compelling government interest in requiring you to comply with the COVID-19 immunization requirement because preventing the spread of disease among the force is vital to mission accomplishment…. Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety. There are no less restrictive means in your circumstance as effective as receiving the above immunization in furthering these compelling government interests."

175.    The Engineer Final Denial made no mention of AFI 48-110 or HHS/CMS vaccine regulation 86 Fed. Reg. at 61,604.

176.    Upon his January 7, 2022 receipt of the Engineer Final Denial, the Air Force gave Air Force Engineer five days to make a choice among three options: (1) take the vaccine; (2) separate from military service; (3) or face military discipline for disobeying the COVID-19 vaccine mandates.

177.    Air Force Engineer has not yet responded to this ultimatum. Air Force Engineer cannot in good conscience take the vaccine; it is more important to him to remain faithful to his Christian faith than to violate his religiously formed conscience for the sake of work and compensation. Still, Air Force Engineer would very much like to stay in the Air Force, and cannot bring himself to choose separation.

178.    If Air Force Engineer is discharged, he stands to lose his Air Force salary, future retirement and benefits, and opportunities for advancement.

179.    Air Force Engineer was and is willing to perform his work at the highest level and to take regular COVID-19 tests when working in-person on the base, wear a mask, socially distance, and work remotely as appropriate.

180.    RFRA and the Constitution prohibit Defendants from forcing Plaintiffs to choose between their religious beliefs and their employment.

181.    The Mandates have lowered Plaintiffs' morale as service members, because the Mandates have forced them to choose between their sincerely held religious beliefs and their livelihood.  The Mandates have lowered the morale of other service members for the same reasons.

182.    On February 15, 2022, the Court issued a preliminary injunction in favor of Air Force Officer individually as to the DoD Military Mandate, Air Force Military Mandate, and Air Force Military Order to Air Force Officer [Doc. 51].

183.    The Air Force's process purporting to protect religious rights protected by federal law and the Constitution is both illusory and insincere.

**CLASS ACTION ALLEGATIONS**

184.    This lawsuit is brought as a class action to redress Defendants' violations of federal statutory and constitutional law.

185.    The proposed Class consists of all members of the United States Air Force who (a) are subject to a mandate of the Department of Defense or Air Force to receive a COVID-19 vaccine, (b) submitted a request for religious accommodation regarding such mandate based on a sincerely held religious belief, and (c) have received or will receive a final denial of such request from the Department of Defense or Air Force.

186.    The Air Force has not identified any requests for religious accommodation regarding a COVID-19 vaccine mandate that have been denied on the basis of the Air Force claiming the requesting service member lacked a sincerely held religious belief.  *See* Doc. 40-2.

*See also* Doc. 40, 47, 47-5, 47-6, 52-5, 73-5 in *Navy SEAL 1 v. Biden*, No. Case 8:21-cv-02429-SDM-TGW (M.D. Fla.).

187.    This lawsuit is properly maintained as a class action under Federal Rules of Civil Procedure 23(a) and (b)(2).

188.    The Class satisfies the "numerosity" requirement under Rule 23(a)(1).

189.    The exact number of members of the Class is not precisely known, but there are more than 7,500 members of the Air Force who have submitted religious accommodation requests regarding the Mandates and at least 1,502 members of the Air Force to date who have received final denials of their religious accommodation requests.

190.    Joinder of all individual Class members is impracticable.

191.    The Class satisfies the "commonality" requirement under Rule 23(a)(2).

192.    Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and the Class members.

193.    Similar or identical constitutional and statutory violations, processes, policies, practices, and harm are at issue with respect to each Class member.

194.    The harm sustained by Class members flows in each instance from a common nucleus of operative facts, including: Defendants' processes, policies, or practices of across-the-board denial of all religious accommodation requests, Defendants' failure to conduct individualized assessments of religious accommodation requests, and the lack of factual basis for Defendants' claim that the Mandates satisfy strict scrutiny.

195.    Each instance of harm suffered by Plaintiffs and the Class members has directly resulted from a common course of illegal conduct.  Individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit.

