**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

---

**AIR FORCE OFFICER**, **AIR FORCE NCO**,
**AIR FORCE SPECIAL AGENT**, and **AIR
FORCE ENGINEER**,

　　　　　　Plaintiffs,

　　v.

**LLOYD J. AUSTIN**, **III**, in his official capacity
as Secretary of Defense; **FRANK KENDALL**,
**III**, in his official capacity as Secretary of the Air
Force; and **ROBERT I. MILLER**, in his official
capacity as Surgeon General of the Air Force,

　　　　　　Defendants.

Case No. 5:22-cv-00009-TES

---

**DEFENDANTS' MOTION TO DISMISS,
AND IN THE ALTERNATIVE, MOTION TO SEVER**

　　　For the reasons described in the attached memorandum, Defendants move to dismiss Plaintiffs' Second Amended Class Complaint. This Court lacks subject-matter jurisdiction because Plaintiffs' claims are not ripe for judicial review. *See* Fed. R. Civ. P. 12(b)(1). Plaintiffs' claims are also not justiciable since no Plaintiff has exhausted available administrative remedies. *See* Fed. R. Civ. P. 12(b)(1), (6). Plaintiff's Third Cause of Action claiming a violation of the Administrative Procedure Act ("APA") should be dismissed for failure to state a claim upon which relief can be granted. Finally, Plaintiffs Air Force Special Agent and Air Force Engineer have no connection to this forum and their claims should be dismissed and/or severed. *See* Fed. R. Civ. P. 12(b)(2), (3); Fed. R. Civ. P. 21.

Dated: May 11, 2022

PETER D. LEARY
United States Attorney
Middle District of Georgia

/s/ Lance Simon
LANCE SIMON
Assistant United States Attorney
Georgia Bar No. 447643
ROGER C. GRANTHAM, JR.
Assistant United States Attorney
Georgia Bar No. 860338
United States Attorney's Office
300 Mulberry St., Suite 400
P.O. Box 1702
Macon, GA 31202
Tel: (478) 621-2663
Email: lance.simon@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ Cassandra Snyder
ANDREW E. CARMICHAEL
Senior Trial Counsel
ZACHARY A. AVALLONE
CODY T. KNAPP
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **AIR FORCE OFFICER**, **AIR FORCE NCO**, **AIR FORCE SPECIAL AGENT**, and **AIR FORCE ENGINEER**, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN**, **III**, in his official capacity as Secretary of Defense; **FRANK KENDALL**, **III**, in his official capacity as Secretary of the Air Force; and **ROBERT I. MILLER**, in his official capacity as Surgeon General of the Air Force, <br><br> Defendants. | Case No. 5:22-cv-00009-TES |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Introduction ...................................................................................................................................... 1

Background ....................................................................................................................................... 2

Argument ......................................................................................................................................... 4

    I.    Plaintiffs' Claims Against the Civilian Vaccination Requirement Should Be Dismissed ............ 4

        A.    The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Civilian Vaccination Requirement. ................................................................................................................................... 4

        B.    Plaintiffs' Claims Against the Civilian Vaccination Requirement Lack Merit. .......................... 7

    II.    Military Vaccine Claims Are Not Ripe. .......................................................................................... 10

    III.    Plaintiffs Who Chose Retirement Do Not Have Justiciable Claims. ....................................... 12

    IV.    No Plaintiff Has Exhausted Their Administrative Remedies. .................................................... 14

        A.    No Plaintiff Has Been Subject to Final Discipline. ..................................................................... 16

        B.    Exhaustion Includes Pursuing Relief through the Air Force Board for Correction of Military Records. ................................................................................................................................ 18

    V.    The Court Lacks Jurisdiction Over Count Three (APA), and Plaintiffs Otherwise Fail to State a Claim. ....................................................................................................................................... 19

    VI.    Air Force Special Agent and Air Force Engineer Have No Connection To This Forum and Should be Severed and Dismissed. ..................................................................................................... 22

    VII.    All Plaintiffs Are Misjoined. ............................................................................................................ 23

Conclusion ...................................................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010) ..............................................................25

*Ahmed v. Miller*,
  452 F. Supp. 3d 721 (E.D. Mich. 2020)..............................................25

*Air Force Officer v. Austin*,
  --- F. Supp. 3d ----, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ............................3, 12, 14, 15

*Aktepe v. United States*,
  105 F.3d 1400 (11th Cir. 1997)..........................................................20

*Altschuld v. Raimondo*,
  No. 21-cv-02779, 2021 WL 6113563 (D.D.C. Nov. 8, 2021) ...............10

*Am. Fed'n of Gov't Emps. Local 2018 v. Biden*,
  --- F. Supp. 3d ----, 2022 WL 1089190 (E.D. Pa. Apr. 12, 2022) ...........................5

*Amergi ex rel. Amergi v. Palestinian Auth.*,
  611 F.3d 1350 (11th Cir. 2010) ..........................................................25

*Anderson v. Moorer*,
  372 F.2d 747 (5th Cir. 1967) ..............................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................8

*Barber v. Am.'s Wholesale Lender*,
  289 F.R.D. 364 (M.D. Fla. 2013) ...........................................23, 24, 25

*Best v. Adjutant Gen., State of Fla., Dep't of Mil. Affs.*,
  400 F.3d 889 (11th Cir. 2005)...............................................................5

*Bois v. Marsh*,
  801 F.2d 462 (D.C. Cir. 1986) ............................................................19

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981)...........................................................18

*Brass v. Biden*,
  No. 21-cv-2778, 2021 WL 6498143 (D. Colo. Dec. 23, 2021) ...............3

v

*Brnovich v. Biden*,
  --- F. Supp. 3d ---, 2022 WL 252396 (D. Ariz. Jan. 27, 2022) ............................................3, 6

*Brown v. United States*,
  30 Fed. Cl. 227 (1993) .....................................................................................12

*Buchholz v. Meyer Njus Tanick, PA*,
  946 F.3d 855 (6th Cir. 2020) ................................................................................7

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) .......................................................................................24

*Canal A Media Holding, LLC v. USCIS*,
  964 F.3d 1250 (11th Cir. 2020) .............................................................................9

*Carpenter v. Univ. of Ala. Health Servs. Found. PC*,
  773 F. App'x 507 (11th Cir. 2019) .........................................................................14

*Champagne v. Schlesinger*,
  506 F.2d 979 (7th Cir. 1974) ..............................................................................19

*Chappell v. Wallace*,
  462 U.S. 296 (1983) .......................................................................................15

*Chatman v. Hernandez*,
  805 F.2d 453 (1st Cir. 1986) ..............................................................................19

*Christie v. United States*,
  518 F.2d 584 (Ct. Cl. 1975) .......................................................................14, 16, 17

*Church v. Biden*,
  --- F. Supp. 3d ----, No. 21-cv-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ............6, 8, 15

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................7

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) .............................................................................25

*Crawford v. Tex. Army Nat'l Guard*,
  794 F.2d 1034 (5th Cir. 1986) .............................................................................19

*Davis v. United States*,
  589 F.3d 861 (6th Cir. 2009) ..............................................................................19

*Defs. of Wildlife v. Bureau of Ocean Mgmt.*,
    684 F.3d 1242 (11th Cir. 2012) ................................................................. 9

*Denis v. Ige*,
    538 F. Supp. 3d 1063 (D. Haw. 2021) ......................................................22

*Dep't of Comm. v. New York*,
    139 S. Ct. 2551 (2019) ...............................................................................20

*Doe #1 – #14 v. Austin*,
    --- F. Supp. 3d ----, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021) .........21

*Donovan v. Vance*,
    --- F. Supp. 3d ----, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021) ....6, 8

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) .................................................................10

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ....................................................................................5, 6

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) ....................................................................... 8

*Feds for Med. Freedom v. Biden*,
    --- F. Supp. 3d ----, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022) .............. 3

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) .................................................................12

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005) ..................................................................... 5

*Friedman v. Clarkstown Cent. Sch. Dist.*,
    75 F. App'x 815 (2d Cir. 2003) .................................................................. 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...................................................................................12

*Fund for Animals, Inc. v. Rice*,
    85 F.3d 535 (11th Cir. 1996) .....................................................................10

