**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **AIR FORCE OFFICER**, **AIR FORCE NCO**, **AIR FORCE SPECIAL AGENT**, and **AIR FORCE ENGINEER**, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN**, **III**, in his official capacity as Secretary of Defense; **FRANK KENDALL**, **III**, in his official capacity as Secretary of the Air Force; and **ROBERT I. MILLER**, in his official capacity as Surgeon General of the Air Force, <br><br> Defendants. | Case No. 5:22-cv-00009-TES |

**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Introduction .................................................................................................................................. 1

Argument ...................................................................................................................................... 2

    I.    The Court Should Dismiss Plaintiffs' Civilian Claims. .............................................. 2

        A.    Jurisdiction Is Precluded Under the Civil Service Reform Act. ........................ 2

        B.    Plaintiffs' Challenge to the Civilian Vaccination Requirement Is Not Ripe. ............................ 5

    II.    Military Claims Are Not Justiciable Because They Are Neither Ripe nor Exhausted. ................. 6

    III.    Plaintiffs Who Chose to Retire Lack Standing to Challenge Their Denials. ............................ 9

    IV.    Plaintiffs' APA Claim is Unripe, Not Exhausted, and Otherwise Fails to State a Claim. ..... 10

    V.    All Plaintiffs Are Misjoined. ....................................................................................... 13

Conclusion .................................................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)..................................................................................... 10

*Adorers of the Blood of Christ v. FERC*,
    897 F.3d 187 (3d Cir. 2018) ............................................................................ 3

*AFGE Local 2018 v. Biden*,
    --- F. Supp. 3d ----, 2022 WL 1089190 (E.D. Pa. Apr. 12, 2022)............................ 2

*Aktepe v. United States*,
    105 F.3d 1400 (11th Cir. 1997)....................................................................... 11

*Alexander v. Fulton Cnty., Ga.*,
    207 F.3d 1303 (11th Cir. 2000)................................................................. 13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................ 14, 15

*Austin v. U. S. Navy Seals 1-26*,
    142 S. Ct. 1301 (2022).................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................... 15

*Brnovich v. Biden*,
    562 F. Supp. 3d 123 (D. Ariz. 2022) ................................................................. 6

*Carpenter v. Univ. of Alabama Health Servs. Found. PC*,
    773 F. App'x 507 (11th Cir. 2019) .................................................................... 9

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (11th Cir. 2012)....................................................................... 14

*Christie v. United States*,
    518 F.2d 584 (Ct. Cl. 1975)............................................................................. 9

*Church v. Biden*,
    No. CV 21-2815 (CKK), 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ................................. 6, 8

*Couch v. Wyndham Vacation Ownership, Inc.*,
    No. 618CV2199ORL40LRH, 2019 WL 13183558 (M.D. Fla. Nov. 5, 2019) ....................... 13

*Dep't of Comm. v. New York*,
    139 S. Ct. 2551 (2019)................................................................................... 11

*Doe v. San Diego Unified Sch. Dist.*,
   No. 21-56259, 2021 WL 5600620 (9th Cir. Nov. 28, 2021) ................................................. 13

*Donovan v. Vance*,
   No. 4:21-CV-5148-TOR, 2021 WL 5979250 (E.D. Wash. Dec. 17, 2021) ............................. 6

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ..................................................................................................... 4, 5

*FCC v. Prometheus Radio*,
   141 S. Ct. 1150 (2021) .................................................................................................. 11

*Feds for Med. Freedom v. Biden*,
   30 F.4th 503 (5th Cir. 2022) ......................................................................................... 2

*Fernandez-Torres v. Watts*,
   No. 2:16-CV-24, 2016 WL 796100 (S.D. Ga. Feb. 26, 2016) ................................................. 2

*Gardner v. Mutz*,
   962 F.3d 1329 (11th Cir. 2020) ..................................................................................... 7

*Gilligan v. Morgan*,
   413 U.S. 1 (1973) ........................................................................................................ 11

*Hargray v. City of Hallandale*,
   57 F.3d 1560 (11th Cir. 1995) ....................................................................................... 9

*Hodges v. Callaway*,
   499 F.2d 417 (5th Cir. 1974) ......................................................................................... 10

*Holt v. Hobbs*,
   574 U.S. 352 (2015) ...................................................................................................... 6

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ..................................................................................................... 10

*La Voz Radio de la Communidad v. FCC*,
   223 F.3d 313 (6th Cir. 2000) ........................................................................................ 3

*Luz v. FCC*,
   88 F. Supp. 2d 372 (E.D. Pa. 1999) .............................................................................. 3

*Mark Short v. Berger*,
   No. CV221151DMGAGRX, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022) ............................. 8

*McCray v. Biden*,
   --- F. Supp. 3d ----, 2021 WL 5823801 n.3 (D.D.C. Dec. 7, 2021) .................................. 2, 4, 6

*Mindes v. Seaman*,
  453 F.2d 197 (5th Cir. 1971) .................................................................. 8

*Navy SEAL 1 v. Austin*,
  No. CV 22-0688 (CKK), 2022 WL 1294486 (D.D.C. Apr. 29, 2022) ..................... 7

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ............................................................. 4

*Norton v. S. Utah Wilderness All.*,
  *All.*, 542 U.S. 55 (2004) ................................................................. 10

*Odei v. DHS*,
  937 F.3d 1092 (7th Cir. 2019) ............................................................. 2

*Payne v. Biden*,
  No. 21-3077, 2022 WL 1500563 (D.D.C. May 12, 2022) ............................. 2, 4, 5

