# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPTAIN DANIEL KNICK, | |
| Plaintiff, | Civil Action No. 22-1267 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| LLOYD J. AUSTIN, III,<br>*in his official capacity as Secretary of Defense, et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a request by plaintiff, Air Force Captain Daniel Knick, for preliminary injunctive relief against defendants, leadership officials of the Department of Defense and the Air Force in their official capacities, to preclude defendants from (1) "enforcing against [plaintiff] any order or regulation requiring COVID-19 or other vaccination"; and (2) "instituting or enforcing any adverse or retaliatory action against [plaintiff] as a result of, arising from, or in conjunction with [plaintiff's] sincerely held religious objection to the COVID-19 or other vaccination mandate, his request for a religious exemption from the vaccine mandate, or pursuing this action or any other action for relief under RFRA, Title VII of the Civil Rights Act, the Administration [sic] Procedures Act or the First and Fifth Amendments." Plainitff's [sic] Mot. TRO and Prelim. Inj. ("Pl.'s Mot.") at 3, ECF No. 8.[1]  For the reasons that follow, the

---

[1] Although plaintiff's motion is also styled as a request for a temporary restraining order, this request is moot since "defendants agreed to defer administrative or disciplinary action" against plaintiff until at least June 17, 2022, Proposed Joint Briefing Schedule for Pl.'s Mot. TRO and Prelim. Inj. ¶ 2, ECF No. 10, rendering unnecessary the extraordinary remedy of a temporary restraining order provided the request for preliminary injunction is resolved by that date, *id.* ¶ 3, which it now is.

1

Court declines to meddle prematurely in the military's decision-making regarding personnel readiness. Plaintiff's motion is accordingly denied.

I.    **BACKGROUND**

Plaintiff filed the instant complaint on May 11, 2022, based on a mandate issued by defendant Secretary of Defense on August 24, 2021, directing "mandatory vaccination of Service members to the extent practicable," as applied in the Air Force by a corresponding mandate issued by defendant Secretary of the Air Force on September 3, 2021 (collectively, the "Mandates"). Compl. ¶¶ 14–15, 18, ECF No. 5. Plaintiff submitted a request for a religious exemption to the Mandates on August 31, 2021, which request was denied on internal appeal on December 2, 2021. *Id.* ¶¶ 22–26. On February 15, 2022, defendant Commander Rudolf Wilhelm Kuehne issued an order directing plaintiff to be vaccinated against COVID-19, and after plaintiff did not comply, on March 14, 2022, issued a "Letter of Reprimand" to plaintiff. *Id.* ¶¶ 27–28. Plaintiff alleges that defendant Kuehne removed plaintiff from a list of candidates for promotion on April 7, 2022. *Id.* ¶ 28. The sincerity of plaintiff's alleged religious belief underlying his exemption request is not disputed.

The Complaint alleges in five counts that defendants violated: (1) the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, by burdening his exercise of religious beliefs on account of the Mandates, Compl. ¶¶ 35–81; (2) the Free Exercise Clause of the First Amendment for similar reasons, *id.* ¶¶ 82–135; (3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 701–06, by issuing the Mandates, which plaintiff views as arbitrary, capricious, and an abuse of discretion, *id.* ¶¶ 136–42; (4) RFRA by retaliating against plaintiff by removing him from the promotion list in April 2022, *id.* ¶¶ 144–48; and (5) the Fifth Amendment's guarantees of equal protection and due process by operating a "procedurally and substantively

flawed" process for adjudicating religious accommodation requests for exemption from the Mandates, *id.* ¶¶ 149–56.

Two days after initiating this lawsuit, plaintiff filed the instant motion seeking to enjoin "the challenged vaccine mandate and all adverse consequences Defendants have imposed, or intend to impose, upon Plaintiff for objecting to the mandate based upon sincerely held religious beliefs." Pl.'s Mot. at 1–2 (footnotes omitted). Pursuant to a briefing schedule proposed by the parties and adopted by the Court, *see* Min. Order (May 16, 2022), briefing was completed on June 3, 2022, and the motion is now ripe for disposition.[2]

## II.  LEGAL STANDARD

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The moving party must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities" is in their "favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016). The first factor is also the "most important factor." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'" (quoting *Gonzales v. O Centro*

---

[2]  The parties' briefing schedule alone consumed the entirety of the 21-day window the Court ordinarily sets as an objective for hearings on motions for preliminary injunction. *See* D.D.C. LOCAL CIVIL RULE 65.1(d).

