**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **AIR FORCE OFFICER**, **AIR FORCE NCO**, **AIR FORCE SPECIAL AGENT**, and **AIR FORCE ENGINEER**, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN**, **III**, in his official capacity as Secretary of Defense; **FRANK KENDALL, III**, in his official capacity as Secretary of the Air Force; and **ROBERT I. MILLER**, in his official capacity as Surgeon General of the Air Force, <br><br> Defendants. | Case No. 5:22-cv-00009-TES |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
OPENING BRIEF REGARDING MOOTNESS**

# TABLE OF CONTENTS

Introduction ........................................................................................................................................... 1

Argument ............................................................................................................................................... 2

    I.    Plaintiffs Cannot Survive Mootness by Purporting to Challenge Some Broader Religious Accommodations Policy. .............................................................................................................. 2

        A.   The SAC does not challenge any broader religious accommodations policy. ......................... 2

        B.   Even if the SAC did challenge some broader religious accommodation policy, Plaintiffs' claims would still fail. ................................................................................................................................ 4

    II.   Plaintiffs Cannot Amend The SAC. ........................................................................................ 9

    III.  The Settlement Agreement in *Navy SEALs* Has No Bearing on this Case ........................... 10

    IV.  No Exceptions to Mootness Apply. ...................................................................................... 12

        A.   The exception for voluntary cessation does not apply. ............................................................ 12

        B.   The exception for capable of repetition yet evading review does not apply. ......................... 14

Conclusion ........................................................................................................................................... 14

**INTRODUCTION**

For the first time in the history of this case, Plaintiffs now assert that their claims challenge not the COVID-19 vaccine requirement, but rather some unidentified "broader accommodations policy" related to all required vaccines. *See, e.g.*, Pls.' Opening Br. Regarding Mootness 3, ECF No. 134 ("Pls.' Br."). But the allegations in Plaintiffs' Second Amended Class Action Complaint, ECF No. 82 ("SAC"), and Plaintiffs' requested relief relate exclusively to the alleged unlawfulness of the COVID-19 vaccine requirement. Plaintiffs cannot rewrite their pleadings, more than two-and-a-half years after filing this case and after two previous amendments, for the purpose of prolonging this moot case.

In any event, even if this Court were to interpret Plaintiffs' SAC as bringing claims against some amorphous broader policy, Plaintiffs' claims would still fail. Plaintiffs do not allege that they have ever sought or been denied, or that they imminently intend to seek, a religious accommodation for any other vaccine besides COVID-19. Plaintiffs therefore lack standing to bring a claim against any vaccine-related policy besides the COVID-19 vaccine requirement. Similarly, because the SAC's allegations focus on the COVID-19 vaccine requirement, Plaintiffs also fail to state a claim regarding any purported challenge to any vaccine-related policy besides the COVID-19 vaccine requirement. And allowing Plaintiffs to amend their pleadings—for the third time in this case—would be both futile and not in the interests of justice.

None of Plaintiffs' remaining attempts to resuscitate this case have merit. Plaintiffs cannot save their moot claims with reference to a settlement agreement entered in an entirely separate case challenging the Navy's COVID-19 vaccine requirement. Preliminarily, the mootness decision in that case was wrongly decided and contrary to every other court to have considered the question. Moreover, the terms of that Navy settlement have no bearing on this case, and—contrary to Plaintiffs' novel constitutional interpretation—the Fifth Amendment does not require the Government to settle

two different cases the same way. Finally, as Defendants explained in their opening brief, *see* Defs.' Briefing on Mootness, ECF No. 133 ("Defs.' Br."), no exceptions to mootness apply here.[1]

## ARGUMENT

**I. Plaintiffs Cannot Survive Mootness by Purporting to Challenge Some Broader Religious Accommodations Policy.**

Plaintiffs have only ever purported to challenge the COVID-19 vaccine requirement. The SAC contains no allegations supporting a challenge to some "broader" policy regarding religious accommodations for other vaccines. Regardless, even if this Court were to interpret Plaintiffs' SAC as challenging some broader policy, such challenges would fail.

