## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **AIR FORCE OFFICER**, **AIR FORCE NCO**, **AIR FORCE SPECIAL AGENT**, and **AIR FORCE ENGINEER**, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **LLOYD J. AUSTIN**, **III**, in his official capacity as Secretary of Defense; **FRANK KENDALL**, **III**, in his official capacity as Secretary of the Air Force; and **ROBERT I. MILLER**, in his official capacity as Surgeon General of the Air Force, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:22-cv-00009-TES |

## PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *CAMBRIDGE CHRISTIAN*

The Eleventh Circuit's recent decision, *Cambridge Christian School, Inc. v. Florida High School Athletic Ass'n, Inc.*, 2024 WL 4018866, No. 22-11222 (11th Cir. Sept. 3, 2024), is critically distinguishable. Unlike in that case, Plaintiffs here have standing to challenge an ongoing policy like the plaintiffs in *Navy SEALs 1-26 v. Austin*, No. 4:21-cv-01236-O (N.D. Tex. Feb. 14, 2024) (ECF 262) [Doc. 134-1], and Plaintiffs' claim for declaratory judgment relating to COVID-19-vaccine-related restrictions (other than the vaccine mandate itself) is not moot.

The Court's **"standing"** analysis in *Cambridge Christian*—focusing on whether a cognizable threat of present or future harm is asserted—is relevant to **Plaintiffs' challenge to the accommodation policy itself** and demonstrates how Plaintiffs, like the *Navy SEALs* plaintiffs and unlike the school plaintiff in *Cambridge Christian*, have standing to assert it. The **"mootness"** analysis in *Cambridge Christian*—focusing on the reasonable expectation of reinstatement of a prior policy—is

relevant to **Plaintiffs' challenge to the additional COVID-19 vaccine restrictions** beyond the mandate itself and demonstrates how Plaintiffs' claim, unlike the school's, is not moot.

The present case and *Navy SEALs* are consistent with and critically distinguishable from *Cambridge Christian*. *Navy SEALs* remains the most on-point case.

### A.    Plaintiffs have standing to challenge the religious accommodation policy itself.

Unlike the plaintiff school in *Cambridge Christian*, Plaintiffs here have standing because they face a substantial and present risk of harm: they are *currently* hesitant to use the accommodation process for other religious accommodations.[1] Pls. Resp. Br. [Doc. 135] at 2-4; Pls. Declarations [Doc 135-1 through 135-4]; Pls. Reply Br. [Doc. 140] at 2-8. While the school admitted its standing theory relies on "speculation," *Cambridge Christian*, 2024 WL 4018866, at 8, Plaintiffs' standing here relies on a real and immediate threat that they would suffer the same harm again, absent judicial relief. Pls. Resp. Br. at 2-4; Pls. Declarations; Pls. Reply Br. at 2-8. This is not speculation; Plaintiffs are reasonably hesitant *now. Id. See also Navy SEALs*, (N.D. Tex. Feb. 14, 2024) (ECF 262 at 8) ("present and future harms" include those "due to hesitance to use the accommodations process going forward for any religious accommodation"). Indeed, Plaintiff Air Force NCO retired from service *because of* his hesitance to use the accommodation process for any religious accommodation. Declaration of Air Force NCO [Doc. 135-1] at ¶¶ 2-6.

The differences between *Cambridge Christian*, on the one hand, and the present case (and *Navy SEALs*), on the other, are stark. The school's standing theory depended on its "speculation" that it might return to the annual state championship football game despite "opt[ing] out" of playoff

---

[1] The Air Force has made no assertion that Plaintiffs lack standing to challenge the additional COVID-19-related restrictions discussed in Section B below. Plaintiffs' challenge to *those* restrictions is thus not subject to any standing analysis under *Cambridge Christian*. In any event, Plaintiffs can challenge the additional COVID-19-related restrictions, as discussed in Section B below and in prior briefing.

competition at least for the current year, a nine-year (and counting) absence from the championship game, and no imminent prospect of a championship-caliber season for at least the next "few years." *Cambridge Christian*, 2024 WL 4018866, at 8; *Cambridge Christian*, No. 22-11222 (ECF 89 (the school's June 2024 supplemental brief) at 1-2, 2 n.1). The school itself admitted its "standing theory relies on 'speculation' that it 'will make it to another championship game.'" *Cambridge Christian*, 2024 WL 4018866, at *8.

