# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **AIR FORCE OFFICER**, **AIR FORCE NCO**, **AIR FORCE SPECIAL AGENT**, and **AIR FORCE ENGINEER**, *on behalf of themselves and all others similarly situated,*<br><br>    ***Plaintiffs,***<br><br>**v.**<br><br>**LLOYD J. AUSTIN, III**, *individually and in his official capacity as Secretary of Defense;*<br><br>**FRANK KENDALL, III**, *individually and his official capacity as Secretary of the Air Force;* and<br><br>**ROBERT I. MILLER**, *individually and his official capacity as Surgeon General of the Air Force,*<br><br>    ***Defendants.*** | **CIVIL ACTION NO.**<br>**5:22-cv-00009-TES** |

## MEMORANDUM OPINION AND ORDER ON MOOTNESS

It's not likely you'll be able to find anyone who's unfamiliar with any of the three major components that underlie this case and several others like it: religion, the need for a healthy and ready military force, and the COVID-19 pandemic.

The vaccination mandates put in place by the Secretary of Defense and the Secretaries of the Military Departments to combat COVID-19 pitted the sincerely held religious beliefs for some members of the Armed Forces against that second component.

When these religious beliefs and a healthy and ready military force seemed at odds and no longer compatible, lawsuits challenging these COVID-19 vaccination mandates based on protections of the First Amendment and other federal laws began to pop up on district court dockets across the country. This case is one of them. And, although it never made its way up to the Supreme Court, the high Court nevertheless addressed an entanglement of the exact same components in other cases, but now, something's different. Now, the Secretary of Defense (albeit a product of explicit legislative direction from Congress) has rescinded the vaccination mandates. That recission has resulted in these cases filtering back down to district courts to address whether challenges to them are moot. Let's start at the beginning.

## BACKGROUND

With the rates of COVID-19 infection continuing to rise around the world and across the United States, former President Donald Trump declared the COVID-19 outbreak in the United States a national emergency on March 13, 2020. *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (March 13, 2020). On August 24, 2021, in response to COVID-19, the Secretary of Defense, Lloyd J. Austin, III, issued a mandate requiring vaccination for all active duty or Ready Reserve members of the Military Departments. [Doc. 38-3]. Ten days later, the Secretary of the Air Force, Frank Kendall, III, issued a memorandum directing all Service members in the Department of the Air Force to be fully vaccinated

by November 2, 2021, "[u]nless exempted." [Doc. 38-7]. By "September 2021, COVID-19 deaths ha[d] declined by 93 percent, and new COVID-19 hospitalizations ha[d] declined by 86 percent." Exec. Order No. 14099, *Moving Beyond COVID-19 Vaccination Requirements for Federal Workers* § 1, 88 Fed. Reg. 30,891 (May 9, 2023) ("Revocation EO"). Still though, not only did the Secretary of the Air Force hold firm in his responsibility to provide guidance on COVID-19 vaccinations and ensure the full vaccination of those under his authority, but President Joe Biden issued Executive Order 14043 directing certain Executive Agencies to "require COVID-19 vaccination for all Federal [civilian] employees, subject to such exceptions as required by law." [Doc. 38-8]; [Doc. 2-5]. Candidly, there were Service members actively participating in COVID-19 clinical trials that were exempt from mandatory vaccination until their clinical trial's completion, but the exemptions to vaccination on religious grounds seemed, for the most part, nothing more than rubber-stamp denials. [Doc. 38-8, p. 6]; *see Air Force Officer v. Austin*, 588 F. Supp. 3d 1338, 1343–44, 1348 (M.D. Ga. 2022). Those seeking a religious exemption had to resort to litigation to protect their religious liberties.

A month after Robert I. Miller, the Surgeon General of the Air Force, denied Plaintiff Air Force Officer's request for religious accommodation, she filed this lawsuit on January 6, 2022, asking this Court to enjoin enforcement of the COVID-19 vaccination mandates against her. [Doc. 1, ¶ 70]; [Doc. 1, p. 31]; [Doc. 2]; [Doc. 2-16]. On

February 15, 2022, the Court granted Air Force Officer's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2], and after considering some scholarly back-and-forth between the parties about Federal Rule of Civil Procedure 15's allowances, a Second Amended Class Action Complaint [Doc. 84] adding three more plaintiffs to this lawsuit became the operative pleading. [Doc. 51]; *see also* [Doc. 83]; [Doc. 133, pp. 12–13]; [Doc. 134, p. 3]. Defendants appealed the preliminary injunction order to the Eleventh Circuit and soon after moved to dismiss the operative pleading on numerous grounds under Federal Rule of Civil Procedure 12(b) or, alternatively, sever the newly added plaintiffs under Federal Rule of Civil Procedure 21. [Doc. 71]; [Doc. 92].

Before the Court could decide those issues, other district courts granted class-wide relief as to both the military, *Doster v. Kendall*, No. 1:22-cv-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022), and civilian, *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826 (S.D. Tex. 2022), vaccination mandates. [Doc. 124, pp. 1–2]; [Doc. 133, p. 13]; *see also Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023). So, on August 5, 2022, after discussion with the parties in this case via Telephone Conference, the Court stayed it unless and until "the protections currently afforded in *[Doster]* and *Feds for Medical Freedom* [were] vacated, reversed, stayed, or significantly altered to interfere with the relief Plaintiffs contend they are entitled." [Doc. 124, p. 3]. It wasn't long until the Eleventh Circuit did the same thing with Defendants' appeal of this Court's preliminary

injunction order. On August 24, 2022, the Eleventh Circuit stayed the appeal until "after exhaustion of all appeal rights as to class-wide relief in *Doster* . . . ." *Air Force Officer & Air Force NCO v. Austin*, No. 22-11200 (11th Cir. Aug. 24, 2022), ECF No. 27.