196.    Determination of the following common questions of law or fact will resolve in one stroke the following issues that are central to the validity of Plaintiffs' and each Class member's claims:

a.    Whether the Air Force's process that supposedly protects religious rights as required by the Religious Freedom Restoration Act (RFRA) and the First Amendment is illusory and insincere.  [Doc. 51, p. 25].

b.    Whether the religious accommodation requests the Air Force claims to have approved are for service members already slated for separation.

c.    Whether the Air Force has a policy, practice, or procedure of not conducting "to the person" assessment to which service members are entitled under RFRA and/or the First Amendment.

d.    Whether the Air Force can demonstrate that it has a compelling interest in denying any religious exemptions from the mandates while freely granting exemptions for secular purposes.

e.    Whether the Air Force can demonstrate that vaccination of a religious service member is the least restrictive means of preventing the spread of COVID-19 when the Air Force is almost universally vaccinated, evidence is mounting that COVID-19 vaccination does not prevent COVID-19 infection or transmission, and the Air Force permits alternative prevention measures for secular objectors to vaccination.

197.    The Class satisfies the "typicality" requirement under Rule 23(a)(3).

198.    The claims alleged by the Plaintiffs and the resultant harms are typical of the claims of each member of the Class.

199.    All absent Class members have been injured, or are at risk of injury, as a result of the same processes, policies, or practices.

200.    The Class satisfies the "adequacy" requirement under Rule 23(a)(4).

201.    Plaintiffs will fairly and adequately protect the interests of the Class.

202.    Plaintiffs have a strong interest in vindicating not only their own rights but those of their fellow service members.

203.    There are no conflicts of interest between the Plaintiffs and the other Class members.

204.    Plaintiffs' counsel will adequately prosecute the action.

205.    Plaintiffs' counsel has extensive experience litigating class actions, other complex cases, and the types of claims asserted in this action.

206.    Plaintiffs' counsel is knowledgeable of the applicable law.

207.    Plaintiffs' counsel has committed sufficient resources to represent the Class.

208.    Plaintiffs satisfy the requirements of Rule 23(b)(2).

209.    Defendants have acted or failed to act on grounds generally applicable to the Class, necessitating declaratory and injunctive relief for the Class.

**FIRST CAUSE OF ACTION**
**<u>Violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*.</u>**

210.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

211.    RFRA states that the government shall not substantially burden a person's exercise of religion even by means of a rule of general applicability. 42 U.S.C. § 2000bb-1.

212.    RFRA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

213.    The exercise of religion involves not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons.

214.    The Mandates explicitly acknowledge that RFRA protects Department of Defense and Air Force service members.

### Exercise of Religion

215.    Plaintiffs sincerely believe that the exercise of their religion prevents them from submitting to injection of any of the presently available COVID-19 vaccines.

216.    Defendants acknowledge the sincerity and reasonableness of Plaintiffs' belief that their exercise of religion prevents them from receiving vaccination.

217.    More than 7,500 other Air Force service members share Plaintiffs' religious objection to being vaccinated for COVID-19.

218.    The government and reviewing courts may not question whether sincerely held religious beliefs are reasonable.

### Substantial Burden

219.    RFRA imposes strict scrutiny on all actions of the federal government that substantially burden a person's exercise of religion. 42 U.S.C. § 200bb-1(b).

220.    A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on an adherent to modify his or her behavior and to violate his or her beliefs.

221.    The Mandates impose on Plaintiffs and all service members whose religious exercise prevents vaccination for COVID-19 the choice between violating their religious beliefs and ending their career and livelihood.

222.    Forcing people to violate their religious beliefs or lose their employment is a substantial burden on their religious beliefs.

223.    According to the Military Request Form, making a "request" for a religious accommodation "may have an adverse impact on [the requesting service member's] deployability, assignment, and/or international travel."

224.    These adverse impacts can have permanent and lasting effects on the careers of service members.

225.    These adverse impacts, currently being imposed on more than 7,500 service members in the Air Force alone, impose substantial pressure on each religious objector to vaccination to modify his or her behavior and to violate his or her beliefs.

**Strict Scrutiny**

226.    Under RFRA, the Mandates are subject to strict scrutiny because they impose the above substantial burdens on the religious exercise of service members. 42 U.S.C. § 200bb-1(b).

227.    Strict scrutiny requires that, before imposing a substantial burden on a person's exercise of religion, the government must demonstrate that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 200bb-1(b).

228.    The Mandates fail strict scrutiny, both as applied to Plaintiffs and other Class members and facially as Defendants have interpreted them to disallow any religious accommodation.