*Garcia v. San Antonio Metro. Transit Auth.*,
    469 U.S. 528 (1985) ...................................................................................21

*Gilligan v. Morgan*,
    413 U.S. 1 (1973) .......................................................................................... 14, 20

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
    596 F. Supp. 2d 1282 (D. Ariz. 2009) ................................................................23

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ...........................................................................................24

*Gorsline v. U.S. Army Rsrv.*,
    13 F.3d 405 (10th Cir. 1993) ..................................................................... 19, 20

*Guitard v. U.S. Sec'y of Navy*,
    967 F.2d 737 (2d Cir. 1992) ...............................................................................19

*Hargray v. City of Hallandale*,
    57 F.3d 1560 (11th Cir. 1995) .................................................................... 13, 14

*Hays Med. Ctr. v. Azar*,
    956 F.3d 1247 (10th Cir. 2020) .........................................................................10

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ..................................................................... 14, 18

*Horn v. Schlesinger*,
    514 F.2d 549 (8th Cir. 1975) ..............................................................................19

*Horton v. City of St. Augustine*,
    272 F.3d 1318 (11th Cir. 2001) ........................................................................... 8

*Jorden v. Nat'l Guard Bureau*,
    799 F.2d 99 (3d Cir. 1986) .................................................................................19

*Kennedy v. Sec'y of Army*,
    191 F.3d 460 (9th Cir. 1999) ..............................................................................19

*Layman v. Harvey*,
    No. 8:05-cv-2208, 2007 WL 430678 (M.D. Fla. 2007) ........................................18

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*,
    ---F. Supp. 3d---, 2021 WL 5353879 (S.D. Fla. Oct. 29, 2021).............................22

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) .......................................................................1, 18

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) .......................................................................10

*Mullan v. Torrance*,
  9 Wheat. 537 (1824) ......................................................................................12

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
  538 U.S. 803 (2003) ......................................................................................10

*Nat'l Parks Conservation Ass'n v. Norton*,
  324 F.3d 1229 (11th Cir. 2003) .......................................................................9

*Navy Seal 1 v. Biden*,
  --- F. Supp. 3d ----, 2021 WL 5448970 & n.1 (M.D. Fla. Nov. 22, 2021) ...............7

*Oklahoma v. Biden*,
  --- F. Supp. 3d ---, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021) .......................3

*Parchman v. SLM Corp.*,
  896 F.3d 728 (6th Cir. 2018) ..........................................................................24

*Pike v. Johnson*,
  103 F. Supp. 3d 1362 (N.D. Ga. 2015) .............................................................21

*Roberts v. Roth*,
  No. CV 21-1797 (ABJ), 2022 WL 834148 (D.D.C. Mar. 21, 2022) .........1, 11, 12, 16

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) ......................................................................................12

*Ross v. City of Perry*,
  396 F. App'x 668 (11th Cir. 2010) ..................................................................14

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ........................................................................................20

*Rucker v. Sec'y of the Army*,
  702 F.2d 966 (11th Cir. 1983) .........................................................................18

*Rydie v. Biden*,
  No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) ...............................4, 5, 6

*S. Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020) ...................................................................................21

*Sanders v. McCrady*,
    537 F.2d 1199 (4th Cir. 1976) ................................................................ 19

*Scarseth v. United States*,
    52 Fed. Cl. 458 (2002) ............................................................... 12, 13

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975) ................................................................ 12, 15

*Short v. Berger*,
    No. CV-22-00444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022) ............................................ 14

*Short v. Berger*,
    No. 22-cv-01151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022) ........................... 11, 14, 15, 21

*Smith v. Harvey*,
    541 F. Supp. 2d 8 (D.D.C. 2008) ................................................................ 11

*Story v. Heartland Payment Sys., LLC*,
    461 F. Supp. 3d 1216 (M.D. Fla. 2020) ................................................................ 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ................................................................ 21

*Toca Producers v. FERC*,
    411 F.3d 262 (D.C. Cir. 2005) ................................................................ 8

*Toilet Goods Association v. Gardner*,
    387 U.S. 158 (1967) ................................................................ 11

*Torres v. Bank of Am., N.A.*,
    No. 8:17-cv-1534, 2017 WL 10398671 (M.D. Fla. Oct. 6, 2017) ............................................ 25

*Trump v. New York*,
    141 S. Ct. 530 (2020) ................................................................ 6, 10

*Turcios v. Delicias Hispanas Corp.*,
    275 F. App'x 879 (11th Cir. 2008) ................................................................ 10

*U.S. Postal Serv. v. Gregory*,
    534 U.S. 1 (2001) ................................................................ 7

*United States v. Bauer*,
    84 F.3d 1549 (9th Cir. 1996) ................................................................ 8

*United States v. Fausto,*
   484 U.S. 439 (1988) ................................................................................ 5

*Von Hoffburg v. Alexander,*
   615 F.2d 633 (5th Cir. 1980) ................................................................. 18

*Walter v. BMW of N. Am.,*
   8:18-cv-02875, 2019 WL 6251366 (M.D. Fla. Nov. 22, 2019) .............. 23

*Walden v. Ctrs. for Disease Control & Prevention,*
   669 F.3d 1277 (11th Cir. 2012) ............................................................. 24

*Wigand v. W. City Partners, Inc.,*
   No. 07-61492, 2008 WL 384394 (S.D. Fla. Feb. 11, 2008) ................... 23

*Wilbur v. United States,*
   767 F. App'x 873 (11th Cir. 2019) ........................................................ 5

*Winck v. England,*
   327 F.3d 1296 (11th Cir. 2003) ....................................................... 18, 21

Statutes

5 U.S.C. § 704 ........................................................................................... 9

5 U.S.C. § 706(2)(A) ............................................................................... 20

5 U.S.C. § 7513(a) .................................................................................... 6

5 U.S.C. § 7513(b) .................................................................................... 4

10 U.S.C. § 1552(a)(1) ............................................................................ 18

28 U.S.C. § 1391(e) ................................................................................. 22

Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................ 1

Fed. R. Civ. P. 12(b)(2) ............................................................................ 1

Fed. R. Civ. P. 12(b)(6) .......................................................................... 20

Fed. R. Civ. P. 20(a)(1) ........................................................................... 23

Fed. R. Civ. P. 20(a)(1)(A) ...................................................................... 23

Fed. R. Civ. P. 21 ......................................................................................................... 1

Other Authorities

Executive Order 14043 ...................................................................................... passim

## INTRODUCTION

Plaintiffs—four members of the Air Force—challenge the Air Force's COVID-19 civilian and military vaccination requirement as inconsistent with their religious beliefs. Plaintiffs' claims, brought pursuant to the Religious Freedom Restoration Act ("RFRA"), the First Amendment, and the Administrative Procedure Act ("APA"), should be dismissed for several reasons.

First, to the extent that Plaintiffs challenge the *civilian* vaccination requirement, their claims are precluded by the exclusive judicial review provisions applicable to federal workplace disputes, and they fail to meet the bare constitutional minimum of ripeness. Plaintiffs' claims also are wholly without merit because the civilian vaccination requirement permits religious exemptions, has not yet been applied to any relevant Plaintiff, and is amply justified under law.

This Court also lacks jurisdiction over challenges to the *military* vaccination requirement. None of the Plaintiffs has a ripe claim until the Air Force makes a final decision on what—if any—discipline or adverse consequence to impose for failure to vaccinate against COVID-19. As another court put it, "While plaintiff argues that his discharge is likely, he has not been discharged at this point," so "Plaintiff's claim is not constitutionally ripe because his alleged injury is not certainly impending." *Roberts v. Roth*, No. CV 21-1797 (ABJ), 2022 WL 834148, at *4 (D.D.C. Mar. 21, 2022).

In addition, Plaintiffs' claims are nonjusticiable because none has exhausted their administrative remedies. "[A] court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures." *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971). Here, the Air Force has not made a final decision what—if any—adverse consequences a Plaintiff will receive, nor have Plaintiffs completed available administrative appeals, including to the Air Force Board for Correction of Military Records ("BCMR"). Relatedly, Plaintiffs Air Force Officer and Air Force NCO, who have requested retirement, also do not have justiciable claims.