*Roberts v. Roth*,
  No. CV 21-1797 (ABJ), 2022 WL 834148 (D.D.C. Mar. 21, 2022) ...................... 7

*Rodden v. Fauci*,
  ---F. Supp. 3d---, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021) ...................... 4

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ....................................................................... 11

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ....................................................................... 7

*Rweyemamu v. Cote*,
  520 F.3d 198 (2d Cir. 2008) ............................................................... 3

*Rydie v. Biden*,
  No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) ............................. 2, 5

*Schultz v. U.S. Navy*,
  810 F.2d 1133 (Fed. Cir. 1987) ........................................................... 9

*Simon v. Eastern Kentucky Welfare Rights Org.*,
  426 U.S. 26 (1976) ....................................................................... 9

*Singh v. McHugh*,
  185 F. Supp. 3d 201 (D.D.C. 2016) ........................................................ 7

*Sossamon v. Texas*,
  563 U.S. 277 (2011) ....................................................................... 2

*South Bay United Pentecostal Church v. Newsom*,
   141 S. Ct. 716 (2021) ................................................................................... 7

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69 (2013) ........................................................................................ 3

*St. John's United Church of Christ v. City of Chicago*,
   502 F.3d 616 (7th Cir. 2007) ....................................................................... 3

*Steel Co. v. Citizens for Better Environment*,
   523 U.S. 83 (1998) ........................................................................................ 7

*Stone v. Univ. of Maryland Med. Sys. Corp.*,
   855 F.2d 167 (4th Cir. 1988) ....................................................................... 9

*Swann v. Sec'y, Ga.*,
   668 F.3d 1285 (11th Cir. 2012) ................................................................... 8

*Tandon v. Newsom*,
   141 S. Ct. .................................................................................................... 7

*Thomas Short*,
   2022 WL 1203876 ....................................................................................... 8

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
   450 U.S. 707 (1981) ..................................................................................... 7

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ..................................................................................... 4

*Trump v. New York*,
   141 S. Ct. 530 (2020) ................................................................................... 6

*U.S. Navy SEALs 1-26 v. Biden*,
   No. 4:21-CV-01236-O, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) .............. 3

*Vance v. Wormuth*,
   No. 3:21-CV-730-CRS, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) ........ 7

*Whitest v. Crisp Cnty., Georgia Bd. of Educ.*,
   No. 1:17-CV-109 (LAG), 2020 WL 12656250 (M.D. Ga. Aug. 19, 2020) .... 14

**Statutes**

5 U.S.C. § 551(13) ............................................................................................ 10

5 U.S.C. § 704 .................................................................................................. 10

42 U.S.C. § 2000bb-1(c) .............................................................................. 2, 3

**Rules**

Fed. R. Civ. P. 12(h)..................................................................................................................... 8

Fed. R. Civ P. 12(h)(3) ............................................................................................................... 8

# INTRODUCTION

Plaintiffs' response continues to attempt to sidestep threshold jurisdictional questions and available administrative remedies, mischaracterize the relevant harm, and make conclusory, baseless allegations about the Air Force's decisions. First, Plaintiffs' challenges to the civilian vaccination requirement are precluded by the exclusive judicial review provisions applicable to federal workplace disputes. Because Air Force Officer has not received a final decision on her civilian exemption request, Plaintiffs' civilian challenges are also unripe.

Moreover, the harm that Plaintiffs seek to redress in this case is any future discipline they may receive from failure to follow a lawful military order to be vaccinated for COVID-19. Because that harm is speculative, both as to whether it will occur and as to what form it may take, Plaintiffs' military claims are neither ripe nor exhausted. Moreover, Air Force Officer and Air Force NCO lack standing to challenge their religious accommodation denials because they voluntarily retired under the standards set forth by the Eleventh Circuit.

Plaintiffs' Administrative Procedure Act ("APA") claims, both as to the civilian and military vaccine mandates, also fail. Plaintiffs never applied for a medical exemption based on their alleged "natural immunity," and thus Plaintiffs' claims are neither ripe nor exhausted. Plaintiffs fail to articulate how Defendants' conduct violates AFI 48-110_IP, which does not require the Air Force to offer medical exemptions based on natural immunity. Nor can Plaintiffs demonstrate that Defendants' conduct is arbitrary and capricious in light of the military's reasonable reliance on CDC guidance.

Additionally, all Plaintiffs' claims should be severed and the claims of the two Plaintiffs with no connection to Georgia should be dismissed without prejudice to refiling in an appropriate forum.

Finally, Plaintiffs argue that "Defendants sought to delay ruling on the motion for preliminary injunction until discovery had been conducted." Resp. 2. But Defendants have never sought to delay any ruling pending discovery. To the contrary, Defendants believe that this case should be decided on the existing record, *see* Dkts. 100-1 through 100-11 (Plaintiffs' administrative records), and no further

discovery is necessary. If the Court determines that it has jurisdiction and that Plaintiffs' claims are justiciable, Defendants request that the Court promptly set a briefing schedule for summary judgment.