3

*Espirita Beneficente União do Vegetal*, 546 U.S. 418, 428 (2006))).³  Moreover, "'[t]he basis of injunctive relief in the federal courts has always been irreparable harm,'" and if a party fails to make a showing of irreparable harm, "that alone is sufficient . . . to conclude that the district court did not abuse its discretion."  *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).  A preliminary injunction "is an extraordinary . . . remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion" on each of the four factors.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted) (quoting 11A C. WRIGHT, A. MILLER, & M. KANE, FED. PRAC. & PROC. § 2948 (2d ed. 1995)).

## III. DISCUSSION

Although the D.C. Circuit has not issued binding authority deciding either the lawfulness of the Mandates or the appropriateness of preliminary injunctive relief for servicemembers facing the possibility of disciplinary action for noncompliance with the Mandates, another Judge on this Court has denied motions for preliminary injunction, raising virtually identical arguments, in three similar cases.  *See Church v. Biden*, No. 21-cv-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) (Kollar-Kotelly, J.); *Navy Seal 1 v. Austin*, No. 22-cv-688, 2022 WL 1294486 (D.D.C. Apr. 29, 2022); *Creaghan v. Austin*, No. 22-cv-981, 2022 WL 1500544 (D.D.C. May 12, 2022) (collectively, the "Prior Opinions").⁴  *See also* Defs.' Opp'n Pl.'s Mot.

---

³   The D.C. Circuit has previously followed a "sliding scale" approach to evaluating preliminary injunctions, but that approach is likely inconsistent with *Winter*, *see Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (observing that *Winter* may be "properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned" (quoting *League of Women Voters*, 838 F.3d at 7)); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295–96 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (noting that "this Circuit's traditional sliding-scale approach to preliminary injunctions may be difficult to square with the Supreme Court's recent decisions in" *Winter* and *Munaf*), and therefore will not be employed here, *see Singh v. Carter*, 185 F. Supp. 3d 11, 16–17 (D.D.C. 2016).

⁴   Perhaps unsurprisingly given the dispositions in the Prior Opinions, when queried whether this matter should be reassigned to Judge Kollar-Kotelly as a "related case," plaintiff vigorously opposed, offering the questionable abstraction that "[t]his lawsuit is not about a COVID-19 vaccine.  It is about the law and the failure of

4

TRO and Prelim. Inj. ("Defs.' Opp'n") at 11–13, ECF No. 17 (collecting cases).  The Court finds the analysis set out in the Prior Opinions to be thorough and persuasive and adopts these opinions' reasoning here.  Accordingly, it is not necessary to laboriously "reinvent the wheel" here for a case that presents the same central questions, except to the limited extent plaintiff presents new arguments.  Plaintiff has not engaged with the reasoning in the Prior Opinions nor offered a compelling reason to rule differently.[5]  The first two prongs of the standard for preliminary injunctive relief are examined in turn.  The balancing of the equities and the public interest assessment merge when the government is a party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and the Prior Opinions' conclusions that this prong weighs against a preliminary injunction apply equally here.  *See Navy Seal 1*, 2022 WL 1294486, at *16–17; *Church*, 2021 WL 5179215, at *18–19; *Creaghan*, 2022 WL 1500544, at *11.

A. **Likelihood of Success on the Merits**

Plaintiff's arguments concerning the likelihood of success on the merits fail under the reasoning of the Prior Opinions.  As a threshold matter, defendants raise significant questions regarding ripeness and administrative exhaustion, because no disciplinary action has been taken,

---

the defendants to follow the law in implementing the direction of the Commander-in-Chief, in accordance with the law as legislated by Congress, and the Constitution as interpreted by the Supreme Court." Pl.'s Statement on Position Whether Case Should Be Transferred to the Calender [sic] and Case Management Committee Pursuant to LCvR 40.5(c)(2), for Potential Reassignment to Judge Kollar-Kotelly ("Pl.'s Statement") ¶ 3, ECF No. 15.  In the event this case was deemed "related" to the earlier cases, plaintiff further argued that reassignment should not be made to Judge Kollar-Kotelly but that the case should be transferred to the Middle District of Georgia as "related" to another pending case there. *Id.* at 3–4.  Plaintiff offers no authority for the premise that he is entitled to an inter-district transfer of his case on this basis just weeks after he elected to file this action here and based on no new information other than the prospect of its potential reassignment to another Judge in this District to whom the case could have been randomly assigned in the first instance.