### A. The SAC does not challenge any broader religious accommodations policy.

Plaintiffs' SAC facially does not challenge any broader "religious accommodations policy." Pls.' Br. at 6. Plaintiffs have consistently only ever purported to challenge Defendants' requirement that Plaintiffs receive the COVID-19 vaccine, including the denial of religious accommodation requests thereto and any associated adverse action. *See, e.g.*, SAC ¶ 2 ("In this lawsuit Plaintiffs challenge Defendants' military and federal civilian employee COVID-19 vaccine mandates."); Pls.' Mem. in Supp. of Mots. to Certify Class, to Appoint Class Counsel, & for Class-Wide Prelim. Inj. 8, ECF No. 88-1 (seeking to certify a class based on the alleged common issue of "wrongful denial of religious accommodation requests" to the COVID-19 vaccine requirement); Pls.' Opp'n to Defs.' Mot. to Dismiss 1, ECF No. 101 ("Plaintiffs, individually and on behalf of a putative class, allege that these denials of religious accommodation [to the COVID-19 vaccine requirement] are discriminatory and unlawful under the Religious Freedom Restoration Act ("RFRA") and the First Amendment."). Nowhere have Plaintiffs ever previously purported to challenge Defendants' general accommodation

---

[1] Plaintiffs' brief appears to forfeit any arguments regarding the civilian COVID-19 vaccine requirement by failing to engage in any substantive discussion of that requirement. Accordingly, Defendants do not readdress those claims in this brief.

policies or the denial of an accommodation request to any vaccine besides COVID-19.

Plaintiffs' own SAC belies their assertions otherwise. Plaintiffs' SAC seeks relief only as to Defendants' "Mandates," SAC at 47–48, which Plaintiffs define as including: "The DoD Military Mandate, Air Force Military Mandate, President's Federal Employee Mandate, Air Force Military Order to Air Force Officer, Air Force Military Order to Air Force NCO, Air Force Military Order to OSI Personnel, DoD Civilian Mandate, Air Force Civilian Mandate, and any and all other related *vaccine mandate orders*," *id.* ¶ 49 (emphasis added).[2] By Plaintiffs' own definition, then, the SAC challenges only the COVID-19 requirement. Because none of Plaintiffs' requested relief is available, this case is moot. *See* Defs.' Br. at 11–12 (explaining why each of Plaintiffs' requested relief is moot).

The mere fact that the SAC refers broadly to "Defendants' orders, policies, and actions," Pls.' Br. at 6–7 (quoting SAC ¶¶ 10–11, 183, 196, 199, 236), does not allow Plaintiffs to newly sweep any and all DoD or Air Force vaccine-adjacent policies within the SAC's purview, regardless of whether Plaintiffs have alleged any facts related to such policies, *see, e.g.*, *Lowe v. Mills*, --- F. Supp. 3d ---, 2024 WL 756792, at *3–*4 (D. Me. Feb. 23, 2024), *appeal filed*, No. 24-1283 (1st Cir. Mar. 29, 2024) (interpreting narrowly plaintiffs' challenges to COVID-19 vaccine "mandate" as excluding any challenge to the underlying statutory authority). Indeed, the Eleventh Circuit just recently reaffirmed in binding authority that a plaintiff's alleged future injury cannot save a moot case where such allegations are not explicitly and "concretely" set forth in the operative pleading. *See Graham v. Att'y*

---

[2] Plaintiffs further define each of these terms accordingly: the "DoD Military Mandate" is Secretary Austin's August 24, 2021 memorandum, SAC ¶ 30; the "Air Force Military Mandate" is Secretary Kendall's September 3, 2021 memorandum, *id.* ¶ 38; the "President's Federal Employee Mandate" is President Biden's Executive Order 14043, *id.* ¶ 40; the "Air Force Military Order to OSI Personnel" is a September 13, 2021 memorandum directing vaccination of Office of Special Investigations active duty and reserve personnel, *id.* ¶ 44; the "DoD Civilian Mandate" is Deputy Secretary Hicks' October 1, 2021 memorandum, *id.* ¶ 45; and the "Air Force Civilian Mandate" is Secretary Kendall's October 8, 2021 memorandum, *id.* ¶ 47. Plaintiffs do not explicitly define "Air Force Military Order to Air Force Officer" or "Air Force Military Order to Air Force NCO," but these terms presumptively refer to the Air Force's final denials of Air Force Officer's and Air Force NCO's requests for a religious accommodation, respectively. *See id.* ¶ 5.