Further, the school expressly clarified to the Court that it was concerned only with the defendant athletic association's specific rule for the *one* annual championship football game and not any broader policy that impacted other football games during the season or impacted other sports. *Id.* at *7. The Court of Appeals "asked the school to 'clarify,'" and the school confirmed it was concerned *only* with "the football state championship game." *Id.* at *7 n.4. Thus, in response to the Court's question, the school disavowed any request for relief as to a broader policy. *Id.* "So we will hold Cambridge Christian to that answer to our question and to the relief it sought in its complaint." *Id.*

By contrast, Plaintiffs here were subject to a vaccine mandate that was rescinded just last year (Defendant Austin's 2023 rescission order [Doc. 126-1]), and they *continue* to be subject to *ongoing, current* requirements for which an accommodation can be sought, including for example requirements to take other vaccines (Air Force Instruction 48-110, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Disease* [Doc. 2-9 at 12, 35]), but they are reasonably hesitant to seek such other accommodations because they reasonably believe the process is illusory and insincere (Pls. Declarations; Pls. Reply Br. at 2-8). This is a real, present, and non-speculative threat. *Navy SEALs 1-26* (N.D. Tex. Feb. 14, 2024) (ECF 262 at 8-9). Judge O'Connor expressly found the exact same "hesitance" supported standing. *Id. Cf. Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022) ("Because the bias-related-incidents policy objectively *chills* student speech, Speech First's members have standing to challenge it.") (emphasis added). *See also* Pls. Resp. Br. at 3-4; Pls. Reply Br.

at 3-4. There was no issue of "hesitance" in *Cambridge Christian*.

Unlike in *Cambridge Christian*, Plaintiffs here challenge a more broadly applicable policy. *See* Second Amended Class Action Complaint [Doc. 84], ¶¶ 10, 11, 31, 104-106, 183, 192, 193, 196(a), 196(c), 199, 236, 275, 278; Pls. Op. Br. at 3-10; Pls. Resp. Br. at 2-4; Pls. Declarations; Pls. Reply Br. at 2-8. Specifically, Plaintiffs challenged the COVID-19 vaccine mandate and also, as relevant here, challenge the broader accommodation policy itself, just as in *Navy SEALs*. *Id.*; *Navy SEALs 1-26* (N.D. Tex. Feb. 14, 2024) (ECF 262 at 9, 11-12, 13 n.40, 15, 17). Plaintiffs have "clarified" this in their declarations and repeatedly in their briefing, consistent with the relief they seek in their complaint and with *Navy SEALs*. Pls. Op. Br. at 3-10; Pls. Resp. Br. at 2-4; Pls. Declarations; Pls. Reply Br. at 2-8.

Unlike the school, Plaintiffs here have made clear they challenge a broader policy. *Id.* This Court can and should "hold [Plaintiffs] to that." *Cambridge Christian*, 2024 WL 4018866, at 7 n.4. Plaintiffs have standing to challenge the broader accommodation policy itself.

**B.    Plaintiffs' claim for declaratory relief regarding additional COVID-19-vaccine-related restrictions is not moot.**

Plaintiffs' challenge to additional restrictions related to COVID-19 vaccination status (beyond the 2021 mandate itself[2]) is not moot under *Cambridge Christian*.[3] There, the Eleventh Circuit did not address the Supreme Court's recent affirmation in *Fikre* that "governmental defendants no less than [] private ones" maintain a "formidable burden" of showing mootness after voluntarily ceasing a

---

[2] The rescission of the 2021 COVID-19 vaccine mandate was *involuntary*, unlike the additional COVID-19-vaccine-related restrictions at issue here. *See* Pls. Resp. Br. at 4; Pls. Op. Br. at 11-12.
[3] The Air Force has made no assertion that it has ever rescinded the sham religious accommodation process discussed in Section A above. Plaintiffs' challenge to that *that* policy is thus not subject to any mootness / voluntary cessation analysis under *Cambridge Christian*. *See*, *e.g.*, *Harris v. Georgia Dep't of Corr.*, No. 5:18-CV-00365-TES, 2021 WL 6197108, at *9 (M.D. Ga. Dec. 29, 2021) (plaintiffs still had standing because of evidence defendants did not terminate some challenged policies and practices and plaintiffs were still subject to them). In any event, Plaintiffs' challenge to the process itself remains viable, as discussed in Section A above and in prior briefing.

challenged practice. *Fikre*, 601 U.S. at 241. *Cambridge Christian* can and should be understood in harmony with *Fikre*. Both cases hold that a case is moot only where it's shown the allegedly wrongful conduct could not "reasonably be expected to recur." *Cambridge Christian*, 2024 WL 4018866, at 9; *Fikre*, 60 U.S. at 241. *Cambridge Christian* recognized that this showing must be "absolutely clear." *Cambridge Christian*, 2024 WL 4018866, at *9.