During the pendency of Defendants' appeal to the Eleventh Circuit, Congress passed Section 525 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA") requiring "the Secretary of Defense [to] rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021." Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022). Then, in May 2023, the United States Department of Health and Human Services determined that based upon the sharp decline in COVID-19 deaths and hospitalizations, COVID-19 wasn't "the disruptive force it once was." *See, e.g.*, U.S. Dep't of Health & Hum. Servs., Fact Sheet: End of the COVID-19 Public Health Emergency (May 9, 2023), https://perma.cc/VFR4-MLT9. With COVID-19 no longer presenting a national emergency, President Biden issued Executive Order 14099 on May 9, 2023, revoking the vaccination requirement that had been put in place for the Department of Defense's civilian employees. Exec. Order No. 14099, *Moving Beyond COVID-19 Vaccination Requirements for Federal Workers* § 1, 88 Fed. Reg. 30,891 (May 9, 2023). Based on these events, the defendants in *Doster* filed a petition for certiorari requesting that the Supreme Court essentially unwind the preliminary injunctions as moot under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). *See Doster v. Kendall*, 54

F.4th 398, 406 (6th Cir. 2022), *reh'g denied*, 65 F.4th 792 (6th Cir. 2023) (en banc). The

Supreme Court ordered the requested relief, and in time, the district court in *Doster*

dismissed the case in its entirety on mootness grounds. *Kendall v. Doster*, 144 S. Ct. 481

(2023); *Doster v. Kendall*, No. 1:22-CV-84, 2024 WL 1156426, at *5 (S.D. Ohio Mar. 18,

2024). *Feds for Med. Freedom* is taking a similar course. 144 S. Ct. 480 (2023).

Hopefully by now, you're starting to see how the trajectory of this case made its

way back to this Court. On June 12, 2024, the Eleventh Circuit found Defendants'

appeal to be moot and remanded Plaintiffs' case "for further proceedings." [Doc. 128].

Before turning to the mootness inquiry, the Court pauses to lay out some specifics from

the operative pleading. As the Court briefly mentioned above, when Air Force Officer

filed the Second Amended Class Action Complaint, she added three new plaintiffs—Air

Force NCO, Air Force Special Agent, and Air Force Engineer. *See* [Doc. 84, ¶¶ 67–90].

Then, collectively, Plaintiffs moved to certify a class for a class-wide preliminary

injunction, but the Court never reached that issue due to the stay put in place on

August 5, 2022. [Doc. 88]; [Doc. 124].

Yes, all of that is important in understanding this case's long procedural history.

What's more important, though, is understanding the relief sought by the Second

Amended Class Action Complaint and whether the Court can still award Plaintiffs'

requested relief. In their prayer for relief, Plaintiffs seek prospective remedies through

two main avenues. First, they want a declaratory judgment from the Court that the

vaccination mandates are—well, "were"—unlawful and violated the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedures Act. [Doc. 84, pp. 47–48]. And second, they want the Court to enjoin the Secretary of Defense and the Air Force from enforcing the vaccination mandates or taking any adverse action against them or any member of their proposed class. [*Id.*]. Aside from that prospective relief, Plaintiffs also seek reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412. [*Id.* at p. 48]. With that, let's get to the mootness issue.

## DISCUSSION

Defendants vehemently contend that the rescission of the COVID-19 vaccination mandates rendered Plaintiffs' claims for prospective injunctive relief moot. [Doc. 133, pp. 16–18]. As Congress directed in passing the NDAA, the Secretary of Defense issued a memorandum rescinding his catalytic mandate that required COVID-19 vaccination for all active duty and Ready Reserve members of the Military Departments. Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022); *see* [Doc. 38-3] *in connection with* [Doc. 126-1]. In his rescission memorandum, issued on January 10, 2023, Secretary Austin wrote:

> Section 525 of the NDAA . . . requires me to rescind the mandate that members of the Armed Forces be vaccinated against COVID-19, issued in my August 24, 2021 memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Members." I hereby rescind that memorandum. . . .
>
>      No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19

vaccination if they sought an accommodation on religious, administrative, or medical grounds. The Military Departments will update the records of such individuals to remove any adverse actions associated with denials of such requests, including letters of reprimand. The Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious, administrative, or medical accommodation requests solely for exemption from the COVID-19 vaccination or appeals of denials of such requests.

[Doc. 126, p. 2]. This, along with subsequent guidance from the Air Force, the Air Force Reserve, and the Deputy Secretary of Defense, as well as congressional testimony from the Under Secretary of Defense for Personnel & Readiness, confirms that "***there is no COVID-19 vaccination requirement*** for Service members or any other Department of Defense personnel." *See* [Doc. 133-1]; [Doc. 133-2, p. 7 (emphasis added)]; Deputy Sec'y of Def. Memo., *Guidance for Implementing Rescission of August 24, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces* at 1 (Feb. 24, 2023), https://perma.cc/8K63-NSSW ("Deputy Sec'y of Def. Memo."). In short, the fact that the military and civilian vaccination mandates have been rescinded and no longer exist serves as the foundation for Defendants' position that any challenges to their enforcement are moot. [Doc. 133, 13].