**No Compelling Interest**

229.     Defendants may not rely on generalized or broadly formulated interests to justify requiring Plaintiffs or any service member to receive the COVID-19 vaccine in violation of their religious beliefs.

230.     Defendants must establish that they have a compelling governmental interest in denying an accommodation to each Plaintiff and each member of the Class in particular.

231.     Defendants do not have a compelling governmental interest in requiring each Plaintiff and Class member, or every Plaintiff and Class member, to receive a COVID-19 vaccine.

232.     Letters denying Plaintiffs a religious accommodation cited only generalized interests, present in every case, of military readiness, unit cohesion, good order, and discipline.

233.     Letters denying Plaintiffs a religious accommodation offered no consideration of Plaintiffs' particular circumstances. This is insufficient to establish a compelling governmental interest in requiring Plaintiffs to receive a COVID-19 vaccine.

234.     Plaintiffs have all developed natural immunity to COVID-19.

235.     Defendants have identified nothing to support a compelling interest in denying Plaintiffs in particular an accommodation from the Mandates.

236.     Although the Mandates invite service members to apply for religious exemptions, the enforcement record shows that Defendants have adopted a policy of denying all religious accommodations without considering particular circumstances.

237.     RFRA requires that Defendants grant accommodation in every case where denying one does not pass strict scrutiny.

238.    To enforce a law without granting any religious accommodations, Defendants must establish that denying every possible religious accommodation passes strict scrutiny.

239.    Defendants cannot establish a compelling interest in denying every religious accommodation to the Mandates.

240.    Defendants cannot establish a compelling interest in denying any religious accommodation to the Mandates.

241.    There can be no compelling interest justifying substantially burdening religious practice when a government measure leaves appreciable damage to that supposedly vital interest unprohibited.

242.    Defendants have granted thousands of accommodations for medical and administrative reasons.

243.    Allowance of accommodations for reasons other than religious ones demonstrates that Defendants can tolerate the risk posed by some service members remaining unvaccinated.

244.    Defendants' delay in imposing the Mandates also belies any claim that their interest in enforcing them is compelling.

245.    The Mandates were issued months after vaccines became available and months after the Department of Justice formally advised that government entities could impose mandatory vaccination requirements. U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip op.), https://www.justice.gov/olc/file/1415446/download.

246.   In the months since vaccinations were introduced, risk of COVID-19 transmission among service members has greatly decreased due to vaccination and/or previous infection among the population.

247.   In the months since vaccinations were introduced, risk of COVID-19 infection among service members has greatly decreased due to vaccination and/or previous infection among the population.

248.   As of March 2022, the risk of medically significant disease, hospitalization, and death from COVID-19 has been greatly reduced.

249.   Any compelling interest in mandating vaccination has decreased accordingly.

250.   Defendants have not and cannot establish a compelling interest in a military or Air Force-wide policy of denying religious accommodations to the Mandates, because RFRA requires that Defendants show a compelling interest to refuse each individual's accommodation in particular, and because Defendants delayed the Mandates for months and have granted accommodations for other reasons.

**Not the Least Restrictive Means**

251.   The least-restrictive-means standard is exceptionally demanding in that it requires the government to show it lacks other means of achieving its desired goal.

252.   So long as the government can achieve its interests in a manner that does not burden religion, it must do so.

253.   This standard requires Defendants to show that measures less restrictive of protected religious practice could not address their interest in reducing the spread of COVID.

254.   Requiring Plaintiffs to be vaccinated against COVID-19 is not the least restrictive means Defendants could have employed to serve any compelling interest.

255.    Plaintiffs have worked successfully for the Air Force, fulfilling their job responsibilities completely, throughout the pandemic, including while vaccines have been available.

256.    Defendants' denials of Plaintiffs' religious accommodation provides no explanation of why they cannot continue to fulfill their duties in many of the ways implemented during the height of the pandemic.

257.    The Air Force stated, without explanation, that Plaintiffs' work cannot be accommodated with the use of distancing measures, remote work, masking, hygiene requirements, and/or regular testing, even though those with medical and administrative accommodations and clinical-trial participants are permitted to work with such measures in place.

258.    Defendants have not shown that accommodating Plaintiffs remaining unvaccinated would increase their costs in any degree, given the continued presence of medically accommodated unvaccinated service members and the exemption for clinical-trial participants.

259.    If accommodations have little or no marginal cost, mandating that Plaintiffs be vaccinated cannot be the least restrictive means of preventing the spread of COVID-19.