Plaintiffs' APA challenge to the military's policy that prior infection cannot be the basis for a

medical exemption to the vaccination requirement also fails. Plaintiffs have no standing to raise this claim, and have not exhausted administrative remedies, because none have sought or been denied a medical exemption because of prior infection. On the merits of the claim, the military's policy is not contrary to any law or Air Force policy. And even viewed in the light most favorable to Plaintiffs, the complaint does not allege facts sufficient to show that the Air Force's policy—which conforms with Center for Disease Control ("CDC") guidance—is arbitrary or capricious in violation of the APA.

Finally, all Plaintiffs' claims should be severed and the claims of the two Plaintiffs who have no connection to Georgia should be dismissed without prejudice to refiling in an appropriate forum.

## BACKGROUND

Defendants have previously set forth the background on the COVID-19 pandemic, the DoD COVID-19 vaccination directive, and the Air Force's implementing guidance. *See* Defs.' Opp'n to Pls.' Mot. for TRO and Prelim. Inj., ECF No. 38. Also at issue in this case, though not previously briefed, is the vaccination requirement for federal civilian employees, including civilian employees of the Air Force. So Defendants begin here.

President Biden imposed the civilian vaccination requirement on September 9, 2021, through Executive Order 14043, in order to "ensur[e] the health and safety of the Federal workforce and the efficiency of the civil service." *See* Exec. Order No. 14043 § 1. Executive Order 14043 instructs agencies to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of [their] Federal employees." *Id.* §§ 1, 2. The Executive Order also directs the Safer Federal Workforce Task Force to "issue guidance . . . on agency implementation of this requirement." *Id.* § 2. Task Force guidance recognizes that federal employees may be eligible for exceptions to the vaccination requirement based on a medical condition or sincerely held religious objection, *see* Task Force, Frequently Asked Questions ("FAQs"), Vaccinations, https://perma.cc/VEU4-VWAR ("Vaccination FAQs"), and indicates that each agency should

"follow its ordinary process to review and consider what, if any, accommodation it must offer" under applicable federal law, *see id.* (choose "Enforcement of Vaccination Requirement for Employees"); *see also* Template: Request for a Medical Exception to the COVID-19 Vaccination Requirement, https://perma.cc/LD7Q-D5JZ; Template: Request for a Religious Exception to the COVID-19 Vaccination Requirement, https://perma.cc/6A6D-EPH9. The guidance further explains that an employee should not be subject to discipline while her request is under consideration, and that if an exception is denied, the employee should be given two weeks to receive the first (or only) dose of a COVID-19 vaccine before being subject to discipline. *See* Enforcement FAQs.[1] Following the issuance of the Executive Order and applicable guidance, the Air Force took steps to implement the vaccination requirement for its civilian employees. *See* SAC ¶ 45.

Air Force Officer filed this case on January 6, 2022, Compl., ECF No. 1, and moved for a temporary restraining order and preliminary injunction, Mot. for TRO, ECF No. 2. This Court granted Air Force Officer's preliminary injunction as to the military vaccination requirement on February 15, 2022. *Air Force Officer v. Austin*, --- F. Supp. 3d ----, 2022 WL 468799, at *6 (M.D. Ga. Feb. 15, 2022). Defendants have appealed that decision. ECF No. 76. After the Court granted leave to file an amended complaint, Plaintiff filed a Second Amended Complaint that added three pseudonymous Plaintiffs—Air Force NCO, Air Force Engineer, and Air Force Special Agent. Second Am. Compl., ECF No. 84 ("SAC"). Defendants now move to dismiss all claims.

---

[1] Executive Order 14043 has been the subject of extensive litigation nationwide, and courts have rejected a variety of challenges to it. *See, e.g., Oklahoma v. Biden*, --- F. Supp. 3d ---, No. 21-cv-1136-F, 2021 WL 6126230, at *10 (W.D. Okla. Dec. 28, 2021); *Brnovich v. Biden*, --- F. Supp. 3d ---, No. 21-cv-1568, 2022 WL 252396, at *8, *12 (D. Ariz. Jan. 27, 2022); *Brass v. Biden*, No. 21-cv-2778, 2021 WL 6498143, at *3 (D. Colo. Dec. 23, 2021) *report and recommendation adopted*, 2022 WL 136903 (D. Colo. Jan. 14, 2022). Nevertheless, on January 21, 2022, a district court entered a nationwide preliminary injunction, prohibiting the government from "implementing or enforcing Executive Order 14043 until this case is resolved on the merits." *Feds for Med. Freedom v. Biden*, --- F. Supp. 3d ----, 2022 WL 188329, at *8 (S.D. Tex. Jan. 21, 2022). That decision has since been reversed on appeal, *see Feds for Med. Freedom v. Biden*, 30 F.4th 503, 511 (5th Cir. 2022), but the injunction remains in place pending issuance of the Fifth Circuit's mandate.

## ARGUMENT

I.   **Plaintiffs' Claims Against the Civilian Vaccination Requirement Should Be Dismissed.**

   A.   **The Court Lacks Jurisdiction Over Plaintiffs' Challenge to the Civilian Vaccination Requirement.**

To the extent Plaintiffs challenge the Air Force's civilian vaccination requirement, this Court lacks jurisdiction over those claims. First, through the Civil Service Reform Act ("CSRA"), Congress has precluded district court jurisdiction over challenges to federal personnel actions brought by federal civilian employees, including challenges to discipline imposed for failing to comply with the civilian vaccination requirement. Second, Plaintiffs' challenge to the civilian vaccination requirement is unripe. The only Plaintiff in this case who is subject to the civilian vaccination requirement, Air Force Officer, has a pending request for an exemption. She may yet receive the requested exemption, and she will not be subject to any discipline while her exemption request is pending. Thus, even if district court jurisdiction were not precluded, the Court would still lack jurisdiction on ripeness grounds.

   **1.** The CSRA sets forth the review procedures that apply when a federal employee challenges an employment action. Employees facing certain "proposed" major adverse actions are entitled to notice, an opportunity to respond, legal representation, and written reasons supporting the employing agency's decision. 5 U.S.C. § 7513(b). If an agency ultimately decides to take a major adverse action— suspension for more than 14 days, reduction in grade, reduction in pay, removal, or furlough of 30 days or less, *id.* § 7512—that action may generally be appealed directly to the Merit Systems Protection Board ("MSPB"), with judicial review in the Federal Circuit. *See id.* §§ 7513(d), 7703(b)(1). Corrective action for a less severe "personnel action" may generally be sought, depending on the nature of the allegation, through agency administrative or negotiated grievance procedures, or from the Office of Special Counsel. *See id.* § 1214(a)(3); *id.* § 2302. Judicial review in cases concerning "personnel actions" is also channeled to the Federal Circuit. *Id.* §§ 1214(c), 7703(b)(1)(A). In both types of cases, "prevailing employees are generally entitled to reinstatement, back pay, and attorneys' fees." *Rydie v.*

*Biden*, No. 21-2359, 2022 WL 1153249, at *4 (4th Cir. Apr. 19, 2022).

Altogether, the CSRA provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). From this framework, "it is 'fairly discernible' . . . that Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012). Thus, where the CSRA applies, it precludes district court jurisdiction. *See Elgin* , 567 U.S. at 8; *see also Best v. Adjutant Gen., State of Fla., Dep't of Mil. Affs.*, 400 F.3d 889, 894– 95 (11th Cir. 2005) (CSRA precludes APA claims). No relief is available outside of the CSRA's channels because "so far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.); *see also Wilbur v. United States*, 767 F. App'x 873, 877 (11th Cir. 2019) (CSRA is " a federal employee's exclusive route to relief for federal personnel actions").