## ARGUMENT

### I.    The Court Should Dismiss Plaintiffs' Civilian Claims.

#### A.    Jurisdiction Is Precluded Under the Civil Service Reform Act.

Almost every court to consider the question has found that the CSRA bars district court challenges to the COVID-19 vaccination requirements implemented under EO 14043 for federal civilian employees. *See Feds for Med. Freedom v. Biden*, 30 F.4th 503, 509 (5th Cir. 2022) (petition for rehearing en banc pending); *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *6 (4th Cir. Apr. 19, 2022) (unpublished); *Payne v. Biden*, No. 21-3077, 2022 WL 1500563, at *8 (D.D.C. May 12, 2022), *appeal pending*, No. 22-5154 (D.C. Cir.); *AFGE Local 2018 v. Biden*, --- F. Supp. 3d ----, 2022 WL 1089190, at *5 (E.D. Pa. Apr. 12, 2022); *see also McCray v. Biden*, --- F. Supp. 3d ----, 2021 WL 5823801, at *9 n.3 (D.D.C. Dec. 7, 2021). In their opposition brief, Plaintiffs resist that growing consensus, but none of their arguments warrant a different conclusion.

**1.** Plaintiffs first argue that, at the very least, this Court may entertain their Religious Freedom Restoration Act ("RFRA") claim because RFRA grants an unconditional right to bring such claims in federal court. *See* Pls.' Opp'n 4. That is wrong. To be sure, RFRA provides that a "person whose religious exercise has been burdened in violation of [RFRA] may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). But that language just creates a cause of action. *Cf. Sossamon v. Texas*, 563 U.S. 277, 282 (2011). "The mere existence of a private right of action under a federal statute does not eliminate jurisdictional obstacles." *Odei v. DHS*, 937 F.3d 1092, 1095 (7th Cir. 2019).[1] Thus, contrary to

---

[1] Indeed, if Plaintiffs are correct that RFRA grants a right to litigate in district court that "supersedes any contradictory provision" of law, Pls.' Opp'n 4, then it is not clear how any threshold challenge to a RFRA claim could succeed. *Cf. Fernandez-Torres v. Watts*, No. 2:16-CV-24, 2016 WL 796100 (S.D. Ga. Feb. 26, 2016), *report and recommendation vacated*, No. 2:16-CV-24, 2016 WL 11269088 (S.D. Ga. June 6, 2016) (applying statute of limitations to RFRA claim).

Plaintiffs' contentions, RFRA's cause of action cannot grant jurisdiction that Congress has otherwise denied. *See id.* (rejecting argument that a "jurisdiction-stripping provision should have no effect" when RFRA claim is raised); *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 194 (3d Cir. 2018) ("Nowhere does the text [of RFRA] specifically confer jurisdiction to the federal district courts to hear RFRA claims."); *La Voz Radio de la Communidad v. FCC*, 223 F.3d 313, 319 (6th Cir. 2000) ("[N]othing in RFRA purports to specifically grant the district courts jurisdiction to hear RFRA claims[.]"); *accord U.S. Navy SEALs 1-26 v. Biden*, No. 4:21-CV-01236-O, 2022 WL 34443, at *4 (N.D. Tex. Jan. 3, 2022) (applying "judicial abstention doctrine" to RFRA claims notwithstanding 42 U.S.C. § 2000bb-1(c)).[2]

In any event, Plaintiffs are also wrong to suggest that RFRA and the CSRA are "contradictory." Pls.' Opp'n 4. For its part, RFRA permits plaintiffs to assert claims "in a judicial proceeding," 42 U.S.C. § 2000bb-1(c), but it does not specify any particular proceeding. Meanwhile, the CSRA details the type of judicial proceedings available to federal employees challenging an employment decision—generally an appeal to the Federal Circuit. *See* Defs.' Br. 4–5. Thus, the CSRA "simply lays out what procedural rules a claimant must adhere to when exercising their RFRA right to a 'judicial proceeding.'" *Adorers of the Blood of Christ*, 897 F.3d at 194. That scheme is fully consistent with RFRA, which, again, "does not provide that the 'judicial proceeding' must be in the district court as opposed to a designated court of appeals." *La Voz Radio de la Communidad*, 223 F.3d at 319; *see also St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 628–29 (7th Cir. 2007) ("Nothing in RFRA purported to repeal the authority of federal administrative agencies to find facts, subject to review by the courts of appeals . . . ."); *Luz v. FCC*, 88 F. Supp. 2d 372, 376 (E.D. Pa. 1999), *aff'd sub nom. Radio Luz v. FCC*, 213 F.3d 629 (3d Cir. 2000). Accordingly, if the CSRA applies, then it applies with equal force to all of Plaintiffs' claims, including their RFRA claim.

---

[2] If anything, the only case Plaintiffs cite, *Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008), reinforces this conclusion. There, the Second Circuit noted that RFRA amends *substantive* standards throughout the United States Code. *See id.* at 202. But that court went on to find that the defendants had waived any RFRA defense they might have had. *See id.* at 204. The court's refusal to hear a RFRA defense would be difficult to explain if Section 2000bb-1(c) was jurisdictional in nature, given federal courts' "virtually unflagging" obligation to hear and decide a case where jurisdiction exists. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

**2.** Of course, Plaintiffs also contest whether the CSRA applies at all, arguing that the central deficiency of their civilian claims—their failure to challenge any particular civilian employment decision—permits them to evade the CSRA.[3] But Plaintiffs are wrong again.