[5]      While plaintiff correctly notes that this case and those underlying the Prior Opinions are not all identical with respect to party composition, the branch of service (and, therefore, precisely which mandate) involved, and the precise "circumstances" of each case, *see* Pl.'s Statement at 2–3, he nevertheless fails to make any attempt to distinguish or rebut the Prior Opinions in his subsequent reply brief, *see* Pl.'s Reply Defs.' Opp'n Pl.'s Mot. TRO and Prelim. Inj., ECF No. 18, even after defendants heavily cited the Prior Opinions as relevant persuasive authority, *see* Defs.' Opp'n at 2, 3, 12, 14, 15, 16, 19, 21–23, 25, 28–31, 32–34, 37, 39, 41–44.

5

let alone any appeal process thereof completed. *See* Defs.' Opp'n at 15–17. The *Church* opinion stresses the need for courts to "at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers," 2021 WL 5179215, at *10 (quoting *Bois v. Marsh*, 801 F.2d 462, 478 (D.C. Cir. 1986)), pointing to a recognized rule in this Circuit that "an aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court," *id.* (alteration in original) (quoting *Bois*, 801 F.2d at 468).[6] Furthermore, even setting aside the ripeness problem, "there appears to be a serious question as to whether Plaintiff's claims are justiciable, because they require the Court both to evaluate the merits of military expertise and to weigh technical issues of public health and immunology based on novel science that remains unfixed." *Navy Seal 1*, 2022 WL 1294486, at *5; *see also Creaghan*, 2022 WL 1500544, at *1, *5–6.

Nonetheless, even assuming, *arguendo*, that proceeding to the merits of plaintiff's claims is prudent, additional problems undermine any likelihood of success on the merits, as explained below.

### 1. *RFRA and the First Amendment*

Plaintiff argues that the Mandates violate RFRA and the First Amendment, Pl.'s Mem. Supp. Mot. TRO and Prelim. Inj. ("Pl.'s Mem.") at 6–15, ECF No. 8-1, asserting that the Mandates must be evaluated under strict scrutiny, *id.* at 9–11; are unsupported by a compelling

---

[6] With respect to plaintiff's removal from a promotion list by his commander, one action that *has* already taken place, defendants correctly point out that "the final decision authority rests with the Secretary of the Air Force and the President" and because no final decision has been made, "Plaintiff's claim is not ripe." Defs.' Opp'n at 18. Further, as defendants note, because "the promotion of a military officer is a discretionary act, one wholly within the province of the President as Commander in Chief," *id.*, the justiciability of this component of plaintiff's claims is further in doubt over and above the broader justiciability questions in play in this case.

6

governmental interest, *id.* at 11–14; and are not the least restrictive means of satisfying whatever interest defendants may have, *id.* at 14–15.

Plaintiff has not shown that defendants lack a compelling interest in the Mandates. In *Navy Seal 1*, the court found the plaintiff had not "shown that Defendants lack a compelling interest for their vaccination orders, either generally or as applied to Plaintiff." 2022 WL 1294486, at *9. The court concluded the same in *Creaghan* for an officer who "does not deploy and works solely in an office setting." 2022 WL 1500544, at *8–10. So too here.