3

*Gen., State of Georgia*, --- F.4th ---, 2024 WL 3633374, at *6 (11th Cir. Aug. 2, 2024) ("[E]ven assuming, as [the plaintiffs] argue, that 'the [challenged] campaign-finance rules affect candidate recruitment and fundraising plans for future elections,' their complaint failed to allege *anything* related to . . . future campaigns."). Because of these shortcomings, the SAC "fails to present a live controversy with respect to which the court can give meaningful relief." *Id.* (quoting *Wood v. Raffensperger*, 981 F.3d 1307, 1316 (11th Cir. 2020)) (internal quotations omitted).

It is telling that the plaintiffs in *Doster v. Kendall*, No. 1:22-CV-84 (S.D. Ohio), did not attempt to argue that their own requests for prospective relief were live. Plaintiffs here believed the claims in *Doster* to be so similar to their own that Plaintiffs sought a stay of all proceedings pending final resolution in *Doster*. Plaintiffs told this Court that "[i]f final, permanent class-wide relief is ultimately issued in *Doster* (involving RFRA and First Amendment claims) after exhaustion of all appeal rights, then Plaintiffs would likely face no prospect of injury as to the military mandate." Pls.' Mot. to Stay Counts I & II 2, ECF No. 121. Yet the *Doster* plaintiffs conceded mootness as to their requests for prospective relief. *See Doster v. Kendall*, No. 1:22-CV-84, 2024 WL 1156426, at *1 (S.D. Ohio Mar. 18, 2024), *appeal filed*, No. 24-3404 (6th Cir. May 9, 2024). The *Doster* plaintiffs therefore clearly did not believe that their claims challenged some "broader accommodations policy." Plaintiffs' sudden attempts to distance themselves from *Doster* ring hollow given that Plaintiffs once confirmed that final relief in *Doster* would likely resolve their own claims.

### B. Even if the SAC did challenge some broader religious accommodation policy, Plaintiffs' claims would still fail.

Even if this Court were to interpret the SAC as challenging some "broader accommodations policy," such challenges would fail on their face. Plaintiffs fail to plead any facts supporting such hypothetical claims. Indeed, the SAC is so lacking in allegations related to challenges against any "broader vaccine accommodations policy" that it is difficult to parse all the many resulting legal defects. At minimum, however, Plaintiffs fail to meet basic pleading requirements and fail to allege

4

any injury sufficient to support standing.

To state a claim for which relief can be granted, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Here, Plaintiffs fail to even identify any particular live policy (or other agency action) that they purport to challenge—either in the SAC or even in their mootness briefing. Plaintiffs merely refer vaguely to some alleged, unidentified "broader vaccine accommodations policy." *See, e.g.*, Pls.' Br. at 3. But Plaintiffs plead no facts related to this alleged broader policy, and it is not otherwise clear what alleged policy they now purport to challenge as illegal. For example, while the SAC alleges that Defendants had an unlawful policy of denying religious accommodations to the now-defunct COVID-19 vaccine requirement, the SAC includes no allegations—not even conclusory allegations—that Defendants had an unlawful policy of denying religious accommodations to any other required vaccine. Plaintiffs' conclusory assertion that Defendants have an "illusory and insincere [broader] religious accommodations process" that "enabled . . . coercive and discriminatory treatment," *id.* at 7—made for the first time in their mootness briefing and unaccompanied by any non-COVID-19-related allegations—does not support a claim.