Even assuming *Cambridge Christian* requires a presumption of mootness for government defendants, contrary to *Fikre*, the presumption is rebutted here, and *Cambridge Christian* is easily distinguishable. Unlike the challenged policy in *Cambridge Christian*, it is not "absolutely clear" COVID-19 vaccine restrictions are not reasonably likely to recur.

**1.**  ***Cambridge Christian* must be applied in harmony with *Fikre*, confirming this case remains live.**

In *Cambridge Christian*, the parties completed original briefing and argument nearly nine months before the Supreme Court issued *Fikre*. *See Cambridge*, No. 22-11222 (June 27, 2023); *see Fikre*, 601 U.S. 234 (March 19, 2024). And the Court did not mention *Fikre* in any request for supplemental briefing. *See* No. 22-11222, Docs. 88-91. So, while the Eleventh Circuit stated "the Supreme Court has held almost uniformly that voluntary cessation by a government defendant moots the claim," *Cambridge Christian*, 2024 WL 4019966, at *10 (internal quotes omitted), it did not grapple with *Fikre*'s recognition that, as in numerous prior decisions *rejecting* government assertions of post-voluntary-cessation mootness, the same "formidable burden" "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241 (citing *West Virginia v. EPA*, 597 U.S. 697, 719 (2022); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017); *Parents Involved in Cmty. Schools v. Seattle School Dist.*, 551 U.S. 701, 719 (2007)). Indeed, the Eleventh Circuit itself has previously recognized as much. *See Doe v. Wooten*, 747 F.3d 1317, 1322 (11th 2014) ("The Supreme Court has applied this same

standard in cases involving government actors") (citations omitted).[4]

In fact, the Supreme Court has *never* held or even suggested that government defendants get a presumption of good faith (and thus a presumption of mootness) after voluntarily ceasing a challenged practice. Pls. Reply Br. at 12. And *Cambridge Christian* still recognized that a "defendant's voluntary conduct may moot a case only if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Cambridge*, 2024 WL 4018866, at *9 (emphasis added) (internal quotes omitted). The Supreme Court has long recognized this is a "stringent" burden even for government defendants. *See, e.g., City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 n.10 (1982).

Accordingly, *Cambridge Christian* can and should be read in harmony with *Fikre*. *Cambridge Christian* holds that "[o]nce a government defendant has repealed a challenged policy, the burden shifts to the plaintiff to present evidence that its challenge has not been mooted by that repeal." *Id.* at *10. But that test does not relieve the government of *its* "formidable burden" of showing mootness in voluntary cessation cases as required by *the Supreme Court*. *See Lopez v. Smith*, 574 U.S. 1, 7 (2014) ("Circuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.") (internal quotes omitted). Thus, the *Cambridge Christian* test must be applied in view of the Supreme Court's "formidable burden" standard in *Fikre*.[5]

---

[4] *Cambridge Christian* also deemed moot the school's claim for *declaratory* relief by relying on *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975). *Cambridge Christian*, 2024 WL 4018866, at *9. But *Preiser* pre-dated the Supreme Court's recognition in *City of Mesquite* that a claim for *declaratory* relief following the government's repeal of the challenged ordinance was not moot even if "the likelihood of further violations is *sufficiently remote* to make *injunctive* relief unnecessary." *City of Mesquite*, 455 U.S. at 289 n.10 (emphasis added). *See also* Pls. Resp. Br. at 5; Pls. Reply Br. at 11-12. *City of Mesquite* remains good law. *Id.*

[5] The Air Force has argued that *Fikre* hinged on government "secrecy inherent in national security matters." Air Force Reply Br. [ECF No. 139] at 3. On the contrary (and as noted), *Fikre*'s "formidable burden" standard expressly arose from numerous prior precedents applying the same test to

This approach is not unlike the *McDonnell Douglas*[6] burden-shifting framework in Title VII cases. Under that framework, even though the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the challenged action, the plaintiff maintains the ultimate burden of showing discrimination. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) ("The nature of the burden that shifts to the defendant should be understood in light of the" the fact that "[t]he ultimate burden . . . remains at all times with the plaintiff."). So, too, here. While *Cambridge Christian* includes its own burden-shifting test, Plaintiffs' burden must be understood in light of the ultimate and "formidable burden" that remains with the government defendant. *See Fikre*, 601 U.S. at 241; *see also id.* at 243 ("In *all* cases, it is the *defendant's* burden to establish that it cannot reasonably be expected to resume *its* challenged conduct.") (internal quotes omitted; first and second emphasis added, third emphasis in original). And here, the Air Force fails to satisfy that "formidable burden" for the reasons discussed herein and in Plaintiffs' prior briefing. Pls. Op. Br. at 11-14; Pls. Resp. Br. at 5-6; Pls. Reply Br. at 12-13.