Not so, say Plaintiffs. They argue that their Second Amended Class Action Complaint paints with a much broader brush—so broad that it actually challenges not only the COVID-19 vaccine mandates but the broader accommodations policy as it relates to any vaccine. [Doc. 134, p. 3]. Plaintiffs argue that they "make numerous allegations challenging the accommodation process itself." [*Id.* at p. 6]. As an example,

Plaintiffs point to their allegation that they "challenge Defendants' *orders, policies, and actions* detailed below, facially for lack of exception for any religious exercise," but that's only half of their allegation. [*Id.* (quoting [Doc. 84, ¶ 10])]. A more complete representation of Plaintiffs' allegation is that they "challenge Defendants' orders, policies, and actions detailed below, facially for lack of exception for any religious exercise, and *as applied to [them] in denying **their particular requests** for religious accommodation.*" [Doc. 84, ¶ 10 (emphasis added)]. Taking what Plaintiffs really alleged and squaring it against their prayer for relief in their Second Amended Class Action Complaint, the Court's not so sure that their operative pleading paints with the broad brush they hope.

Plaintiffs' prayer for relief clearly states that their requested relief goes to their positions that "*the [m]andates* violate . . . the First Amendment," that "*the [m]andates* violate . . . the Religious Freedom Restoration Act," that "*the [m]andates* violate . . . the Administrative Procedures Act," and that Defendants should be prohibited "from enforcing *the [m]andates* against" them or "taking any adverse action against [them] on the basis of this lawsuit or any member's request for religious accommodation *related to the [m]andates*." [*Id.* at pp. 47–48 (emphasis added)]. To say that Plaintiffs' Second Amended Class Action Complaint has all along sought relief with respect to a religious accommodation for a vaccine other than the ones available for COVID-19 can't be squared with any reasonable interpretation. Sure, Plaintiffs make several allegations

about the Military Departments' and, more specifically, the Air Force's existing policies on religious accommodations and offer their opinion that the existing procedures aimed at upholding "religious rights protected by federal law and the Constitution [are] both illusory and insincere." [*Id.* at ¶¶ 10–11, 31, 104–06, 183, 192–93, 196, 199, 236, 275, 278]; *see also* [Doc. 134, pp. 3–4]. Not once, though, in all the allegations and arguments that led the Court to grant the preliminary injunction in this case did Plaintiffs mention or whisper—or even hint—that they sought some broader protection from the religious accommodations policy as it related to anything other than the COVID-19 vaccine. Clear as a bell, Plaintiffs' declaratory relief speaks directly to "*the [m]andates challenged in this Complaint*." [Doc. 84, p. 48 (emphasis added)].

Just as Defendants argue, "Plaintiffs do not allege that they have ever sought or been denied, or that they imminently intend to seek, a religious accommodation for any other vaccine besides COVID-19." [Doc. 136, p. 3]. And, even if Plaintiffs (as they argue they've done all along) were challenging the accommodations policy as it applies to anything other than the COVID-19 vaccine, they failed to explain how any non-COVID-19 claims are ripe. Again, Plaintiffs have never indicated to this Court that they've asked for a religious accommodation for anything other than the COVID-19 vaccine. Had Plaintiffs intended to challenge the accommodations process on a broader spectrum as it relates to some other vaccine, then they would've set forth appropriate, well-pled allegations in the Second Amended Class Action Complaint about that

vaccine and their specific requests for religious accommodation for it. However, they limited their Second Amended Class Action Complaint to the COVID-19 vaccination mandates.

When it comes to why Air Force Officer initiated this lawsuit and why the other Plaintiffs joined it (because their requests for COVID-19 religious accommodations had essentially been denied without anyone "considering particular circumstances" as they relate "to the person"), the Second Amended Class Action Complaint unquestionably limits relief to religious accommodations "*related to the [m]andates.*" [Doc. 84, ¶¶ 196, 236]; [Doc. 84, p. 48 (emphasis added)]. What are these mandates, you ask? Well, the Second Amended Class Action Complaint tells us, quite clearly, that they're: Secretary Austin's mandate "to receive a COVID-19 vaccine"; Secretary Kendall's mandate "for all active duty [S]ervice members of the Air Force . . . to be fully vaccinated"; Executive Order 14043 issued by President Biden; an order from a Deputy Commander of the Air Force ordering Air Force Officer and Air Force NCO "to receive an initial dose of a COVID-19 vaccine"; an order from a Commander of the Air Force ordering Air Force Special Agent "to receive an initial dose of a COVID-19 vaccine"; a mandate issued by the Deputy Secretary of Defense "for all Department of Defense civilian employees to be fully vaccinated"; and, finally, another mandate from Secretary Kendall "for all civilian employees of the Air Force to be fully vaccinated." [Doc. 84, ¶¶ 30, 38, 40, 42–45, 47]. Yes, that's a fair number of mandates, but they only related to one thing—

vaccination against the *one* virus that's mentioned more than 100 times in Plaintiffs'

Second Amended Class Action Complaint: COVID-19. *See generally* [*id.*].