260.    At the very least, Defendants have an obligation to demonstrate that universal vaccination—except for medical and administrative accommodation and exemption for clinical-trial participation—is the least restrictive way of pursuing their interests. That requires demonstrating why other paths to the same goal are inferior, which Defendants cannot do.

261.    Vaccinating someone with natural immunity, like Plaintiffs, does not minimize the risk to other service members.

262.    Not only is mandatory vaccination in Plaintiffs' cases not the least restrictive means of serving Defendants' interest in limiting the spread of COVID, vaccination does not serve that interest in any way at all.

263.    The denial of all service members' religious accommodations is not the least restrictive means to serve Defendants' interests.

264.    Universal denial of religious accommodations invites the nearly simultaneous separation of thousands of service members, including more than 7,500 service members from the Air Force alone, and suggests an impermissible hostility to religion.

265.    In denying Plaintiffs' religious accommodation, Defendants claimed generally to be serving the interests of "military readiness, unit cohesion, good order, and discipline."  These are not sufficiently compelling interests to satisfy strict scrutiny.

266.    Even if they were sufficiently compelling interests to satisfy strict scrutiny, Defendants have not demonstrated, and cannot demonstrate, that their interests in "military readiness, unit cohesion, good order, and discipline" would be served, rather than harmed, by reducing many thousands of service members from their ranks.

267.    To survive strict scrutiny, Defendants must show that separating thousands of religious objectors from the military, with concomitant loss of trained personnel and enormous administrative burden, better serves Defendants' interests than accommodating these same service members as unvaccinated service members.

268.    In Plaintiffs' case, accommodating their continued service has little or no marginal financial cost to Defendants.

269.    In each Class member's case, Defendants cannot show that alternative measures of preventing the spread of COVID-19 that do not burden free exercise are insufficient when

Defendants permit such alternative measures to allow the continued service of thousands of service members who are exempt from the Mandates for secular purposes.

270.    Plaintiffs' early separations would cause the Air Force administrative difficulty, along with the impact of losing many productive years of service from service members with training, experience, and seniority.

271.    A blanket policy of denying religious accommodations and ending the careers thousands of service members cannot credibly be described as the least restrictive means of serving the interests Defendants have identified.

272.    The Mandates are also not the least restrictive means to serve Defendants' interest in reducing the spread of COVID-19 or increasing the safety of service members, because it is by no means settled that the vaccinations Defendants insist upon actually add to the safety of the service members.

273.    Mandatory vaccination is also not the least restrictive means to serve Defendants' interest in reducing the spread of COVID-19 because it is by no means settled that vaccinations are more effective at preventing the spread of COVID-19 than alternative measures that do not burden free exercise, many of which the Air Force has adopted to accommodate the continued service of thousands of service members with secular exemptions from the Mandates.

274.    Denying each Class member's request for religious accommodation is not a necessary measure to prevent the spread of COVID-19 because the Air Force is otherwise nearly universally vaccinated.

275.    Defendants' policy of denying all religious accommodation requests no matter the circumstances is vastly out of step with policies in the rest of the country, including in the

countless workplaces across the country that currently provide religious accommodations without any evidence of causing harm.

276.    Defendants cannot establish that the Mandates are the least restrictive means of pursuing a compelling interest.

### RFRA relief

277.    Defendants' Mandates violate Plaintiffs' rights and the rights of their fellow service members under RFRA.

278.    Because of Defendants' policy and actions, Plaintiffs and the Class have suffered irreparable harm and are entitled to relief.

279.    Plaintiffs and the Class are entitled to a declaration that Defendants violated their rights under RFRA to the free exercise of religion and an order restraining and enjoining Defendants from denying their requests for religious accommodation, from forcing them to retire or separate from the military, and from taking any other adverse action against them based on their unvaccinated status. Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
### Violation of the Free Exercise Clause of the First Amendment
### U.S. Const. amend. I

280.    Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

### Exercise of Religion

281.    Plaintiffs sincerely believe that the exercise of their religion prevents them from submitting to injection of any of the presently available COVID-19 vaccines.

282.    Defendants acknowledge the sincerity of Plaintiffs' belief that their exercise of religion prevents them from receiving vaccination.

283.    More than 7,500 other Air Force service members share Plaintiffs' religious objection to being vaccinated for COVID-19.