The CSRA precludes challenges to the Air Force's civilian vaccination requirement. Plaintiffs (specifically, Air Force Officer) complain that refusal to comply with that requirement will result in removal from federal civilian employment, *see, e.g.*, SAC ¶ 124, and the relief they seek is "to avoid discharge for refusing to comply with Executive Order 14043," as implemented by the Air Force. *Feds for Med. Freedom*, 30 F.4th at 511. "This sort of employment-related relief is 'precisely the kind[] of relief that the CSRA empowers the MSPB and the Federal Circuit to provide,'" *id.* (quoting *Elgin*, 567 U.S. at 22), and so, as several courts have held, district courts lack jurisdiction over challenges to federal civilian employee vaccination requirements. *See id.* at 508–11; *Rydie v. Biden*, 2022 WL 1153249, at *3 ("Because we conclude that Congress intended for the CSRA to cover [the plaintiffs'] claims, we hold that the district court lacked jurisdiction."); *Am. Fed'n of Gov't Emps. Local 2018 v. Biden*, --- F. Supp. 3d ----, 2022 WL 1089190, at *5 (E.D. Pa. Apr. 12, 2022) ("If [plaintiffs] seek relief, whatever it

may be, they must proceed before the MSPB and then appeal to the Federal Circuit.").

**2.** Even if the CSRA did not preclude challenges to the civilian vaccination requirement, this Court would still lack jurisdiction because Plaintiffs' claims against that requirement are unripe. A dispute is constitutionally unripe if it is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam) (internal quotation marks omitted). And here, Plaintiffs' claims are plainly unripe both because no Plaintiff is currently subject to discipline for failure to comply with the civilian vaccination requirement, and because any possible discipline remains uncertain and speculative. Plaintiff Air Force Officer alleges that she has submitted a request for a religious exemption from the requirement, *see* SAC ¶ 111, and that her request "is still pending," *id.* ¶ 126. As discussed, so long as her request is pending, she will not be subject to discipline. *See supra* p. 4; Ex. 3, Rigsbee Decl. ¶ 7. And even if her request were denied, it is uncertain what form of discipline she might face. *Cf. Rydie*, 2022 WL 1153249, at *8 (noting possibility that agencies "may determine that [adverse] action against [the plaintiffs] wouldn't 'promote the efficiency of the service'" (quoting 5 U.S.C. § 7513(a))).

It is immaterial that Air Force Officer believes a ruling on her request "could be issued any day," SAC ¶ 127, or that she "expect[s] that the Air Force [will] deny her civilian request" based on her perception of its treatment of requests for exemption from the military vaccination requirement, *id.* ¶ 129. Indeed, multiple courts considering similar challenges to civilian employee vaccination requirements have held that potential injuries based on "hypothetical predictions of the outcomes of . . . exemption requests" are "insufficient to render an issue ripe for review." *Church v. Biden*, --- F. Supp. 3d ----, No. 21-cv-2815, 2021 WL 5179215, at *9 (D.D.C. Nov. 8, 2021) (internal quotation marks omitted); *see also Donovan v. Vance*, --- F. Supp. 3d ----, No. 4:21-cv-5148, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021); *Brnovich*, 2022 WL 252396. Moreover, Executive Order 14043 "expressly require[s] religious exemption" from federal agencies' civilian employee COVID-19 vaccination

requirements where such exemptions are required by law, and the Executive Order directs federal agencies to consider such exemption requests on an individualized basis. *Navy Seal 1 v. Biden*, --- F. Supp. 3d ----, 2021 WL 5448970, at \*2 & n.1 (M.D. Fla. Nov. 22, 2021). Plaintiffs' unsupported assumption that the Air Force will not properly comply with this directive is inconsistent with the "presumption of regularity [that] attaches to the actions of Government agencies," *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001), and does not render their claims appropriate for judicial review. *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *cf. Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 867 (6th Cir. 2020) (plaintiff "cannot establish standing based on his allegations of anxiety"). At minimum, allowing the Air Force to consider Air Force Officer's circumstances and exemption request—and to decide what discipline, if any, would be warranted if her request is denied and she remains unvaccinated—would crystallize any dispute and create a concrete record to guide the ultimate resolution of the issues. For now, however, Plaintiffs present only a premature, speculative grievance that cannot support jurisdiction.

**B. Plaintiffs' Claims Against the Civilian Vaccination Requirement Lack Merit.**

Even if this Court had jurisdiction over Plaintiffs' claims against the civilian vaccination requirement, those claims would still fail on the merits. Accordingly, they should be dismissed.

**1.** In their First and Second Causes of Action, Plaintiffs assert that the civilian vaccination requirement violates RFRA and the Free Exercise Clause. But as already noted, Executive Order 14043 "expressly require[s] religious exemption" where appropriate, *Navy Seal 1*, 2021 WL 5448970, at \*2 & n.1, and directs federal agencies to consider exemption requests on an individualized basis, applying RFRA's standards.[2] Moreover, it is undisputed that, prior to the nationwide injunction in

---

[2] RFRA "provides greater protection . . . than is available under the First Amendment," so "if a [plaintiff's] RFRA claim fails, the [plaintiff's] First Amendment claim necessarily fails." *Navy Seal 1*, 2021 WL 5448970, at \*9 (citation omitted).

*Feds for Medical Freedom*, the Air Force had instituted a process for evaluating claims for religious exemptions. *See, e.g.*, SAC ¶ 293. On its face, then, the civilian vaccination requirement imposes no burden, substantial or otherwise, on religious exercise. *Cf. Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001) (facial challenge is "the most difficult challenge to mount successfully" because challengers must "establish that no set of circumstances exists under which the [challenged government action] would be valid" (citation omitted)); *see also Donovan*, 2021 WL 5979250, at *6–7 (rejecting facial challenge to EO 14043).

**2.** To the extent Plaintiffs assert as-applied RFRA and free exercise claims, those claims fail because the civilian vaccination requirement has not been applied to any relevant Plaintiff. The Air Force has not yet reached even an initial decision with respect to Air Force Officer's exemption request, and there is no record documenting the agency's reasons for any potential denial of that request. *See Church*, 2021 WL 5179215, at *9 (the "absence of any factual record providing the basis for any denial of a religious accommodation request (if, in in fact any plaintiff's request is denied) hamstrings the Court's ability to evaluate" First Amendment and RFRA challenges to EO 14043); *see also Toca Producers v. FERC*, 411 F.3d 262, 266 (D.C. Cir. 2005) (dispute not ripe where agency had "yet to pass conclusively upon whether the [applicants] are entitled to the only relief they now seek"). Until Defendants can reach a decision regarding Air Force Officer's request, "[n]either the government nor the court has to accept the [Plaintiffs'] mere say-so" that the request will be denied. *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996); *see also Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (questioning religious nature of objection to vaccination); *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 819 (2d Cir. 2003) (same). At bottom, then, Plaintiffs' as-applied RFRA and free exercise claims consist only of "labels and conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted), so may also be dismissed for failure to state a claim.

**3.** Finally, to the extent that Plaintiffs' Third Cause of Action could be read to claim that the

APA required Defendants to permit medical exemptions from the civilian vaccination requirement based on alleged "natural immunity" to COVID-19, *see* SAC ¶¶ 355, that claim fails. For one thing, the civilian vaccination requirement has not been applied to any of the Plaintiffs in a manner that amounts to "final agency action" under the APA. 5 U.S.C. § 704; *see also Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1238 (11th Cir. 2003) (no final agency action where it is clear that "further administrative action is forthcoming"). But even beyond that threshold problem,[3] Plaintiffs cite no law requiring exemptions based on acquired immunity. The one military regulation that Plaintiffs cite, AFI 48-110, does not address COVID-19, *see id.* ¶ 3-1(a)(3), or exemptions based on prior COVID-19 infections, nor is it clear how that regulation might apply to Air Force Officer, *see id.* ¶ 3-3 (applying only to "[c]ertain civilian employees"). Thus, the Court should find that AFI 48-110 does not render the civilian vaccination requirement "unlawful" under the APA.