That "Defendants have not yet ultimately decided to take any action on Air Force Officer's civilian accommodation request," Pls.' Opp'n 5, does not mean that Plaintiffs can avoid the CSRA through a premature rush to the courthouse. Rather, it means that Plaintiffs must await an employment action for which judicial review has been provided, and then challenge that action through the procedures established by the CSRA. That is because, where the CSRA "*grants* administrative and judicial review" for a particular type of claim, it forecloses "extrastatutory review"—and where "the CSRA *denies* statutory review" of a given claim, "judicial review" of that claim is "entirely foreclose[d]." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012). Indeed, as recently noted by the District Court for the District of Columbia, allowing a federal employee to sue while an employment action is only proposed or pending would create a "conspicuous (and unexplained) loophole" in the CSRA's "'exhaustively detail[ed]'" review framework. *Payne*, 2022 WL 1500563, at *8. That loophole would be particularly puzzling in this case, where Air Force Officer's claim of standing turns on the possibility of future "adverse employment consequences." Second Amended Complaint ¶ 123.

And contrary to Plaintiffs' arguments, requiring them to follow the CSRA's procedures will not put them to a "constitutionally intolerable choice." Pls.' Opp'n 6 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 218 (1994)). Covered employees are "insulate[d] . . . from having to bet the farm, the ranch, or anything else in order to obtain review." *Payne*, 2022 WL 1500563, at *8. Indeed, as the Fourth Circuit has noted, those procedures "pose[] only the traditional burdens of litigation," even

---

[3] Plaintiffs also suggest briefly that the CSRA cannot apply because their challenge runs against Executive Order 14043, "[t]he original and underlying unlawful order," and thus against President Biden himself rather than their agency employer. Pls.' Opp'n 4–5. If that were true, their claims would fail because relief against the President is unavailable. *See Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010); *McCray*, 2021 WL 5823801, at *7; *Rodden v. Fauci*, ---F. Supp. 3d---, 2021 WL 5545234, at *2 (S.D. Tex. Nov. 27, 2021); *Foley v. Biden*, No. 4:21-cv-01098-O (N.D. Tex. Oct. 6, 2021), ECF No. 18, *slip op.* at 3. But the SAC is clear that Plaintiffs challenge actions by Air Force Officer's agency employer. *See* SAC ¶¶ 45–47.

when an employee vaccination requirement is involved. *Rydie*, 2022 WL 1153249, at *5; *see also id.* at *6. So, there is no intolerable choice here, and the CSRA's preclusion of district court jurisdiction should apply with full force.

### B.  Plaintiffs' Challenge to the Civilian Vaccination Requirement Is Not Ripe.

Even if Plaintiffs could evade the CSRA (which they cannot), their claims against the civilian vaccination requirement would still fail at the threshold for lack of ripeness. Importantly, Plaintiffs acknowledge that Air Force Officer has submitted an exemption request from the civilian vaccination requirement, and that she has not received any decision regarding that request. *See* SAC ¶¶ 111, 126; Pls.' Opp'n 7. As explained in Defendant's opening brief, those facts alone make clear that Plaintiffs' civilian claims are unripe. *See* Defs.' Br. 6–7.[4] Plaintiffs' only response is to argue that the denial of Air Force Officer's military exemption request solves their ripeness problem. *See* Pls.' Opp'n 6–8. Specifically, they contend that "there is no meaningful distinction" between Air Force Officer's military exemption request and her civilian request, Pls.' Opp'n 8, meaning that the denial of the military request makes it "a virtual certainty" that her civilian one will be denied as well, *id.* 7.

That argument fails. For one thing, the military and civilian vaccination requirements are based on different legal authorities, and exemption requests from each are handled by different decisionmakers within the Air Force. *Compare* Dep't of the Air Force Instruction 52-201, at 18 (June 23, 2021) (listing approval authority for religious exemptions as "MAJCOM or Field Command Commander") *with* Updated DAF Civilian Employee Mandatory COVID-19 Vaccination Guidance, at 14 (Jan. 19, 2022) (noting that, for "civilian employees at Installation Level," the "decision authority to exempt a DAF civilian employee from the requirements herein is designated as . . . Wing/Delta Commanders"). For another, Air Force guidance makes clear that different considerations govern the

---

[4] Alternatively, as Defendants' opening brief explained, *see* Defs.' Br. 7–8, Air Force Officer's pending exemption request also means that Plaintiffs fail to state a claim against the civilian vaccination requirement under RFRA and the Free Exercise Clause. That requirement is to be implemented in a manner consistent with RFRA, and so, simply put, until Air Force Officer's request is rejected, or she is subjected to discipline for her stated religious beliefs, she faces no burden, substantial or otherwise, on her religious exercise.

process for evaluating military and civilian exemption requests. *See* Instruction 52-201, at 2–3 (requiring consideration of "military readiness, unit cohesion, good order and discipline, and health and safety for both the member and the unit"); Jan. 2022 Updated Civilian Guidance, at 16 ("Determining whether an exemption is legally required must be an individualized assessment of the particular facts and circumstances of the requesting employee's situation," including the viability of alternatives such as telework). Indeed, given the special demands of military operations, it is clearly possible for an accommodation to be unreasonable in the military context, but reasonable in the civilian context. *See Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring) (noting the special character of decisions about military readiness). Thus, it is hardly a foregone conclusion that any denial of an exemption from the military requirement will result in the denial of a corresponding request for exemption from the civilian one.

Most fundamentally, though, Plaintiffs' contrary assumption remains the sort of "hypothetical prediction[] of the outcome[] of . . . [an]exemption request[]" that courts repeatedly have found "insufficient to 'render an issue ripe for review.'" *Church v. Biden*, No. CV 21-2815 (CKK), 2021 WL 5179215, at *9 (D.D.C. Nov. 8, 2021); *see also, e.g.*, *Donovan v. Vance*, No. 4:21-CV-5148-TOR, 2021 WL 5979250, at *4–5 (E.D. Wash. Dec. 17, 2021); *McCray*, 2021 WL 5823801, at *8–9; *Brnovich v. Biden*, 562 F. Supp. 3d 123, 141 (D. Ariz. 2022). As in those cases, Air Force Officer cannot satisfy the requirements of ripeness under Article III here while her request for an exemption remains pending.