In an additional argument in the instant case, plaintiff claims that the military's interest in near-universal vaccination among servicemembers is "eroded" by the existence of *other* servicemembers who have been granted exemption on account of medical reasons or participation in clinical vaccine trials. *See* Pl.'s Mem. at 12–13. In support, plaintiff invokes *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), for the proposition that a rule allowing certain secular types of exceptions but disfavoring religious exceptions cannot be viewed as a "generally applicable" rule and thus cannot evade strict scrutiny. *See* Pl.'s Mem. at 10–11 ("A law is not generally applicable if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" (quoting *Fulton*, 141 S. Ct. at 1877)). *Fulton* is inapposite, however, because the secular exemption categories do not similarly undermine defendants' interests. With respect to medical exemptions, "giving a vaccine to a service member who has medical contraindications to the vaccine would harm the member's health, *detracting* from the military's interests in ensuring readiness and the health and safety of members." Defs.' Opp'n at 25 (emphasis in original). Any given clinical trial participant, meanwhile, may in fact be vaccinated—and this argument is potentially a red herring

7

anyway as there may be no such participants in the Air Force at all, *id.* at 26.[7] Critically, the exemption categories rely on objectively defined circumstances and do not include a catch-all discretionary category allowing defendants to subjectively favor *ad hoc* non-secular exceptions. *See id.* at 34–35; *see also Fulton*, 141 S. Ct. at 1877 ("A law is not generally applicable if it invite[s] the government to consider the *particular reasons* for a person's conduct by providing a mechanism for *individualized* exceptions." (emphasis added) (quotation marks and citation omitted)).[8]

Satisfaction of the least-restrictive-means requirement is less clear-cut, but deference to the military's professional judgments about how to satisfy the services' readiness requirements compels a certain degree of restraint at the preliminary injunction stage, *see Navy Seal 1*, 2022 WL 1294486, at *8 ("[T]he degree of deference to the military's tailoring depends on the degree of military and scientific expertise necessary to make that judgment."), and the record here is insufficient, as in *Navy Seal 1* and *Creaghan*, for plaintiff convincingly to make the case that the military's tailoring is inadequate, *see Navy Seal 1*, 2022 WL 1294486, at *10–12; *Creaghan*, 2022 WL 1500544, at *10.

In an effort to invite the Court to second-guess the need for application of the Mandates to him, plaintiff argues that he *might* have natural immunity to COVID-19 due to infection, rendering vaccination unnecessary, though acknowledges that he has never in fact tested positive

---

[7]  Even a clinical trial participant in the control group (*i.e.*, unvaccinated) could plausibly be said to be *advancing* the military's interest in readiness and servicemember health insofar as their participation assists the development and approval of effective vaccines.

[8]  Plaintiff also suggests that defendants' compelling interest is undermined by the availability of vaccines for "nearly a year" before the Mandates were issued. Pl.'s Mem. at 13. That assertion is questionable given that the Mandates were issued in late summer 2021 while the first public availability of vaccines was only in December 2020, and even then with well-known supply and distribution limitations in the initial months. Even if true, however, defendants reasonably explain the timing of the Mandates' issuance, noting that the Mandates followed both the rise of the Delta variant of the virus and the Food and Drug Administration's full approval of a vaccine. Defs.' Opp'n at 27–28.

8

for COVID-19. Pl.'s Mem. at 15. Given that plaintiff "has failed to show that he has any such immunity" and, furthermore, "there is no FDA-approved test" to assess the same, Defs.' Opp'n at 30, such speculation is an inadequate reason for the Court to intervene, on this record, in the science-based approach to military policymaking underlying the Mandates. Plaintiff also suggests that he can "fulfill his responsibilities using the mitigation methods used throughout the pandemic." Pl.'s Mem. at 15. The record contains no reason to second-guess, however, the Air Force's determination that plaintiff's particular role is unsuitable for telework or "adequate distancing," *id.* at 4–5, nor can the fact that some incrementally helpful measures of prevention exist, such as masking and hand-washing, give reason to opt out from the overwhelmingly more effective measure of vaccination.

### 2. *Fifth Amendment*

In a single paragraph, plaintiff asserts that defendants violate the equal protection requirements of the Fifth Amendment because "[s]imilarly[] situated service members who have requested medical or administrative exemptions have been granted accommodations by the Defendants." Pl.'s Mem. at 16–17. Plaintiff fails, however, to identify even conceptually a servicemember or group who is granted an exemption and is in fact similarly situated. As defendants explain, a servicemember receiving a medical exemption is one whose health would be harmed by the vaccine, and an administrative exemptee is someone already imminently leaving the service. Defs.' Opp'n at 37; *see also Navy Seal 1*, 2022 WL 1294486, at *15. In any event, as in *Navy Seal 1*, "[p]laintiff's Equal Protection claim is essentially a rephrasing of his Free Exercise and RFRA claims" and therefore suffers the same deficiency in its showing of a likelihood of success on the merits. 2022 WL 1294486, at *14.