Even if Plaintiffs had identified a particular policy, Plaintiffs fail to make a prima facie case that such a policy violates RFRA or the First Amendment.[3] To plead claims under RFRA and the First Amendment, a plaintiff must allege that she has sincere religious beliefs that are contrary to some

---

[3] Plaintiffs do not appear to argue that they retain a live Administrative Procedure Act ("APA") claim, but to the extent that they do, such claim would also fail. Plaintiffs' APA claim is exclusively premised on COVID-19 and is therefore moot. In particular, Plaintiffs' APA claim is premised on the theory that "Defendants wrongfully denied Plaintiffs . . . the opportunity to seek . . . a medical exemption [to the COVID-19 vaccine] based on their natural immunity" to COVID-19. SAC ¶ 355. Because the COVID-19 vaccine requirement no longer exists, this claim that Defendants wrongfully denied a medical exemption to COVID-19 is moot.

5

particular policy. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014). Here, Plaintiffs have not demonstrated what specific "contested exercise" remains before the Court. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). The SAC's allegations regarding Plaintiffs' religious beliefs are focused exclusively on religious opposition to the COVID-19 vaccine. *See* SAC ¶¶ 91–95 (alleging that Plaintiffs oppose the COVID-19 vaccines because each was "derived from or tested on aborted fetal tissue" and because "getting injected with a novel substance of unknown long-term effects would violate [their] belief" "that the 'body is the temple of the Holy Spirit'"). Plaintiffs do not allege that they hold religious beliefs that are contrary to receiving any other vaccine besides COVID-19. *See generally* SAC. Indeed, Plaintiffs expressly allege that they "do not oppose all vaccines." *Id.* ¶ 96. Plaintiffs have therefore failed to state a claim under RFRA or the First Amendment challenging a "broader accommodations policy."

Relatedly, Plaintiffs have also failed to allege that they have been or will be injured by a "broader accommodations policy." Plaintiffs do not allege that they have ever sought or been denied a religious accommodation for any other vaccine besides COVID-19. Nor do Plaintiffs allege that they intend to seek a religious accommodation for any other vaccine besides COVID-19, much less imminently so. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also, e.g.*, *Jackson v. Mayorkas*, No. 4:22-cv-0825-P, 2023 WL 5311482, at *2 (N.D. Tex. Aug. 17, 2023), *appeal filed*, No. 23-11038 (5th Cir. Oct. 11, 2023) (holding moot challenge to Coast Guard's COVID-19 vaccine requirement because "Plaintiffs identify no threat of imminent future harm from the [now-defunct] Mandate"). And even if Plaintiffs had alleged that they intended to imminently seek a religious accommodation for some other vaccine besides COVID-19—which they do not—Plaintiffs allege no facts indicating that such request would be denied. As explained above, Plaintiffs' entire SAC is focused on Defendants' alleged policy related to religious accommodations to the COVID-19 vaccine. While Plaintiffs allege that "[t]he Air Force has not approved any or essentially any of the 7,500+ religious

6

accommodation requests" to the COVID-19 vaccine, SAC ¶ 6, Plaintiffs do not allege that Defendants have discriminately denied religious accommodations to any other vaccine. Plaintiffs have thus failed to establish injury sufficient to support standing. Plaintiffs cannot base their claims on "hypothetical questions" about some broader accommodations policy that simply "pique [their] curiosity." *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

For the first time in their mootness briefing, Plaintiffs argue that they have suffered injury in the form of "hesitance to use the accommodations process going forward for *any* religious accommodation." Pls.' Br. at 9 (citation omitted). But the SAC contains no such allegations about "hesitance." *See generally* SAC. Nor, again, have Plaintiffs pled any facts indicating that they intend to seek, or have been chilled from seeking, a religious accommodation for any other vaccine. Regardless, any such alleged chilling injury would derive from the COVID-19 vaccine requirement and Plaintiffs' allegations related thereto, not some "broader accommodation policy." And as Defendants have explained, every court to have considered the issue—with a single outlier—has found challenges to the COVID-19 vaccine requirement to be moot. *See* Defs.' Br. at 9–10. Plaintiffs cannot manufacture injury, no more than they can rewrite the SAC.