### 2. Even assuming a presumption of good faith, Plaintiffs satisfy the *Cambridge Christian* burden-shifting factors.

Even if *Cambridge Christian* is read to require a presumption of mootness in cases involving voluntary cessation by the government (contrary to *Fikre*), Plaintiffs' claim challenging additional restrictions related to COVID-19 vaccination status remains live. That's because Plaintiffs have shown a "reasonable expectation" that the challenged conduct will recur under the "three non-exclusive factors" considered by *Cambridge Christian*: "(1) whether the change in conduct resulted from substantial deliberation . . . ; (2) whether the decision . . . was unambiguous and can be fairly viewed

---

government defendants even where "secrecy inherent in national security matters" was *not* at issue. *See Fikre*, 601 U.S. at 241-42 (citing cases).

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

as being permanent and complete; and (3) whether the government has consistently maintained its commitment to the new policy." *Cambridge Christian*, 2024 WL 4018866, at *10 (internal quotes omitted) (citing *Keohane v. Florida Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020)).

All three *Cambridge Christian* factors strongly favor Plaintiffs. First, there is no evidence of *any* deliberation in the Air Force's rescission of the mandate's "associated policies and procedures" *or* in adopting guidance forbidding commanders "from considering vaccination status for deployment and assignment-related decisions" on a case-by-case basis. *See* Pls. Reply Br. at 11 [Doc. 140] (citing *Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 671 (2023)).

Instead, following the legally mandated rescission of the mandate itself, Defendant Austin issued a memorandum stating that "[o]ther standing Departmental policies, procedures, and processes regarding immunizations remain in effect," including "the ability of commanders" to discriminate with respect to "deployment, assignment, and other operational decisions." [Doc. 126-1 at 3]. Then— shortly after oral argument before an inquisitive Fifth Circuit panel in *Navy SEALs 1-26*—Defendant Austin issued new "guidance" "barr[ing] the military branches . . . from considering vaccination status for deployment and assignment-related decisions so long as the COVID-19 vaccine remained optional." *Navy SEALs 1-26*, 72 F.4th at 671; *see also* Nos. 22-10077 and 22-10534 (5th Cir.) (Oral Argument Heard Feb. 6, 2023, Text Entry No. 161).[7] Defendant Austin's guidance gave no clear explanation for the sudden change. *See* Nos. 22-10077 and 10534 (5th Cir.), Doc. 169 at 9-10.

Second, there is no evidence the Air Force's change in policy is "unambiguous" or can be

---

[7] While the Fifth Circuit held there was no evidence the Navy adopted its post-rescission policies "with an eye toward" resumption "*as soon as the courts were done*," *Navy SEALs 1-26*, 72 F.4th at 675 (emphasis added), that is not the test in this Circuit or under *Fikre*, 601 U.S. at 243 (stating question is whether "challenged conduct might recur immediately *or later at some more propitious moment*") (emphasis added). *See also* Pls. Op. Br. at 14; Pls. Resp. Br. at 5.

"fairly viewed as permanent and complete." *Cambridge Christian*, 2024 WL 5018866, at *10. Unlike the association's change in *Cambridge Christian*, no statute here *required* the Air Force's rescission of "associated policies" and optional discrimination. *See Cambridge Christian*, 2024 WL 4018866, at *11. Instead, the 2023 National Defense Authorization Act ("NDAA") specifically required the rescission only of the Secretary's "memorandum dated August 24, 2021, regarding 'Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members.'" *Navy SEALs 1-26*, 72 F.4th at 671 (quoting Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (2022)). The Air Force itself admits it "went further" and "rescinded more" than what the NDAA required. *See* Air Force Resp. Br. [Doc. 136] at 12; *accord Navy SEALs 1-26*, 72 F.4th at 674 n.7. And no statute prohibits a future COVID-19 vaccine mandate. Indeed, the Air Force has prevaricated on the possibility of future restrictions, as Plaintiffs discuss herein and have further detailed in prior briefing. *See* Pls. Reply Br. [Doc. 140] at 11. And the Biden Administration officially opposed several proposed provisions of the 2024 NDAA on grounds that it "would prevent the Secretary from taking appropriate action in the future should a new strain of COVID-19 again require vaccination for force health protection."[8] That is hardly "unambiguous" and "permanent" rescission.