Plaintiffs' intent at the outset of this lawsuit was aimed at obtaining court

intervention that would block Defendants from forcing them to receive the COVID-19

vaccine over their sincerely held religious beliefs. In time, they hit their target. And, by

no stretch of the imagination was it a quick or easy target to hit. Plaintiffs had to make

their religious beliefs known to Defendants through the accommodation process, and

that undoubtedly took some time. Nevertheless, the accommodation process of concern

in the Second Amended Class Action Complaint "*related to the [m]andates*" just

discussed and a Religious Accommodation Request for Immunization Waiver provided

by the Air Force in September 2021. [*Id.* at ¶ 104]; [Doc. 84, p. 48]. Yes, that waiver may

have "reference[d]" previously existing policies and procedures used by the Air Force

and other Military Departments, but in no uncertain terms within the operative

pleading, Plaintiffs alleged that that "they sincerely believe that the exercise of their

religion prevents them from submitting to injection of any of the presently available

*COVID-19 vaccines*." [Doc. 84, ¶¶ 31, 106]; [Doc. 84, ¶ 215 (emphasis added)]; [Doc. 84, ¶

236 (allegation concerning denial of "all religious accommodations" in connection with

"*the [m]andates*") (emphasis added)]. On top of that, Plaintiffs go so far as to even allege

that they "do not oppose all vaccinees." [Doc. 84, ¶ 96]. To say there's some surprise

vaccine in play that Plaintiffs now oppose and seek *another* religious accommodation

just isn't supported by any of the allegations in their operative pleading.

Of course, Defendants don't quarrel with Plaintiffs' allegations about their sincerely held religious beliefs, but no other vaccine is or has ever been in dispute in this case. [*Id.* at ¶¶ 217, 218]; *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 686 (2014) ("The Court's 'narrow function . . . is to determine' whether [a] plaintiff['s] asserted religious belief reflects 'an honest conviction[.]'") (citation omitted). Therefore, absent any allegation that Plaintiffs are seeking a religious accommodation for some other vaccine, there's no "ripe" basis to assess the Department of Defense's existing policies and procedures as they relate to religious accommodations on a broader scale. *See Graham v. Att'y Gen., State of Ga.*, 110 F.4th 1239, 1245 (11th Cir. 2024) (discussing the necessity of "concrete allegations" when it comes to whether a court "can give meaning relief").

Stating a claim for which relief can be granted requires a plaintiff to assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As Defendants point out, "Plaintiffs fail to even identify any particular live policy (or other agency action) that they purport to challenge—either in the [Second Amended Class Action Complaint] or [within] their mootness briefing." [Doc. 136, p. 7]. Instead, "Plaintiffs merely refer vaguely to some

alleged, unidentified 'broader vaccine accommodations policy.'" [*Id.* (quoting [Doc. 134, p. 3])]; *see also* [Doc. 84, ¶¶ 10–11, 31, 104–06, 183, 192–93, 196, 199, 236, 275, 278]. Set against the well-known pleading requirements from Federal Rule of Civil Procedure 8, *Twombly*, and *Iqbal*, Plaintiffs allegations simply aren't enough to morph their lawsuit into something more now that the COVID-19 vaccination mandates have been rescinded.

    To escape any potential adverse effects from how their Second Amended Class Action Complaint is currently drafted, Plaintiffs requested leave to amend. [Doc. 134, p. 8 n.2]. However, because Plaintiffs "embedded [their] request in [a] brief and did not file a motion for leave to amend, [their] request for leave to amend [is] not properly before the [C]ourt." *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1338 (11th Cir. 2024); *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999)) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). The Eleventh Circuit has consistently affirmed that "[f]iling a motion is the proper method to request leave to amend a complaint," and time and time again this Court has strictly held to that requirement. *Advance Tr. & Life Escrow Servs.*, 93 F.4th at 1338 (citing *Chabad Chayil, Inc. v. Sch. Bd. of Mia.-Dade Cnty.*, 48 F.4th 1222, 1236 (11th Cir. 2022)); *My24HourNews.com, Inc. v. AT&T Corp.*, 791 F. App'x 788, 802 (11th Cir. 2019); *see, e.g., Blash v. City of*

*Hawkinsville and Pulaski Cnty.*, No 5:17-cv-00380-TES, 2018 WL 3150346, at *11 (M.D. Ga.

June 27, 2018); *Adam v. Med. Ctr. of Navicent Health*, No. 5:18-cv-00084-TES, 2018 WL

4760502, at *5 (M.D. Ga. Oct. 2, 2018); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-

00465-TES, 2019 WL 4731957, at *5 (M.D. Ga. July 2, 2019); *Spivey v. Humphrey*, No. 5:21-

cv-00467-TES, 2022 WL 2919272, at *3 n.2 (M.D. Ga. July 25, 2022); *Johnson v. Oconee Ctr.*

*Cmty. Serv. Bd.*, No. 5:24-cv-00208-TES, 2024 WL 4392378, at *7 (M.D. Ga. Oct. 3, 2024).

Had Plaintiffs properly moved to amend their Second Amended Class Action

Complaint to assert *any* allegations that there might be some other vaccine that they

don't want for religious reasons, that could've potentially altered the Court's analysis

and veered its impending discussion on mootness in a different direction. *See* Fed. R.

Civ. P. 15(a)(2). But, that's not the course Plaintiffs took.

Thus, there's no reason for the Court to address whether some completely

unspecified, unforeseen, or unidentified vaccination requirement taken together with

"existing policies and procedures" lurks as a latent violation of Plaintiffs' sincerely held

religious beliefs. *See* [Doc. 84, ¶ 31]. Rest assured, the Court is aware of Plaintiffs'

insistence that the similarities between their Second Amended Class Action Complaint

and the operative pleading from a case in another circuit keeps this one alive. [Doc. 134,

pp. 6–10]; First Amended Class Action Complaint, U.S. Navy SEALs 1–26 v. Austin, No.