284.    The government and reviewing courts may not question whether sincerely held religious beliefs are reasonable.

### Not Neutral and Generally Applicable

285.    The First Amendment's Free Exercise Clause prohibits the government from enacting laws burdening religious exercise that are not both neutral and generally applicable, unless they are narrowly tailored to a compelling a governmental interest.

286.    A law that is not neutral or not generally applicable and burdens religious exercise must satisfy strict scrutiny.

287.    The Mandates are not generally applicable.

288.    A law is not generally applicable if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.

289.    The Mandates allow service members to remain unvaccinated for medical and administrative reasons or if they participate in a clinical trial while disallowing service members from refraining for religious reasons.

290.    Even assuming a Plaintiff or any other Class member poses a risk by remaining unvaccinated, such risk would be no greater than the risk posed by other accommodated personnel.

291.    Since Defendants accept a risk from people who are unvaccinated for secular reasons but not from people with religious reasons, the Mandates are not generally applicable.

292.    Where a law includes a system of individualized accommodations based on particular circumstances, the government may not refuse to grant accommodations on the basis of religious hardship.

293.    The Mandates invite service members to apply for accommodations from the vaccine mandate on the basis of several individualized situations, including religious belief.

294.    Defendants have shown that accommodations based on medical and administrative circumstances and exemptions for clinical-trial participation are available, but they intend to deny all applications for religious accommodations.

295.    Defendants have granted thousands of medical and administrative accommodations.

296.    A mandate to which commanding officers grant accommodations for other reasons but not on the basis of religious belief is not generally applicable.

**Strict Scrutiny**

297.    A law that is not neutral or not generally applicable and burdens religious exercise must satisfy strict scrutiny.

298.    The Mandates fail strict scrutiny, both as applied to Plaintiffs and as applied to all service members.

**No Compelling Interest**

299.    Defendants may not rely on generalized or broadly formulated interests to justify requiring Plaintiffs or any service member to receive the COVID-19 vaccine in violation of their religious beliefs.

300.    Defendants must establish that they have a compelling governmental interest in denying an accommodation to each Plaintiff and each Class member in particular.

301.   Defendants do not have a compelling governmental interest in requiring Plaintiffs to receive a COVID-19 vaccine.

302.   Letters denying Plaintiffs a religious accommodation cited only generalized interests, present in every case, of military readiness, unit cohesion, good order, and discipline.

303.   Letters denying Plaintiffs a religious accommodation offered no consideration of Plaintiffs' particular circumstances. This is insufficient to establish a compelling governmental interest in requiring Plaintiffs to receive a COVID-19 vaccine.

304.   Plaintiffs have all developed natural immunity to COVID-19.

305.   Plaintiffs have effectively fulfilled their service responsibilities throughout the pandemic without putting anyone at risk, even while actually infected with COVID-19.

306.   Defendants cannot rely on generalized statements of interest to justify denying Plaintiffs an accommodation, and Defendants can identify nothing to support a compelling interest in denying Plaintiffs in particular an accommodation.

307.   Defendants have not established and cannot establish a compelling interest in denying a religious accommodation to every Class member.

308.   Defendants have not established and cannot establish a compelling interest in denying a religious accommodation to any individual Class member, including any Plaintiff.

309.   There can be no compelling interest justifying substantially burdening religious practice when a government measure leaves appreciable damage to that supposedly vital interest unprohibited.

310.   Defendants have granted thousands of accommodations to the Mandates for administrative and medical reasons.

311.    Allowance of exceptions for other reasons demonstrates that Defendants can tolerate the risk posed by some service members remaining unvaccinated. Defendants cannot simultaneously claim they have a compelling interest in denying accommodations to the same Mandates to protect the exercise of religion.

312.    Defendants' delay in imposing the Mandates also belies any claim that their interest in enforcing them is compelling.

313.    The Mandates were issued months after vaccines became available and months after the Department of Justice formally advised that government entities could impose mandatory vaccination requirements. U.S. Dep't of Justice, Office of Legal Counsel, "Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization," July 6, 2021 (slip op.), https://www.justice.gov/olc/file/1415446/download.

314.    In the months since vaccinations were introduced, risk of COVID-19 transmission among service members has greatly decreased due to vaccination and/or previous infection among the population.

315.    In the months since vaccinations were introduced, risk of COVID-19 infection among service members has greatly decreased due to vaccination and/or previous infection among the population.