The Court should similarly reject any contention that failing to offer medical exemptions based on acquired immunity is arbitrary and capricious. *See* SAC ¶¶ 355–356. A court's review should be "extremely deferential" where, as here, the challenged policy "rests on the evaluation of complex scientific data within [an] agency's technical expertise." *Defs. of Wildlife v. Bureau of Ocean Mgmt.*, 684 F.3d 1242, 1250 (11th Cir. 2012) (citation omitted). In determining that federal employees must be vaccinated against COVID-19, with only legally required exceptions, the President explicitly relied on the CDC's determination that vaccination is the best way to slow the spread of COVID-19. *See* EO 14043 § 1; Task Force FAQs. Moreover, the CDC continues to recommend vaccination "regardless of a history of symptomatic or asymptomatic SARS-CoV-2 infection." CDC, Interim Clinical Considerations for Use of COVID-19 Vaccines (updated April 21, 2022), https://perma.cc/7V3Z-9UK5. That judgment clearly involves "technical or scientific matters within the agency's area of

---

[3] In the Eleventh Circuit, the APA's final-agency-action requirement is jurisdictional. *See Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1255 (11th Cir. 2020).

expertise" that are entitled to "especially strong" judicial deference. *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1264 (10th Cir. 2020) (citation omitted); *see also Altschuld v. Raimondo*, No. 21-cv-02779, 2021 WL 6113563, at *5 (D.D.C. Nov. 8, 2021) (noting the "federal and scientific consensus . . . that the vaccines are the 'best way to slow the spread of COVID-19'"). While Plaintiffs may prefer a different vaccination policy, that is no basis for invalidating agency action under the APA. *See, e.g.*, *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541–42 (11th Cir. 1996) (courts should not set aside agency decision "simply because the court is unhappy with the result reached").

## II.    Military Vaccine Claims Are Not Ripe.

As with Plaintiffs' civilian claims, Plaintiffs' claims challenging the military vaccination requirement are also unripe.  This motion raises a factual challenge to this Court's subject-matter jurisdiction over Plaintiffs' military claims. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (per curiam) (quoting *Morrison*, 323 F.3d at 925).  Further , "[i]n resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Morrison*, 323 F.3d at 924 n.5.

The doctrine of ripeness comes from "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (internal citation and quotation omitted).  The injury in fact prong of standing "often converges with ripeness." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).  "If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing." *Id.*  As the Supreme Court succinctly put it, a case is not ripe when the claim is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v.*

*New York*, 141 S. Ct. 530, 535 (2020) (citation omitted).

The denial of a religious accommodation request—standing alone—does not cause injury and is not a substantial burden on Plaintiffs' purported religious beliefs. The *consequences* that Plaintiffs face for failing to receive the COVID-19 vaccine after the denial may give rise to a substantial burden, but those consequences, if any, are far from certain here. *See Roberts*, 2022 WL 834148, at *3 (holding service member's RFRA claims brought by Air National Guardsman whose religious accommodation request appeal was denied by the Surgeon General were not ripe because pending discharge not final); *cf. Short v. Berger*, No. 22-cv-01151, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022) (holding that plaintiff challenging denial of religious accommodation request for COVID-19 vaccine had "not exhausted administrative remedies" despite receiving a decision on his religious accommodation request appeal because "he still must undergo separation proceedings before any permanent adverse consequences are imposed"), *appeal filed*, No. 22-55339 (9th Cir. Apr. 5, 2022).

The mere existence of Air Force policy that vaccine refusal *may* result in the initiation of removal proceedings is insufficient to confer standing. The Supreme Court in *Toilet Goods Association v. Gardner*, held a challenged regulation unripe for review because the regulation was permissive rather than mandatory—*i.e.*, one that did not compel the agency to act but only afforded the agency the discretion to act. 387 U.S. 158 (1967) (regarding regulation providing that Food and Drug Administration *may* suspend certification service to any person who has refused to permit inspection access). Similarly, here, Air Force guidance instructs that service members who continue to refuse to obey a lawful order to receive the COVID-19 vaccine after their exemption request has been denied or their retirement or separation has been rejected "will be subject to *initiation* of administrative discharge." Dec. 7, 2021, Secretary of the Air Force Memo, https://perma.cc/72K5-SN8E (emphasis added). But the Air Force's "initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F.

11

Supp. 2d 8, 13 (D.D.C. 2008); *see also Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) (explaining that simply being subject to military process with the prospect of some future punishment is not current harm and "the federal district courts *must* refrain from intervention, by way of injunction or otherwise" (emphasis added)).

Members of the Air Force may respond before the discharge recommendation goes to the separation authority, and—depending on the type of separation and the service member's time in service—the decision may move to a higher level, and the service member may be entitled to a formal administrative hearing before a decision is made regarding discharge. *See infra* Part IV.B. Although Plaintiffs have completed the appeal process for their religious accommodation requests, their claims are unripe because the Air Force has not yet made a final determination on separation or reassignment. *See Roberts*, 2022 WL 834148, at *4.[4]

## III.   Plaintiffs Who Chose Retirement Do Not Have Justiciable Claims.

Air Force Officer and Air Force NCO chose to retire from the military and thus do not have justiciable claims. Ex. 3, Rigsbee Decl. ¶¶ 4, 6. After a member of the military voluntarily chooses to retire, he does not have standing to challenge that retirement. *See Scarseth v. United States*, 52 Fed. Cl. 458, 468 (2002).[5] "A military resignation is presumed to be voluntary," *id.* (citations omitted), and a

---

[4] Defendants acknowledge that this Court preliminarily held that the harm to Air Force Officer was the choice whether to retire or have the Air Force initiate potential transfer to the Individual Ready Reserve. *Air Force Officer*, 2022 WL 468799 at *9. Defendants respectfully disagree and reserve their position in this motion that Air Force Officer has not properly pleaded a ripe claim. Regardless, the purported harm from facing the choice to retire or potential consequences does not apply to Air Force Special Agent who avers that he is not eligible to retire. SAC ¶ 156.

[5] After this Court granted Plaintiff's motion for a preliminary injunction, Air Force Officer requested to withdraw her retirement. Ex. 3, Rigsbee Decl. ¶ 6. But standing "must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)) (collecting cases). That Plaintiffs have since filed a Second Amended Complaint does not alter the analysis. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (noting "that subject-matter jurisdiction 'depends on the state of things at the time of the action brought'" (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824))). Even if the Second Amended Complaint did alter the analysis, Plaintiff cannot argue that her otherwise voluntary retirement was involuntary based on her retroactive retirement-request withdrawal. *See, e.g., Scarseth*, 52 Fed. Cl. at 474–75 (2002) (holding that service member's attempt to withdraw resignation did not render that resignation involuntary such that the court had jurisdiction); *Brown v. United States*, 30 Fed. Cl. 227, 230 (1993), *aff'd*, 26 F.3d 139 (Fed. Cir. 1994) (same).

voluntary resignation cannot form the basis of a statutory or constitutional claim, *Hargray v. City of Hallandale*, 57 F.3d 1560, 1563 (11th Cir. 1995). In this Circuit, courts consider five factors to decide whether a resignation was "obtained by coercion or duress":

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel."

*Id.* at 1568.

This standard is a high bar. The Eleventh Circuit has emphasized that "the mere fact that the choice is between comparably unpleasant alternatives . . . does not of itself establish that a resignation was induced by duress or coer[c]ion, hence involuntary." *Id.* Rather, "plaintiff *had a choice*" in whether to "stand pat and fight." *Id.* That "the employee may perceive his only option to be resignation . . . is irrelevant." *Id.* Thus, for example, the Eleventh Circuit has held that a plaintiff resigned voluntarily despite the fact that he was "forced to make the decision to resign while under time pressure," threatened with criminal prosecution, and did so "without the advice of counsel." *Id.* at 1570. In the military context, even a choice "between submitting a voluntary resignation and facing trial by court-martial does not render [a] resignation involuntary." *Scarseth* 52 Fed. Cl. at 474.

Here, Air Force Officer and Air Force NCO were presented three alternatives: (1) take any COVID-19 vaccine authorized by the FDA or the World Health Organization; (2) retire early; or (3) "face military discipline for disobeying the COVID-19 vaccine mandates." SAC ¶¶ 117, 138. For Air Force Officer, the potential discipline was "involuntary reassignment to the IRR." *Id.* ¶ 117. Air Force NCO faced the initiation of discharge proceedings. Before any military discipline could actually be imposed, Plaintiffs would have had additional opportunities to challenge the basis for any adverse action. As a matter of law, the availability of additional administrative processes means the resignation was not involuntary. *See Carpenter v. Univ. of Ala. Health Servs. Found. PC*, 773 F. App'x 507, 512 (11th

13

Cir. 2019) (finding resignation not under duress because "Carpenter could have refused to resign and challenged his termination at a hearing"); *Ross v. City of Perry*, 396 F. App'x 668, 670 (11th Cir. 2010) ("Although Ross might have believed he had no choice but to resign, he did, in fact, have the choice to refuse to resign and could later have appealed the termination to the city manager."). Moreover, the Air Force gave Plaintiffs five days to make a decision, SAC ¶¶ 117, 138—much longer than the "few minutes" the Eleventh Circuit held was sufficient time in *Hargray*, 57 F.3d at 1565.