## II.    Military Claims Are Not Justiciable Because They Are Neither Ripe nor Exhausted.

Plaintiffs' claims are neither ripe nor exhausted because their alleged injury "may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). Plaintiffs allege that their injury is being forced to "choose" between vaccination or discipline. But until the uncertain consequence of that choice plays out, Plaintiffs suffer no injury—constitutional or otherwise—such that their claims are ripe. Plaintiffs are not being prevented from wearing certain clothing or grooming styles. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (holding that prison's

policy preventing inmate from growing beard substantially burdened his religious beliefs under RLUIPA). Plaintiffs are not being prevented from group worship or worship in their chosen venue. *See, e.g., Tandon v. Newsom*, 141 S. Ct. at 1297 (holding that closing places of worship was irreparable injury because it prevented individuals from group worship). Plaintiffs are not being prevented from expressing worship in a particular manner. *See, e.g., South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) (Barrett, J., concurring) (noting that "California's prohibition on singing and chanting during indoor services" could constitute irreparable harm).

Instead, Plaintiffs are currently expressing their religious beliefs in exactly the way they so choose: refusing to receive the COVID-19 vaccine. "No government actor is preventing" Plaintiffs "from exercising [their] alleged religious conviction against COVID-19 vaccination." *Navy SEAL 1 v. Austin,* No. CV 22-0688 (CKK), 2022 WL 1294486, at *16 (D.D.C. Apr. 29, 2022). Accordingly, there is no injury unless and until a government actor takes action against Plaintiffs as a consequence of their religious expression. In this case, that action comes in the form of final discipline for failure to comply with a lawful order. To suggest otherwise would mean that "the naked recitation of a constitutional claim" would suffice to establish ripeness. *Cf. Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020).

Thus, the true consequence that Plaintiffs seek to redress is their future discipline—whether that ultimately be separation, discharge, or transfer to the IRR. But the Air Force has not even initiated separation, discharge, or transfer proceedings for any Plaintiff.[5] *See, e.g., Roberts v. Roth*, No. CV 21-1797 (ABJ), 2022 WL 834148, at *2–3 (D.D.C. Mar. 21, 2022) (denying preliminary injunction as unripe because plaintiff had not been discharged)[6]; *Vance v. Wormuth*, No. 3:21-CV-730-CRS, 2022

---

[5] Plaintiffs' citation to *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981) is unavailing. There, the Supreme Court considered whether a state violated the First Amendment by denying plaintiff's claim for unemployment compensation. Unlike the case at hand, the plaintiff had already suffered the relevant injury: denial of her claim for unemployment benefits. No further governmental action could occur. Here, in contrast, the relevant injury—separation, discharge, or transfer to the IRR—has neither occurred nor is certain to occur.

[6] Plaintiffs attempt to distinguish *Roberts* solely on the basis that that "*Roberts* did not give serious consideration to RFRA and Free Exercise interests." Resp. 11. Of course, *Roberts* resolved the plaintiff's

WL 1094665, at *7 (W.D. Ky. Apr. 12, 2022) (dismissing service member's challenge to denial of religious accommodation request as unripe in part because "[n]o separation proceedings have been implemented").

Even if the Air Force were to initiate such proceedings, Plaintiffs would have several more opportunities to respond—both before and after any possible discharge—any one of which opportunities may result in Plaintiffs' retainment in the Air Force. *See Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971) ("[A] court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures."); *see, e.g., Church*, 2021 WL 5179215, at *11 (denying preliminary injunction for failure to exhaust where, like Plaintiff here, the service members whose appeals had been denied would still have "multiple opportunities to present their arguments to the Service and for the Service to respond"); *Thomas Short*, 2022 WL 1203876, at *10 (denying preliminary injunction where, among other reasons, the member "will have an opportunity to renew and further develop his exemption request during future separation proceedings"); *Mark Short v. Berger*, No. CV221151DMGAGRX, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022) (same, where the member "still must undergo separation proceedings before any permanent adverse consequences are imposed"). "The Air Force should be afforded an opportunity to formulate and explain its decision, and until it does so, the case is not fit for judicial review." *Roberts*, 22 WL 834148, at *5. Because Plaintiffs' injury is speculative and Plaintiffs still have multiple administrative opportunities to redress to any possible injury, Plaintiffs' claims are neither ripe nor exhausted.[7]

---

preliminarily injunction motion on ripeness grounds without addressing the underlying merits because "subject-matter jurisdiction necessarily precedes a ruling on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93 (1998)). Moreover, *Roberts* was issued by the same district judge who issued *Singh v. McHugh*, 185 F. Supp. 3d 201, 217 (D.D.C. 2016), on which Plaintiffs rely heavily to establish that a "substantial burden" exists pursuant to RFRA.