9

Plaintiff also raises a novel due process claim, arguing in essence that the review and appeals process employed by defendants when considering a religious accommodation request is a "sham" process designed to generate denials as a matter of course. *See* Pl.'s Mem. at 17–19; Pl.'s Reply Defs.' Opp'n Pl.'s Mot. TRO and Prelim. Inj. at 7–8, ECF No. 18. Although defendants offer a compelling rebuttal to this accusation, *see* Defs.' Opp'n at 39–40, dissection of the review process is unnecessary because for plaintiff's due process claim to have independent force separate from his RFRA and First Amendment claims, he must identify a life, liberty, or property interest of which he may be deprived—and he fails to do so. No liberty interest is at stake given that plaintiff is not forced to obtain the vaccine and does not at this point face court-martial, *see* Defs.' Opp'n at 38. Meanwhile, while discharge would surely entail financial consequences for plaintiff, "[t]he law is clear that the plaintiff cannot maintain a due process claim because 'there is no protected property interest in continued military service.'" *Chamness v. McHugh*, 814 F. Supp. 2d 7, 16 (D.D.C. 2011) (Howell, J.) (quoting *Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 8 (D.D.C. 2000), *aff'd*, 6 F. App'x 3 (D.C. Cir. 2001)), *aff'd mem.*, 528 F. App'x 996 (Fed. Cir. 2013) (per curiam).

### 3. *Administrative Procedure Act*

Plaintiff briefly advances an APA claim based on the premise that the Mandates are arbitrary and capricious because defendants' own separate regulation purportedly "recognizes natural immunity as a basis for exemption from a Vaccine Mandate." Pl.'s Mem. at 15–16. Even setting aside plaintiff's questionable standing to raise this objection given that there is no evidence that he has any "natural immunity" at all, *see* Defs.' Opp'n at 40, defendants satisfactorily explain any potential conflict between the policies by noting that "natural immunity" is used as a general term encompassing infections for which such immunity is well

10

understood and documented, and that there is neither a test for nor a clear scientific understanding of the extent of natural immunity for COVID-19 in any person. *Id.* at 41.

**B.     Irreparable Harm**

Plaintiff asserts that he and other religious objectors to the Mandate are already experiencing damages to their RFRA and First Amendment rights that are "per se irreparable." Pl.'s Mem. at 19–20. While this argument has some superficial appeal, the fatal flaw is obvious: to date, plaintiff has been able, and will continue to be able, to follow his own religious convictions and refuse the vaccine. The potential harm to plaintiff arises only through the potential, reversible consequences to his military career.[9] These consequences have yet to manifest given that no discharge proceeding has been initiated, let alone run its course through the military's review processes, so any injury is not "imminent." *See* Defs.' Opp'n at 41–42; *see also Creaghan*, 2022 WL 1500544, at *11. Even more importantly, though, separation proceedings are "definitionally reparable" if plaintiff were to prevail on the merits later, *Navy Seal 1*, 2022 WL 1294486, at *15; *accord Creaghan*, 2022 WL 1500544, at *11, through such mechanisms as reinstatement, back pay, and correction of records. Further, defendants represent that they "do[] not intend to initiate" any court-martial action. Defs.' Opp'n at 42 n.12.

*     *     *

All told, on the limited record accumulated to date in this case, plaintiff has failed to make a showing sufficient to satisfy any of the four prongs of the preliminary injunction analysis required for entitlement to this extraordinary remedy.

---

[9]     Plaintiff also suggests that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Pl.'s Mem. at 19 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)). As already discussed in Part III.A.2, *supra*, however, plaintiff has suffered no such loss because he remains able to refuse vaccination—and has done so. *See Navy Seal 1*, 2022 WL 1294486, at *16 ("Here, however, no government actor is preventing Plaintiff from exercised his alleged religious conviction against COVID-19 vaccination.").

11

## IV. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 8, is **DENIED**.

**SO ORDERED.**

Date: June 15, 2022

                                                           BERYL A. HOWELL
                                                           Chief Judge