Finally, Plaintiffs attempt to hang their entire case on analogy to *U.S. Navy SEALs 1–26 v. Biden*, No. 4:21-cv-1236 (N.D. Tex.) ("*Navy SEALs*"). The court there denied the Navy's motion to dismiss the case as moot—though the court emphasized that, "[c]ritically, . . . this is a preliminary conclusion." *See Navy SEALs*, No. 4:21-cv-1236, Order 18, ECF No. 262 (N.D. Tex. Feb. 14, 2024) ("*Navy SEALs* Order") (attached as Exhibit A). But, as Defendants have explained, *Navy SEALs* was the single outlier in a sea of mootness dismissals to challenges to military COVID-19 vaccine requirements. *See* Defs.' Br. at 9–10. Indeed, *Navy SEALs* was incorrectly decided for all the same reasons explained previously, *see id.* at 10 n.1, and above, *see supra* p. 4–6. The court found that the plaintiffs' challenges to DoD and the Navy's COVID-19 vaccine requirements were not moot based

7

on harms "arising from the Navy's broader religious accommodations policy itself." *Navy SEALs* Order at 7. But the court's cited "harms" all arose from the COVID-19 vaccine requirement, not some "broader" policy governing all required vaccines. For example, the court cited such ongoing problems as the Navy "indefinitely sitting on requests for religious accommodation," "foregoing the required individualized assessments," and "authorizing Navy leadership to dictate denial of all requests." *Id.* at 7–8. But neither the plaintiffs in *Navy SEALs* nor Plaintiffs here have ever alleged that such "problems" have occurred outside the context of the COVID-19 vaccine requirement.

A court within the Middle District of Florida recently rejected the same argument that was adopted in *Navy SEALs*. There, the court explained:

> Plaintiffs next contend that the case is not moot because the same policies and procedures for evaluating [religious accommodation requests ("RARs")] remain in place. . . . But in the Complaint, Plaintiffs do not challenge the RAR process as a whole or assert that the RAR process is defective with regard to other requests for accommodations. Plaintiffs oppose the alleged policy of denying all RARs that sought an exemption from the Vaccine Mandate. . . . Because the Vaccine Mandate no longer exists, there can be no policy of denying all RARs to enforce that mandate.

*Bongiovanni v. Austin*, No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445, at *8 (M.D. Fla. July 5, 2023). Indeed, while the Government believes *Navy SEALs* was wrongly decided regardless, the court there distinguished *Bongiovanni* on the basis of the pleadings. The court found that, in contrast to *Biongiovanni*, the *Navy SEALs* plaintiffs "actually asserted—prior to recission of the Mandate—that their underlying harms derive from the lack of a proper religious accommodation process, rather than exclusively from the Mandate itself." *Navy SEALs* Order at 9. In particular, the plaintiffs had expressly alleged that "[i]n the past seven years, no religious exemption from vaccination waivers were approved for *any other* vaccine" by the Navy. *Navy SEALs*, No. 4:21-cv-01236, First Am. Class Action Compl. ¶ 41, ECF No. 84 (N.D. Tex. Jan. 24, 2022) (emphasis added); *see also Navy SEALs* Order at 14. Here, unlike in *Navy SEALs* but as in *Bongiovanni*, there is no allegation that any DoD or Air Force policy is accompanied by a general lack of "meaningful religious accommodations." *See Bongiovanni*, 2023 WL

8

4352445 at *10; *see also Schelske v. Austin*, No. 6:22-CV-049-H, 2023 WL 5986462, at *14 (N.D. Tex. Sept. 14, 2023) (rejecting the plaintiffs' attempt to recharacterize their challenge to DoD COVID-19 vaccine requirement as a challenge to some broader accommodations policy). Thus, to the extent it matters, the SAC in this case is far more closely aligned to the pleadings in *Bongiovanni* than *Navy SEALs*.