Third and finally, and for the same reasons, the Air Force has not "consistently maintained its commitment to the new policy." Both the Air Force and the Commander in Chief admit the possibility of future COVID-19-vaccine-related restrictions. Even if the "likelihood . . . is sufficiently remote to make injunctive relief unnecessary," it does not vitiate "the existence of judicial power" to issue a declaratory judgment. *City of Mesquite*, 455 U.S. at 289 and n.10.

---

[8] Statement of Administration Policy on H.R. 2670, July 10, 2023, at 5 https://www.whitehouse.gov/wp-content/uploads/2023/07/H.R.-2670-NDAA.pdf ("Statement of Administration Policy").

Again, this is nothing like *Cambridge Christian*. There, "[t]he new law and corresponding policy . . . mak[e] it clear that the allegedly wrongful conduct . . . cannot reasonably be expected to recur." 2024 WL 4018866, at *10. Pursuant to and in compliance with a new state statute, the defendant athletic association "unambiguously" changed its policy, to permit pregame prayer over the PA system at all state championship football games. *Id.* at *6, 10-11. The association's change was made "to comply with the newly enacted statute." *Id.* at *11. There was "no evidence" the change was temporary or made to manipulate jurisdiction. *Id.*

By contrast, there is ample evidence here that the change is temporary and was made to manipulate jurisdiction. The Air Force has prevaricated in asserting its intentions about reinstating additional restrictions related to the COVID-19 vaccine. Pls. Reply Br. at 10-13. The Air Force has asserted it "will not" reinstate restrictions and yet admits "there may be" future situations where "vaccination status will be a consideration" and insists on retaining the right to "maintain its flexibility to adjust policies" and to "tak[e] appropriate action in the future should a new strain of COVID-19 again require vaccination for force health protection." Air Force Op. Br. at 17-18; Air Force Resp. Br. at 14; [Doc. 133-4 at 6]; [Doc. 133-2 at 8]; Statement of Administration Policy; Pls. Reply Br. at 11. Moreover, the Air Force continues to impose restrictions as to a virus (influenza) that the Air Force considers to be a less serious threat than COVID-19 while standing on its rights to re-impose restrictions as to COVID-19. Pls. Resp. Br. at 5-6. Given these prevarications and discrepancies and the history of the Air Force's actions, it can very reasonably be expected that the Air Force may resume its challenged conduct. Plaintiffs' claim is not moot.

## C.    Conclusion.

Consistent with *Cambridge Christian*, *Navy SEALs*, and *Fikre*, Plaintiffs have standing to challenge the religious accommodation policy itself, and Plaintiffs' claim for declaratory judgment relating to COVID-19-vaccine-related restrictions is not moot.

Dated: September 23, 2024


Respectfully submitted,


/s/ Adam S. Hochschild

Stephen Crampton, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
PO Box 4506
Tupelo, MS 38803
(662)255-9439
scrampton@thomasmoresociety.org

Michael R. Hirsh, GA #357220
Hirsh Law Office, LLC
2295 Towne Lake Parkway, Suite 116-181
Woodstock, GA 30189
(678)653-9907
michael@hirsh.law

Adam S. Hochschild, *pro hac vice*
Hochschild Law Firm
THOMAS MORE SOCIETY – Special Counsel
PO Box 401
Plainfield, VT 05667
(314)503-0326
adam@hochschildlaw.com

Mary Catherine Hodes, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
112 S. Hanley Rd., Second Floor
Clayton, MO 63105
(314)825-5725
mchodes@thomasmoresociety.org

Michael McHale, *pro hac vice*
THOMAS MORE SOCIETY – Senior Counsel
10506 Burt Circle, Ste. 110
Omaha, NE 63114
(402)501-8586
mmchale@thomasmoresociety.org

Paul M. Jonna, *pro hac vice*
LiMandri & Jonna LLP
THOMAS MORE SOCIETY – Special Counsel
P.O. Box 9120
Rancho Santa Fe, CA 92067
(858)759-994
pjonna@limandri.com

*Counsel for Plaintiffs*