4:21-cv-01236-O (N.D. Tex. Jan. 24, 2022), ECF No. 84. The Court has thoroughly and

carefully sifted through the SEALs' operative complaint, but given what's required in

the Eleventh Circuit, it finds Plaintiffs' arguments unpersuasive considering *their*

Second Amended Class Action Complaint. Even though the court, in a very well-

reasoned opinion, found the SEALs' claims for injunctive relief to be moot, it also found

that the broader accommodations policy could still "impact issues related to their

service." *See* Order, U.S. Navy SEALs 1–26 v. Austin, No. 4:21-cv-01236-O (N.D. Tex.

Feb. 14, 2024), ECF No. 262 at pp. 1, 4–6, 8. However, from the standpoint of a

straightforward application of Eleventh Circuit precedent, the SEALs' operative

pleading (as well as Plaintiffs' in this case) lacks an imminent, non-speculative

allegation concerning a non-COVID-19 vaccine mandate that is tied to the broader

accommodations process.

      In the Eleventh Circuit, Plaintiffs must present some "reasonable, non-

speculative explanation that the allegedly unlawful action will happen again," and

"'allegations of '*possible* future injury' are not sufficient." *Health Freedom Def. Fund v.*

*President of United States*, 71 F.4th 888, 893 (11th Cir. 2023); *Clapper v. Amnesty Int'l USA*,

568 U.S. 398, 409 (2013) (alteration adopted). Binding precedent in the Eleventh Circuit

is clear: "[F]or an injury to suffice for prospective relief, it must be imminent." *Elend v.*

*Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). Plaintiffs have not made—or properly

moved to make—any allegation that they're going to be forced to receive some other

vaccine that is an afront to their sincerely held religious beliefs. Thus, there isn't any

impending injury before *this* Court. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)

16

("A threatened injury must be 'certainly impending' to constitute injury in fact.") (citations omitted) (cleaned up). What *is* before the Court, though, is whether Plaintiffs' concerns about them being forced to receive an available COVID-19 vaccine in contravention to their sincere religious beliefs are now moot.

"The limited authority vested in federal courts to decide cases and controversies means that they may no more pronounce on past actions that do not have any 'continuing effect' in the world than they may shirk decision on those that do." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)). It shouldn't come as a shock that Plaintiffs and Defendants disagree on whether Plaintiffs' claims for prospective injunctive relief are moot. Still, because of the preliminary injunction previously granted by the Court, this case's procedural history, and the recission of the vaccination mandates, the Court wants to make clear that two things are unequivocally certain—still unvaccinated, Plaintiffs never received any dose of a COVID-19 vaccine and none of their official personnel records contain any adverse action related to the vaccination mandates. *See* [Doc. 133-3, Cammon Decl., ¶ 3]. While such a quick rundown of what's transpired since before and throughout this case may be broad and general in nature, Defendants take the position that Plaintiffs' requested relief has become moot. [Doc. 133, p. 14].

As the party asserting mootness, Defendants "bear[ ] the burden to establish that a once-live case has become moot," and (unrelated to that burden) it is of critical note

that a plaintiff's personal interest in the dispute must be maintained at all stages of litigation. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "Mootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). If there are events that take place "subsequent to the filing of a lawsuit or an appeal [that] deprive [a] court of the ability to give . . . meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001).

With that in mind, the Court would simply ask: Since the national emergency is gone and there are no longer COVID-19 vaccination mandates in place "for Service members or any other Department of Defense personnel," what meaningful relief can the Court really give? [Doc. 133-2, p. 7]. The answer, like the question, is also simple. None. With no active COVID-19 vaccination mandates, there's nothing for the Court to enjoin. Plaintiffs' efforts to secure prospective injunctive relief "*related to the [m]andates*" are moot. *See* [Doc. 84, pp. 47–48 (emphasis added)]; *see City of L.A. v. Lyons*, 461 U.S. 95, 102, 111 (1983). The national health emergency ended over a year ago and because of the changed public-health conditions surrounding COVID-19, each and every mandate requiring vaccination for Plaintiffs has been walked back. Consequently, the specific relief requested by Plaintiffs' Second Amended Class Action Complaint no longer presents redressable claims. Such a conclusion, of course, ushers in the curious thought

of whether Defendants rescinded those mandates just to avoid litigation on whether they violated Plaintiffs' rights under the First Amendment, the Religious Freedom Restoration Act, or the Administrative Procedures Act.

This brings the Court to Plaintiffs' argument that just because a party voluntary ceases a challenged practice, its cessation "does not deprive a federal court of its power to determine the legality of the practice." [Doc. 134, p. 6 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982))]. Stated differently, does an about-face by a defendant that suspends its challenged conduct after it is sued "automatically moot a case?" *Fikre*, 601 U.S. at 241 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). No, it doesn't. *See id.* That said, where "[t]he only conceivable basis for a finding of mootness" rests upon a defendant's voluntary conduct, the burden as to mootness has been characterized as one that is heavy, stringent, and formidable—but not impossible. *West Virginia*, 597 U.S. at 719; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000). "[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that [a] defendant has not changed course simply to deprive [a] court of jurisdiction." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1188 (11th Cir. 2007) (quoting *Nat'l Advert. Co. v. City of Mia.*, 402 F.3d 1329, 1333 (11th Cir. 2005)).