316.    As of March 2022, the risk of medically significant disease, hospitalization, and death from COVID-19 has been greatly reduced.

317.    Any compelling interest in mandating vaccination has decreased accordingly.

318.    Defendants have not and cannot establish a compelling interest in a military or Air Force-wide policy of denying religious accommodations to the Mandates, because delaying

41

the Mandates for months and granting accommodations for secular, but not religious, reasons both demonstrate that the Mandates do not serve a truly compelling governmental interest.

### Not the Least Restrictive Means

319.    The least-restrictive-means standard is exceptionally demanding in that it requires the government to show it lacks other means of achieving its desired goal.

320.    So long as the government can achieve its interests in a manner that does not burden religion, it must do so.

321.    This standard requires Defendants to show that measures less restrictive of protected religious exercise could not address its interest in reducing the spread of COVID-19.

322.    Requiring Plaintiffs to be vaccinated against COVID-19 is not the least restrictive means Defendants could have employed to serve any compelling interest.

323.    Plaintiffs have worked for the Air Force diligently, fulfilling their job responsibilities completely, throughout the pandemic, including while vaccines have been available.

324.    Defendants' denial of Plaintiffs' religious accommodation provides no explanation of why they cannot continue to fulfill her duties in many of the ways implemented during the height of the pandemic.

325.    Defendants do not and cannot explain why Plaintiffs' work cannot be accommodated with the use of distancing measures, remote work, masking, hygiene requirements, and/or regular testing, while those with medical and administrative accommodations and clinical-trial participants are permitted to work with such measures in place.

326.    Defendants have not shown that accommodating Plaintiffs remaining unvaccinated would increase their costs in any degree, given the allowance for medical and administrative accommodations and exemptions for clinical-trial participants.

327.    Defendants have not shown and cannot show that accommodating each Class member remaining unvaccinated would increase their costs in any degree, given the allowance for medical and administrative accommodations and exemptions for clinical-trial participants.

328.    If accommodations have little or no marginal cost, mandating that Plaintiffs or any individual Class member be vaccinated cannot be the least restrictive means of preventing the spread of COVID-19.

329.    At the very least, Defendants have an obligation to demonstrate that their policy of universal vaccination—except for medical and administrative accommodation and exemption for clinical-trial participation—is the least restrictive way of pursuing their compelling interest. That requires demonstrating why other paths to the same goal are inferior, which Defendants cannot do.

330.    Vaccinating those with natural immunity, like Plaintiffs, does not minimize the risk to other service members.

331.    Not only is mandatory vaccination in Plaintiffs' cases not the "least restrictive means" of serving Defendants' interest in limiting the spread of COVID-19, vaccination does not serve that interest in any way at all.

332.    Nor is the denial of religious accommodations to all Class members the least restrictive means to serve Defendants' interests.

333.    Universal denial of religious accommodations invites the nearly simultaneous separation of thousands of service members including more than 7,500 service members from the Air Force alone, and suggests an impermissible hostility to religion.

334.    In denying Plaintiffs' religious accommodation, Defendants claimed generally to be serving the interests of military readiness, unit cohesion, good order, and discipline. These are not sufficiently compelling interests to satisfy strict scrutiny.

335.    Even if they were sufficiently compelling interests to satisfy strict scrutiny, Defendants have not demonstrated, and cannot demonstrate, that their interests in "military readiness, unit cohesion, good order, and discipline" would be served, rather than harmed, by separating thousands of service members.

336.    To survive strict scrutiny, Defendants must show that separating the thousands of religious objectors from the military, with concomitant loss of trained personnel and enormous administrative burden, better serves the military's interests than accommodating these same service members as unvaccinated service members.

337.    Accommodating Plaintiffs' continued service has little or no marginal financial cost to Defendants.

338.    In each Class member's case, Defendants cannot show that alternative measures of preventing the spread of COVID-19 that do not burden free exercise are insufficient when Defendants permit such alternative measures to allow the continued service of thousands of service members who are exempt from the Mandates for secular purposes.

339.    Plaintiffs' early separations would cause the Air Force administrative difficulty, along with the impact of losing many productive years of service from service members with training, experience, and seniority.

340.    A blanket policy of denying religious accommodations and ending the careers of thousands of service members, including more than 7,500 Air Force service members alone, cannot credibly be described as the least restrictive means of serving the interests Defendants have identified.