Thus, even accepting the facts alleged in the SAC, Plaintiffs cannot show that their resignation requests were involuntary. Plaintiffs had time to consider their options and consult counsel, and ultimately voluntarily decided to retire. SAC ¶¶ 118, 139; *see also Christie v. United States*, 518 F.2d 584, 587 (Ct. Cl. 1975) ("[P]laintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause.").

## IV.   No Plaintiff Has Exhausted Their Administrative Remedies.

Plaintiffs also do not have justiciable claims against the military vaccine requirements since they have not exhausted available administrative remedies. As this Court explained, "the Eleventh Circuit recognized that judicial review of internal military matters should be 'forestall[ed]' until the administrative process is concluded." *Air Force Officer*, 2022 WL 468799, at *6 (citation omitted).[6] The importance of administrative exhaustion in the military context is paramount. *See Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). "Congress has exercised its plenary constitutional authority over

---

[6] The other *Mindes* factors— (1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved—also support a finding of non-justiciability. *See Short v. Berger*, No. CV-22-00444, 2022 WL 1203876, at *15 (D. Ariz. Apr. 22, 2022); *Mark Short*, 2022 WL 1051852, at *6 (finding third and fourth factor strongly support a finding of non-justiciability because "[a]rticulating compelling government interests involves plenty of factual considerations, as does assessing whether less restrictive means are available" and "[i]f the Court were to say that the military does not have a compelling interest in preventing the spread of COVID-19, or that there are less restrictive ways to achieve that goal other than by requiring Plaintiff to get vaccinated, it would necessarily involve itself in 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force'" (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)).

the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure." *Chappell v. Wallace*, 462 U.S. 296, 302 (1983). The result is "two systems of justice, to some extent parallel: one for civilians and one for military personnel"—a structure "the military has required, the Constitution contemplated, Congress has created and [the Supreme] Court has long recognized." *Id.* at 303–04. Thus, strict adherence to the exhaustion requirement in the special military context (1) avoids separation of powers problems, (2) minimizes the risk of harm to military readiness resulting from premature or unnecessary judicial intrusion into military matters, (3) preserves the primary purpose of the comprehensive remedial scheme Congress has provided for service members, and (4) permits the military to apply its expertise to sensitive military issues in the first instance. *See, e.g., Schlesinger*, 420 U.S. at 759–60 (explaining that there is "no injustice in requiring [a member of the military] to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well").

Defendants recognize that the Court preliminarily found that Air Force Officer exhausted her administrative remedies because "she submitted her religious accommodation request" and the Air Force "ultimately denied her final appeal." *Air Force Officer v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799, at *6 (M.D. Ga. Feb 15, 2022). However, no party "briefed or raised" the issue of exhaustion in the briefing for Air Force Officer's motion for preliminary injunction. *Id.* Defendants respectfully submit that with the benefit of briefing, the Court should conclude that Plaintiffs have failed to exhaust available administrative remedies. Indeed, several courts have denied relief to service-member plaintiffs who had received a final decision on a religious accommodation request and pursued RFRA and First Amendment claims before exhausting their discipline or separation remedies. *See Church*, 2021 WL 5179215, at *10–11; *Mark Short*, 2022 WL 1051852, at *4 ("Plaintiff has not exhausted administrative remedies, however. Although he has received a decision on his appeal, he still must

15

undergo separation proceedings before any permanent adverse consequences are imposed."); *cf.*
*Roberts*, 2022 WL 834148, at *4. Here, no Plaintiff has been even subject to final discipline, much less
exhausted available administrative remedies with the Air Force Board for Correction of Military
Records (Air Force "BMCR").

### A.   No Plaintiff Has Been Subject to Final Discipline.

No Plaintiff has received a final decision on any discipline for failure to receive the COVID-
19 vaccine. Two Plaintiffs—Air Force Officer and Air Force NCO—have chosen not to pursue
administrative relief and instead have opted to retire. As explained above, they have no standing to
challenge their retirements. Moreover, since neither "challenge[s] the validity of [their] proposed
discharge," *Christie*, 518 F.2d at 587, they have not exhausted their administrative remedies. As
discussed below, the other two Plaintiffs—Air Force Engineer and Special Agent—have also not
exhausted available administrative remedies.

Air Force Engineer is an "officer" and has served in the Air Force for "more than 10 years."
SAC ¶¶ 84–85. Commissioned officers facing discharge proceedings who have completed six or more
years of active commissioned service are generally entitled to a Board of Inquiry. *See* AFI 36-3206,
Administrative Discharge Proceedings for Commissioned Officers, Chapter 7,
https://perma.cc/75UU-DDE5; *see also* AFI 36-3207, Separating Commissioned Officers, ¶ 3.16.1.1
(providing that officers may be dismissed for cause for "failing to meet the prescribed standards of
performance and conduct"), https://perma.cc/VDJ4-R8FM.[7] A Board of Inquiry, made up of
Department of the Air Force Officers, may recommend removal or discharge, among other things.
AFI 36-3206 ¶¶ 7.31.1–7.31.4. If the Board of Inquiry recommends retaining the officer, the member
is notified and the action is ended. *See id.* ¶¶ 4.1 – 4.1.1. ("When a . . . board of officers . . . retains an

---

[7] Commissioned officers with less than six years of active commissioned service who are facing discharge are entitled to
present evidence to the appropriate show-cause authority. AFI 36-3206, Ch. 4; *id.* ¶ 1.1.

officer on active duty, the [show cause authority] may [r]einitiate discharge action only on the basis of new information that again shows the officer may be subject to administrative discharge."); *see also id.* ¶ 4.2. Any discharge recommendations from a Board of Inquiry (or the appropriate show-cause authority) are reviewed by the Air Force Personnel Board ("AFPB"). *See id.*, Ch. 6. The AFPB may decide to retain the officer on its own initiative. *See id.* ¶¶ 6.5.1; 6.6.1; 6.9.1. But if the AFPB recommends removal or other adverse action, it makes a recommendation for a final decision by the Secretary of the Air Force. *See id.* ¶ 6.10. An officer is only removed after a decision by the Secretary (or his designee). *See id.* ¶ 6.11. Since this process has not even begun for Air Force Engineer, he has not exhausted his administrative remedies. Ex. 1, Holmes Decl. ¶ 4 ("Administrative discharge proceedings have not been initiated against [Air Force Engineer]," nor has the process "completed.").

Air Force Special Agent has similarly failed to exhaust his administrative remedies. He "was issued a Letter of Reprimand for failure to timely comply with the order to obtain the vaccine" on March 18, 2022. SAC ¶ 161. He has 45 days "to submit comments or documents for consideration" in response to that Letter. *Id.* Once the Air Force receives his response, it has 45 days to reply to Air Force Special Agent's submission. AFI 36-2907, ¶ 4.5.1.6. As Plaintiffs admit, it is not clear at this point in the process what, if any, "specific punishment" Air Force Special Agent will receive for failure to comply with the vaccination order. SAC ¶ 161. Any punishment would involve additional administrative processes and opportunities for appeal. For example, because Air Force Engineer is an "officer" who has served in the Air Force for "more than 10 years," SAC ¶¶ 84–85, he will also be entitled to a Board of Inquiry should he ultimately face discharge proceedings, *see* AFI 36-3206, Ch. 7; AFI 36-3207, ¶ 3.16.1.1. However, since no such process has begun, Air Force Special Agent has not exhausted his administrative remedies. Ex. 2, Bullard Decl. ¶ 5 ("[A]dminsitrative discharge proceedings have not been initiated against Air Force Special Agent, nor have actions been initiated to transfer the member to the Individual Ready Reserve (IRR).").