[7] Plaintiffs incorrectly imply that Defendants waived their justiciability claims by raising them for the first time in Defendants' motion to dismiss. *See, e.g.*, Resp. 1, 8. Prior to Defendants' motion to dismiss, Defendants' only filing addressing the merits of Plaintiffs' claims was Defendants' opposition to Plaintiffs' original motion for a preliminary injunction. A party does not waive an argument by failing to raise that argument in an opposition to a motion for a preliminary injunction. *Cf.* Fed. R. Civ. P. 12(h) (explaining that a party waives certain defenses by failing to raise those defenses in a responsive pleading); Fed. R. Civ P. 12(h)(3)

III.    **Plaintiffs Who Chose to Retire Lack Standing to Challenge Their Denials.**

A plaintiff's injury is not fairly traceable to the defendant's action if the plaintiff "independently caused his own injury." *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012). The Eleventh Circuit has strict case law regarding when retirement is voluntary. *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1563 (11th Cir. 1995); *see* Defs.' Mot. at 12–14. Plaintiffs cannot meet this high standard.[8]

Plaintiffs' attempts to differentiate their circumstances from those in *Hargay* are unavailing. First, Plaintiffs argue that the Air Force "lack[ed] 'good cause to believe that grounds for the termination . . . . existed" because the religious accommodation process is "illusory and insincere." Resp. 14–15 (citing *Hargray*, 57 F.3d at 1568–69). But "to establish that [an employer] lacked good cause," a plaintiff must "identify evidence that suggested [the employer] 'knew or believed' that its reason for threatening to remove [the plaintiff] 'could not be substantiated.'" *Carpenter v. Univ. of Alabama Health Servs. Found. PC*, 773 F. App'x 507, 513 (11th Cir. 2019) (quoting *Hargray*, 57 F.3d at 1569). Plaintiffs do not allege that the Air Force misrepresented any material facts or otherwise offered Plaintiffs the choice of retirement under false pretenses. *See Hargray* 57 F.3d at 1568–69 (citing *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988); *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136–37 (Fed. Cir. 1987); *Christie v. United States*, 518 F.2d 584, 587–88 (Ct. Cl. 1975)).

Second, Plaintiffs also argue that five days was insufficient time to make their decision. But Plaintiffs provide no authority that five days is insufficient, and the Eleventh Circuit has held that a single day suffices. *See Carpenter*, 773 F. App'x at 513.[9] Accordingly, because Air Force Officer and Air

(explaining that a court may determine "at any time" that it lacks subject-matter jurisdiction, regardless of whether or not a party has raised a subject-matter jurisdiction defense).

[8] Plaintiffs provide no authority for their proposition that the involuntary retirement standard applies only to Tucker Act and substantive due process claims. Resp. 12. Rather, the natural reading of Defendants' cited cases, Mot. 12–14, is that voluntary retirement breaks the chain of causation such that the injury cannot "fairly [] be traced to the challenged action" and is not "likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 (1976).

[9] Regardless, as in *Hargay*, at least Air Force Officer had even more "advance notice" that he would be given the choice of retiring or facing discipline should he continue to refuse vaccination if his religious accommodation request was denied. *Hargray*, 57 F.3d at 1569. The Air Force's policy regarding COVID-19 vaccination was made public on December 7, 2021. *See* Supplemental Coronavirus Disease 2019 Vaccination

Force NCO voluntarily resigned, they lack standing to challenge their retirements.

**IV.     Plaintiffs' APA Claim is Unripe, Not Exhausted, and Otherwise Fails to State a Claim.**

The purpose of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Plaintiffs' attempt to litigate medical exemptions is just such an abstract disagreement. Plaintiffs have not applied for, nor been denied, a medical exemption based on their alleged "natural immunity." Accordingly, this Court has no record on which to rule. For example, Plaintiffs fault Defendants for failing "to consider the natural-immunity factors" such as "disease severity, person's age, and changes in the virus." Resp. 21. But that is a speculative assertion, because Plaintiffs never gave Defendants the opportunity to consider these factors.

In an attempt to sidestep the ripeness doctrine, Plaintiffs assert that they were denied the ability to "even apply" for a medical exemption based on natural immunity, comparing their situation to "a sign reading 'Whites Only' on the hiring-office door." Resp. 19 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977)). But the APA expressly limits judicial review to "final agency action," 5 U.S.C. § 704, which is "circumscribed" and "discrete[,]" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *see* 5 U.S.C. § 551(13) (defining "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). Plaintiffs can point to no agency action denying them the opportunity to apply for a medical exemption. Instead, Plaintiffs point to an Air Force memorandum noting that individuals with "previous COVID-19 infection are not considered fully vaccinated and are not exempt." ECF No. 2-8. Yet by their own admission Plaintiffs do not seek to be considered "fully vaccinated" in contradiction to the Air Force memorandum. Rather, Plaintiffs seek a medical exemption to affirmatively *exempt* them from vaccination. No agency action denies them the opportunity to seek such an exemption. Especially given the military context, the Air Force must be given the first opportunity to create a record. *See*

Policy (Dec. 7, 2021), https://perma.cc/T4ZQ-3N5G. Air Force NCO received his on January 7, 2022, *id.* ¶ 134, 138, and thus had 31 days to consider his decision.

*Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974).

Even if this Court were to disagree with Defendants' jurisdictional arguments, Plaintiffs' APA claim also fails on the merits as to both the military and the civilian vaccination requirement. First, Plaintiffs cannot clarify how Defendants' conduct is contrary to AFI 48-110_IP. That regulation does not require issuance of a medical exemption for "natural immunity" to COVID-19. Rather, AFI 48-110_IP provides that a medical exemption *may* be granted for "evidence of immunity," AFI 48-110_IP ¶ 2–6(a)(1)(b), for "*some* vaccine-preventable diseases," *id.* ¶ 2–1(g) (emphasis added). The regulation explains that serologic testing should be done for at least "measles, rubella, hepatitis A, hepatitis B, and varicella." *Id.* ¶ 3–1(a)(3). While it is true that COVID-19 is not expressly excluded, neither is it included. Moreover, AFI 48-110_IP expressly notes that medical exemptions are vaccine-specific and are determined "based on the health of the vaccine candidate *and the nature of the immunization under consideration.*" AFI 48-110_IP ¶ 2-6.(a). Here, Defendants have determined that the nature of the COVID-19 vaccination is such that medical exemptions for natural immunity will not be offered.[10] Because AFI 48-110 does not require Defendants to offer a medical exemption from the COVID-19 based on evidence of immunity, Defendants have not acted contrary to AFI 48-110.