This case is further distinct from *Navy SEALs* in material ways. Here, unlike in *Navy SEALs*, there is no certified class, and none of the four named Plaintiffs have identified—much less alleged in the SAC—any ongoing or future injury to themselves. Again, like the servicemembers in *Bongiovanni*, the named Plaintiffs here sought discrete religious exemptions specifically in connection with the COVID-19 vaccine mandate. Moreover, *Navy SEALs* involved specific allegations regarding the Navy's policies, not the Air Force's policies. *See Navy SEALs* Order at 14; Am. Compl., *Navy SEALs*, ECF No. 84 ¶ 41 (attached as Exhibit B). Plaintiffs' SAC makes no such allegations related to any "broader" accommodations process, and Plaintiffs cannot rewrite those allegations now. To the contrary, the SAC alleges that the Plaintiff's "Exercise of Religion" is being infringed upon in violation of the RFRA and the First Amendment to the extent that they object to being vaccinated for COVID-19, along with "[m]ore than 7,500 other Air Force service members [who] share Plaintiffs' religious objection *to being vaccinated for COVID-19*." SAC ¶¶ 217, 283 (emphasis added). Even *Navy SEALs* criticized the practice of "attempting to reformulate . . . Mandate-specific claims *in order to* survive the mootness challenge." *Navy SEALs* Order at 14 (citing *Bongiovanni*, 2023 WL 4352445, at *8) (emphasis added).

## II. Plaintiffs Cannot Amend The SAC.

This Court should reject Plaintiffs' perfunctory request for leave to amend the SAC, *see* Pls.' Br. at 8 n.2, because amendment would be futile. As explained above, even if this Court were to interpret the SAC as bringing claims against some unspecified, broader "religious accommodations

9

policy," such claims would fail on their face. Plaintiffs have not and cannot state claims for which relief can be granted as to an alleged broader religious accommodations policy nor establish standing to bring such claims.

Moreover, allowing Plaintiffs to amend their operative pleading for the third time when the actual case before the Court is clearly moot would not be in the interests of justice. "Though courts 'freely give leave [to amend] when justice so requires,' . . . justice does not require permitting the Plaintiffs to further amend the Amended Complaint to drastically broaden the scope of their claims." *Lowe*, 2024 WL 756792, at *5 (quoting Fed. R. Civ. P. 15(a)(2)) (denying healthcare workers leave to amend complaint in action challenging COVID-19 vaccine requirement that had become moot). Plaintiffs do not explain how they would amend the complaint, but any amendment adding a new challenge to some "broader accommodations policy" would necessarily drastically broaden the scope of the SAC. As explained above, the SAC focuses exclusively on the now-defunct COVID-19 vaccine requirement. Any amendment would thus necessarily be comprised of entirely novel allegations. Plaintiffs should not be allowed amendment merely to prolong a moot case.

### III. The Settlement Agreement in *Navy SEALs* Has No Bearing on this Case.

Plaintiffs make the novel argument that the Government's settlement in *Navy SEALs*, an entirely separate case, independently establishes that this case is not moot. Preliminarily, Plaintiffs' citation to the *Navy SEALs* settlement as evidence of Government admission is facially improper. Plaintiffs assert that the settlement "demonstrates that the military itself acknowledges there is some relief that can be granted to service members." Pls.' Br. at 11. But the terms of the settlement in that case explicitly state that the settlement "is not intended and shall not be deemed an admission by any Party of the merit or lack of merit of an opposing Party's claims or defenses," and it "may not be used as evidence or otherwise in any civil or administrative action or proceeding against Defendants or the United States." *Navy SEALs*, No. 21-cv-01236, App'x in Supp. of Unopposed Mot. 18 ¶ 44, ECF

10

No. 279 (N.D. Tex. May 31, 2024) ("*Navy SEALs* Settlement Agreement") (attached as Exhibit C).

In any event, the terms of the settlement have no bearing on the mootness question here. The Government in *Navy SEALs* ultimately settled only after the court there held—incorrectly, as the Government reiterates—that the case was not moot. Plaintiffs cannot rely on a settlement agreement entered into after a mootness decision to support their mootness arguments here. Moreover, the relief to which the Navy agreed to provide to the class in the *Navy SEALs* settlement has no bearing on the contents of the SAC in this case. Plaintiffs insist that the settlement proves that "there is some relief that can be granted to service members." Pls.' Br. at 11. But the relevant inquiry is whether this Court can provide any of the relief requested *in Plaintiffs' complaint*, not whether there is any relief available within the universe of all relief that *could have been* requested. *See Graham*, 2024 WL 3633374, at *6 (rejecting the plaintiffs' attempt to rewrite the complaint to avoid mootness). And indeed, Plaintiffs' SAC does not seek any of the relief that the Government agreed to provide the plaintiffs in *Navy SEALs*. *Compare* SAC at 47–48 *with Navy SEALs* Settlement at 8–11 ¶¶ 17–25. Plaintiffs' case is moot, and the settlement agreement in an entirely separate case has no bearing on that fact.