Where voluntary cessation lends to mootness, "[t]he key inquiry" becomes whether Plaintiffs can show a "reasonable expectation"—or, as the Eleventh Circuit has phrased it, a "substantial likelihood"—that Defendants "will reverse course and

reenact" the rescinded mandates if this lawsuit is terminated. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020). This inquiry is examined through three useful, but non-exclusive factors. *Id.*; *see also Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1257 (11th Cir. 2017) (en banc)). First, does "the change in conduct result[ ] from substantial deliberation or is [it] merely an attempt to manipulate [a court's] jurisdiction[?]" *Keohane*, 952 F.3d at 1268 (quoting *Flanigan's Enters.*, 868 F.3d at 1257). Within this first factor, it's important to look at *when* Defendants rescinded the mandates and "any explanations . . . which may have motivated" that recission. *See id.* Second, courts look to whether Defendants' "decision to [rescind] the challenged [mandates] was 'unambiguous'"—which, in turn, entails an inquiry into whether the [about-face] is fairly viewed as being 'permanent and complete.'" *Id.* And third, have Defendants consistently maintained their commitment to keeping the COVID-19 vaccination mandates rescinded? *Id.*

As applied to this case, the fact that Defendants voluntarily rescinded the COVID-19 vaccination mandates "does not moot [this] case" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Fikre*, 601 U.S. at 241; *Friends of the Earth*, 528 U.S. at 190. The Supreme Court has emphasized that is a high, *high* burden, but, again, it's not impossible to meet. While not completely dispositive of the issue, Defendants argue that because this case deals with a government-driven repeal on a nation-wide scale, it's "almost surely moot." [Doc. 133,

p. 15 (quoting *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:21-CV-2429-SDM-TGW, 2023

WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023) ("*CFMO*"))].

That, of course, goes to the level of deference given to government defendants in

situations like this. Relying on binding Eleventh Circuit precedent, Defendants argue

that because they are government defendants, they can meet the heavy burden of

persuading the Court that their challenged conduct is moot because they formally

rescinded a challenged policy. *Keohane*, 952 F.3d at 1267–68 (adding that "the repeal of a

challenged statute—or other similar pronouncement" ordinarily "makes it absolutely

clear that the allegedly wrongful behavior . . . could not reasonably be expected to

recur"). If, like here, the challenged policy—or, to put it in terms of this case—

challenged "mandates" are rescinded, then government defendants are given

considerably more leeway than private parties in the presumption that they are unlikely

to resume or resurrect practices that caused them to get sued in the first place. *Flanigan's*

*Enters.*, 868 F.3d at 1255, *abrogated on other grounds by Uzuegmunam v. Preczewski*, 592 U.S.

797 (2021); *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1283

(11th Cir. 2004) ("When government laws or policies have been challenged, the

Supreme Court has held almost uniformly that cessation of the challenged behavior

moots the suit."); *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) ("Government

defendants receive the benefit of the doubt in voluntary-cessation cases: When they

voluntarily stop the challenged conduct, a rebuttable presumption arises that they will

not reengage in it."), *cert. denied*, 143 S. Ct. 1020 (2023); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Assoc., Inc.*, --- F.4th ----, 2024 WL 4018866, at *10 (11th Cir. Sept. 3, 2024) (noting that "government defendants are 'more likely than private defendants to honor a professed commitment to changed ways'").

The Court recognizes Plaintiffs' position that the Supreme Court's recent decision in *Fikre* secures them a windfall victory that their claims are not moot and that concerns surrounding governmental deference have evaporated. [Doc. 135, pp. 5–6]. Under their interpretation of *Fikre*, government defendants are "entitled to no deference at all." [*Id.* at p. 6]. Whether *Fikre* unwound, abrogated, or disturbed longstanding binding Eleventh Circuit precedent with respect to governmental deference seems a bit elusive given the Supreme Court's narrow focus on what it wants and confirms the standard for mootness to be. 601 U.S. at 241. Regardless, absent an explicit decision that clearly overrules binding precedent, this Court is bound to apply binding Eleventh Circuit precedent as it currently stands. This remains the case "unless and until [any binding precedent] is [explicitly] overruled or undermined to the point of abrogation by the Supreme Court or [an] en banc" sitting of the Eleventh Circuit. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). A district court can't decide if a Supreme Court case overruled or abrogated binding circuit precedent—that task rests with the circuit courts. Until that happens, district courts must apply the current precedent to which they are bound. It's that simple.

With that out of the way, whether governmental deference is waning when it comes to the voluntary cessation doctrine, the end-all-be-all inquiry is this: "To show that a case is truly moot, a defendant must prove no *reasonable expectation* remains that it will return to its old ways." *Fikre*, 601 U.S. at 241 (citations omitted) (emphasis added) (cleaned up). Parallel that alongside the Eleventh Circuit's binding precent that "the repeal of a challenged [mandate]" ordinarily "makes it absolutely clear that the allegedly wrongful behavior . . . could not *reasonably be expected* to recur," and it's clear that *Fikre* underscores what the Eleventh Circuit has long-since held when it comes to mootness. *Keohane*, 952 F.3d at 1267–68 (emphasis added). Is the challenged practice reasonably expected to recur? *See Fikre*, 601 U.S. at 243. That's it. That's the question.

Applying *Fikre*, Plaintiffs ardently contend that the congressional testimony relied upon by Defendants works against a mootness finding. [Doc. 135, pp. 5–6]. Yes, "[t]he future course of the COVID-19 pandemic is unknown" and the Department of Defense "must maintain its flexibility to adjust policies as needed," but given the fervor with which Defendants heeded and obeyed what Congress required through the NDAA, Defendants have met their admittedly high burden that *the mandates* of concern *in this case* for COVID-19 are not reasonably expected to be reinstated. *See Fikre*, 601 U.S. at 243; [Doc. 133-2, p. 8]. Further, to satisfy its heavy burden, Defendants point to not only the current state of COVID-19 but to the fact that Congress itself required the rescission when it passed the NDAA. [Doc. 133, p. 25]. Few could reasonably argue that

the passage of any statute—much less one that eliminated the military's COVID-19 vaccination requirements—doesn't demonstrate "substantial deliberation," showing that neither the Air Force nor any of the other Military Departments rescinded their mandates in order to manipulate jurisdiction. *Keohane*, 952 F.3d at 1268.