341.    The Mandates are also not the least restrictive means to serve Defendants' interest in reducing the spread of COVID-19 or increasing the safety of service members, because it is by no means settled that the vaccinations Defendants insist upon actually add to the safety of the service members.

342.    Mandatory vaccination is also not the least restrictive means to serve Defendants' interest in reducing the spread of COVID-19 because it is by no means settled that vaccinations are more effective at preventing the spread of COVID-19 than alternative measures that do not burden free exercise, many of which the Air Force has adopted to accommodate the continued service of thousands of service members with secular exemptions from the Mandates.

343.    Denying each Class member's request for religious accommodation is not a necessary measure to prevent the spread of COVID-19 because the Air Force is otherwise nearly universally vaccinated.

344.    To identify whether Defendants have employed the least restrictive means, courts look to whether other jurisdictions have addressed the same interests in less restrictive ways.

345.    Defendants' policy of denying all religious accommodation requests no matter the circumstances is vastly out of step with policies in the rest of the country, including in the countless workplaces across the country that currently provide religious accommodations without any evidence of causing harm.

346.     Defendants cannot establish that the Mandates are the least restrictive means of pursuing a compelling interest.

### First Amendment relief

347.     Accordingly, Defendants' Mandates violate Plaintiffs' rights and the rights of all Class members under the First Amendment to the United States Constitution.

348.     Because of Defendants' policy and actions, Plaintiffs and the Class have suffered irreparable harm and are entitled to relief.

349.     Plaintiffs and the Class are entitled to a declaration that Defendants violated their rights under the First Amendment to the free exercise of religion and an order restraining and enjoining Defendants from denying their requests for religious accommodation, from forcing them to retire or separate from the military, and from taking any other adverse action against them based on their unvaccinated status.

### THIRD CAUSE OF ACTION
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 551, 701-06

350.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

351.     Under the Administrative Procedure Act ("APA"), a court shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).

352.     The Department of Defense and the branches of the military, including the Air Force, Navy, Army, and Marines, are "agencies" under the APA.  5 U.S.C. § 551(1).

353.     The Mandates are each a "rule" under the APA reviewable under the APA.  5 U.S.C. § 551(4).

354.    Defendants' wrongful actions are "agency actions" reviewable under the APA.  5 U.S.C. §§ 551(13), 704.

355.    With their Mandates, Defendants wrongfully denied Plaintiffs and other service members including all Class Members the opportunity to seek, under AFI 48-110, a medical exemption based on their natural immunity.

356.    The Court should hold unlawful and set aside the Mandates, because they are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and without observance of procedure required by law.

357.    Defendants have violated Plaintiffs' rights and the rights of all Class Members under the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants and provide the following relief:

1.  an order that Plaintiffs may maintain this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2);

2.  a declaratory judgment that the Mandates violate Plaintiffs' and Class members' rights under the First Amendment to the United States Constitution;

3.  a declaratory judgment that the Mandates violate Plaintiffs' and Class members' rights under the Religious Freedom Restoration Act;

4.  a declaratory judgment that the Mandates violate Plaintiffs' and Class members' rights under the Administrative Procedure Act;

5.  a preliminary injunction and a permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting in concert with them from enforcing the Mandates against Plaintiffs or any member of the Class and

from taking any adverse action against Plaintiffs or any member of the Class on the basis of this lawsuit or of Plaintiffs' or any member's request for religious accommodation related to the Mandates;

6. an order declaring unlawful and setting aside the Mandates challenged in this Complaint;

7. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412;

8. relief to which Plaintiffs may be entitled that is incidental to injunctive or declaratory relief;

9. relief to which the Class may be entitled that is incidental to injunctive or declaratory relief;

10. all other and further relief to which Plaintiffs may be entitled; and

11. all other and further relief to which the Class may be entitled.

Dated: April 27, 2022

Respectfully submitted,

/s/ Adam S. Hochschild

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Special Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Michael McHale, *pro hac vice*
THOMAS MORE SOCIETY – Counsel
10506 Burt Circle, Ste. 110
Omaha, NE 63114
(402)501-8586
mmchale@thomasmoresociety.org

Paul M. Jonna, *pro hac vice*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

Michael R. Hirsh, GA #357220
Hirsh Law Office, LLC
2295 Towne Lake Parkway
Suite 116-181
Woodstock, GA 30189
(678)653-9907
michael@hirsh.law

*Counsel for Plaintiffs*