**B. Exhaustion Includes Pursuing Relief through the Air Force Board for Correction of Military Records.**

Even if Plaintiffs had been ultimately disciplined or discharged, the Air Force provides additional avenues for administrative review, including the Air Force BMCR. Congress established a BCMR in each military department, including the Air Force, and the Secretary of Air Force, acting through the appropriate BCMR, possesses plenary authority to afford relief to service members injured by adverse personnel actions, including but not limited to reversing involuntary separations, removing adverse information from personnel files, and awarding back pay and allowances. *See* 10 U.S.C. § 1552(a)(1) (Board of Correction of Military Records are empowered to "to correct an error or remove an injustice"); AFI 36-2603, Air Force Board for Correction of Military Records, https://perma.cc/6HJ5-JUPP. No Plaintiff has exhausted these intraservice administrative remedies. *See* Ex. 1, Holmes Decl. ¶ 4; Ex. 2, Bullard Decl. ¶ 5; Ex. 3, Rigsbee Decl. ¶¶ 5–6.

In this Circuit, a service-member plaintiff is required to exhaust "*all* available military remedies." *Winck v. England*, 327 F.3d 1296, 1303 n.4 (11th Cir. 2003), *abrogated on other grounds by Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015) (emphasis added). Exhausting all military remedies involves everything up to and including "petitioning to the [BCMR] [to] request[] the relief sought in th[e] action" and subsequently "receiving [the] adverse determination." *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983); *see also, e.g.*, *Von Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir. 1980)[8] (requiring exhaustion through the BCMR); *Hodges*, 499 F.2d at 420 (describing the "two types of administrative bodies [that] provide review of discharge decisions" that must be exhausted); *Mindes*, 453 F.2d at 198 (plaintiff had "travers[ed] all available intraservice procedural reviews—ending with a denial of relief by the civilian [BCMR] [before he] filed a complaint" in civilian federal district court); *Layman v. Harvey*, No. 8:05-cv-2208, 2007 WL 430678, at *6-10 (M.D. Fla. 2007) (dismissing

---

[8] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

claim against military for failing to exhaust "remedies to the ABCMR").

Courts in other circuits have also considered intraservice remedies to be exhausted only after seeking relief from the applicable BCMR. "[T]he salutary rule [is] that an aggrieved military officer must first exhaust his administrative remedies with his particular service's [BCMR] prior to litigating his claims in a federal court." *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (citation omitted) (court requiring prudential exhaustion even for constitutional claims).[9]

Thus, Plaintiffs can petition the Air Force BCMR for review, even after retirement, discharge, or involuntary transfer. But no Plaintiff here has even begun that process—much less exhausted. Their challenge to the military's COVID-19 vaccination requirement should be dismissed without prejudice to allow Plaintiffs to pursue those administrative remedies.

## V.   The Court Lacks Jurisdiction Over Count Three (APA), and Plaintiffs Otherwise Fail to State a Claim.

At the very least, Plaintiffs' Third Cause of Action should be dismissed, either for lack of jurisdiction or for failure to state a claim. Count Three alleges a violation of the Administrative Procedure Act ("APA") because "Defendants wrongfully denied Plaintiffs . . . the opportunity to seek, under AFI 48-110, a medical exemption based on their natural immunity." SAC ¶ 355.

As an initial matter, Count Three is not ripe because no Plaintiff has sought a medical exemption from the military vaccination requirement based on prior infection. *See generally* SAC. And

---

[9] *See e.g.*, *Chatman v. Hernandez*, 805 F.2d 453, 456 (1st Cir. 1986) (plaintiff has an "other adequate remedy" by petitioning BCMR); *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992) (plaintiff could obtain "complete relief" from BCMR because constitutional claims "are within its purview"); *Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 102 (3d Cir. 1986) (generally requiring exhaustion to BCMR, but not when federal Board could not reinstate plaintiff into state-commissioned Guard position); *Sanders v. McCrady*, 537 F.2d 1199, 1201 (4th Cir. 1976) (plaintiff asserting constitutional and statutory claims required to exhaust to the BCMR); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986) (holding claim premature for "fail[ing] to exhaust available service-connected remedies by appealing to the [BCMR].")"; *Davis v. United States*, 589 F.3d 861, 865 (6th Cir. 2009) ("A claim will be considered exhausted either after the [BCMR]'s original decision, if there is no request for reconsideration, or after a denial of a timely request for reconsideration."); *Champagne v. Schlesinger*, 506 F.2d 979, 984 (7th Cir. 1974) (plaintiffs required to first appeal discharge to the Board for Correction of Naval Records); *Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir. 1975) (plaintiff failed to exhaust by not pursuing remedies at BCMR); *Kennedy v. Sec'y of Army*, 191 F.3d 460 (9th Cir. 1999) (required to exhaust appeals to BCMR before challenging dismissal in court); *Gorsline v. U.S. Army Rsrv.*, 13 F.3d 405 (10th Cir. 1993) (same).

no Plaintiff alleges that the Air Force has imposed final discipline for failure to receive the COVID-19 vaccine after being denied a medical exemption. *Id.*

Count Three is also non-justiciable because no Plaintiff exhausted available administrative remedies as to this particular claim. *See supra* Part IV. None alleges to have even sought, much less been denied, a medical exemption based on prior infection. And Plaintiffs' claim is also non-justiciable for the same reasons as Plaintiffs' religious-based claims: no Plaintiff has been subject to any final discipline for failure to take the COVID-19 vaccine, and no Plaintiff has exhausted available intra-service remedies challenging any final discipline for failure to take the COVID-19 vaccine.

Count Three should otherwise be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiffs cannot show that Air Force's policy that "Individuals with previous COVID-19 infection or positive serology are not considered vaccinated and are not exempt," SAC ¶ 29, is "'not in accordance with law,'" *id.* ¶ 351. The only "law" cited in the complaint that is supposedly in conflict with the Air Force's policy is AFI 48-110. SAC ¶ 355. But that regulation does not require the Air Force to provide a prior infection exception for every disease. AFI 48-110 makes this clear: "For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AFI 48-110, ¶ 2-1(g), https://perma.cc/L32S-7SCN. The regulation goes on to explain those specific diseases include "measles, rubella, hepatitis A, hepatitis B, and varicella." *Id.* ¶ 3-1(a)(3). COVID-19 is not on the list.

Nor is the Air Force's policy concerning pre-existing immunity arbitrary or capricious. *See* 5 U.S.C. § 706(2)(A). The Court's review of any agency action under 5 U.S.C. § 706(2)(A) must typically be "deferential" and "narrow." *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2569 (2019). And even more deference is owed to military decisions given the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force." *Gilligan*, 413 U.S. at 10; , 413 U.S. at 10; *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Aktepe v. United States*, 105 F.3d 1400, 1403

(11th Cir. 1997); *Winck*, 327 F.3d at 1302–04; *see also Doe #1 – #14 v. Austin*, --- F. Supp. 3d ----, 2021 WL 5816632, *4 (N.D. Fla. Nov. 12, 2021) (finding plaintiffs had not shown a likelihood of success on the merits of their APA claim challenging the military vaccination mandate).

When it comes to the military vaccination requirement, the deference owed to military decisionmaking "is layered on top of the deference that courts must give to expert policymakers on matters involving complex medical or scientific uncertainties." *Mark Short*, 2022 WL 1051852, at *7. "Our Constitution principally entrusts the safety and the health of the people to the politically accountable officials" and when "those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (cleaned up) "Where those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* at 1613-14 (quoting *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 545 (1985)).

Under these standards, Plaintiffs' challenge to the military policy as "arbitrary or capricious" fails because the military clearly has a rational basis for its policy. *See Pike v. Johnson*, 103 F. Supp. 3d 1362, 1368 (N.D. Ga. 2015) (dismissing claims when agency "came to a rational conclusion"). The CDC's guidance is dispositive in this case, and the CDC recommends all persons ages 5 and over receive the COVID-19 vaccine "regardless of a history of symptomatic or asymptomatic SARS-CoV-2 infection." CDC, Interim Clinical Considerations for Use of COVID-19 Vaccines (updated April 21, 2022), https://perma.cc/7V3Z-9UK5.[10] Nothing alleged in Plaintiffs' complaint can overcome the high hurdle required to show the military was not acting rationally in following CDC guidance.