Nor can Plaintiffs show that Defendants' conduct was arbitrary and capricious. Review of agency action under this standard is "deferential" and "narrow," *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2569 (2019), especially regarding military decisions, *see Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Aktepe v. United States*, 105 F.3d 1400, 1403 (11th Cir. 1997). The Court "may not substitute its own policy judgment for that of the agency," but "simply ensures that the agency has acted within a zone of reasonableness" and "has reasonably considered the relevant

---

[10] There is no Food and Drug Administration ("FDA") approved test for determining "natural immunity" for COVID-19. *See* FDA, *Antibody Testing Is Not Currently Recommended to Assess Immunity After COVID-19 Vaccination: FDA Safety Communication* (May 19, 2021), https://perma.cc/X8GQ-TNHQ ("Be aware that a positive result from an antibody test does not mean you have a specific amount of immunity or protection from SARS-CoV-2 infection."); FDA, *Antibody (Serology) Testing for COVID-19: Information for Patients and Consumers* (Feb. 24, 2022), https://perma.cc/WY9T-6LSG ("Antibody tests do not tell you whether or not you can infect other people with SARS-CoV-2.").

issues and reasonably explained the decision." *FCC v. Prometheus Radio*, 141 S. Ct. 1150, 1158 (2021).

Plaintiffs fault Defendants' reliance on CDC guidance. Plaintiffs assert that "the evaluation of complex scientific data" is not within Defendants' "technical expertise"—but rather solely within the technical expertise of the CDC—and therefore Defendants' conduct is arbitrary and capricious. Resp. 20–21. Long-established DoD policy makes immunization requirement and eligibility determinations for DoD personnel "in accordance with recommendations from the [CDC] and its Advisory Committee on Immunization Practices." DoD Instruction ("DoDI") 6205.02 (July 23, 2019), https://perma.cc/8HLA-AXQB. The CDC recommends vaccination "for everyone aged 5 years and older, regardless of a history of symptomatic or asymptomatic [COVID-19] infection." CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines* (last updated Apr. 21, 2022), https://perma.cc/3646-DC3S. It is clearly reasonable for DoD to rely on the expertise of the CDC, and certainly a judgment to which the Court should defer. Plaintiffs cannot simultaneously vilify Defendants both for an alleged lack of relevant expertise and for relying upon an agency that admittedly has said expertise.

Plaintiffs then argue that it is arbitrary and capricious for Defendants to "selectively" follow CDC guidance. Resp. 22. In particular, Plaintiffs note that DoD allows exemptions for pregnant service members despite CDC guidance recommending vaccination for pregnant women. But this red-herring argument evinces no inconsistency given the purpose of the relevant policies. The purpose of the military's COVID-19 vaccination requirement is to maintain *military* readiness standards, not to establish a policy generally concerning pregnant women. The military does not require the vaccine for pregnant service members because pregnancy is time-limited to a maximum of nine months, and pregnant service members generally cannot deploy regardless of vaccination status. *See* Chapa Decl. ¶ 18, ECF No. 98-4; DoDI 1332.45 ¶ 3.5(a)(3), https://perma.cc/PT5L-XCPS. In contrast, Plaintiffs request a permanent medical exemption for alleged "natural immunity" that would allow them to continue as normal in their military roles, including deployability. This does not remotely compare to

the policy for pregnant service members. Defendants' policy regarding pregnant service members has no bearing on whether Defendants' policy regarding "natural immunity" is arbitrary and capricious.[11]

The Air Force is eminently qualified to determine military readiness standards, including whether CDC guidance is in the best interest of force readiness. Accordingly, the fact that Defendants rely on CDC guidance recommending COVID-19 vaccination despite prior COVID-19 infection is not arbitrary and capricious.

## V.    All Plaintiffs Are Misjoined.

"A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1324 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). Plaintiffs properly plead neither prong.

The mere fact that Plaintiffs bring claims under the same statute challenging "similar" transactions does not establish joinder. *See, e.g., Couch v. Wyndham Vacation Ownership, Inc.*, No. 618CV2199ORL40LRH, 2019 WL 13183558, at *2 (M.D. Fla. Nov. 5, 2019) (severing claims because "the sale of one or more timeshare interests to each couple represents a discrete transaction or occurrence," and "[a]lthough Plaintiffs argue that the actual contracts are 'either identical or substantially similar,' the operative facts leading up to those contracts' execution are anything but"). Rather, Plaintiffs' claims should be severed because "the determination of liability under each of the [Plaintiffs'] claims . . . will require an individualized inquiry of the facts and law." *Id.*

---

[11] Plaintiffs' reliance on *Doe v. San Diego Unified Sch. Dist.*, No. 21-56259, 2021 WL 5600620 (9th Cir. Nov. 28, 2021), *vacated by* 19 F.4th 1173, 1175 (9th Cir. 2021), is similarly misplaced. Plaintiffs appear to conflate their RFRA and First Amendment claims with their APA claims. In *Doe*, the Ninth Circuit preliminarily enjoined a school district's vaccine mandate pursuant to RFRA and the First Amendment given that no religious exemptions were offered despite the existence of a *per se* exemption for pregnant students. *Doe* did not involve an APA claim or medical exemptions for natural immunity. *Doe* also arose in a civilian context that implicates an entirely different set of factors: public schools are not concerned with military readiness standards. Moreover, the Air Force does provide religious accommodations, and to date has granted 118. DAF COVID-19 Statistics – June 14, 2022, https://perma.cc/U9QT-AQ3M.