Finally, Plaintiffs' inexplicable reference to equal protection has no relevance here. Plaintiffs do not bring an equal protection claim in this case, and they cannot suddenly import an entirely new constitutional claim via mootness briefing. Regardless, it should go unsaid that equal protection does not demand that the Government settle a case simply because it settled a similar but separate case. Even if Plaintiffs here were similarly situated to the Navy service members in *Navy SEALs*—which they are not—the Government has a rational basis for treating two cases with different parties, a different class nature, different case history, and at different stages of proceedings, among other things, differently. *See Jones v. Governor of Fla.*, 950 F.3d 795, 809 (11th Cir. 2020) ("Under rational basis review, a law must be rationally related to a legitimate governmental interest and it 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a

11

rational basis for the classification' between persons." (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993))).

## IV. No Exceptions to Mootness Apply.

As Defendants have previously explained, no exceptions to mootness apply here. *See* Defs.' Br. at 16–20.

### A. The exception for voluntary cessation does not apply.

As every court to have considered the issue has agreed, the exception for voluntary cessation does not apply here. *See id.* at 9–10 (collecting cases); *see also, e.g.*, *Robert v. Austin*, 72 F.4th 1160, 1165 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 573 (2024) ("The voluntary cessation exception offers Appellants no relief because the government has met its arduous burden of showing the allegedly wrongful behavior could not reasonably be expected to recur.").

The fact that Defendants' rescission of the COVID-19 vaccine requirement went further than the NDAA required, *see* Pls.' Br. at 11–12, does not trigger the exception. As one district court explained, "it would bely logic to conclude" that the NDAA required rescission of the COVID-19 vaccine requirement but not rescission of its associated policies and procedures. *Schelske*, 2023 WL 5986462, at *10 ("To preserve guidance that served solely to implement the vaccine mandate would render the mandate effective in practice and Congress's order to rescind it meaningless. . . . [W]ith the rescission of the mandate, the authority conferred to the military to execute implementing guidance was likewise rescinded."). Regardless, if anything, the fact that Defendants rescinded more than the NDAA explicitly required only highlights Defendants' commitment to halting the challenged policies. *See U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023) (rejecting application of voluntary-cessation doctrine in challenge to Navy's COVID-19 vaccine requirement because, in part, Navy "promulgated multiple binding policies going *beyond* what Congress required to eradicate the effects of the mandate" (emphasis added)).

Moreover, as Defendants explained, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004); *see also* Defs.' Br. at 17.  Plaintiffs offer nothing to combat that presumption except a mischaracterization of the Supreme Court's recent decision in *FBI v. Fikre*, 601 U.S. at 241.  Plaintiffs suggest, *see* Pls.' Br. at 13, that *Fikre* overruled longstanding, cross-circuit doctrine providing for the presumption that the Government is unlikely to resume ceased challenged conduct.  But *Fikre* merely confirmed that voluntary cessation moots a case only if "the defendant can show that the practice cannot 'reasonably be expected to recur,'" which "standard holds for governmental defendants no less than for private ones."  *Fikre*, 601 U.S. at 235 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Thus, in *Fikre*, the Government's removal of the plaintiff from the No Fly List and a "sparse declaration" attesting that the plaintiff would "not be placed [back] on the No Fly List in the future based on the currently available information" was insufficient to moot the case because the Government had failed to establish that it would not relist plaintiff if he did the same or similar things in the future.  *Id.* at 241–42.  In other words, although the Government attested that it had ceased the challenged conduct, it did not sufficiently demonstrate that the challenged conduct would not occur again.  And the Government, like private parties, must establish that the challenged conduct will not occur again.  *Fikre* thus did not disturb the presumption of regularity that attaches to the Government's establishment that conduct will not occur again.[4]