Understandably so, Plaintiffs and Defendants just disagree whether there is no reasonable expectation that "the same kind of COVID-19 vaccination requirement will be reinstated," but it can't be overlooked that "for almost two years now" there hasn't been any indication that the COVID-19 vaccination mandates will be reinstated. In this Court's opinion, that's quite persuasive. *See Fikre*, 601 U.S. at 241; [Doc. 133, pp. 24–25]; [Doc. 142, p. 5]. "The Secretary of Defense . . . complied with Congress's directive, and in the months following the rescission memorandum each branch has dutifully rescinded the COVID-19 vaccination requirement and implemented procedures to eliminate adverse administrative actions attending a [S]ervice member's earlier decision to decline COVID-19 vaccination." *CFMO*, 2023 WL 2764767, at *2. More than that, Defendants point out that "no [C]ommander is authorized to implement . . . a narrower COVID-19 vaccination requirement without clearance from the Assistant Secretary for Health Affairs, and any request will only be granted 'when justified by compelling operational needs and will be as narrowly tailored as possible.'" [Doc. 133, p. 24]; Deputy Sec'y of Def. Memo. at 2, https://perma.cc/8K63-NSSW. At bottom, circumstances have (thankfully) changed. And, because of these changes, it's clear that

when Congress required agencies of the executive branch to rescind their COVID-19

mandates, Defendants were not attempting to manipulate or evade review by the courts

of the judiciary. *See Keohane*, 952 F.3d at 1268; *see also CFMO*, 2023 WL 2764767, at *2

(explaining that voluntary cessation exception does not apply because "[t]he rescission

is 'unambiguous,' results from Congress's constitutional authority and not from an

attempt by the Secretary of Defense to 'manipulate jurisdiction,' [and] has resulted in

consistent application . . . ."); *Couture v. Austin*, --- F. Supp. 3d ----, 2024 WL 1075279, at

*5 (M.D. Fla. Mar. 12, 2024) (finding the lack of new COVID-19-related vaccination

requirements since the recission of the mandates persuasive on the issue of mootness).

    "Sometimes, events in the world overtake those in the courtroom, and . . .

complaining part[ies] manage[ ] to secure outside of litigation all the relief [they] might

have won in it. When that happens, a federal court must dismiss the case as moot."

*Fikre*, 601 U.S. at 240. That is precisely what has happened here, and the law compels

that exact outcome. Plaintiffs' claims for prospective injunctive relief as they relate to

the now-rescinded COVID-19 vaccination mandates are moot because Plaintiffs "cannot

be subject to a vaccine requirement that no longer exists." *Robert v. Austin*, 72 F.4th 1160,

1164 (10th Cir. 2023). Not to be blunt, but, again, there "is nothing for this Court to

enjoin" as to Plaintiffs or to members of their proposed class. *Murray v. Fid. Nat. Fin.,*

*Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d

1030, 1045 (5th Cir. 1981) ("As a general principle, a purported class action becomes

moot when the personal claims of all named plaintiffs are satisfied and no class has

been certified."); *see also Bd. of Sch. Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128,

129 (1975) (explaining that "[b]ecause the class action was never properly certified nor

the class properly identified" the decision that the claims of the purported

representative were moot dictated dismissal of the uncertified "class" action as well);

[Doc. 133, p. 19]. And, while "[p]ast exposure to [challenged] conduct does not in itself

show a pending case or controversy regarding *injunctive relief* if unaccompanied by any

continuing, present injury or real and immediate threat of repeated injury," that doesn't

necessarily mean that Plaintiffs' rights under the First Amendment, the Religious

Freedom Restoration Act, and the Administrative Procedures Act were not violated at

some point. *Stanley v. Broward Cnty. Sheriff*, 773 F. App'x 1065, 1069 (11th Cir. 2019)

(quoting *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985)) (emphasis added).

Although it's since been vacated on mootness grounds by the Eleventh Circuit,

Plaintiffs—for a while—had a temporary (but by no means final) victory when it comes

to injunctive relief. *Air Force Officer v. Austin*, No. 5:22-cv-00009-TES, 2022 WL 1240856,

at *3 (M.D. Ga. Apr. 27, 2022) (citing *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1298 (11th

Cir. 2022) (W. Pryor, C.J., concurring)); [Doc. 128, p. 2]. So, looking at Plaintiffs' prayer

for relief, all that remains is their requests for declaratory judgments and reasonable

attorneys' fees. [Doc. 84, pp. 47–48]. Quickly, to Plaintiffs' request for attorneys' fees, if

they believe they are prevailing parties under 42 U.S.C. § 1988 or 28 U.S.C. § 2412, based

on the Court granting the now-vacated preliminary injunction, they may file an

appropriate motion within the time permitted by this Court's Local Rules. *Common*

*Cause/Georgia v. Billups*, 554 F.3d 1340, 1355–56 (11th Cir. 2009). With that, what's left?