---

[10] Publicly available guidance from the CDC is the type of information subject to judicial notice. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

*See Lloyd v. Sch. Bd. of Palm Beach Cnty.*, ---F. Supp. 3d---, 2021 WL 5353879, at *13 (S.D. Fla. Oct. 29, 2021) (dismissing for failure to state a claim in part because "the Court cannot find that Defendants are irrational for following the recommendations of the CDC"); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1078 (D. Haw. 2021) (dismissing for failure to state a claim because "it is clearly reasonable for state and local officials to follow the CDC's guidance").

## VI.   Air Force Special Agent and Air Force Engineer Have No Connection To This Forum and Should be Severed and Dismissed.

Two Plaintiffs have no connection to this forum and, as explained further below, should be severed and dismissed without prejudice. Air Force Special Agent currently works and lives in California. SAC, ¶ 80. Air Force Engineer "currently lives in Virginia." *Id.* ¶ 88. They both live outside of Georgia, they work outside of Georgia, and their claims are based on events that occurred outside of Georgia. These Plaintiffs should be dismissed from the case pursuant to Rule 12(b)(2), 12(b)(3), or severed pursuant to Rule 21. *See Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1230 (M.D. Fla. 2020) (dismissing claims from non-resident Plaintiffs and collecting cases).

Plaintiffs allege that venue is proper pursuant to 28 U.S.C. § 1391(e). SAC ¶ 21. That statute allows a civil action against an officer of the United States to be filed in a district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e). No Defendant resides in this district, and Plaintiffs do not assert otherwise, so (A) does not apply. Non-resident Plaintiffs— Air Force Special Agent and Air Force Engineer—do not live or work in this district, so neither (B) nor (C) apply. Venue can thus only be proper for the non-resident Plaintiffs if they "may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." *Id.* The venue question under § 1391 for non-resident Plaintiffs

collapses into the question of whether these Plaintiffs can properly be joined under Rule 20 or should be severed pursuant to Rule 21.   As described below, all Plaintiffs are misjoined, and their claims should be severed—particularly the claims of the non-residents, which should be dismissed without prejudice to refiling in a proper venue.

## VII.   All Plaintiffs Are Misjoined.

Plaintiffs' claims are misjoined and should be severed because their claims do not arise out of the same transaction or occurrence and do not present common questions of law or fact.  Under Rule 20, plaintiffs may join in one action only if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" or if there are "any question of law or fact common to all plaintiffs."   Fed. R. Civ. P. 20(a)(1).  None of these requirements are met here.  Plaintiffs bring individual claims based on RFRA, the First Amendment, and the APA.  SAC ¶¶ 210–357.  None of those claims assert a right to relief "jointly, severally, or in the alternative."   Fed. R. Civ. P. 20(a)(1)(A).  And "[w]hile Plaintiffs' claims may raise similar legal issues, they are not logically related because they do not arise from common operative facts."  *Barber v. Am.'s Wholesale Lender*, 289 F.R.D. 364, 367 (M.D. Fla. 2013); *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) ("A finding of a common question of law or fact does not necessarily mean that the claims against the various defendants arise from a common transaction or occurrence[.]"); *see also Wigand v. W. City Partners, Inc.*, No. 07-61492, 2008 WL 384394, at *1 (S.D. Fla. Feb. 11, 2008) (finding severance was warranted even when 43 plaintiffs all alleged that the form contract they all signed "fail[ed] to comply with the Federal Interstate Land Sales Full Disclosure Act" because the contracts were for "different units, on different dates, and for different prices"); *Walter v. BMW of N. Am.*, No. 8:18-cv-02875, 2019 WL 6251366, at *2 (M.D. Fla. Nov. 22, 2019) (finding severance was warranted due to "substantial factual differences among the Plaintiffs' claims").

For RFRA and First Amendment claims, each Plaintiff must demonstrate that the challenged policy burdens his or her "exercise of religion" and that the challenged decision substantially burdens religious exercise. *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1290 (11th Cir. 2012). For each Plaintiff who makes these showings, under RFRA, the burden shifts to the Government to "demonstrate[] that application of the burden *to the person*—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 682 (2014) (quoting 42 U.S.C. § 2000bb-1(b)) (emphasis added); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). Each of these issues must be separately analyzed with respect to each Plaintiff.

Because each Plaintiff performs a different function in the military, the military considers their particular circumstances in determining whether the government's compelling interest requires that each Plaintiff be vaccinated against COVID-19, and it conducts an individualized assessment regarding whether vaccination is the least restrictive means to accomplishing its mission. The Court would therefore review that individualized assessment for each Plaintiff's RFRA claim based on the record compiled by the Air Force at the time of its decision for each applicant. Accordingly, because each religious exemption request is considered on an individualized basis, any final denials are separate "transactions or occurrences" under Rule 20 such that joinder of Plaintiffs' claims is improper. *See Barber*, 289 F.R.D. at 367 (noting that because "Plaintiffs' claims involve conduct by different Defendants, different loan documents, different dates, and different operative factual scenarios," the "individualized nature of Plaintiffs' claims" rendered joinder improper).

Severance is also appropriate because "different witnesses and documentary proof are required for separate claims." *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018). Adjudicating these claims together in one case would require judicial review of separate administrative records for each finally denied religious accommodation request, in addition to the administrative record for the

24

challenged DoD directive itself.  Severance also would support case management, minimize prejudice to parties, and promote fundamental fairness.  "[A]llowing this case to proceed as filed would violate the principles of judicial resource allocation embodied in the separate docketing and random assignment protocols which are employed by federal courts to ensure equitable distribution of judicial workloads and efficient, timely, and impartial resolution of cases."  *Ahmed v. Miller*, 452 F. Supp. 3d 721, 727 (E.D. Mich. 2020).  "Even if joinder was technically appropriate under Rule 20(a), considerations of judicial economy, case management, prejudice to parties, and fundamental fairness dictate that Plaintiffs' claims be severed under Rule 21."  *Barber*, 289 F.R.D. at 368 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000); *In re Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010); *Anderson v. Moorer*, 372 F.2d 747, 750 n.4 (5th Cir. 1967); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521–22 (5th Cir. 2010)); *Torres v. Bank of Am., N.A.*, No. 8:17-cv-1534, 2017 WL 10398671, at *1–2 (M.D. Fla. Oct. 6, 2017).  As described above, "[t]he fact-specific nature of the claims and defenses that have been, or will be, raised by the parties, precludes any conclusion that judicial economy would be served by joinder."  *Barber*, 289 F.R.D. at 368–69.

At the very least, the out-of-district plaintiffs should be severed from this case in the interests of judicial efficiency and dismissed without prejudice to refiling in a proper venue.  There is no efficiency in litigating non-residents' claims in Georgia.  Indeed, a court in the Middle District of Florida recently severed non-resident plaintiffs in similar circumstances.  Feb. 22, 2022 Order, *Crosby v. Austin*, 8:21-cv-2730-TPB-CPT, ECF No. 44.  Nor would keeping individuals with no relation to the forum as parties to this case promote judicial economy.  There are over 670 district court judges throughout the country who are fully capable of adjudicating the individual RFRA claims that arise within their districts.  *See* Introduction to the Federal Court System, https://perma.cc/DKK9-4BX5.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: May 11, 2022

PETER D. LEARY
United States Attorney
Middle District of Georgia

/s/ Lance Simon
LANCE SIMON
Assistant United States Attorney
Georgia Bar No. 447643
ROGER C. GRANTHAM, JR.
Assistant United States Attorney
Georgia Bar No. 860338
United States Attorney's Office
300 Mulberry St., Suite 400
P.O. Box 1702
Macon, GA 31202
Tel: (478) 621-2663
Email: lance.simon@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ Cassandra Snyder
ANDREW E. CARMICHAEL
Senior Trial Counsel
ZACHARY A. AVALLONE
CODY T. KNAPP
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*

26