And here, the "key questions of law and fact" are not "identical" for each Plaintiff. Resp. 25. The individual, as-applied RFRA claim of each Plaintiff turns on whether the Air Force has a compelling interest in vaccinating, respectively, Air Force Officer, Air Force Engineer, Air Force NCO, and Air Force Special Agent; and whether vaccination is the least restrictive means of furthering that interest with respect to each of Air Force Officer, Air Force Engineer, Air Force NCO, and Air Force Special Agent. As evidenced in Defendants' respective oppositions to preliminary injunctive relief, these analyses differ substantially for these four Plaintiffs. *See* Dkt. 38 at 9–12, 20–24; Dkt. 98 at 27–29, 34–36. Plaintiffs' First Amendment and APA claims are similarly distinct as to each Plaintiff.

Plaintiffs do not contest that RFRA claims require an individualized assessment inappropriate for joint resolution. Instead, Plaintiffs rely solely on their allegation "that Defendants have an Air Force-wide policy of failing to make that individualized assessment." Resp. 25. But this is, at most, Plaintiffs' *only* alleged common question of law or fact. The remaining "common" questions alleged by Plaintiffs are not common at all: for example, whether Plaintiffs each have "sincerely held religious beliefs as a basis for objecting to" the COVID-19 vaccination requirement, Resp. 24, is based on individual facts and differs for each of the Plaintiffs. *Compare Whitest v. Crisp Cnty., Georgia Bd. of Educ.*, No. 1:17-CV-109 (LAG), 2020 WL 12656250, at *2 (M.D. Ga. Aug. 19, 2020) (finding joinder appropriate in voting rights case with many common questions). More importantly, the Eleventh Circuit has emphasized that joinder is inappropriate under an allegation of systematic discrimination if "the alleged discrimination occurs during different time periods, different supervisors make the challenged decisions, or the alleged discrimination happens at geographically removed places." *Alexander*, 207 F.3d at 1324 (collecting cases) (citations omitted). Here, in addition to concerning distinct, individual circumstances, the challenged conduct for each Plaintiffs' claims occurred in four different geographic locations and involved four different *sets* of decisionmakers.

Additionally, Plaintiffs fail to plausibly plead that the Air Force's process is a sham. "A facially plausible claim must allege facts that are more than merely possible." *Chaparro v. Carnival Corp.*,

693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Plaintiffs must plead "'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But Plaintiffs here make only the "conclusory" allegation that the Air Force is not individually analyzing religious accommodation requests. For all the same reasons discussed in Defendants' opposition to class relief, these conclusory allegations are insufficient at the motion to dismiss stage. Dkt. 98 at 8–13.

Indeed, Plaintiffs acknowledge that the Air Force has granted 118 religious accommodations to date. DAF COVID-19 Statistics – June 14, 2022, https://perma.cc/U9QT-AQ3M. Plaintiffs attempt to undermine this by alleging that the Air Force granted those accommodations only to service members who are leaving the service. But that only further weakens their argument. Even taking it as true, it confirms that the Air Force is individually analyzing religious accommodation requests.[12] For those requests, the Air Force has determined that its compelling interest in force readiness and health can be furthered by a lesser restrictive means than vaccination, *i.e.*, allowing those service members to continue to serve for a short period, unvaccinated, until they separate. Plaintiffs may disagree with the Air Force's lesser-restrictive-means analysis, but Plaintiffs' disagreement does not mean that the Air Force has a "policy" of discrimination. The Air Force is individually analyzing religious accommodation requests and granting them in conformance with RFRA and the First Amendment.

So too, this Court must conduct its own individualized analysis of each individual Plaintiffs' unique circumstances to determine whether the Air Force properly denied their respective religious accommodation requests. Accordingly, severance of Plaintiffs' claims (and at least of the two out-of-district Plaintiffs' claims) and then dismissal of the two out-of-district Plaintiffs' claims is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

---

[12] The Air Force initially granted 95 accommodations and granted a further 23 on appeal. DAF COVID-19 Statistics – June 14, 2022, https://perma.cc/U9QT-AQ3M. Accordingly, there is no "per se" grant for those leaving the service; rather, each request is individually analyzed by the relevant decisionmakers, who may disagree on the ultimate conclusion.

Dated: June 15, 2022

PETER D. LEARY
United States Attorney
Middle District of Georgia

/s/ Lance Simon
LANCE SIMON
Assistant United States Attorney
Georgia Bar No. 447643
ROGER C. GRANTHAM, JR.
Assistant United States Attorney
Georgia Bar No. 860338
United States Attorney's Office
300 Mulberry St., Suite 400
P.O. Box 1702
Macon, GA 31202
Tel: (478) 621-2663
Email: lance.simon@usdoj.gov

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

/s/ Cassandra Snyder
ANDREW E. CARMICHAEL
Senior Trial Counsel
ZACHARY A. AVALLONE
CODY T. KNAPP
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*