---

[4] Had the Court intended to overrule the presumption of regularity that attaches to the Government actions, including the Government's voluntary cessation of challenged conduct, it would have done so expressly.  The Supreme Court has repeatedly reaffirmed that a presumption of regularity attaches to the actions of the Government.  *See, e.g.*, *USPS v. Gregory*, 534 U.S. 1, 10 (2001).  In keeping with that precedent, "the Supreme Court has held almost uniformly that voluntary cessation by a government defendant moots the claim." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020) (quoting *Nat'l Ass'n of Bds. of*

13

*Fikre* also turned on highly context-specific reasons that the Court found the Government's assurances lacking—issues not present here. Because of the secrecy inherent in national security matters including the No Fly List, the Government could not say what led it to take the challenged action of placing the plaintiff on the List, nor why he was removed, and so the Court had no way to know what actions might cause the Government to place the Plaintiff back on the list. Here, in contrast, the mootness issue is straightforward. The NDAA required Defendants to rescind the COVID-19 vaccine requirement. Defendants did so, and more. And Defendants have repeatedly established that they will not reinstate another COVID-19 vaccine requirement. *See* Defs.' Br. at 17–18. As every other court has held, the exception to voluntary cessation thus does not apply here.

## B. The exception for capable of repetition yet evading review does not apply.

Plaintiffs summarily assert in a footnote that the exception for conduct that is capable of repetition yet evades review also applies here. *See* Pls.' Br. at 13 n.9. Plaintiffs' conclusory statement does not make it true. That exception does not apply for all the reasons Defendants have previously explained. *See* Defs.' Br. at 18–19.[5]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' SAC in its entirety.

---

*Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011)). The Supreme Court has instructed courts to resist finding its decisions overruled by implication. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *see also Ramos v. Louisiana*, 590 U.S. 83, 123 n.4 (2020) (Kavanaugh, J., concurring in part) ("[T]he Court typically does not overrule a precedent unless a party requests overruling, or at least unless the Court receives briefing and argument on the *stare decisis* question."). Accordingly, this Court should not find the presumption of regularity overruled by implication here, nor should it reverse course on the solicitude granted where the Government halts challenged conduct. Regardless, even if the presumption did not apply here, the exception for voluntary cessation would still not apply here for all the reasons explained above.

[5] Plaintiffs summarily claim entitlement to fees in a footnote. *See* Pls.' Br. at 14 n.11. Defendants will respond to that issue if and when Plaintiffs move for fees.

| | |
|---|---|
| Dated: August 16, 2024 | Respectfully submitted, |
| | |
| PETER D. LEARY | BRIAN M. BOYNTON |
| United States Attorney | Principal Deputy Assistant Attorney General |
| Middle District of Georgia | Civil Division |
| | |
| /s/ *Lance Simon* | ALEXANDER K. HAAS |
| LANCE SIMON | Director |
| Assistant United States Attorney | Federal Programs Branch |
| Georgia Bar No. 447643 | |
| ROGER C. GRANTHAM, JR. | LAUREN A. WETZLER |
| Assistant United States Attorney | Deputy Director |
| Georgia Bar No. 860338 | Federal Programs Branch |
| United States Attorney's Office | |
| 300 Mulberry St., Suite 400 | /s/ *Cassandra Snyder* |
| P.O. Box 1702 | ANDREW E. CARMICHAEL |
| Macon, GA 31202 | Senior Trial Counsel |
| Tel: (478) 621-2663 | CODY T. KNAPP |
| Email: lance.simon@usdoj.gov | CASSANDRA M. SNYDER |
| | Trial Attorneys |
| | United States Department of Justice |
| | Civil Division, Federal Programs Branch |
| | 1100 L Street, N.W. |
| | Washington, DC 20005 |
| | Tel: (202) 451-7729 |
| | Email: cassandra.m.snyder@usdoj.gov |
| | |
| | *Counsel for Defendants* |