Not just once, but several times Defendants note that Plaintiffs' Second Amended

Class Action Complaint speaks purely to declaratory and injunctive relief, making no

mention of a specific request for any type of damages. [Doc. 133, p. 21 (citing [Doc. 84,

pp. 47–48])]. To be sure, Defendants are right, but in *Cambridge Christian School, Inc. v.*

*Florida High School Athletic Association, Inc.*, the Eleventh Circuit recently confirmed that

"a plaintiff need not plead nominal damages in a First Amendment case to be entitled to

them." 2024 WL 4018866, at *12 (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 397, 402

(5th Cir. 1980)) (holding that where a plaintiff sought declaratory and injunctive relief

and compensatory damages for a violation of her First Amendment right of association

but could not prove compensable injury, she was "entitled to receive nominal damages"

based on the First Amendment violation alone). In other words, "nominal damages

[may be] appropriate in the context of a First Amendment violation," even where a

plaintiff "suffers no compensable injury," and a "violation of a legal right" can "save[ ]

a matter from becoming moot." *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1261

(11th Cir. 2006) (first quoting *Familias Unidas*, 619 F.3d at 402; and then quoting *Kelly v.*

*Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994)); *cf. Moms for Liberty – Brevard Cnty., Fla. v.*

*Brevard Pub. Schs.*, --- F.4th ----, 2024 WL 4441302, at *7 (11th Cir. Oct. 8, 2024) (quoting

*Keister*, 29 F.4th at 1251).

That said, however, an award of even nominal damages would mean that the Court had to rule on whether the mandates that required COVID-19 vaccination over Plaintiffs' sincerely held religious beliefs were unlawful. Now, with the COVID-19 vaccination mandates rescinded, any opinion as to their constitutionality would be impermissible. "If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of [the] case would constitute an [impermissible] advisory opinion." *Nat'l Advert. Co.*, 402 F.3d at 1332. As tempting as it may be for the Court to author a lengthy missive detailing its many thoughts on what appeared to be nothing more than a sham of a religious accommodations process for the mandates requiring vaccination against COVID-19, it must suppress the urge. After all, such a missive would be nothing more than one concerning moot issues. *See St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.").

Even assuming the Court could speak to the constitutionality or legality of the mandates that once required vaccination (absent an approved accommodation) for all active duty or Ready Reserve members of the Military Departments and, in turn, award nominal damages against Defendants, Plaintiffs face clear sovereign immunity hurdles. Plaintiffs appear to concede these hurdles as they offered nothing in response to

28

Defendants' arguments on the topic—opting instead to only discuss their many well-reasoned positions for why their claims aren't moot. *See, e.g.*, [Doc. 38-3]; *see also* [Doc. 135]; [Doc. 140]. The Court just sees it differently. Still, though, "[u]nder settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued," and, as Defendants contend, Plaintiffs have failed to plead any waiver of sovereign immunity that would allow them to collect damages against them. *United States v. Dalm*, 494 U.S. 596, 608 (1990); [Doc. 133, p. 21].

With respect to the Free Exercise Clause of the First Amendment there is no "implied damages remedy." [Doc. 133, p. 21 (quoting *Iqbal*, 556 U.S. at 675)]. "In *Bivens* [*v.Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]— proceeding on the theory that a right suggests a remedy—[the Supreme Court] 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Iqbal*, 556 U.S. at 675 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). However, the Supreme Court has long-since "declined to extend *Bivens* to a claim sounding in the First Amendment," and, in their Second Amended Class Action Complaint, Plaintiffs set forth no other conduit through which relief could've been provided for Defendants' alleged constitutional misstep. *Id.* (citation omitted); *see also Ivey v. Paulson*, 222 F. App'x 815, 820 (11th Cir. 2007) ("[T]he Constitution does not waive sovereign immunity in a suit for damages."); *Carlson v. Green*, 446 U.S. 14, 19–20 (1980) (noting that Congress, in

amending the Federal Tort Claims Act, "made it crystal clear that [it] views" the Federal Tort Claims Act and *Bivens* "as parallel, complementary causes of action").

As for the Religious Freedom Restoration Act and the Administrative Procedures Act, neither waive sovereign immunity when it comes to a plaintiff's efforts in seeking money damages against the United States. *See Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *see also* 5 U.S.C. § 702. "Congress did not unequivocally waive its sovereign immunity in passing" the Religious Freedom Restoration Act, and the Administrative Procedures Act only provides "judicial review" of "agency action" in "actions . . . seeking relief *other than money damages*." *Davila*, 777 F.3d at 1210; 5 U.S.C. § 702 (emphasis added). Again, considering the recission of the COVID-19 vaccination mandates and the sovereign immunity issues in this case with respect to even nominal damages, there's nothing left for the Court to consider or determine to award some form of meaningful relief. *See Al Najjar*, 273 F.3d at 1335–36.

## CONCLUSION

The recission of the mandates requiring vaccination against COVID-19 based on "th[e] progress" made against the surge of COVID-19 removes from this Court's consideration any live, justiciable claim on which it may pass. *See* Revocation EO § 1; *see also* [Doc. 126, p. 2]. Further, without any glimmer of a reasonable expectation that Defendants will revive the rescinded COVID-19 vaccination mandates or enact similar ones, there's no relief available to Plaintiffs or to the members of their uncertified,

putative class members. Therefore, Plaintiffs' Second Amended Class Action Complaint [Doc. 84] is **DISMISSED as moot** and all pending motions are **DENIED** for that reason as well. *See* [Doc. 88]. Plaintiffs are reminded that if they believe they're entitled to reasonable attorneys' fees, an appropriate motion must be filed within 14 days from the entry of judgment by the Clerk of Court "unless otherwise provided by statute." LR. 54.1, MDGa. The Clerk of Court is **DIRECTED** to **ENTER** Judgment and **CLOSE** this case.

      **SO ORDERED**, this 11th day of October, 2024.

*S/ Tilman E. Self,*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**